67



234

## Jeff Fenton

| | |
|---|---|
| **From:** | Fawn Fenton |
| **Sent:** | Friday, July 24, 2015 1:49 PM |
| **To:** | Jeff Fenton |
| **Subject:** | RE: Hello :) |

Yow!

;)

**From:** Jeff Fenton
**Sent:** Friday, July 24, 2015 1:48 PM
**To:** Fawn Fenton
**Subject:** Hello :)

http://cdn.wideopenspaces.com/wp-content/uploads/2015/01/No-Trespassing-44.jpg

## Jeff Fenton

**Meticulous Marketing LLC**
(615) 837-1300 Office
(615) 837-1301 Mobile
(615) 837-1302 Fax

**When it's worth doing RIGHT the first time!**

Submit or respond to a support ticket here.

1

· 235

TNJudicial.org/s/a/jif002.pdf    Williamson County Chancery Court Tennessee (Trial Court Records)    DOC: 002 | Page 244 of 719

Case 1:23-cv-01097-PLM-RSK    ECF No. 1-20, PageID.894    Filed 10/13/23    Page 3 of 67

12/3/2015 4:23 PM    (PNG Image, 957 × 504 pixels)



data:image/png;base64,iVBORw0KGgoAAAANSUhEUgAAA70AA...

FRBP Violated: #3:19-bk-02693    TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: 48419B)    JRF.002.1244.00

11/24/2015                                              Invoice



                              300 Cadman Plaza West, Suite 1303, Brooklyn, NY 11201

## Invoice                                                          Questions? Call (800) 952 1457

**Bill To**                                      **Ship To**

Fawn Fenton                                      Fawn Fenton
1986 Sunny Side Dr.                              1986 Sunny Side Dr.
Brentwood, TN 37027                              Brentwood, TN 37027
Phone: 615-███████                               Phone: 615-███████
Email: accounts@fentonmail.com                   Email: accounts@fentonmail.com

| Order No.: MSS-111910 | Date: November 24, 2015 | Ship by: UPS Regular |
|---|---|---|

| Item Description | Unit Price | Qty. | Amount |
|---|---|---|---|
| 1. No Trespassing, This Property Is Protected By Video Surveillance, Trespassers will be Prosecuted Sign (with Graphic)<br>Color: Green Reversed<br>Size: 12" x 18" (H x W)<br>Part #: K-4574 • HTC Code: 8310.00.00.90 | $28.59/Sign<br>Package: 1 Sign | 1 Sign | $28.59 |

|  | Product Subtotal : | $28.59 |
|---|---|---|
|  | Estimated Shipping Charges : | Free |
|  | Order Total : | **$28.59** |

Please make checks payable to **SmartSign**.

                          🖶 **Print Page**      ⊠ **Close Window**

11/24/2015                                    PayPal: Transaction Details



**November 24, 2015**

XpressMyself.com LLC                                      - $28.59
Authorization

---

ⓘ   This is a temporary authorization to make sure your payment method will cover the payment. Your
payment method will be charged when XpressMyself.com LLC completes your order.

**Paid with**                                **Seller info**
VISA x-6593                                  XpressMyself.com LLC
                                             (718) 797-1900
**Ship to**                                  customerservice@smartsign.com
Fawn Fenton
1986 Sunny Side Dr.                          **Your purchase**
Brentwood, TN 37027                          XpressMyself.com LLC              $28.59
United States

**Transaction ID**                              Shipping                      $0.00
1G6000416Y163691M                               Tax                           $0.00
                                                Purchase total                $28.59
                                                Fee                           $0.00
                                                **Total**                     **$28.59**

FRBP Violated: #3:19-bk-02693        TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: 48419B)          JRF.002.1246.00



# DS-2CD2742FWD-IZS
## 4 MP WDR Dome Network Camera with IR

WILLIAMSON CO.
CLERK & MASTER
2019 AUG 29 AM 9: 20
FILED FOR ENTRY



     



## Key Features

- 4 Megapixel High Resolution
- Full HD1080p Video
- Dual Video Streams
- 2.8 mm to 12 mm Motorized Lens
- 120 dB Wide Dynamic Range
- 3D Digital Noise Reduction
- Smart Features
- PoE (802.3af)
- IR Range 30 Meters (~100 feet)
- IP66 and IK10 Protection
- Audio and Alarm Input/Output
- Edge Storage, MicroSD Slot, 128 GB

## Dimensions



## Accessories



| RCM-1 In-Ceiling Mount | PC135 + WMS Pendant Cap With Wall Mount | AB135 Angled Base | SRSL Rain Shade | CB135 Conduit Base |
|---|---|---|---|---|

## Order Model

DS-2CD2742FWD-IZS

| DS-2CD2742FWD-IZS | |
|---|---|
| **Camera** | |
| Image Sensor | 1/3" progressive scan CMOS |
| Minimum Illumination | Color: 0.014 lux @ (f/1.4,AGC on); B/W: 0 lux with IR |
| Shutter Speed | 1/3 s to 1/10,000 s |
| Slow Shutter | Yes |
| Lens | 2.8 mm to 12 mm @ f/1.4, motorized lens |
| Angle of View | 112° to 33.8° |
| Lens Mount | Φ14 |
| Day/Night | IR cut filter with auto switch/schedule/triggered by alarm |
| Digital Noise Reduction | 3D DNR |
| Wide Dynamic Range | 120 dB |
| Pan/Tilt /Rotation | Pan: 0° to 355°, tilt: 0° to 75°, rotation: 0° to 355° |
| **Compression Standards** | |
| Video Compression | H.264+/H.264/MJPEG |
| H.264 Type | Main Profile |
| Video Bit Rate | 32 Kbps to 16 Mbps |
| Dual Streams | Yes |
| Audio | G.711/G.722.1/G.726/MP2L2, 64 Kbps (G.711)/16 Kbps (G.722.1)/16 Kbps (G.726)/32 to 128 Kbps (MP2L2) |
| **Image** | |
| Maximum Resolution | 2688 × 1520 |
| Frame Rate | 20 fps (2688 × 1520), 30 fps (1920 × 1080, 1280 × 720) |
| Image Settings | Compression, color, saturation, brightness, contrast, sharpness, rotate mode, privacy mask |
| Backlight Compensation | Yes, zone configured |
| Region of Interest (ROI) | Yes |
| **Analytics** | |
| Smart Features | Line crossing detection, intrusion detection |
| **Network** | |
| Network Storage | NAS (supports NFS,SMB/CIFS); ANR |
| Alarm Triggers | Motion detection, line crossing detection, intrusion detection, tamper alarm, network disconnect, IP address conflict, storage exception |
| Protocols | TCP/IP, UDP, ICMP, HTTP, HTTPS, FTP, DHCP, DNS, DDNS, RTP, RTSP, RTCP, PPPoE, NTP, UPnP, SMTP, SNMP, IGMP, 802.1X, QoS, IPv6, Bonjour |
| Security | Three level user authentication, password authorization, HTTPS and SSH certificate, IEEE802.1X, basic and digest authentication, watermark, IP address filtering, log-in lockout |
| Standards | ONVIF (PROFILE S, PROFILE G), PSIA, CGI, ISAPI |
| **Interface** | |
| Communication | 1 RJ-45 10M/100M Ethernet port |
| On-Board Storage | Built-in microSD/SDHC/SDXC slot, up to 128 GB |
| Alarm | 1 alarm I/O |
| Audio | 1 audio I/O |
| **General** | |
| Operating Conditions | -30° C to 60° C (-22° F to 140° F), humidity 95% or less (non-condensing) |
| Power | 12 VDC ±10%, PoE (802.3af) UL/cUL Listed |
| Power Consumption | Maximum 5.5 W |
| IR Range | 30 meters (~100 feet) |
| Ingress Protection | IP66 |
| Impact Protection | IEC60068-275Eh, 20J; EN50102, up to IK10 |
| Dimensions | Φ140 mm × 99.9 mm (Φ5.51" × 3.94") |
| Weight | 1000 g (2.20 lbs) |

**CHANCELLOR MICHAEL W. BINKLEY**
**Williamson County Chancery Court**

# EXHIBIT - H
239

RE: Fenton v Fenton    Case# 48419B

Hikvision USA Inc., 908 Canada Court, City of Industry, CA 91748, USA • Hikvision Canada, 4485 Dobrin, St-Laurent
Tel: +1-909-895-0400 • Toll Free in USA: +1-866-200-6690 • E-Mail: sales.usa@hikvision.com • www.hikvision.com
© 2015 Hikvision USA Inc. • All Rights Reserved • Specifications subject to change without notice.



| Lens Size | 2.5mm | 2.8mm | 3.6mm | 4mm | 6mm | 8mm | 12mm | 16mm | 25mm | 60mm |
|---|---|---|---|---|---|---|---|---|---|---|
| View Angle | 100° | 90° | 75° | 70° | 60° | 40° | 30° | 20° | 12° | 5° |
| see clearly the number plate from | 1.5M | 2M | 2.5M | 3M | 5M | 7M | 10M | 20M | 25M | 50M |
| Cover Distance | | | 5 | 6 | 10 | 20 | 30~35 | 50~60 | 70~80 | |



70~80M    50~60M  30~35M        20M            10M    6M

25mm      16mm    12mm          8mm            6mm    4mm

Pictures taken by the same camera with different size lens



241

```
                                                    < < SALES ORDER > >

                 AUDIO VIDEO SUPPLY, INC.
                 4575 RUFFNER ST.
                 SAN DIEGO CA 92111


            MET44
Sold To: METICULOUS PROFESSIONAL          Ship To: METICULOUS PROFESSIONAL
         SOLUTIONS                                 SOLUTIONS
         1986 SUNNY SIDE DR.                       1986 SUNNY SIDE DR.
         BRENTWOOD TN 37027                        BRENTWOOD TN 37027


         Phone: 615-837-1300
```

| Order No. | Order Date | Loc ID | Terms | | Customer P.O.# | Ship Via | Sls | Pg |
|-----------|-----------|--------|-------|--|----------------|----------|-----|-----|
| 00126676 | 07/20/16 | A-STK | Credit Card | | ******** | BESTWAY FOB AVS | T02 | 1 |
| | | | | | | VERBAL / J.FENTON MA | | |

| | Item No/Description | Units | Qty Ord | Qty Shp | Qty Bko | Unit Price | Extended Price |
|--|---------------------|-------|---------|---------|---------|------------|----------------|
| 001 | DS2CD2742FWDIZS<br>4MP WDR DOME NETWORK CAMERA | EA | 4 | | | 327.00 | 1308.00 |
| 002 | DS2CD2542FWDIS/2.8<br>COMPACT DOME 1080P H264 2.8mm | EA | 3 | | | 198.00 | 594.00 |
| 003 | DS2CD2142FWDIS/2.8<br>OUTDOOR DOME 1080P H264 2.8mm LENS | EA | 1 | | | 173.00 | 173.00 |
| 004 | DS2CD2142FWDIS/4MM<br>OUTDOOR DOME 1080P H264 4.0MM LENS | EA | 1 | | | 173.00 | 173.00 |
| 005 | DS2CD2142FWDIS/6MM<br>OUTDOOR DOME 1080P H264 6.0mm LENS | EA | 1 | | | 173.00 | 173.00 |
| 006 | | | 1 | | | 0.00 | 0.00 |
| | EMAIL INVOICE/TRACKING TO:<br>accounting@fentonmail.com | | | | | | |

```
     TERMS AND CONDITIONS:  All sales are final. No unauthorized returns will be accepted
                            All returns subject to minimum 25% Restocking fee
                            All shortages/damages must be reported in 10 days

Customer Signature/Date: _____
                                                        Taxable SubTotal:      2421.00
                                                        Calif. Sales Tax:         0.00
Box Count _____  Weight _____                     Sub Total    :         2421.00
                                                        Shipping     :            0.00
Thank you very much for your business                   Total        :         2421.00
```

242

TNJudicial.org/lsf/rf0022.gif    Williamson County Chancery Court Tennessee (Trial Court Records)    DOC: 002 | Page 253 of 719

Case 1:23-cv-01097-PLM-RSK    ECF No. 1-20, PageID.901    Filed 10/13/23    Page 10 of 67

# HIKVISION

## DS-2CD2542FWD-IS Series
### 4 MP WDR Mini Dome Network Camera



     

### Key Features

- 4 MP High Resolution
- Full HD1080p
- Dual Video Streams
- 2.8 mm, 4 mm, 6 mm Fixed Lens Options
- 120 dB Wide Dynamic Range
- 3D Digital Noise Reduction
- 3-Axis Adjustment
- 12 VDC and PoE
- Supports H.264+
- Up to 10 Meters IR Range
- IP66 Weatherproof Protection
- IK08 Vandal Resistant
- Built-In Microphone, Audio Output, Alarm I/O
- Wireless Option (-IWS)

### Accessories



Wall Mount
PC120



Wall Mount +
Junction Box
WML + PC120



Pendant Mount
CPM + PC120



Sun/Rain Shade
SRSM



Vertical Pole Mount
PM

Corner Mount
CM

### Dimensions

  

Units: mm

### Order Model

DS-2CD2542FWD-IS
DS-2CD2542FWD-IWS, WiFi

| | DS-2CD2542FWD-IS Series |
|---|---|
| **Camera** | |
| Image Sensor | 1/3" progressive scan CMOS |
| Minimum Illumination | 0.01 lux @ (f/1.2, AGC on), 0 lux with IR<br>0.028 lux @ (f/2.0, AGC on), 0 lux with IR |
| Shutter Speed | 1/3 s to 1/10,000 s |
| Lens | 2.8 mm, 4 mm, 6 mm @ f/2.0 |
| Lens Mount | M12 |
| Day/Night | IR cut filter with auto switch |
| DNR | 3D DNR |
| Wide Dynamic Range | 120 dB |
| Angle of Adjustment | Pan: -30° to 30°, tilt: 0 to 75°, rotation: 0 to 360° |
| **Compression Standard** | |
| Video Compression | H.264/MJPEG/H.264+ |
| H.264 Type | Main profile |
| Video Bit Rate | 32 Kbps to 16 Mbps |
| Dual Streams | Supported |
| Audio Compression | G.711/G.722.1/G.726/MP2L2 |
| Audio Bit Rate | 64 Kbps (G.711)/16 Kbps (G.722.1)/16 Kbps (G.726)/32 to 128 Kbps (MP2L2) |
| **Image:** | |
| Maximum Resolution | 2688 × 1520 |
| Frame Rate | 20 fps (2688 × 1520), 30 fps (1920 × 1080), 30 fps (1280 × 720) |
| Image Setting | Rotate mode, saturation, brightness, contrast, sharpness adjustable by client software or Web browser |
| BLC | Supported, zone configurable |
| ROI Codec | Supported |
| **Network** | |
| Network Storage | NAS (supports NFS, SMB/CIFS), ANR |
| Alarm Trigger | Motion detection, tampering alarm, network disconnect, IP address conflict, storage exception |
| Protocols | TCP/IP, UDP, ICMP, HTTP, HTTPS, FTP, DHCP, DNS, DDNS, RTP, RTSP, RTCP, PPPoE, NTP, UPnP, SMTP, SNMP, IGMP, 802.1X, QoS, IPv6, Bonjour |
| General | One-key reset, flash-prevention, dual stream, heartbeat, mirror, password protection, privacy mask, watermark, IP address filtering, anonymous access |
| Standard | ONVIF (PROFILE S, PROFILE G), PSIA, CGI, ISAPI |
| **Interface** | |
| Communication Interface | 1 RJ45 10M/100M Ethernet port |
| On-Board Storage | Built-in microSD/SDHC/SDXC slot, up to 128 GB |
| Alarm Interface | 1x alarm I/O |
| Audio Interface | Built-in microphone and 1x audio output |
| Reset | Yes |
| **WI-FI (-IW models only)** | |
| Wireless Standards | IEEE802.11b, 802.11g, 802.11n |
| Frequency Range | 2.4 GHz to 2.4835 GHz |
| Channel Bandwidth | 20/40 MHz support |
| Protocols | 802.11b: CCK, QPSK, BPSK, 802.11g/n: OFDM |
| Security | 64/128-bit WEP, WPA/WPA2, WPA-PSK/WPA2-PSK, WPS |
| Transmit Output Power | 11b: 17 ±1.5 dBm @ 11 Mbps 11g: 14±1.5 dBm @ 54 Mbps 11n: 12.5±1.5 dBm |
| Reception Sensitivity | 11b: -90 dBm @ 11 Mbps (typical) 11g: -75 dBm @ 54 Mpbs (typical) 11n: -74 dBm (typical) |
| Transfer Rates | 11b: 11 Mbps, 11g: 54 Mbps, 11n: up to 150 Mbps |
| Wireless Range | 50 meters    *The performance varies based on actual environment. |
| **General** | |
| Operating Conditions | -30° C to 60° C (-22° F to 140° F), humidity 95% or less (non-condensing) |
| Power Supply | 12 VDC ±10%, PoE (802.3af) |
| Power Consumption | Maximum 5 W, maximum 9 W with pan and tilt |
| IR Range | Approximately 10 meters |
| Ingress Protection | IP66 |
| Impact Protection | IEC60068-275Eh, 20J; EN50102, up to IK08 |
| Dimensions | 99.3 mm × 96.7 mm × 52.8 mm (3.91" x 3.81" x 2.08") |
| Weight | 600 g (1.32 lbs) |

Hikvision USA Inc., 908 Canada Court, City of Industry, CA 91748, USA • Hikvision Canada, 4485 Dobrin, St-Laurent, Quebec, Canada, H4R 2L8
Tel: +1-909-895-0400 • Toll Free in USA: +1-866-200-6690 • E-Mail: sales.usa@hikvision.com • www.hikvision.com
© 2015 Hikvision USA Inc. • All Rights Reserved • Specifications subject to change without notice.

- 245

010816US

**HIKVISION**

## DS-2DE3304W-DE
### 3 MP Network Mini PTZ Repositionable Dome Camera



### Key Features

- Easy Installation and Setup
- Remote Positioning of Pan/Tilt/Zoom
- 1/2.8" Progressive Scan CMOS 2048 x 1536
- 4x Optical Zoom, 16x Digital Zoom
- 0° to 350° Pan, 5° to 90° Tilt, 10°/Sec.
- DWDR
- IP66/IK10 Rated
- PoE (802.3af)
- Supports RS-485
- Supports Plug & Play
- Adapter Plate for Surface Mounting

### Dimensions



### Order Models

DS-2DE3304W-DE

### Accessories

       

| Pendant Cap PC140PT | Wall Mount WML or WMS | In-Ceiling Mount RCM-4 | Conduit Base CB140PT | Vertical Pole Mount PM | Corner Mount CM | Network Keyboard DS-1100KI | USB Joystick DS-1005KI |

| | DS-2DE3304W-DE |
|---|---|
| **Camera Module** | |
| Image Sensor | 1/2.8" progressive scan CMOS |
| Minimum Illumination | f/1.6, AGC on, color: 0.05 lux, B/W: 0.01 lux |
| Maximum Image Resolution | 2048 × 1536 |
| Focal Length | 2.8 mm to 12 mm, 4x |
| Digital Zoom | 16x |
| Angle of View | 105° to 33.5° (wide to tele) |
| Aperture Range | f/1.6 to f/2.7 |
| Focus Mode | Auto/semiautomatic/manual |
| DWDR | Supported |
| S/N Ratio | ≥52 dB |
| Shutter Speed | 1/1 to 1/10,000 s |
| AGC | Auto/manual |
| White Balance | Auto/manual/ATW/indoor/outdoor/daylight lamp/sodium lamp |
| Day/Night | IR cut filter |
| Privacy Mask | 8 privacy masks programmable |
| Enhancement | 3D DNR, HLC/BLC |
| **Pan and Tilt** | |
| Range | Pan: 0° to 350°; tilt: 5° to 90° |
| Speed | Pan: 0.1° to 60°/sec (manual), 30°/s (preset) Tilt: 0.1° to 50°/sec (manual), 25°/s (preset) |
| Number of Presets | 300 |
| Patrols | 8 patrols, up to 32 presets per patrol |
| Park Actions | Preset/patrol |
| Scheduled Tasks | Preset/reboot/patrol/self test/aux output |
| **Features** | |
| Detection | Intrusion detection, line crossing detection, audio exception detection, motion detection |
| ROI Encoding | Supports 4 areas with adjustable levels |
| **Alarm** | |
| Alarm I/O | 1/1 |
| Alarm Triggers | Intrusion detection, line crossing detection, motion detection, audio exception detection, dynamic analysis, tampering alarm, network disconnect, IP address conflict, storage exception |
| Alarm Actions | Preset, recording, relay output, upload center, upload FTP, e-mail linkage |
| **Input/Output** | |
| Audio Input | 1 audio input (mic/line in), 2 to 2.4V[p-p]; output impedance: 1K Ω, ±10% |
| Audio Output | 1 output, line level, impedance: 600 Ω |
| **Network** | |
| Ethernet | 10Base-T/100Base-TX, RJ-45 connector |
| Main Stream | 30 fps @ 2048 × 1536, 1920 × 1080, 1280 × 960, 1280 × 720 |
| Sub Stream | 30 fps @ 704 × 480, 640 × 480, 320 × 240 |
| Image Compression | H.264/MJPEG |
| Audio Compression | G.711ulaw/G.711alaw/G.726/MP2L2/G.722/PCM |
| Protocols | IPv4/IPv6, HTTP, HTTPS, 802.1X, QoS, FTP, SMTP, UPnP, SNMP, DNS, DDNS, NTP, RTSP, RTP, TCP, UDP,IGMP, ICMP, DHCP, PPPoE |
| Simultaneous Live View | Up to 20 users |
| MicroSD Memory Card | Supports up to 128 GB microSD/SDHC/SDXC card and edge recording |
| User/Host Level | Up to 32 users,3 levels: administrator, operator, and user |
| Security Measures | User authentication (ID and PW); host authentication (MAC address); IP address filtering |
| **System Integration** | |
| Application Programming | Open-ended API, supports ONVIF, PSIA, CGI, and Genetec |
| Web Browser | IE 7+, Chrome 18+, Firefox 5.0+, Safari 5.02+ |
| Power | POE, 12 VDC, maximum 8 W |
| Working Temperature | -30° C to 65° C (-22° F to 149° F) |
| Humidity | 90% or less |
| Protection Level | IP66, TVS 4,000 V lightning, surge, and voltage transient protection |
| Certification | FCC, CE, UL, RoHS, IEC/EN 61000, IEC/EN 55022, IEC/EN 55024, IEC/EN60950-1 |
| Dimensions | Φ140.7 mm × 107.2 mm (5.54" x 4.22") |
| Weight (approx.) | 950 g (33.5 oz) |



Hikvision USA Inc., 908 Canada Court, City of Industry, CA 91748, USA • Hikvision Canada, 4485 Dobrin, St-Laurent, Quebec, Canada, H4R 2L8
Tel: +1-909-895-0400 • Toll Free in USA: +1-866-200-6690 • E-Mail: sales.usa@hikvision.com • www.hikvision.com
© 2016 Hikvision USA Inc. • All Rights Reserved • Specifications subject to change without notice.

243

070616NA

TNJudicial.org/elserf002.pdf — Williamson County Chancery Court Tennessee (Trial Court Records) — DOC.002 | Page 252 of 719

Case 1:23-cv-01097-PLM-RSK ECF No. 1-20, PageID.903 Filed 10/13/23 Page 12 of 67

# HIKVISION

## DS-2CD2142FWD-IS
### 4 MP WDR Fixed Dome Network Camera



    

- 4 Megapixel High Resolution
- Full HD1080p Video
- Dual Video Streams
- 2.8 mm, 4 mm, 6 mm Fixed Lens Options
- 120 dB Wide Dynamic Range
- 3D Digital Noise Reduction
- Smart Features
- PoE (802.3af)
- IR Range 30 Meters (~100 Feet)
- IP66 and IK08 Protection
- Audio and Alarm I/O
- Edge Storage, MicroSD Slot, 128 GB

### Dimensions



| DS-2CD2142FWD-IS | |
|---|---|
| **Camera** | |
| Image Sensor | 1/3" progressive scan CMOS |
| Minimum Illumination | Color: 0.028 lux @ (f/2.0, AGC on); B/W: 0 lux with IR |
| Shutter Speed | 1/3 s to 1/10,000 s |
| Lens | 2.8 mm, 4 mm, 6 mm options |
| Angle of View | 106° (2.8 mm), 83° (4 mm), 56° (6 mm) |
| Lens Mount | M12 |
| Day/Night | IR cut filter with auto switch |
| Digital Noise Reduction | 3D Digital Noise Reduction |
| Wide Dynamic Range | 120 dB |
| Pan/Tilt/Rotation | Pan: 0° to 355°; tilt: 0° to 75°; rotation: 0° to 355° |
| **Compression Standards** | |
| Video Compression | H.264/MJPEG |
| H.264 Type | Main Profile |
| Video Bit Rate | 32 Kbps to 16 Mbps |
| Dual Streams | Yes |
| Audio | G.711/G.722.1/G.726/MP2L2, 64 Kbps (G.711)/16 Kbps (G.722.1)/ 16 Kbps (G.726)/32 to 128 Kbps (MP2L2) |
| **Image** | |
| Maximum Resolution | 2688 × 1520 |
| Frame Rate | 20 fps (2688 × 1520), 30 fps (1920 × 1080), 30 fps (1280 × 720) |
| Image Settings | Compression, color, saturation, brightness, contrast, sharpness, rotate mode, privacy mask |
| Backlight Compensation | Yes, zone configured |
| Region of Interest (ROI) | Yes |
| **Analytics** | |
| Smart Features | Line crossing detection, intrusion detection |
| **Network** | |
| Network Storage | NAS (supports NFS,SMB/CIFS), ANR |
| Alarm Triggers | Motion detection, line crossing detection, intrusion detection, tamper alarm, network disconnect, IP address conflict, storage exception |
| Protocols | TCP/IP, UDP, ICMP, HTTP, HTTPS, FTP, DHCP, DNS, DDNS, RTP, RTSP, RTCP, PPPoE, NTP, UPnP, SMTP, SNMP, IGMP, 802.1X, QoS, IPv6, Bonjour |
| Security | Three level user authentication, password authorization, HTTPS and SSH certificate, IEEE802.1X, basic and digest authentication, watermark, IP address filtering, log-in lockout |
| Standards | ONVIF (PROFILE S, PROFILE G), PSIA, CGI, ISAPI |
| **Interface** | |
| Communication | 1 RJ-45 10M/100M Ethernet port |
| On-Board Storage | Built-in microSD/SDHC/SDXC slot, up to 128 GB |
| Alarm | 1x alarm I/O |
| Audio | 1x audio I/O |
| **General** | |
| Operating Conditions | -30° C to 60° C (-22° F to 140° F), humidity 95% or less (non-condensing) |
| Power | 12 VDC ±10%, PoE (802.3af) |
| Power Consumption | Maximum 5 W |
| IR Range | Approximately 30 meters (~100 feet) |
| Ingress Protection | IP66 |
| Impact Protection | IEC60068-275Eh, 20J; EN50102, up to IK10 |
| Dimensions | Φ111 mm × 82 mm (4.4" × 3.2") |
| Weight | 500 g (1.1 lbs) |

### Order Model
DS-2CD2142FWD-IS

### Accessories

     

AB110 Angled Base — PC110 + WMS Pendant Cap + Wall Mount/Junction Box — CB110 Conduit Base — SRSM Rain Shade — WM110 Wall Mount

244

Hikvision USA Inc., 908 Canada Court, City of Industry, CA 91748, USA • Hikvision Canada, 4485 Dobrin, St-Laurent, Quebec, Canada, H4R 2L8
Tel: +1-909-895-0400 • Toll Free in USA: +1-866-200-6690 • E-Mail: sales.usa@hikvision.com • www.hikvision.com
© 2015 Hikvision USA Inc. • All Rights Reserved • Specifications subject to change without notice.
010816US

FILED
... COUNTY

2019 AUG 29 AM 9: 19

FILED FOR ENTRY_____



## Williamson County Sheriff's Office
## 305 Public Square
## Franklin, Tennessee 37064
## 615-790-5492

TO: _____

OR RESIDENT

Legal process has been issued and forwarded to
the Sheriff's Office for service. This requires
that Civil Process be served to you.

### THIS IS NOT AN ARREST WARRANT

Please contact Deputy ███████ at
615-███████ to make arrangements to
pick up or have your paper delivered.

Thank you

## Office Hours: 7:00 am–5:00 pm Monday-Friday

**CHANCELLOR MICHAEL W. BINKLEY**
Williamson County Chancery Court

# EXHIBIT - I

RE: Fenton v Fenton          Case# 48419B

· 246

*Fawn T. Fenton*
*1986 Sunny Side Drive*
*Brentwood, TN 37027*

Please send all correspondences
Via U.S. Mail, standard post.

October 9, 2017

*Via U.S. Mail and facsimile to (615) 790-8861*

Lisa M. Carson
BUERGER, MOSELEY & CARSON, PLC I.
Williamson County Attorneys
306 Public Square
Franklin, TN 37064
P: (615) 794-8850
F: (615) 790-8861

*Via U.S. Mail and facsimile to (615) 790-5580*

Sheriff Jeff Long
Williamson County Sheriff's Office
408 Century Court
Franklin, TN 37064
P: (615) 790-5560
F: (615) 790-5580

RE:    *WCSO Officers Trespassing, Harassing, Littering at Fawn Fenton's Residence*

Dear Sheriff Long and Ms. Carson:

With Sheriff Long's letter dated June 7, 2017 and Ms. Carson's letter dated July 17, 2017, you both have made it clear to me that you will acknowledge none of my concerns, answer none of my questions, and address none of my complaints about this issue, regardless of their validity. I was never asking you for "legal advice," as Ms. Carson's letter alleges, nor were my questions "hypothetical" in nature. I was asking direct yes/no questions about WCSO policy, and I was never "engaging in debate" with you. The condescension and "finality" in the tone of Ms. Carson's letter communicate to me that you flatly refuse to assist me in this matter at all.

247

As a result of the events I described in my letter dated May 30, 2017, and compounded by your non-responsive responses to my inquiries, I have experienced considerable emotional distress because you have given me no reasonable assurance that the WCSO will respect my "right of exclusion" and expectation of privacy on my property now or in the future. I have done my best to communicate to you with honesty, integrity, and accuracy about events which shocked and frightened me, while trying to give the WCSO the "benefit of the doubt", asking you for clarification rather than jumping to conclusions. But so far, my letters have yielded absolutely no progress towards resolution, and no relevant or helpful information from you whatsoever. However, I do not wish to "continue to engage in debate" with you, and I do not wish to bring full legal action against you at this time; therefore, this letter is my attempt to provide myself some remedy, to restore my peace and enjoyment of my home and property that your officers took away from me by ignoring my "No Trespassing" signage on May 15th, and again on May 24th, compounded by their outrageously disrespectful behavior. This letter is to serve as a formal Trespass Notice:

> To: The Williamson County Sheriff's Office
>
> You are hereby notified that, effective immediately, unless you have an official warrant or you are responding to a specific emergency, you are expressly forbidden from entering on or into the property occupied by me in Williamson County, at address 1986 Sunny Side Drive, Brentwood, Tennessee, 37027. This "No Trespass" notice will remain effective continuously into the future, for as long as I reside at this property, until expressly rescinded by me in writing. Failure to comply with this notice may result in legal action against your organization.

In case you harbor any doubts about the behavior of the two WCSO officers as I described in my letter dated May 30, 2017, I am including a few photos of my original signage, demonstrating that my signage was unavoidably clear and noticeable by anyone approaching my property. I further have photos of postal and parcel deliveries left curbside, at the base of my signs, balancing on top of my brick mailbox, and even left in the ditch, as my expectation to privacy was clearly marked, broadly understood, and reasonable to all except for the WCSO. I am also including some photos which were taken by my home security system, on both May 15th and May 24th, providing you with proof of your officers' illegal actions upon my property, in light of the obvious and clear signage posted. These are only a few snapshots of the video footage that I have, but should be enough to substantiate that my complaints to you are accurate and legitimate.

Recently I have posted new "No Trespassing" signage at the driveway entering my property, a copy of which is attached to this letter for your information. I believe this signage removes any possible ambiguity or misinterpretations regarding my expectation of privacy.

248

In hopes that you will better understand my intentions, I am also including with this letter a copy of the dissenting opinion written by Justice Sharon G. Lee of the Tennessee Supreme Court regarding *State of Tennessee vs. James Robert Christensen Jr.*, No. W2014-00931-SC-R11-CD. The opinions expressed by Justice Lee in this document generally mirror my own sentiments, and I largely agree with her interpretations of private property rights and conclusions. If you haven't already, I would encourage you to read Justice Lee's opinion and consider its merits.

Lastly, I am giving you notice that I have no influence over, and am in no way responsible for Jeff Fenton's actions. You cannot assume that I know about his actions or his whereabouts, and you certainly cannot assume that I support, agree with, or assist him. He and I are going through a difficult time in our relationship, and you need to respect us as separate persons.

I sincerely hope that there will be no need for further communication on this matter, and I wish you the best in your continued service to Williamson County.

Sincerely,

Fawn Fenton

*Homeowner and resident of 1986 Sunny Side Drive.*

(Attachments sent only via U.S. Mail)

- 249



250



FRBP Violated: #3:19-bk-02693     TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: 48419B)     JRF.002.1259.00



FRBP Violated: #3:19-bk-02693



253



254









255



256

| TRANSMISSION VERIFICATION REPORT |

```
                                              TIME  : 10/09/2017 09:36
                                              NAME  : UPS STORE 3355
                                    .  .       FAX   : 6153770120
                                              TEL   : 6153770100
                                              SER.# : BROE8J808035


        DATE,TIME                    10/09  09:35
        FAX NO./NAME                 6157900061
        DURATION                     00:00:51
        PAGE(S)                      03
        RESULT                       OK
        MODE                         STANDARD
                                     ECM
```

FRBP Violated: #3:19-bk-02693          TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: 48419B)          JRF.002.1265.00

TRANSMISSION VERIFICATION REPORT

```
                              TIME   : 10/09/2017 09:34
                              NAME   : UPS STORE 3355
                              FAX    : 6153770120
                              TEL    : 6153778100
                              SER.#  : BROE8J808035
```

```
DATE,TIME             10/09  09:33
FAX NO./NAME          6157905580
DURATION              00:00:49
PAGE(S)               03
RESULT                OK
MODE                  STANDARD
                      ECM
```

- 258

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

WILLIAMSON COUNTY SHERIFF
ATTN: SHERIFF JEFF LONG
408 CENTURY COURT
FRANKLIN, TN 37064

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
Dayne   10/18

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

7017 0190 0000 6516 2942

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

---

UNITED STATES POSTAL SERVICE
NASHVILLE
TN 370
16 OCT '17
PM 2 1

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

FAWN FENTON
1986 SUNNY SIDE DR.
BRENTWOOD, TN 37027

- 259



FRBP Violated: #3:19-bk-02693    TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: 48419B)    JRF.002.1268.00



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BUERGER, MOSELEY & CARSON
ATTN: LISA M. CARSON
306 PUBLIC SQUARE
FRANKLIN, TN 37064

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)    7017 0190 0000 6516 2959

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

FAWN FENTON
1986 SUNNY SIDE DR.
BRENTWOOD, TN 37027

261

262

# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### June 2, 2016 Session Heard at Nashville

## STATE OF TENNESSEE v. JAMES ROBERT CHRISTENSEN, JR.

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Tipton County**
**No. 7799      Joseph H. Walker III, Judge**

---

**No. W2014-00931-SC-R11-CD – Filed April 7, 2017**

---

SHARON G. LEE, J., dissenting.

The maxim, "every man's house is his castle," is deeply rooted in our jurisprudence. *Weeks v. United States*, 232 U.S. 383, 390 (1914). It applies whether the house is a castle or a cottage—a mansion or a mobile home.[1] The right to retreat into the privacy of one's home and be free from governmental intrusion is a basic tenet of the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution. Our homes and adjoining land are protected spaces; governmental officers must have a warrant, absent special circumstances, to intrude onto this private area.

Today, the Court holds that the posting of multiple "No Trespassing" signs is not enough to protect our constitutional rights against a warrantless search and that it may take "a fence and a closed gate that physically block access to the front door of a house" to revoke the implied license to enter the land around a residence.

I disagree that we must barricade our homes with a fence and a closed gate, and perhaps even a locked gate, to protect our constitutional rights against warrantless searches. This option is rarely convenient, affordable, practical, or even possible. Revocation of implied consent to enter one's property should be available to all—not just to those citizens who can afford to erect a fence and a gate and live in an area where this form of barricade is possible.

---

[1] "The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement!" *Miller v. United States*, 357 U.S. 301, 307 (1958) (quoting remarks of William Pitt, Earl of Chatham, during 1763 debate in Parliament) (internal quotation marks omitted).

263

A search occurs when the government obtains information through an actual physical intrusion into a constitutionally protected area[2] or by violating a person's reasonable expectation of privacy.[3] By ignoring the "No Trespassing" signs, the officers physically intruded into Mr. Christensen's constitutionally protected area and violated his reasonable expectation of privacy.

*Physical Intrusion*

A person's right to retreat into his home and be free from unreasonable government searches and seizures stands at the very core of the Fourth Amendment's protections.[4] "This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity . . . ." *Jardines*, 133 S. Ct. at 1414. The protections of the Fourth Amendment extend to the curtilage of a home. *Id.* (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)).

Visitors have an implied license to enter another person's property and step onto the front porch. The Supreme Court has held that "'the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds.'" *Id.* at 1415 (quoting *Breard v. Alexandria*, 341 U.S. 622, 626 (1951)).[5] This license also extends to law enforcement. *Id.* at 1416 ("[A] police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" (quoting *King*, 563 U.S. at 469)).

A citizen may revoke the public's implied license to enter his property. Police officers may lawfully "knock and talk" at a citizen's front door without having probable cause or reasonable suspicion, but *not* when the citizen has expressly revoked the implied

---

[2] *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013) (quoting *United States v. Jones*, 565 U.S. 400, 406 n.3 (2012)).

[3] *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring); *see also Jardines*, 133 S. Ct. at 1417.

[4] *Silverman v. United States*, 365 U.S. 505, 511 (1961); *see also Kentucky v. King*, 563 U.S. 452, 474 (2011) (Ginsburg, J., dissenting) ("In no quarter does the Fourth Amendment apply with greater force than in our homes . . . .").

[5] *See also State v. Cothran*, 115 S.W.3d 513, 522 (Tenn. Crim. App. 2003) ("A sidewalk or pathway leading from a public street to the front door of a residence represents an 'implied invitation' to the public to use the pathway in pursuing legitimate business or social interests with those inside the residence." (quoting *State v. Harris*, 919 S.W.2d 619, 623 (Tenn. Crim. App. 1995))).

-2-

264

TNJudicial.org/efsirm002.pdf — Williamson County Chancery Court Tennessee (Trial Court Records) — DQS:002 | Page 273 of 719

Case 3:23-cv-01097-PLM-RSK   ECF No. 1-20, PageID.923   Filed 10/13/23   Page 32 of 67

license to enter. *State v. Blackwell*, No. E2009-00043-CCA-R3-CD, 2010 WL 454864, at *7 (Tenn. Crim. App. Feb. 10, 2010).[6]

Mr. Christensen sufficiently revoked the public's implied license to enter his property by posting multiple "No Trespassing" and "Private Property" signs near the entrance to his driveway. A person need not have a law degree or an understanding of the various legal nuances of "trespass" discussed by the Court to know that these signs meant visitors were not welcome. Ms. Tammy Atkins, who visited homes in the area to share her faith, understood the meaning of the signs. She testified there were several "No Trespassing" signs near Mr. Christensen's driveway, and she did not go to houses that had "No Trespassing" signs.

Courts across the country have taken different approaches when determining whether an individual has revoked the public's implied license for entry onto his property. In Tennessee, the Court of Criminal Appeals has held that "No Trespassing" signs, even without physical barriers such as fences and gates, are sufficient to revoke the public's implied license to enter. *Blackwell*, 2010 WL 454864, at *7 (acknowledging that a "knock and talk" is generally a lawful technique absent express orders against trespass, but the presence of a "No Trespassing" sign evidences a subjective expectation of privacy and a revocation of the implied license to enter the property); S*tate v. Draper*, No. E2011-01047-CCA-R3-CD, 2012 WL 1895869, at *1, *6 (Tenn. Crim. App. May 24, 2012) (quoting *Blackwell*, 2010 WL 454864, at *7) (ruling a search was illegal where an officer bypassed the front door, entered the backyard, and knew that the owner had posted "No Trespassing" signs, which effectively revoked the implied invitation of the front door); *see also State v. Henry*, No. W2005-02890-CCA-R3-CD, 2007 WL 1094146, at *5 (Tenn. Crim. App. Apr. 11, 2007) (holding a "knock and talk" permissible but noting that if there had been evidence that "No Trespassing" signs were present at the time of the search, the "knock and talk" would have been unacceptable).

---

[6] *See also United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006) ("'Absent express orders from the person in possession,' an officer may 'walk up the steps and knock on the front door of any man's "castle," with the honest intent of asking questions of the occupant thereof.'" (quoting *Davis v. United States*, 327 F.2d 301, 303 (9th Cir. 1964))); *United States v. Cormier*, 220 F.3d 1103, 1109 (9th Cir. 2000) (quoting *Davis*, 327 F.2d at 303); *United States v. Taylor*, 90 F.3d 903, 909 (4th Cir. 1996) (quoting *United States v. Hersh*, 464 F.2d 228, 230 (9th Cir. 1972)); *United States v. Holmes*, 143 F. Supp. 3d 1252, 1259 (M.D. Fla. 2015) (holding that a person may revoke the implied license but must do so expressly (quoting *Taylor*, 458 F.3d at 1204)); *State v. Grice*, 767 S.E.2d 312, 319 (N.C. 2015) (finding that the implied license to approach the front doors of homes may be limited or rescinded by clear demonstrations by the homeowners (citing *Jardines*, 133 S. Ct. at 1415–16)), *cert. denied*, 135 S. Ct. 2846 (2015).

-3-

These Tennessee cases are consistent with decisions from other jurisdictions that have also determined that "No Trespassing" signs, without physical barriers, are sufficient for a person to preserve his privacy and revoke the implied license to enter his property. *See Powell v. State*, 120 So. 3d 577, 584 (Fla. Dist. Ct. App. 2013), *on reh'g* (Aug. 1, 2013) (stating that homeowners who post "No Trespassing" or "No Soliciting" signs effectively negate the license to enter the property and conduct a "knock and talk"); *State v. Roubique*, 421 So. 2d 859, 861–62 (La. 1982) (finding a "Private Road, No Trespassing" sign at the entrance to the driveway was ample evidence of the resident's intent to preserve his privacy); *see also State v. Poulos*, 942 P.2d 901, 904 (Or. Ct. App. 1997) (indicating that "No Hunting or Trespassing Under Penalty of Law," "KEEP OUT," "Guard Dog on Duty," and "STOP" signs posted along the driveway were sufficient to communicate the property owner's intent to exclude the public even without a gate or barrier).[7]

In other jurisdictions, courts have held that the expectation of privacy and desire to restrict entry can be effectuated by either physical barriers *or* appropriate signage. *See People v. Scott*, 593 N.E.2d 1328, 1338 (N.Y. 1992) (holding that "where landowners fence or post 'No Trespassing' signs on their private property or, by some other means, indicate unmistakably that entry is not permitted, the expectation that their privacy rights will be respected and that they will be free from unwanted intrusions is reasonable"), *quoted in State v. Bullock*, 901 P.2d 61, 74 (Mont. 1995); *Dixson*, 766 P.2d at 1024 (stating that signs, such as "No Trespassing" signs, fences, or other similar measures indicate the property owner's intent to protect privacy and exclude the public); *Cooksey v. State*, 350 S.W.3d 177, 184 (Tex. Ct. App. 2011) (stating that a homeowner may manifest an expectation of privacy, restrict access to pathways leading to the house, and revoke the implied license by erecting a locked gate or by posting "No Trespassing" signs); *see also State v. Hubbel*, 951 P.2d 971, 977 (Mont. 1997) (holding that the property owner had no reasonable expectation of privacy in the property leading to the front door where the property owner did not erect a fence, place a gate, plant shrubs or

---

[7] Under this approach, signs may be sufficient to revoke the implied license, but they must be appropriately worded and placed. *See Holmes*, 143 F. Supp. 3d at 1262 (noting that other courts have required that the revocation of the implied license be accomplished by clear demonstrations that are unambiguous and obvious to the casual visitor); *State v. Kapelle*, 344 P.3d 901, 905 (Idaho Ct. App. 2014) (noting that where a "No Trespassing" sign is ambiguous and not clearly posted, the implied license is not revoked); *State v. Howard*, 315 P.3d 854, 860 (Idaho Ct. App. 2013) (finding that the implied license had not been revoked because the "No Trespassing" sign was very small and not easily noticed, was not posted over or next to the entrance to the curtilage, and was over a mile from the actual residence); *State v. Dixson*, 766 P.2d 1015, 1024 (Or. 1988) (en banc) (finding that "No Hunting" signs were insufficient to communicate to law enforcement an intent to exclude non-hunting access).

-4-

bushes, or post "No Trespassing" or other signs), *as modified on denial of reh'g* (Feb. 3, 1998).

Another approach taken by courts in other jurisdictions is to determine whether the public's implied license to enter has been revoked by considering the totality of the circumstances, with a "No Trespassing" or similar signage a factor to be considered. *See Powell*, 120 So. 3d at 584 (finding that the existence and extent of a license to conduct a "knock and talk" depends on the circumstances); *Jones v. State*, 943 A.2d 1, 12 (Md. Ct. Spec. App. 2008) (finding that "No Trespassing" signs may be considered as part of the totality of the circumstances); *State v. Kuchera*, Nos. 27375-6-II, 27376-4-II, 2002 WL 31439839, at *5 (Wash. Ct. App. Nov. 1, 2002) (holding that the presence of "No Trespassing" signs "is not dispositive of the establishment of privacy, but is a factor to be considered 'in conjunction with other manifestations of privacy'" (quoting *State v. Johnson*, 879 P.2d 984, 992 (Wash. Ct. App. 1994))).

Under any of these approaches and particularly under existing Tennessee law, Mr. Christensen revoked the public's implied license to enter his property. Near the entrance to his driveway, he posted two signs that said "PRIVATE PROPERTY, NO TRESPASSING" and one sign that said "NO TRESPASSING, HUNTING OR FISHING, VIOLATORS PROSECUTED, UNDER PENALTY OF LAW" and listed his phone number. These signs were clearly visible to anyone approaching his driveway from the main road. Even in the absence of a fence or other physical barrier, the signs effectively communicated Mr. Christensen's intent to protect his privacy and exclude others from approaching his home. As the Idaho Supreme Court has said, "[C]itizens, especially those in rural areas, should not have to convert the areas around their homes into the modern equivalent of a medieval fortress in order to prevent uninvited entry by the public, including police officers." *State v. Christensen*, 953 P.2d 583, 587 (Idaho 1998).

The Court appears to adopt the totality of the circumstances approach but then determines that an objectively reasonable person faced with a "No Trespassing" sign would not conclude that entry is barred. I disagree. Common sense tells us that "No Trespassing" signs, depending on the circumstances, can communicate the property owner's desire not to have members of the public on his land.[8] Moreover, a "No

---

[8] *Cf. Madruga v. County of Riverside*, 431 F. Supp. 2d 1049, 1061 (C.D. Cal. 2005) (noting that even if signs do not contain the words "No Trespassing" or "Keep Away" "[c]ommon sense and common experiences teaches us that such 'WARNING Guard Dog' signs are placed to dissuade people, be they intruders, sales representatives, delivery agents, or even police officers, from approaching the home. . . . [A]nyone seeing such a sign would understand that the homeowner seeks to exclude them from entering the area beyond the sign.").

-5-

TN Judicial Order/Claim002.pdf Williamson County Chancery Court Tennessee (Trial Court Records) DOC_002 Page 276 of 719

Case 1:23-cv-01097-PLM-RSK ECF No. 1-20, PageID.926 Filed 10/13/23 Page 35 of 67

Trespassing" sign should be of particular significance to law enforcement officers in communicating that they may need to obtain a warrant before entering the property.

"No Trespassing" signs factor into criminal trespass cases. In Tennessee, it is a crime to enter or remain on property without the owner's consent. Tenn. Code Ann. § 39-14-405(a). A defense to this crime is that the alleged trespasser reasonably believed that he had the owner's consent to enter the property. *Id.* § 39-14-405(b)(1). However, this defense is not available if the property owner has posted signs "visible at all major points of ingress to the property . . . and the signs are reasonably likely to come to the attention of a person entering the property." *Id.* § 39-14-405(c).

Mr. Christensen did not just post one "No Trespassing" sign—he posted multiple signs near the entrance to his property that were clear, unambiguous, and obvious to anyone approaching his driveway. These signs adequately communicated Mr. Christensen's intent to revoke the implied license to enter his property. Under the facts of this case, law enforcement officers should have heeded the signs and taken the appropriate steps to obtain a search warrant.

*Expectation of Privacy*

Without a physical intrusion, a search can occur when the government violates a subjective expectation of privacy that society is prepared to recognize as reasonable. *Katz*, 389 U.S. at 361 (Harlan, J., concurring).[9] To determine whether a search has occurred under the *Katz* analysis, courts consider whether the individual had an actual, subjective expectation of privacy and whether society will view the individual's subjective expectation of privacy as reasonable and justifiable under the circumstances. *State v. Talley*, 307 S.W.3d 723, 730 (Tenn. 2010) (quoting *State v. Munn*, 56 S.W.3d 486, 494 (Tenn. 2001)).

In deciding whether Mr. Christensen had an actual, subjective expectation of privacy, we apply a multi-factor test that inquires into whether the defendant owns the property seized; has a possessory interest in the thing seized and the place searched; has the right to exclude others from that place; has shown a subjective expectation that the

---

[9] *See also Jardines*, 133 S. Ct. at 1417 ("The *Katz* reasonable-expectations test 'has been *added to*, not *substituted for*,' the traditional property-based understanding of the Fourth Amendment, and so is unnecessary to consider when the government gains evidence by physically intruding on constitutionally protected areas."); *Jones*, 565 U.S. at 407 ("*Katz* did not erode the principle 'that, when the Government *does* engage in physical intrusion of a constitutionally protected area in order to obtain information, that intrusion may constitute a violation of the Fourth Amendment.'" (quoting *United States v. Knotts*, 460 U.S. 276, 286 (1983) (Brennan, J., concurring))).

-6-

268

place would remain free from governmental invasion; took normal precautions to maintain his privacy; and was legitimately on the premises. *State v. Ross*, 49 S.W.3d 833, 841 (Tenn. 2001) (quoting *United States v. Haydel*, 649 F.2d 1152, 1154–55 (5th Cir. 1981)); *see also Talley*, 307 S.W.3d at 730–31.

Under this test, Mr. Christensen had an actual, subjective expectation of privacy in his property. He owned the property, had a possessory interest in the place searched, had the right to exclude others from the property, showed a legitimate interest in keeping others off his property, took precautions to maintain his privacy by posting multiple "No Trespassing" signs, and was legitimately on the premises.

To determine whether society views Mr. Christensen's subjective expectation of privacy as reasonable and justifiable, we consider factors such as the "intention of the Framers of the Fourth Amendment, the uses to which the individual has put a location, and our societal understanding that certain areas deserve the most scrupulous protection from government invasion." *Oliver*, 466 U.S. at 177–78 (citations omitted).

Privacy expectations are heightened in the home and the adjacent area. *See Dow Chem. Co. v. United States*, 476 U.S. 227, 237 n.4 (1986). The Court in *Katz* held that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But *what he seeks to preserve as private*, even in an area accessible to the public, *may be constitutionally protected*." *Katz*, 389 U.S. at 351 (emphases added) (citations omitted).

Mr. Christensen did not expose his home and the adjoining property to the public; instead, he tried to protect his property by posting multiple signs clearly communicating that visitors were not welcome. If multiple "No Trespassing" signs are not sufficient to convey a property owner's intent to exclude the public from his property, then the constitutional protections against unreasonable searches may be beyond the grasp of ordinary citizens for whom the posting of "No Trespassing" signs is the only feasible option.

Mr. Christensen's expectation of privacy by the posting of multiple "No Trespassing" signs was reasonable and justifiable under the circumstances. Police officers violated Mr. Christensen's reasonable expectation of privacy when they entered his land without a warrant despite the "No Trespassing" signs.

### Conclusion

For the reasons stated, law enforcement officers conducted an illegal search of Mr. Christensen's property, and the evidence obtained from the search should be suppressed.

-7-

TNJudicial.org/efiling.pdf — Case 1:23-cv-01097-PLM-RSK — Williamson County Chancery Court (Tennessee) (Trial Court Records) — ECF No. 1-20, PageID.928 — Filed 10/13/23 — DOC.002 | Page 37 Page 278 of 719

of 67

The Court's decision that multiple "No Trespassing" signs are not sufficient to revoke the implied license for entry denies ordinary citizens the protections of the United States and the Tennessee Constitutions against warrantless searches. The result is that only citizens wealthy enough and situated in an area where they can "convert the areas around their homes into the modern equivalent of a medieval fortress," *Christensen*, 953 P.2d at 587, may protect themselves from governmental intrusion and invasion of privacy.


_____

SHARON G. LEE, JUSTICE

-8-

270

# TNJ:On the Hill

### The Tennessee Journal's updates on Tennessee government & politics

« More legislator campaign spending: 3 bought passports, 10 paid family

Trump announces Sen. Mark Green as Army Secretary »

## TN Supreme majority: Police can ignore 'no trespassing' signs

Published April 7, 2017 | By Tom Humphrey

*News release from Administrative Office of the Courts*

**Nashville, Tenn.** – A majority of the Supreme Court has ruled that, despite the existence of "no trespassing" signs near an unobstructed driveway, police officers' warrantless entry onto the defendant's property was constitutionally permissible.

This matter arose when two investigators went to a different residence after receiving information regarding a pseudoephedrine purchase. One of the individuals at that residence informed the officers that he had given the pills to the defendant, who lived next door and who was in the process of using them to produce methamphetamine. The officers then left that residence and drove down the defendant's unobstructed driveway and walked up to his front porch.

Upon smelling the odor of the manufacture of methamphetamine when the defendant opened his door, the officers requested consent to enter the residence. When the defendant denied consent, the officers forced entry and discovered an active methamphetamine lab, several inactive labs, various items commonly associated with methamphetamine manufacture, and several guns.

Prior to trial, the defendant filed a motion to suppress evidence obtained as a result of the warrantless entry onto his property, claiming that, because he had posted "No Trespassing" signs near his driveway, the officers' entry onto the property without a warrant violated both the United States and Tennessee Constitutions.

The trial court denied the defendant's motion to suppress. The defendant then proceeded to trial and was convicted by a jury of resisting arrest, promoting the manufacture of methamphetamine, initiating the manufacture of methamphetamine, and two counts of possession of a firearm during the commission of a dangerous felony.

The Supreme Court granted the defendant's application for permission to appeal from the Court of Criminal Appeals' decision affirming the trial



*Tom Humphrey*

### ABOUT THIS BLOG

Former Knoxville News Sentinel capitol bureau chief Tom Humphrey writes about Tennessee politics, government, and legislative news.

### Subscribe by Email

Enter your email address to subscribe to this blog and receive notifications of new posts by email.

**Email \***

[ ]

[ Subscribe ]

### Search

[ ] [ Su ]

### Recent Posts

> In 6th Congressional District, Rose takes big money lead over Matheny with $250K loan and Haslam help

> Boyd camp fires back at Black: 'This is Tennessee, not DC'

> U.S. Senate panel

- - - 271

court judgments in order to consider the legality of the police officers'
warrantless entry onto the defendant's property.

In the majority opinion authored by Chief Justice Jeffrey S. Bivins, the
Court determined that the defendant "failed to demonstrate that he had
a reasonable expectation that ordinary citizens would not occasionally
enter his property by walking or driving up his driveway and
approaching his front door to talk with him 'for all the many reasons
that people knock on front doors.'" Therefore, the Court held, the
police officers' warrantless entry did not violate the United States or
Tennessee Constitutions.

Justice Sharon G. Lee dissented from the Court's decision. She
concluded that the police had no right to ignore the multiple "No
Trespassing" signs Mr. Christensen posted at the entrance to his
driveway and enter the area around his home without first getting a
warrant. As a result, the search of Mr. Christensen's home violated his
rights under the United States and Tennessee Constitutions. Justice
Lee wrote that citizens should not have to barricade their homes with a
fence and a closed gate, perhaps even a locked gate, to protect their
constitutional rights. In Justice Lee's view, the ability to prevent the
public, including the police, from entering one's home and the land
around it should be available to all citizens.

**Note:** The majority ruling is HERE. Justice Lee's dissenting opinion is
HERE.

votes to confirm
Overbey as U.S.
attorney for East TN

> Attorneys General
reach $120M
settlement with
General Motors

> TN unemployment
rate falls to lowest
level ever recorded
(again)

**Archives**

> October 2017
> September 2017
> August 2017
> July 2017
> June 2017
> May 2017
> April 2017
> March 2017
> February 2017
> January 2017
> December 2016
> November 2016
> October 2016

Home | Copyright/Reprint Policy | Press
Copyright © The Tennessee Journal 2017. All Rights Reserved. 1.800.727.5257

272

TNJudicial.org/afr002.pdf    Case 1:28-cv-01097-PLM-RSK    ECF No. 1-20, PageID.931    Filed 10/13/23    Page 40 of 67    DOC 002 | Page 281 of 719

Williamson County Chancery Court Tennessee (Trial Court Records)

273

**BUERGER, MOSELEY & CARSON, PLC**
Williamson County Attorneys
306 Public Square
Franklin, TN 37064
(615) 794-8850
(615) 790-8861 Fax



July 17, 2017

Fawn T. Fenton
1986 Sunny Side Drive
Brentwood, TN 37027

Dear Ms. Fenton,

This office represents Williamson County, including its Sheriff's Department, with regard to various matters. Your recent letter to Sheriff Jeff Long has been passed along to me for reply. While we are sorry that you were disappointed with Sheriff Long's previous letter, he is not, as Sheriff of Williamson County, in a position to give you legal advice. Your correspondence essentially seeks a series of legal opinions based upon hypothetical questions. It is not productive to continue to engage in debate with you about the implications of various actions you might or might not choose to take. We would encourage you to seek your own legal counsel for interpretation of these matters if you are dissatisfied with the Sheriff's responses.

Sincerely,

Lisa M. Carson

xc:     Sheriff Jeff Long

♲ Printed on recycled paper

- 275



Buerger, Moseley, & Carson, PLC
Williamson County Attorney's
304 Public Square
Franklin, TN 37064

NASHVILLE
TN 370
17 JUL 17
PM 2 L



02 1P $ 000.46⁰
0000018858   JUL 17 2017
MAILED FROM ZIP CODE 37064

Fawn T. Fenton
1986 Sunny Side Drive
Brentwood, TN 37027

37027-540486

276

- - - 277

**Fawn T. Fenton**
*1986 Sunny Side Drive*
*Brentwood, TN 37027*

**Please send all correspondences**
Via U.S. Mail, standard post.

July 7, 2017

*Via U.S. Mail and facsimile to (615) 790-5580*

**Sheriff Jeff Long**
**Williamson County Sheriff's Office**
**408 Century Court**
**Franklin, TN 37064**
**P: (615) 790-5560**
**F: (615) 790-5580**

      **RE:**    ***Trespassing at Fawn Fenton's Residence***

Dear Sheriff Long:

      I received your letter dated June 7th, 2017, in response to my original correspondence with you. Thank you for taking the time to read my letter and for acknowledging your receipt of it; however, I am disappointed in the brevity of your response, and that you chose not to answer a single question that I had asked. I thought that your response would be one of surprise and apology, and hoped you would bring correction within your department so that such behavior does not persist or become routine. Regretfully, the wording of your response made me think that you not only dismissed my concerns, but that you might even condone your officers' actions on my property. This has been troubling me, with the "principal" of even greater concern than the unjust incidents in question.

      Laws, as with all written words, are subject to interpretation. As I'm sure you know all too well, citizens and law enforcement alike tend to push the boundaries of the law to the outer edge of what they believe is "reasonably arguable". Perhaps this is part of human nature. However, I believe that the two WSCO officers trespassing and littering upon my property on May 24th, was a case where the "ends" most certainly did not justify the "means."

      I would like to be more clear on "the extent of [WSCO] authority when entering property", so that I may more accurately understand and align my expectations.

- - - **278**

Therefore, I am asking you again to please answer my questions below, to explain to me how your department views "no trespassing" situations:

1. In your letter, you say "It is our intent to abide by the controlling law at all times…" Specifically what do you interpret as <u>the</u> "controlling law" in this instance? As I am a bit of a code and rule enthusiast, can you please tell me exactly the document and sections to look up?

2. Is the "Majority Opinion of the Tennessee Supreme Court, as written by Chief Justice Jeffry S. Bivins, in the STATE OF TENNESSEE V. JAMES ROBERT CHRISTENSEN, JR. (No. W2014-00931-SC-R11-CD – Filed April 7, 2017)" the basis by which you believe that your deputies actions were legal?

3. In your interpretation, would (or should) the copy which I sent you of my new signs that I am posting on my property, legally dissuade your officers from entering my property again, under similar circumstances?

4. Would this signage <u>alone</u> be enough to legally prevent visitors (including your officers, other than the specific exceptions noted on the copy) from entering my property? Or do I need to include physical barriers, such as gates and fencing, to prevent unwanted people from entering?

I ask you again to please reply back to me, and to please devote some more time and thoroughness to my questions, that if nothing else I might have a better understanding of expectations in regards to my private property and trespassing concerns.

Thank you again for taking the time to read my letters. I appreciate your concern and devotion to Williamson County, and I eagerly await your response.


Sincerely,

Fawn Fenton
*Homeowner and resident of 1986 Sunny Side Drive.*

· 279

.RANSMISSION VERIFICATION REPORT

```
TIME    : 07/07/2017 15:05
NAME    : FEDEX OFFICE A530
FAX     : 615-269-0996
TEL     : 615-269-9919
SER. #  : U63314F4J711508
```

| | |
|---|---|
| DATE,TIME | 07/07  15:04 |
| FAX NO./NAME | 6157905580 |
| DURATION | 00:00:42 |
| PAGE(S) | 02 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

- - -  280



## U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

FRANKLIN, TN 37064

| | |
|---|---|
| Certified Mail Fee | $3.35 |
| Extra Services & Fees *(check box, add fee as appropriate)* | |
| ☒ Return Receipt (hardcopy) | $___ |
| ☐ Return Receipt (electronic) | $0.00 |
| ☐ Certified Mail Restricted Delivery | $0.00 |
| ☐ Adult Signature Required | $0.00 |
| ☐ Adult Signature Restricted Delivery | $0.00 |
| Postage | $0.49 |
| Total Postage and Fees | $6.59 |

Sent To
SHERIFF JEFF LONG, WS37315
Street and Apt. No., or PO Box No.
408 CENTURY CT.
City, State, ZIP+4®
FRANKLIN, TN 37064

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7015 0640 0003 8051 1212

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SHERIFF JEFF LONG
WILLIAMSON COUNTY SHERIFFS OFFICE
408 CENTURY CT.
FRANKLIN, TN 37064

9590 9403 0163 5120 4040 92

2. Article Number *(Transfer from service label)*

7015 0640 0003 8051 1212

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent ☐ Addressee



B. Received by *(Printed Name)*   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053   Domestic Return Receipt

---

UNITED STATES POSTAL SERVICE

TN 370
08 JUN '17

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10



- Sender: Please print your name, address, and ZIP+4® in this box•

FAWN FENTON
1986 SUNNY SIDE DR.
BRENTWOOD TN 37027

USPS TRACKING#

9590 9403 0163 5120 4040 92

· 281



Ms. Pawn Fenton
1986 Sunny Side Dr.
Brentwood, TN 37027

SHERIFF JEFF LONG
WILLIAMSON COUNTY SHERIFF'S OFFICE
408 CENTURY CT.
FRANKLIN, TN 37027

- 282

263



**WILLIAMSON COUNTY SHERIFF'S OFFICE**
**408 CENTURY COURT**
**FRANKLIN, TENNESSEE 37064**
**615.790.5604** OFFICE
**615.595.1208** FAX
**JEFFL@WILLIAMSON-TN.ORG**



June 7, 2017

Fawn T. Fenton
1986 Sunny Side Drive
Brentwood, TN 37027

Dear Ms. Fenton:

I am in receipt of your letter dated May 30, 2017. We are always interested in hearing the concerns of citizens. Please be assured that the Sheriff's Office is cognizant of its duty to serve legally-issued process, and of the extent of it's authority when entering property to serve such process. It is our intent to abide by the controlling law at all times, and we will continue to do so.

Sincerely,

Jeff Long

Cc: Lisa Carson

234



**WILLIAMSON COUNTY SHERIFF'S OFFICE**
**408 CENTURY COURT**
**FRANKLIN, TENNESSEE 37064**

NEOPOST
06/07/2017
US POSTAGE $000.46⁰



ZIP 37064
041M11280340

Fawn T. Fenton
1986 Sunny Side Drive
Brentwood, TN 37027

3702785404 R025

285

··· 286

*Fawn T. Fenton*
*1986 Sunny Side Drive*
*Brentwood, TN 37027*

Please send all correspondences
Via U.S. Mail, standard post.

May 30, 2017

*Via U.S. Mail and facsimile to (615) 790-5580*

Sheriff Jeff Long
Williamson County Sheriff's Office
408 Century Court
Franklin, TN 37064
P: (615) 790-5560
F: (615) 790-5580

### RE: WCSO Officers Trespassing, Harassing, Littering at Fawn Fenton's Residence

Dear Sheriff Long:

I would like to bring to your attention that recently, WCSO officers have broken the law trespassing on my property. Last week, two officers flagrantly disregarded my 'No Trespassing' signage and physical barriers, while attempting to intimidate me through needless repeated doorbell ringing and excessively loud pounding near my front door. They then mockingly wedged and taped more than a dozen yellow paper notices around the exterior of my residence, littering my property in an effort to embarrass me before my neighbors. I need this harassment to stop, and I am asking you to correct this behavior within your department and for WSCO officers to respect the privacy of my property in the future.

As I am often home alone, I like to rest assured that my property, my pets, and my person are safe and under my control. Therefore, my house is equipped with several video surveillance cameras that allow me to remotely monitor the immediate exterior curtilage around my home, including the driveway and front porch. For notice to the public, I have two large signs that say "STOP" No Trespassing! No Exceptions!" near the lower part of my driveway, one sign on each side, for people who might want to approach my house from the street (since the driveway is the only access up to the house). If a visitor comes up the driveway anyway, they will see at the front corner of the house, there is a sign that says "Monitored by Geoarm Security", which is the external company that monitors my house alarms. At the bottom of the steps leading to the front porch, there is a large sign that says "No Trespassing - This Property Protected by Video Surveillance - Trespassers Will Be Prosecuted". There are also highly visible adhesive signs on the garage man-door and the front door sidelite that say 'No Trespassing' and "Warning, Audio

287

and Video Recording in Use". There is a similar sign near the gate that separates the driveway from the back yard. Therefore, with all this signage clearly in place, in the past, both companies and individuals alike have consistently been extremely respectful of my property, my boundaries, and my privacy. No one, for a lack of "more specific instructions" or impenetrable barriers, has proceeded onto my property, with the only known exception being the recent actions of the WSCO. I have felt that it is very clear to the casual observer that I have a "reasonable expectation of privacy" on my property, especially near my home.

     Despite this, your department has been trying to serve some kind of Civil Process to my husband, Jeff Fenton, and WSCO officers have committed criminal trespass (and possibly aggravated criminal trespass) in their efforts to get my attention. From the video and audio recordings I have from my security system, I can describe to you the exact events to which I am referring. It started on Monday, May 15, 2017 at 10:12 am, when a WSCO officer drove his vehicle up my driveway, parked at the top near the house, and walked to the front porch. He clearly saw the camera mounted in the upper corner of the porch ceiling as he rung my doorbell. He left a yellow slip of paper wedged in the seam of the storm door regarding the legal process he was attempting to serve, and at 10:15 am, backed his vehicle down the driveway and left. I retrieved the yellow notice that evening when I got home from work, and saw that it was addressed to "Jeffrey R. Fenton", and on it was printed to contact Deputy Gary Brown to retrieve the papers. I disregarded this notice, since it is not for me and I am under no obligation to deliver it. The officer can't even know for certain whether or not Jeff Fenton lives here or visits, and I am under no obligation to answer the door or accept any paperwork for Mr. Fenton.

     Since I did not want any further visitors regarding my husband's business, I used a fluorescent yellow cargo strap which I strung approximately 18" to 24" above the ground between the two "No Trespassing" signs on the lower end of my driveway, and on Wednesday May 17, created a physical barrier so that a vehicle could not drive up my driveway without hitting or removing the strap. I also put a yellow strap across the railings of the steps blocking access to my front porch, as a secondary visual and physical barrier indicating that visitors were not welcome to the front door. On Monday, May 22, 2017 at 10:15 am, a WSCO officer drove by my property again, but this time upon seeing the barriers, did not attempt to come up the driveway, and instead left another identical yellow paper notice addressed to Jeffrey R. Fenton wedged behind the flag on my brick mailbox.

     Then on Wednesday, May 24, 2017, two officers arrived at my residence at 8:02 am. The male officer parked a WSCO vehicle on the lower end of my driveway in front of the yellow strap barrier, while the female officer parked her unmarked vehicle in front of my neighbor's house. Then they exited their vehicles and proceeded to step over my strap barrier and walked up my driveway on foot. They walked to the front porch, and both ducked and crawled under the yellow strap barrier there to access the front porch. The male officer stood on the porch and rung the doorbell multiple times, while the female officer stood on the landing looking through my front windows, watching my dog bark and trying to discern if anyone might be home. The male officer tried to open the storm door, but found it locked, and then he pounded very loudly on the side of the sidelite frame and called out "Mr. Fenton!" At 8:06 am, the male officer folded and wedged two of the yellow notices in the frame of the storm door. The female officer, who had brought

288

with her a roll of what appeared to be clear packing tape, proceeded to tear off pieces of tape which she handed to him, and he taped three more yellow notices, two on the storm door and one on the sidelite, for a total of five yellow papers cluttering the face of my front door. The male officer rang the doorbell again, and they both looked directly at the video camera on the porch ceiling and waved. They then went back down the steps and crawled under the yellow strap and walked back to the driveway. At 8:09 am, both officers walked around the garage-side of the driveway, and the male officer wedged and taped several more yellow notices to the man-door at the side of the garage. The male officer took a quick look through the fence at the back yard before following the female officer back towards the front of the house. They both proceeded to walk in the grass alongside the driveway back to their vehicles. The female officer taped yet more yellow notice papers, one on to each of my "No Trespassing" signs, and the male officer put another one wedged in the mailbox flag. At 8:11 am, they both moved their vehicles such that one was on each side facing my driveway, and stayed parked on the street in front of my house until 8:21 am, when they finally drove away.

Clearly, these two officers were mocking my attempts to keep them and other trespassers off my property and away from my home. I am very disturbed at their blatant disregard of my signage and physical barriers, as well as for Tennessee's trespassing laws in general. Certainly, you are familiar with TCA 39-14-405 regarding Criminal Trespass, which clearly has no defense for the actions of these officers. Even TCA 39-14-406 regarding Aggravated Criminal Trespass appears relevant to this matter, stating: *(a) A person commits aggravated criminal trespass who enters or remains on property when: (1) The person knows the person does not have the property owner's effective consent to do so; and (2) The person intends, knows, or is reckless about whether such person's presence will cause fear for the safety of another…"* After taking down the numerous yellow notice papers from around my property, I had to have conversations with several of my neighbors, who had seen the officers repeated visits and the excess of yellow papers, and asked me if something was wrong and if they needed to be concerned about their own property. I believe this was part of the officers' intent on May 24th – to not only attempt to intimidate me, but also to draw the attention of my neighbors and bring embarrassment or negative attention to my situation.

I certainly hope that completely ignoring "No Trespassing" signage is not a formal policy within the WSCO, and that circumventing physical barriers without just cause is not a regular practice? These officers are not even pursuing anything related to a crime; this is just a civil legal notice. It is my understanding that Mr. Fenton has been under some financial difficulty, and I assume whatever your department has been asked to deliver is related to that, but I think it can't be very serious since Mr. Fenton has never had much in the way of income or assets to my knowledge. His and my finances are completely separate, and I do not need to get involved. Rather, your officers need to respect the privacy of my property! They are violating the Fourth Amendment of the Constitution and breaking Tennessee law to deliver some civil papers to someone with no criminal history that they can't even be sure might be found at this address. I would expect WSCO officers to be examples to other citizens of how to respect and uphold laws, not to demonstrate the disrespectful invasiveness shown by these two that were at my home on May 24th.

289

I have now posted new signs around my property, a copy of which is attached to this letter, which I hope will make it expressly clear who I expect to allow on my property and under what circumstances, so that there can be no argument about "implied consent" or that "not every entry onto personal property is a search." In order to get these signs up quickly (several are now posted as of May 25th), I just printed them on my computer and had them laminated; however, I intend to replace my current "No Trespassing" signs with professionally manufactured larger signs showing this content. I am requesting your feedback on the verbiage of this sign, a statement from you on whether you believe this sign is sufficient to legally protect me against unannounced and undesired visitors. I would appreciate a written letter from you in response. In particular, if I post this sign (or multiple copies of it) at the entrance to my property, will the sign(s) alone be sufficient to convey my intent, so that I can remove the strap (physical barrier) across my driveway? I would prefer to secure my expectation of privacy with only signage, rather than persisting with physical obstacles, but please let me know your and your department's interpretation of privacy requirements.

In addition, I am requesting that you review with your entire department the legal boundaries of trespassing, and how your officers should interpret signage and barriers. The conduct of these two officers at my property on May 24th was what NOT what "a reasonably respectful citizen would be expected to do" given the signage and barriers present, even if they believed they had legitimate business to conduct with me. Your officers need to be able to objectively look at the communication presented by 'No Trespassing' signage and barriers, and conclude whether "a reasonable person" would proceed onto private property, law enforcement or not. I hope that you can assure me that I will not have officers in the future who encroach onto my property without more urgent reasons. Specifically, I would like the names and badge numbers of the two officers who papered my property on May 24th, and acknowledgement that they understand my intent and privacy expectations. Please respond to me about this also, via letter.

As I mentioned, I have video recordings from my security system of each time WSCO officers visited my home, and some audio recordings as well. Several different cameras from multiple angles show exactly how they acted unreasonably. I hope that by writing you this letter and asking for your cooperation, there will be no need for me to show these videos to my legal counsel, or to share these videos with others, to let people know what to expect when private property is posted simply with 'No Trespassing'. If you can give me assurance that my property boundaries will be respected by WSCO officers from now on, I will be very appreciative and it will ease the concerns of my neighbors. Thank you for your attention to this matter.

Sincerely,

*Fawn Fenton*
Fawn Fenton

*Homeowner and resident of 1986 Sunny Side Drive.*

290

# FENTON RESIDENCE
## 1986 Sunny Side Drive

## NO TRESPASSING (T.C.A. § 39-14-405)

**DELIVERIES:** Please Leave at the Garage.

**VISITORS:** Confirmed Appointment Required in Advance.

**EMERGENCIES:** Ambulance & Fire Services Permitted to Protect Life and Property.

## ALL OTHER IMPLIED LICENSE TO ENTER IS HEREBY REVOKED.

## Absolutely
## NO ENTRY to LAW ENFORCEMENT,
**except when responding to an alarm or distress call from within this residence.**

## "Knock-and-Talk" is expressly Forbidden.

**Please don't proceed past the ditch,**
**unless invited onto this property by the owners, or meeting the conditions above.**

**Audio & Video Surveillance in Use ~ Violators will be Prosecuted.**

291

```
┌─────────────────────────────────────────┐
│    TRANSMISSION VERIFICATION REPORT       │
└─────────────────────────────────────────┘
```

|  |  |
|---|---|
| TIME | : 05/31/2017 00:46 |
| NAME | : FEDEX OFFICE 0530 |
| FAX | : 615-269-0996 |
| TEL | : 615-269-9919 |
| SER.# | : U63314F4J711508 |

| DATE,TIME | 05/31  00:44 |
|---|---|
| FAX NO./NAME | 6157905580 |
| DURATION | 00:02:04 |
| PAGE(S) | 05 |
| RESULT | OK |
| MODE | STANDARD |
|  | ECM |

292



UNITED STATES POSTAL SERVICE

The 370
31 MAY '17

• Sender: Please print your name, address, and ZIP+4® in this box•

FAWN FENTON
1986 SUNNY SIDE DR.
BRENTWOOD, TN 37027

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

USPS TRACKING#

9590 9403 0163 5120 4040 04

293

CLERK & MASTER

April 27, 2019      AUG 29 AM 9: 22

Dear Betsy, Ronald & Jeff,      FILED FOR ENTRY_____

Please attach to trust documents.
I expect a good chance of getting
dementia as I age — as both
parents did. I plan to carefully
conserve my money through these
years. If I become incapacitated,
I want the money to be used to
keep me in my home with my
dog and my books. Its should
be relatively easy to safeguard the
doors so I only have access to
the back yard. I do __not__ want
my children in the position of
caring for me.
      Thanks for your help,
            Marsha A Fenton

CHANCELLOR MICHAEL W. BINKLEY
Williamson County Chancery Court

# EXHIBIT - J

RE: Fenton v Fenton      Case# 48419B
                              294

## LOANS TO JEFFREY R. FENTON FROM MARSHA A. FENTON

| Date | Description | Amount |
|---|---|---|
| 10/03/2018 | Check 2487 | 1000.00 |
| 10/30/2018 | LCSW Terry Huff | 75.00 |
| 11/13/2018 | LCSW Terry Huff | 100.00 |
| 12/06/2018 | LCSW Terry Huff | 150.00 |
| 12/20/2018 | LCSW Terry Huff | 100.00 |
| 1/03/2019 | W. Meade Vet Clinic | 219.22 |
| 1/07/2019 | Check 2521 | 1000.00 |
| 1/07/2019 | Check 2522 | 1000.00 |
| 1/08/2019 | LCSW Terry Huff | 100.00 |
| 1/15/2019 | LCSW Terry Huff | 100.00 |
| 1/22/2019 | LCSW Terry Huff | 100.00 |
| 1/31/2019 | LCSW Terry Huff | 100.00 |
| 2/12/2019 | LCSW Terry Huff | 100.00 |
| 2/26/2019 | LCSW Terry Huff | 100.00 |
| 2/27/2019 | Check 2536 | 1000.00 |
| 2/27/2019 | Check 2537 | 1000.00 |
| 3/12/2019 | LCSW Terry Huff | 100.00 |
| 3/26/2019 | LCSW Terry Huff | 100.00 |
| 4/09/2019 | LCSW Terry Huff | 100.00 |
| 4/15/2009 | Check 2552 | 1000.00 |
| 4/17/2019 | Check 2554 | 859.00 |
| 4/23/2019 | LCSW Terry Huff | 100.00 |
| 5/07/2019 | LCSW Terry Huff | 100.00 |
| 6/25/2019 | LCSW Terry Huff | 200.00 |
| 7/09/2019 | LCSW Terry Huff | 100.00 |
| 7/12/2019 | Brittany Gates, Law | 1500.00 |
| 7/23/2019 | LCSW Terry Huff | 100.00 |
| 7/29/2019 | Schaffer Law Firm | 4000.00 |
| 8/07/2019 | Schaffer Law Firm | 1000.00 |

Total – $15,103.22

8/25/2019
8/21/19

Marsha A. Fenton
MARSHA A. FENTON

TERRI L WALKER
Notary Public, Genesee Co., MI
My Commission Expires Oct. 29, 2022
Acting In Genesee Co.

8/21/19

29 5

TNJudicial.org/o/a/jrf002.pdf    Case 1:28-cv-01097-PLM-RSK    Williamson County Chancery Court Tennessee (Trial Court Records)    ECF No. 1-20;    PageID.954    Filed 10/13/23    DOC-002 | Page 304 of 719    of 67

V:\Digital Filing Cabinet\Documents\Divorce Fa    'IOM $$.txt    Thursday, August 29, 2019 7:22 AM

| | |
|---|---|
| $15,103.22 | Mom Loan as of 8/7/2019 |
| $999.95 | Current Charges |
| $297.35 | USAA |
| $407.49 | CreditOne |
| $331.98 | Capital One |
| | |
| $17,131.99 | Subtotal To Date |
| | |
| $500 | Utilities |
| $3,000 | Moving |
| $300 | Storage |
| | |
| $20,939.99 | Total Through Move |

FRBP Violated: #3:19-bk-02693          TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: 48419B)          JRF.002.1304.00



2019 AUG 29 AM 9: 18

FILED FOR ENTRY

CHANCELLOR MICHAEL W. BINKLEY
Williamson County Chancery Court

EXHIBIT - K          Case# 48419B

RE: Fenton v Fenton

297



ALL FRANCIS FIREARMS MINISTERS
+ TRAINING

FROUT PAGE: FN-FAL .308
HERE & AR-15 A1 w/ VREG OPTR

298



5,180 Rounds of Fuvis's Ame

299

TNJudicial.org/s/a/jsf002.pdf — Williamson County Chancery Court Tennessee (Trial Court Records) — DOC.002 | Page 308 of 719

Case 1:23-cv-01097-PLM-RSK    ECF No. 1-20, PageID.958    Filed 10/13/23    Page 67 of 67

# Fawn's Ammunitions: Taken During Separation

**TOTAL ESTIMATED VALUE:**    **$1,993.41**

 Fawn T. Fenton

 ▮▮▮▮▮ Brentwood, TN 37027

 (615) 333-73▮▮

| Item # | Make / Model | Item / Description | Bullet Weight (Grains) | Muzzle Velocity (FPS) | Bullet Style | Serial Number / ID Number | Date Purchased |
|---|---|---|---|---|---|---|---|
| 1 | Federal American Eagle (XM193) | 5 56 x 45mm | 55 | 3,165 | FMJ | Case UPC: 50029465094602 | 11/7/2016 |
| 2 | Federal American Eagle (AE223) | .223 REM | 55 | 3,240 | FMJ-BT | Box UPC: 029465084820 | 2/4/2005 |
| 3 | PMC Bronze (308B) | 7.62 x 51mm (.308 WIN) | 147 | 2,780 | FMJ-BT | Case UPC: 20741569060282 | 11/8/2016 |
| 4 | Hornady TAP (#80968) | 7.62 x 51mm (.308 WIN) | 168 | 2,700 | TAP FPD | Box UPC: 090255809688 | 11/8/2016 |
| 5 | Federal American Eagle (AE40R3) | .40 S&W Target | 165 | 1,130 | FMJ | Case UPC: 50029465092813 | 11/7/2016 |
| 6 | CCI Blazer Brass (5210) A-OB-K-29 | .40 S&W Target | 165 | Unknown | FMJ | Box UPC: 076683052100 | 2/4/2005 |
| 7 | Federal Premium HST LE (P40HST1) | .40 S&W Tactical | 180 | 1,010 | JHP | Box UPC: 029465094454 | 11/8/2016 |
| 8 | Federal American Eagle (AE9AP) | 9mm LUGER | 124 | 1,150 | FMJ | Box UPC: 029465088569 | 2/11/2010 |
| 9 | Federal Premium HST LE (P9HST2) | 9mm LUGER Tactical | 147 | 1,000 | JHP | Box UPC: 029465094447 | 11/8/2016 |
| 10 | Federal Classic HI-SHOK (C38U) | .38 SPECIAL +P | 125 | 950 | JSP | Box UPC: 029465092955 | Unknown |
| 11 | Miscellaneous Ammo Boxes | .40 Federal | .22 CCI | .223 Winchester | Misc | Misc | Misc | Misc | Unknown |
| **TOTALS** | **INVENTORY ITEMS: 11** | | | | | | |

**COUNTED, SIGNED-FOR, AND TAKEN BY FAWN ON 5/1/2018**

*300*