

APPENDIX - 17

**2019-09-28 FENTON MARITAL RESIDENCE - FORCED AUCTION - TOTAL LOSS - 1986 Sunnyside Drive, Brentwood**

## SMOKING GUN #1:

I believe that this is the quickest and easiest **EVIDENCE** for understanding and proving that something substantially **FOUL** took place during my 8/29/2019 hearing in Williamson County Chancery Court.

The scanned version of this document represents an exact copy of the original as submitted to the Clerk's Office. The original has not been retained.



18 U.S.C. § 242 - Deprivation of Rights Under Color of Law, 18 U.S.C. § 241 - Conspiracy Against Rights

4 bd  3 ba  **2,640 sqft**
**1986 Sunny Side Dr, Brentwood, TN 37027**
Sold: **$540,000**  Sold on **02/17/20**  Zestimate®: $559,311
Est. refi payment: $2.293/mo  **S Get current rates**

**(Photo taken shortly before the THUNDERSTORM began.)**
**ONE OF THE REAL TRAGEDIES DURING OUR MARRIAGE,**
**WHICH FINANCIALLY AND EMOTIONALLY DEVESTATED US!**

ALL THREE actions brought against me by Attorney Virginia Lee Story, on behalf of my Wife, were substantially **FRAUDULENT**, leveraging **FALSE TESTIMONY**, continual deception, bad faith, perjury, an absurd amount of malicious litigation, while grossly violating every single oath of office. Not even showing me an ounce of humanity, consideration, or care for IF or HOW I could support myself or survive thereafter!

They literally STOLE OUR beautiful $500k Brentwood HOME, which I had my entire life's savings, my pre-marital retirement funds, and a decade of my METICULOUS LABOR invested in, while REFUSING me DUE PROCESS. As they heavy-handedly ordered the WCSO to forcefully evict me (with absolutely no need or justification for any "police" presence), simply to dominate, demean, and humiliate me MORE!

The Court, my Wife, and her Counsel (in both State and Federal Courts simultaneously) all knew that I was currently unemployed (by our MUTUAL agreement during that season, despite her fraudulent claims). They further KNEW that I had nowhere else that I could obtain shelter within the State of Tennessee, nor the funds by which I could meet my most basic needs, to simply eat, maintain my medications, and survive through our divorce. (This same Court would NEVER do this to a WOMAN under similar circumstances!)

Since my Wife, who had voluntarily been our family's PRIMARY BREADWINNER for over a decade (after obtaining her professional license as an "Architect", thereby tripling her income over time), had ALSO abruptly terminated all means of financial support, coinciding with her Counsel, (again, without ANY notice)!

TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: #48419B)



Then "THEY" later converted the "Ex Parte" into a FULL **"ORDER OF PROTECTION"**, though still posing **absolutely NO threat to WIFE!** Carelessly destroying my ability to pass preemployment background checks, while needing a JOB more than ever, to simply SURVIVE their CRUEL and INHUMANE ORDERS!

All via a FRAUDULENT AFFIDAVIT and "DEFAULT JUDGMENTS", while DEPRIVING me of ALL RIGHTS to participate in MY HEARINGS!

Further followed by an outrageous, crippling, **FIVE-YEAR EXTENSION**, without even mailing me a NOTICE or a MOTION! (Still to DATE!)

There is NOTHING "LEGAL" about this! It is ALL about POWER, BIAS, DISCRIMINATION, COLLUSION, CONTROL, DOMINANCE & ABUSE!

**I thought that "Lady Justice" held SCALES while wearing a BLINDFOLD?**

**Apparently not in Williamson County Tennessee!**

**I LOVED MIDDLE TENNESSEE!** I was a hard working, honest, tax paying CITIZEN for **25-years**! Until the day that I first met **Judge Michael W. Binkley** and his close personal friend, **Attorney Virginia Lee Story!**

Regretfully now, I hope to NEVER step on Tennessee soil again, ever!

**3-DAYS BEFORE** Wife secretly filed for **Ch-13 BANKRUPTCY** (requesting to voluntarily forfeit/auction **OUR HOME**), without even mentioning a WORD to me!

I accidentally discovered this (from her attorney) on 6/14/2019. FIVE DAYS LATER, Wife applied for a FRAUDULENT "OP" under FALSE TESTIMONY!

**I have NEVER threatened to harm her, or laid a single finger on her in anger! EVER! (While I have ZERO Arrests, Complaints, Priors, NOTHING!)**

**Even though WIFE is a HIGHLY TRAINED and HEAVILY EQUIPPED firearms and self-defense EXPERT!**

She is a Licensed TN HANDGUN INSTRUCTOR, with serious military assault rifles, and over 5,000 Rnds. of ammo when she left!

Yet somehow she obtained an OP "Ex Parte" from **Judge Michael W. Binkley**, who just "happens" to be CLOSE PERSONAL FRIENDS with Wife's divorce attorney, **Virginia Lee Story**.

Welcome back to the **OLD SOUTH!** Let's all practice saying, **"YES MASTER!"**

---

I held out good for my raccoon buddy in my hand tonight, and he touched both his cold little nose and his paw to my hand.

https://1drv.ms/v/s!AlWyAYYGDEXasH4MLLYxg0ct2nKs

**I DID IT!!!**



Apr 23 2019

 OMG! raccoon!!! 😃

Fawn Fenton (mobile) Apr 23, 2019 

Was that not COOL AS HECK? I did like you told me... Trying to keep the door barely split so he didn't come inside, while taking a video with one hand, holding out the food in the other hand, trying to focus, call to him..... And you say that I can't multi-task!

I've interacted with him a ton through the glass, and a little outdoors, but that was the first time that we touched each other. He was super gentle, with his warm soft little tongue eating out of my hand, with never the slightest nip!

Apr 23 2019



 Love little raccoon!! 😃

Fawn Fenton (mobile) • Apr 23, 2019 

## IMPORTANT TIME MARKERS FOR THE AUDIO RECORDING BELOW:

### "2018-10-27 Fenton Phone Call – Dividing Property.mp3"

Confirming my email is on the same page... dropping suite and selling the home ourselves, then getting an amicable divorce with free state forms, after there is no joint property or debts left. (That way we can save money on legal fees and decide how to split our property and debts.)

00:06  Fawn's PLAYFUL "Hello" Voice

02:30  I want to take the dehumidifier with me to my mom's because the basement is really humid - Fawn approves.

03:10  Security System or Cameras - both, all, can take.

03:25  Last but not least, the Television (Fawn "kinda wants it", "would like to have it". Whatever but she would like to have it.) I can take all the smaller TVs.
Talk about me maintaining residency here... possibly with using her address... she isn't excited about it, but we'll talk about it later.

06:55  She will get the Aquarium out before it goes on the market - she affirms. Will start working on getting her stuff out of the house on the weekends.

07:00  So will you hire a lawncare while I am gone, so I can put some of that in storage? Yeah.

07:27  The reason I don't want any of the holding costs to come out of my share, is because it wasn't my choice that we have two residences, you know, so it doesn't seem... Yeah, whatever.

07:39  Still it's far and away more money that you'll be able to apply towards your debt than if we paid off all of mine, right? Yeah. For Sure!

07:52  I mean, splitting it 50/50 is totally fair, and that's what I would want to do.

08:00  Fawn strongly doesn't want a tenant, if we can avoid it.

08:33  Great Wall of Fire... Ask Around when I'm up there...

Fawn confirms that she will let me know on Monday how we need to proceed with Non-Suit with court.

FACT CHECKING for Audio Recording: "M2019-02059 Transcript of Evidence 2b (audio recording).mpe
Case 1:23-cv-01097-PLM-RSK    ECF No. 1-35, PageID.1928    Filed 10/13/23    Page 4 of 83
Smoking Gun 9 (Page 4 of 83)
of 49

**BELOW ARE SOME TIME MARKERS FOR CRITICAL PORTIONS OF THE ATTACHED AUDIO RECORDINGS:**

**2019-08-29 Hearing at the Old Courthouse - Michael Binkley - Virginia Story - Pro Se: "M2019-02059 Transcript of Evidence-2b (audio recording).mp3":**

| 4:53 | Story: | "He said that he was moving September 1st, that is Sunday." **(BOLD face LIE, I NEVER said that!)** |

| 5:00 | Jeff: | "that was my tenants move out by then." |

| 5:04 | Story: | "That is not true, he says he had 45-days AFTER September 1st to move, but that wouldn't even make sense." **(Which is NOT what I said or MEANT!)** |

**According to the Judgment on 8/1/2019 (included herein):**
- My Tenant's had 30-days, from 8/1, to move-out.
- The AUCTION was set to take place within 45-days, from 8/1.
- So, there should have been approximately 15-DAYS where I would live in MY HOME BY MYSELF, between the date that my Tenant's were forced to vacate, until the AUCTION was scheduled to take place.
- NEVER did the Court Order on 8/1/2019 require me to vacate my home prior to the sale.
- I was SUPPOSED to be allowed to remain in my HOME, until the SALES proceeds provided me with another place to LIVE!

I had hoped to voluntarily leave a day before the sale, simply so that I wouldn't need to be present during the auction, not because I was required to move by any specific date. *(According to the 8/1/2018 Court Order (TR v1, Pages 110-112) ATTACHED.)*

| 5:28 | Story: | "So he's got to be out for them to get this place ready to go." **(THIS IS NEW INFORMATION)** |

| 5:38 | Story: | "I have seen correspondence where he said September 1st **(BOLD face LIE, I NEVER said that!)**, now he is saying he can't, so I would suggest September 3rd, which is next Tuesday, and" |

| 5:50 | Story: | "I would like the Order to reflect, that the Williamson County Sheriff's Department will accompany him, and at this point, off the property." |
|------|--------|------|
| 6:00 | Story: | "I don't think that he needs to take any property." |
| 6:04 | Story: | "What he did your honor, we in **this response he filed, they had a TV... a Sony TV... he now tells me in this response, that he sold it for $1,000.** The TV was MARITAL PROPERTY, but it was "negotiable" (as proven in the attached phone call with my Wife), yet NOTHING HAPPENED DURING THE STATUORY INJUNCTION, WHICH Ms. STORY KNEW (please see my correspondence, via email, with her afterwards), yet she INTENTIONALLY DECEIVED THE JUDGE TO HARM ME! **That is TEXT BOOK PERJURY!** |

JUST FYI... in the END, I retrieved the TV and LEFT it as a GIFT for Ms. Fenton, not because I had any LEGAL duty to do so, but simply as a KISS ON THE CHEEK!

| 6:21 | Story: | "and then the other thing, there was a dehumidifier in the basement, that was like a $2500 - $3500 dehumidifier for moisture, he sold that." (I had Ms. Fenton's PERMISSION TO TAKE THE DEHUMIDIFIER, WHICH WAS A FREE-STANDING UNIT THAT WAS NEVER ATTACHED TO THE HOUSE, hence it remained PERSONAL PROPERTY. While Ms. Fenton and I had previously DECIDED that I was to keep it to take to my MOTHER'S house! (Proven in the 2018-10-27 Fenton Phone Call – attached.) Plus, the unit was paid for using MY CREDIT, for which I STILL OWE some of the DEBT!) |
|------|--------|------|

Even if Ms. Story HAD no knowledge of this, she was still INTENTIONALLY DECEIVING THE COURT, because it was NOT on Ms. Fenton's LIST of personal property which she wanted, PLUS MS. Story already acknowledged at the TOP of **Wife's Petition for Divorce**, that **"IV. Plaintiff would show that the parties have no assets other than personal property which has been divided with the exception of a few items. Husband and Wife have lived separately since April**

**2018."** WHICH I CONSTANTLY reminded Ms. Story about, yet she didn't care, while SOMEHOW all the Personal Property remaining in OUR HOME (ALL ADMITTEDLY MINE - EXCEPT FOR ABOUT 6-ITEMS) was somehow CONVERTED back into MARITAL PROPERTY, and ordered to be AUCTIONED WITH THE HOME as part of the MARITAL ESTATE. (This was PURE LEGAL BULLYING!)

| | | |
|---|---|---|
| 6:33 | Story: | "So if you let him, take anything out, at this point, it is going to be sold, and he's dissipating marital assets, which would be in violation of the restraining order." **(Pure PERJURY for reasons stated above!)** |
| | | |
| 10:27.0 | Judge: | "Let me just tell you how it works." |
| 10:36.9 | Judge: | "The only way a judge can enfoce a court order..." (jail) |
| 10:57.7 | Judge: | "My personal feeling is, as a Judge, a Judge who does not backup his or her court order, is worthless...." |
| 11:13.9 | Judge: | "the last thing I want to do is put someone in jail for violating an order" |
| 11:32.7 | Jeff: | "And just as a question, were we saying that I disobeyed a court order?" |
| 11:38.2 | Judge: | "No, no, nope, we don't have anything like that really in front of us, but, but....let me tell you what I'm going to do here, because we have to get moving." |
| 11:49.6 | Jeff: | "Right. Can I still tell a little bit of my side? er? |
| 11:52:9 | Judge: | "Ah..." |
| 11:54.0 | Jeff: | "Before you rule on all of that?" |
| 11:55.6 | Judge: | "Briefly." |
| 11:57.8 | Jeff: | *BEGAN TO BRIEFLY HEAR MY TESTIMONY* |
| 12:50.7 | Judge: | *Cut me off and quit hearing my testimony. (7.1 Minutes of My Testimony Heard)* |
| 13:20.0 | Judge: | "So let me just tell you this. These are really easy issues. I have got to put an order down for you to be out of that house, on September 3rd... |
| 13:29.9 | Jeff: | "Can I speak a little more for a second?" |
| 13:31:5 | Judge: | "No, no, no..." |
| | Jeff: | "I can't be out that quick, Your Honor. Everything that I own is left in personal property. To say that I just take my clothes and lose everything I've owned all my life is not fair. That is not at all fair. And I don't mean to be hard. I'm willing to do |

|  |  | things as quick as possible, but I cannot possibly move out without a two-week's time to do it. And I need to have some time where I know that there is not going to be anymore litigation for a while because I can't -- with the ADHD -- and one of the things I provided you is something from my psychiatrist on the different disorders I have, but I cannot physically do -- be a lawyer, play a lawyer, and packing at the same time. For example, that's --" |
|---|---|---|
| !@#$%! | Judge: | "Sir, I respect that. But we all have burdens." |
|  | Jeff: | "Well --" |
| !@#$%! | Judge: | "Let me talk. We all have burdens. Everybody in this room has things going on in their lives to one extent or another, just like you do." |
|  | Jeff: | "Right." |
| !@#$%! | Judge: | "I can't make excuses for that. Listen to what I'm saying. I don't want you and I to get crossways with each other. We have to get a date set. I'm not going to make it two weeks." |
| 15:40.0 | Jeff: | "We already agreed when me and my wife split it up, that what was left of the house is mine. What she came and tagged, was what's hers." |
|  | Judge: | "This isn't working. What you want to do is be a lawyer." |
|  | Jeff: | "No, I don't, I can't afford a lawyer." |
|  | Judge: | "We are not touching any of the furniture and furnishings. You are to tag the items that you would like to have. Go buy some little tags, you know." |
|  | Jeff: | "But I wanted to take them with me so I'm only going over the bridge one time. That's what I was saying." |
|  | Judge: | "Well, I know that you would like to do that but we're not doing that. Okay? That's not the fair way to do it. And I'm not going to sit here and explain to you why it's not because it's part of the law that you assume when you stand up and start representing yourself. Assume that you know." |
|  | Jeff: | "Okay. I'm sorry. I would rather stay in the house during the auction with that being the case. But the only reason I was going to leave ahead of time --" |
|  | Judge: | "You're not going to stay in the house." |
|  | Jeff: | "I'm not going to stay in the house?" |
| 17:13.4 | Judge: | "You're not going to stay in the house. You are going to leave September 3rd noon, and you've got to be out of there, or the Sherriff will escort you off the property." |

| 17:22.5 | Jeff: | "So what have I done wrong, to receive that kind of treatment your Honor?" "I mean, my wife had two months to move out, and made a bunch of trips." |
| 17:31.0 | Judge: | "We've already talked about all of that. We had a previous hearing. We have a previous court order. You are representing yourself. You are assumed to know everything that we've already talked about. I'm not going to go over it with you and spend four hours, I'm trying to be nice to you, when you are presumed to know and understand what we have already done. I'm trying my best to be patient with you, and you are trying my patience." |
| 18:41.2 | Judge: | "You are to tag the items that you would LIKE to have, that doesn't mean that you're going to get them." |
| 18:53.4 | Judge: | "In addition, you are to sign this contract today." |
| 18:58.9 | Jeff: | "The um, on the last court order you said that I could take my stuff with me after the 10-day walk-through, that was what your last court order said, and I would like to be able to do that." |
| **23:04.8** | **Judge:** | **"FAIR is something you do in the fall!"** *(At least unlike Ms. Story, the Judge was HONEST that time!)* |

## Jeff Fenton

**From:**        Sandy Arons <sandyarons@getasmartdivorce.com>
**Sent:**        Friday, July 27, 2018 12:06 PM
**To:**          Jeff Fenton
**Subject:**     RE: Alimony

Yes, I told Fawn the range for alimony is about 22.5% of her gross income.

Sandy

Sandy Arons, MBA
Certified Divorce Financial Analyst
Certified Financial Divorce Specialist
Accredited Financial Counselor & Mediator
750 Old Hickory Blvd.
Building Two, Suite 150
Brentwood, TN  37027
Tel: 615-376-8204 Fax: 615-376-8121
email: sandyarons@getasmartdivorce.com
website: www.getasmartdivorce.com

**From:** Jeff Fenton [mailto:Jeff@Meticulous.tech]
**Sent:** Friday, July 27, 2018 9:57 AM
**To:** Sandy Arons <sandyarons@getasmartdivorce.com>
**Subject:** Alimony

Hello Sandy,

Have you told Fawn yet how much alimony is going to be? The general ballpark?

Has she swallowed that pill yet?

I want to talk to her about some options with the house, but I need to understand if she knows this yet.

Thanks!

## JEFF FENTON
## METICULOUS.tech
(615) 837-1300 **OFFICE**
(615) 837-1301 **MOBILE**
(615) 837-1302 **FAX**

**TECHNICAL CONSULTING, SERVICES, AND SOLUTIONS,
WHEN IT'S WORTH DOING RIGHT THE FIRST TIME!**

SUBMIT OR RESPOND TO A SUPPORT TICKET HERE.

A DIVISION OF METICULOUS MARKETING LLC

## 2018-08-06 OFFERED TO GIVE MS. FENTON MY EQUITY FOR FREE!
### (Regretfully She Declined)



**Jeff Fenton**

| | |
|---|---|
| **From:** | Fawn Fenton <fawn.tiffany@outlook.com> |
| **Sent:** | Tuesday, October 9, 2018 12:21 PM |
| **To:** | Jeff Fenton |
| **Subject:** | RE: Reply to your email (Missed This!) |

At this point, to be honest, I do not really even want to keep the Sunnyside house. If the house is not sold, then I will be stuck paying for the very-expensive bills that come with the house, AND I will still have a ton of credit card debt from this divorce. I am emotionally burnt out, and Ken is making zero steps towards any transition plan for the company, so in a year or two I'd really like to take a less stressful job. I need life to be simpler to help me recover emotionally and financially after all of this upheaval. But I will be trapped as long as I'm saddled with the house + alimony + credit card debt. I don't know if I can realistically handle the stress level of being forced to make a high salary only to give it all away every month for many years into the future.

Just hypothetically, what are you intending or wanting to do about the old delinquent debts?

9:52   🕮   94%

←   **Fawn Fenton**   📞 ⋮

> For the SOLE purpose of salvaging some portion of our previous FRIENDSHIP, if it is WORTH a couple hours of YOUR TIME, and some open minded discussion, with nothing to "win" or "lose" for either of us.
>
> I honestly am not sure what Terry might or might not say. But it is WORTH it to me to invest MY TIME and money to find out, IF you will agree!?!?
>
> Please let me know!
>
> Dec 31, 2018

Yes, I absolutely would like to attend a couple of counseling sessions with you and Terry. Let me know when I should be there!

Pooey looks good! The vet

▢   Type a message   ▷

---

9:58   93%

←   **Fawn Fenton**   📞 ⋮



> The end of an era.



> What time on the 30th should I expect you?



▢   Type a message   ▷

---

9:51   94%

←   **Fawn Fenton**   📞 ⋮

Dec 31, 2018

> Yes that all sounds fine about meeting with Terry. However he wants to handle it. I am wanting to hear his perspective. Definitely no arguing if at all possible, and I wouldn't blame him for cutting it off if there was arguing.
>
> I have ACE from 3:-5:00 pm on Tuesday Jan 14, but so far that's the only non-negotiable thing on my calendar coming up. So just let me know date/ time whenever you find out.

**F**

Dec 31, 2018

Ok, sounds good! Thanks! I'll let you know as soon as I know.

Happy New Year!

▢   Type a message   ▷

---

9:49   94%

←   **Fawn Fenton**   📞 ⋮

You are ALWAYS looking for a way to screw me over!

Don't worry, I will commit my every free moment to finding the recording where you promised to sign an alimony agreement before I had you a POA to sell our home. Again, it is all these games you play and your constant lying, which continues to keep me from moving forward and drags this process out!

Jan 5, 2019

**F**   I am NEVER trying to screw you over. You are paranoid.

Jan 5, 2019

Then KEEP YOUR PROMISES!

Incidentally, it's not called "paranoid" when people really are out to do you financial or other harm.

▢   Type a message   ▷

---

9:47   94%

←   **Fawn Fenton**   📞 ⋮

> What happened? Why did you suddenly decide I am trying to get out of paying your alimony? (Which isn't true, I have always intended to pay you as we discussed.) Your mood swings are so weird. I thought, based upon our emails, that we were not going to harrass each other with legal contracts. As I said, the terms of your alimony will be immortalized in the final divorce filing, which we will do after the house sells. I don't understand why you are suddenly freaking out for no reason.

**F**

Jan 6, 2019

You agreed to put it writing before I leave, now you are pretending you never agreed to that and refusing.

▢   Type a message   ▷

---

9:46   94%

←   **Fawn Fenton**   📞 ⋮

Please confirm.

Your refusal to communicate would confirm the opposite again, which would result in me needing to divert from packing to prepare for another surprise attack from you legally.

Thanks.
Jeff

Jan 7, 2019

> I don't know wtf you're talking about, "legal battle". I am not wanting anything to do with lawyers, I can't afford any more, it's a waste of time and money.
> Regarding leaving a few cameras and wireless etc, I guess that's fine, I don't see why not.

**F**

Jan 8, 2019

▢   Type a message   ▷

| From: | (615) 333-7377 <16158371301.16153337377.km4F34MBb9@txt.voice.google.com> |
| Sent: | Wednesday, January 23, 2019 4:14 PM |
| To: | 837.1301@gmail.com |
| Subject: | New text message from (615) 333-7377 |

 Voice

Hello, I pray for some peace for you today. (Regarding your text right above, I used to always think of you like you were riding a stationary exercise bicycle; peddling furiously, working so hard, but going nowhere. Sorry, not that that helps.) Anyway, my cold is much much much worse today. At least I have donuts, those sure are good and cheer me up. 🍩🍩🥞🥛🥐🍩

YOUR ACCOUNT      HELP CENTER      HELP FORUM

To edit your email preferences for text messages, go to the email notification settings in your account.

**Google**

Google LLC
1600 Amphitheatre Pkwy
Mountain View CA 94043 USA

TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: #48419B)

**Fawn Fenton**
(615) 333-7377 · mobile

You are WRONG about my motives for selling the house and you are WRONG about me having evil and selfish intentions to increase or decrease the sale value. As usual, you are being a dick when I don't agree with everything you want, and you resort to insulting me and verbally attacking me to try to get your way.



Fawn Fenton (mobile) · Jan 30, 12 13 AM

You just called me a dick and accused me of verbally attacking you, in the same sentence.

Jan 30  2:31 AM

**Fawn Fenton**
(615) 333-7377 · mobile



Thanks!

I was just reading about the 2018 tax code...

Have you figured out the income tax ramifications of having no mortgage interest deduction (because you will live in an apartment), plus no spousal dependant (another lost $12k write-off), plus not being able to write-off the alimony you pay me, combined with the new 2018 tax laws? (Not to mention the loss of the "business in home" and other MM write-offs)?

Seriously, I'm concerned for how you have and continue to set yourself-up for your future.

It looks to me, like you will have double the taxable income that you previously had, which won't likely change for 5-10 years, until you can afford to purchase another condo and complete paying my alimony.

Have you really ran the numbers on all of this and considered for a moment if maybe there is some way for you to mitigate your tax losses?

It looks to me like you have created and are walking into the worst possible scenario tax wise, which will largely defeat much of the vocational success you've reached in recent years.

Am I missing something, misreading something, not understanding anything correctly? Have you discussed options with a CPA or even your brother, or someone with an MBA, or at least a tax professional?

I hate to see you screw yourself, especially to solely benefit Uncle Sam.

Is there no better way of doing this?



Dec 22, 2018

Correct, my tax situation is going to suck for a very long time.

Fawn Fenton (mobile) · Dec 22, 2018

 

Is there nothing we can do h

To help that?

Dec 22, 2018

 Not that I know of.

Fawn Fenton (mobile) • Dec 22, 2018

 

Have you talked to your brother about it or asked an accountant?

Dec 22, 2018

 Yes I've talked to mark and my dad. No haven't talked to an accountant. 90k
gross - 31k taxes - 21k alimony = 38k net. Plus or minus.

Fawn Fenton (mobile) • Dec 22, 2018



 

Didn't your dad or Mark have any suggestions to bring down those insane
taxes?

Dec 22, 2018

 Nope. This is why I cannot afford to keep house, and need sale to help pay
down debts.

Fawn Fenton (mobile) • Dec 22, 2018

Yet the house would save you how much in taxes?

Debts are all from this year... how did we fall so far so fast?

Dec 22, 2018

 

Someday when alimony is done, I can get a job making only $43k gross and
have same net of +/- $38k.

Fawn Fenton (mobile) • Dec 22, 2018

 

That is crazy... their must be a smarter way to spend all that you've worked for?

So back to the house, how much does the mortgage interest take off your
taxes?

Your dad and Mark didn't have any suggestions to help you pay less in taxes?

Hello?

If you kept house, you would have a massive tax write-off, plus if you got one
female roommate, you would be earning equity, have money to slowly



Dec 22, 2018

 Mortgage interest is about $12k.

Fawn Fenton (mobile) • Dec 22, 2018

# Jeff Fenton

| | |
|---|---|
| **From:** | Fawn Fenton <fawn.tiffany@outlook.com> |
| **Sent:** | Thursday, August 30, 2018 5:49 PM |
| **To:** | Jeff Fenton; Fawn Fenton |
| **Cc:** | Sandy Arons |
| **Subject:** | RE: Offer to settle |

Ken says he is willing to keep paying for you to be on our plan for 1 year, maybe through the end of 2019, "as long as you don't cause more problems", heh.
Beyond that, we'll have to see where things stand with you, and with my company.
(Our office lease is up in March 2020, and Ken really wants to retire, and so there's no telling what my job will be after that.)


**From:** Jeff Fenton <Jeff@Meticulous.tech>
**Sent:** Thursday, August 30, 2018 2:18 PM
**To:** Fawn Fenton <fawn.tiffany@outlook.com>; Fawn Fenton <fawn.fenton@live.com>
**Cc:** Sandy Arons <sandyarons@getasmartdivorce.com>
**Subject:** RE: Offer to settle

As I re-read this, there is one other substantial concern that I need to address, and that is health insurance. Without health insurance, the price of my meds alone would break me each month (just like your xyrem)!

Would Ken be willing to keep me on your health plan for ONE YEAR, until I can complete my job training and can acquire a job that offers health benefits? Without this, even Cobra I would have no way to pay for, if I don't have a job. I also should maintain my counseling throughout, but that goes back to my questions about the transitional period.

1

Debtor 1  **Fawn Tiffany Fenton**                                    Case number (*if known*) _____

|  |  |  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|---|
| | Copy line 4 here | | 4. | $ 7,500.00 | $ N/A |
| 5. | **List all payroll deductions:** | | | | |
| | 5a. | **Tax, Medicare, and Social Security deductions** | 5a. | $ 1,654.96 | $ N/A |
| | 5b. | **Mandatory contributions for retirement plans** | 5b. | $ 0.00 | $ N/A |
| | 5c. | **Voluntary contributions for retirement plans** | 5c. | $ 0.00 | $ N/A |
| | 5d. | **Required repayments of retirement fund loans** | 5d. | $ 0.00 | $ N/A |
| | 5e. | **Insurance** | 5e. | $ 0.00 | $ N/A |
| | 5f. | **Domestic support obligations** | 5f. | $ 0.00 | $ N/A |
| | 5g. | **Union dues** | 5g. | $ 0.00 | $ N/A |
| | 5h. | **Other deductions.** Specify: _____ | 5h.+ | $ 0.00 + | $ N/A |
| 6. | **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | | 6. | $ 1,654.96 | $ N/A |
| 7. | **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | | 7. | $ 5,845.04 | $ N/A |
| 8. | **List all other income regularly received:** | | | | |
| | 8a. | **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0.00 | $ N/A |
| | 8b. | **Interest and dividends** | 8b. | $ 0.00 | $ N/A |
| | 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ N/A |
| | 8d. | **Unemployment compensation** | 8d. | $ 0.00 | $ N/A |
| | 8e. | **Social Security** | 8e. | $ 0.00 | $ N/A |
| | 8f. | **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: _____ | 8f. | $ 0.00 | $ N/A |
| | 8g. | **Pension or retirement income** | 8g. | $ 0.00 | $ N/A |
| | 8h. | **Other monthly income.** Specify: _____ | 8h.+ | $ 0.00 + | $ N/A |
| 9. | **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | | 9. | $ 0.00 | $ N/A |
| 10. | **Calculate monthly income.** Add line 7 + line 9. Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | | 10. | $ 5,845.04 + $ N/A = | $ 5,845.04 |

11. **State all other regular contributions to the expenses that you list in *Schedule J.***
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify: _____                              11.  +$        0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies

12.  $        5,845.04

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
�■  No.
☐  Yes. Explain: [_____]

Official Form 106I                                Schedule I: Your Income                                                  page 2

Case 3:19-bk-02693    Doc 1    Filed 04/26/19    Entered 04/26/19 13:28:31    Desc Main
Document    Page 27 of 50
TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: #48419B)

 **Adkisson & Associates Architects, Inc.**

CLERK & MASTER

2019 AUG 15  AM 10: 44

FILED FOR ENTRY_____

==August 14, 2019==

To all the employees of Adkisson & Associates Architects, Inc. (the **"Firm"**)

I want to let everyone know that November 2nd of this year is my 65th birthday. As a result, I plan to begin downsizing the Firm so that I can significantly reduce overhead costs prior to the end of the corporate fiscal year end on ==December 31, 2019==.

I want to give everyone ample time to secure other employment. I will continue to pay your salary and benefits up through ==November 15, 2019== so long as you are working full time at the Firm. If you secure new employment prior to November 15, 2019, I will provide you with two (2) weeks severance pay from the new employment start date, but said severance pay will not extend beyond November 15, 2019.

I greatly appreciate your good work over the past years and wish you well in your future endeavors.

With many thanks,

Kenneth C. Adkisson
President

**EXHIBIT**

tabbies

_2_

3322 West End Avenue • Suite 103 • Nashville, Tennessee 37203 • (615) 298-9829 • Fax (615) 298-5122 • www.adkissonarchitects.com

TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: #48419B)

"Smoking Gun #1" (Page 20 of 83)

# ABSOLUTE AUCTION

## LOCATION & DIRECTIONS



### 1986 Sunny Side Drive, Brentwood, TN 37027

From Nashville, take Hillsboro Road/US 431 South.
Then, turn left on Sunny Side Drive.
Home is on the right.

## AUCTION TEAM



**TOMMY ANDERSON**
BROKER & AUCTIONEER
HND Auctions, LLC

Office: (615) 297-7711
Cell: (615) 969-5819
tom@tommysanderson.us



**PAT MARLIN**
BROKER & AUCTIONEER
McArthur Sanders Real Estate

Office: (615) 370-4663
pmarlin@mcarthursanders.com

© 2019 HND Auctions, LLC. All Rights Reserved.
Print Design by Joseph Summerlin.

# ABSOLUTE AUCTION

## SATURDAY, SEPTEMBER 28 at 10:00 AM CST
### 1986 Sunny Side Drive, Brentwood, TN 37027



**Fine brick home at Sunny Side Estates in Brentwood.**
**4 Bedrooms • 2 ½ Bathrooms • 1.48 Acre Grassland Lot**

Nice Fenced Back Yard with Outdoor Deck. 9 Foot Ceilings and
Spacious Rooms. Ceiling Fans. Wood Burning Fireplace. Modern
Kitchen. New HVAC and Basement Moisture Barrier.  And much more!

For more information, visit:
www.hndauctions.com

To place bids online, visit:
www.proxibid.com/HNDrealty




HND Auctions, LLC
FL #6200

"Whether buying or selling, our
dedication and expertise in real
estate auctions works for you."

TENNESSEE: #M2019-02059-COA-R3-CV (WLCO: #48419B)

"Smoking Gun #1" (Page 21 of 83)

# ABSOLUTE AUCTION

## SATURDAY, SEPTEMBER 28 at 10:00 AM CST
1986 Sunny Side Drive, Brentwood, TN 37027

### 4 Bedrooms • 2 ½ Bathrooms • 1.48 Acre Grassland Lot

Nice Fenced Back Yard with Outdoor Deck. 9 Foot Ceilings and Spacious Rooms. Ceiling Fans. Wood Burning Fireplace. Modern Kitchen. New HVAC and Basement Moisture Barrier. And much more!

**Some personal property included immediately following auction.**








- Formal Living Room: 13 x 15
- Eat-In Kitchen: 12 x 15
- Formal Dining Room: 12 x 13
- Bonus Room Over Garage with Washer & Dryer Hookup: 23 x 25
- Den with Fireplace: 13 x 19
- Bedroom 1 with Full Bath: 13 X 15
- Bedroom 2: 11 x 12
- Bedroom 3: 13 x 13
- Bedroom 4: 11 x 12






### TERMS & CONDITIONS

Cash. Ten percent (10%) down at auction as earnest money. Please make all financial arrangements prior to auction and bring checkbook. Closing within thirty (30) days with Benker's Title & Escrow Attorney, Sam Anderson, (615) 661-7711. Deed and insured title furnished. For possible financing, contact F & M Bank, Billy Winfree, (615) 942-5877 to pre-qualify or use your own bank. Six percent (6%) buyer's premium added to final bid to arrive at contract price.

**Announcements on day of sale take precedence over ALL other advertising.**




**HND Auctions, LLC**
FL #6200

For more information, visit:
**www.hndauctions.com**

To place bids online, visit:
**www.proxibid.com/HNDrealty**

TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: #48419B)

**CONVERTED, MEANSYES, DISCH(D), NOCLOSE**

# U.S. Bankruptcy Court
## MIDDLE DISTRICT OF TENNESSEE (Nashville)
### Bankruptcy Petition #: 3:19-bk-02693

| | |
|---|---|
| *Date filed:* | 04/26/2019 |
| *Date converted:* | 12/06/2019 |
| *Debtor discharged:* | 04/15/2020 |
| *341 meeting:* | 01/06/2020 |
| *Deadline for objecting to discharge:* | 03/06/2020 |
| *Deadline for financial mgmt. course:* | 07/26/2019 |

*Assigned to:* Charles M Walker
Chapter 7
Previous chapter 13
Original chapter 13
Voluntary
Asset

*Debtor disposition:*  Standard Discharge

**Debtor**
**Fawn Tiffany Fenton**

Brentwood, TN 37027
DAVIDSON-TN
SSN / ITIN:
*aka* **Fawn Tiffany Davenport**
*aka* **Fawn Tiffany Ferguson**

represented by **MARY ELIZABETH AUSBROOKS**
ROTHSCHILD & AUSBROOKS
1222 16TH AVE SO
STE 12
NASHVILLE, TN 37212-2926
615-242-3996
Email: marybeth@rothschildbklaw.com

**MARY ELIZABETH AUSBROOKS**
(See above for address)

**Alexander S. Koval**
Rothschild & Ausbrooks, PLLC
1222 16th Ave. S.
Suite 12
Nashville, TN 37212
615 242 3996
Fax : 615 242 2003
*TERMINATED: 10/04/2019*

**Trustee**
**HENRY EDWARD HILDEBRAND, III**
OFFICE OF THE CHAPTER 13 TRUSTEE
PO BOX 340019
NASHVILLE, TN 37203-0019
615 244-1101
*TERMINATED: 12/06/2019*

**Trustee**
**JOHN C. MCLEMORE**
LAW OFFICE OF JOHN C. MCLEMORE, PLLC
2000 RICHARD JONES RD., STE. 250
NASHVILLE, TN 37215

represented by **JOHN C. MCLEMORE**
LAW OFFICE OF JOHN C.
McLEMORE, PLLC
2000 RICHARD JONES RD., STE.
250

**WIFE emailed this to me 20-DAYS AFTER she had ALREADY secretly filed for BANKRUPTCY!**

## Jeff Fenton

| | |
|---|---|
| **From:** | Fawn Fenton <fawn.tiffany@outlook.com> |
| **Sent:** | Thursday, May 16, 2019 5:02 PM |
| **To:** | |
| | RE: Terminate $500 Per Month - Partial Support - Keeping Utilities in Your Name for Now |
| **Categories:** | 5-Email: Present to Court |

Ok, I am good with keeping the utilities and not sending you checks for now.
Thanks.

**From:** Jeff Fenton <Jeff@Meticulous.tech>
**Sent:** Thursday, May 16, 2019 1:21 PM
**To:** Fawn Fenton (fawn.tiffany@outlook.com) <fawn.tiffany@outlook.com>; Fawn Fenton <fawn.fenton@live.com>
**Subject:** Terminate $500 Per Month - Partial Support - Keeping Utilities in Your Name for Now
**Importance:** High

Hey Fawn,

Since I haven't heard anything back about transferring the utilities, and if I go bk all my credit cards will be cancelled, even those which I've kept current, I think it is probably best for now, that we leave the SS utilities in your name, and you can just quit mailing me the $250 checks for my expenses every two weeks.

I deposited the final check that I have yesterday anyway, and since this is a bit of a hassle to keep reminding you about, just save this money for now to meet your own financial short-fall, which if I understood you correctly, should completely cure your present negative cashflow.

I've been working on a million projects to make my roommates comfortable (they PEE a lot, so I need to TRY to fix the bonus room toilet), and to secure the house once I start some vocational training or job, which will be next on my list (unless 2016 taxes or bk, temporarily supersedes it).

My stuff is all in chaos now, after cleaning out both "junk rooms", and I still have that lawsuit with BCS to contend with… response due next week.

Anyhow, I primarily wanted to touch base about the money and utilities, since it is a slight deviation from what we previously spoke of. This should benefit you slightly though financially.

I will open a new Netflix account, and email you once I do, so that you can close your account if you are no longer using it.

That way I can setup a new profile for each roommate.

1

I also still need to deal with AT&T who has been charging me around $95 per month for my cell service, since you ported out.

I also still need to increase my Comcast subscription, since we are exceeding the data cap, due to our three streaming TVs.

Anyhow, I hope that you are well.

**JEFF FENTON**
**METICULOUS.tech**
(615) 837-1300 **OFFICE**
(615) 837-1301 **MOBILE**
(615) 837-1302 **FAX**

TECHNICAL CONSULTING, SERVICES, AND SOLUTIONS,
WHEN IT'S WORTH DOING **RIGHT** THE FIRST TIME!

SUBMIT OR RESPOND TO A SUPPORT TICKET HERE.

A DIVISION OF METICULOUS MARKETING LLC

---

**WIFE emailed the message above to me 20-DAYS AFTER she had ALREADY secretly filed for BANKRUPTCY! While she knew that I had rented out two bedrooms, to help us BOTH cash-flow. She accepted the financial relief from me, without warning, while she had committed to paying our MORTGAGES throughout our Divorce (and probably beyond). NEVER did she share any dire financial failures to me, or provide the slightest hint that she was defaulting upon OUR MORTGAGE payments, thereby placing the totality of BOTH our life's savings in jeopardy, being entirely invested in our beautiful HOME, where we planned to spend the rest of our lives!**

**Nor did she give me a CLUE that she was filing for BANKRUPTCY, while secretly requesting to FORFEIT OUR JOINTLY DEEDED AND OWNED HOME! Without so much as providing me NOTICE, as her Bankruptcy Attorneys worked with Ms. Story as they BOTH fraudulently concealed my financial investment in and equal OWNERSHIP in our Jointly Deeded HOME!**

2

IN THE CHANCERY COURT FOR WILLIAMSON COUNTY, TENNESSEE
AT FRANKLIN

**FAWN TIFFANY FENTON,**
  Plaintiff/Wife,

**v.**

**JEFFREY RYAN FENTON,**
  Defendant/Husband.

)
)
)
)
)
)
)

No. 48419 B

FILED FOR ENTRY

### COMPLAINT FOR DIVORCE

  Plaintiff, makes the following complaint for absolute divorce against, Defendant, and states as follows:

### I.

  Pursuant to Tenn. Code Ann. §36-4-106(b), Plaintiff has filed under seal the parties' statistical information, and further provides as follows:

| Husband | | Wife |
|---|---|---|
| Jeffrey Ryan Fenton | Full Name (and Maiden) | Fawn Tiffany Fenton (*Davenport*) |
| 1986 Sunny Side Drive Brentwood, TN 37027 | Mailing Address | 102 Plum Nelly Circle Brentwood, TN 37027 |
| 24 years | Length of Residence in TN | 20 years |
| October 8, 1969 Washington | Date and Place of Birth | January 22, 1973 Nevada |
| Caucasian | Race | Caucasian |
| 3 | Number of this marriage | 2 |
| Divorce | How did prior marriages end | Divorce |
| 12 | Years of Education | 16 |
| Unemployed | Employer Name and Address | Adkisson & Associates Architects, Inc. 3322 West End Avenue, Suite 103 Nashville, TN 37203 |

  The parties were married on October 16, 2005 in Davidson County, Tennessee.

1

BY WIFE'S OWN DIVORCE COMPLAINT: "PLAINTIFF WOULD SHOW THAT THE PARTIES HAVE NO ASSETS OTHER THAN PERSONAL PROPERTY WHICH HAS BEEN DIVIDED WITH THE EXCEPTION OF A FEW ITEMS. HUSBAND AND WIFE HAVE LIVED SEPARATELY SINCE APRIL 2008." (SECTION IV.) ANY MENTION OF "PERSONAL PROPERTY" LATER, EXCEPT FOR THESE FEW ITEMS IS FRAUD & ABUSE!

Plaintiff has resided in the State of Tennessee more than six (6) months preceding the filing of this complaint. The acts complained of were committed while the Plaintiff was a bona fide resident of Tennessee.

## II.

There are no children born of this marriage.

## III.

Plaintiff would show that the parties have been experiencing difficulties in their marriage and all attempts at reconciliation have failed, thus rendering the marriage irreconcilably broken. Plaintiff requests that she be granted a divorce based on the grounds of irreconcilable differences, or in the alternative, if the parties are unable to reach an amicable agreement, then Plaintiff requests that she be granted a divorce on grounds of inappropriate marital conduct.

## IV.

Plaintiff would show that the parties have no assets other than personal property which has been divided with the exception of a few items. Husband and Wife have lived separately since April 2018. Husband refuses to work and has not paid the mortgage payment or assisted with the mortgage payment or the bills of the home. Wife has spoken to Husband and made every attempt to have the house listed and Husband previously agreed in 2018 but then refused. Wife cannot continue to pay the mortgage payment and allow Husband to stay in the house without financial help. Husband has rented two of the bedrooms out and he retains the rent. Husband ran up over $10,000 in credit card debt in Wife's name. Wife has now had to file bankruptcy to manage the debt accrual which debt all in her name as Husband has not any credit since 2016. Wife requests that the house be sold immediately. Wife requests that she be awarded her attorney's fees.

WHEREFORE, Plaintiff prays for the following relief:

2

2

WIFE WAS TO COMPLETE THE WALK THROUGH: "TO IDENTIFY ITEMS OF (HER) PERSONAL PROPERTY" AND "PROVIDE A LIST TO HUSBAND WITHIN TEN (10) DAYS FROM AUGUST 1, 2019" (DUE BY: 8/11/2019) SO I COULD SELL MY PERSONAL PROPERTY, SINCE THE COURT DEPRIVED ME OF MY ONLY INCOME, WHICH WAS MY TENANT RENTS! YET THIS WASN'T COMPLETED UNTIL 8/23/2019!

IN THE CHANCERY COURT FOR WILLIAMSON COUNTY, TENNESSEE
AT FRANKLIN

FILED
WILLIAMSON COUNTY
CLERK & MASTER

2019 AUG -6  AM 9: 22

FILED FOR ENTRY 8-14-19

|  |  |  |
|---|---|---|
| FAWN TIFFANY FENTON, | ) | |
| Plaintiff/Wife, | ) | |
| | ) | |
| vs. | ) | No. 48419B |
| | ) | |
| JEFFREY RYAN FENTON, | ) | RECEIVED BY |
| Defendant/Husband. | ) | Judges' Chambers |
| | | Date: 8-1-19 |

## EX PARTE ORDER OF PROTECTION EXTENDED PENDING FINAL HEARING AND ORDER GRANTING MOTION TO SELL MARITAL RESIDENCE BY AUCTION

This matter came on to be heard on the 1st day of August, 2019, before the Honorable Michael W. Binkley, Judge holding Court for the Chancery Court of Williamson County, Tennessee, upon Motion to Sell the Marital Residence by Auction and upon Ex Parte Order of Protection. It appearing to the Court based upon arguments of counsel, exhibits introduced and the record as a whole that the following shall be the Order of this Court.

It is therefore **ORDERED, ADJUDGED and DECREED** that the parties have reached an agreement to extend the Ex Parte Order of Protection pending final hearing in this cause. Husband shall remain under the Ex Parte Order and is enjoined and restrained from contacting Wife for any reason or from coming about her person. The Ex Parte Order of Protection shall remain in full force and effect and is extended pending further Orders of this Court and the hearing date is waived. Wife likewise is enjoined and restrained from contacting Husband for any reason or from coming about his person.

The Motion to Sell the Marital Residence by Auction is granted and the same shall be auctioned within 45 days from the date of August 1, 2019. Counsel for Husband and Wife will select a professional auctioneer as soon as possible so that the auctioneer can visit the property and market the sale in a fashion to obtain the best price possible for the home. The auctioneer shall prepare the property and market it for sale with the intent to obtain the highest sales price and most

1

Smoking Gun #9 (Page 29 of 83)

favorable terms possible in the parties' best interests. This property shall not be advertised as a desperation sell and the parties will rely on the auctioneer's recommendation, whether an estate sale or other means of marketing, to obtain a fair market price. The auction will be without reserve. Husband is enjoined and restrained from interfering with preparation of the home for auction, the auction or stalling the sale in any manner, either directly or indirectly. The attorneys for the parties will agree upon a date and time for Wife to walk through the home, since Wife has not been in the house since March 2018, to identify items of personal property and to inspect the premises. Wife will provide a list to Husband within ten (10) days from August 1, 2019, through their counsel, of the items of personal property that she would like to obtain and the parties will either agree upon the same or, if they cannot agree, then Wife may file a Motion with the Court to choose the items on her list. Husband will take such actions as necessary to move items of personal property that he would like to retain and tag, price or do whatever steps are necessary to sell the remaining items of personal property. The remaining items at the house that Husband does not take and Wife does not take shall be sold at auction. The net proceeds of the sale of the real property and the personal property shall be deposited into the Chancery Court Clerk's office and placed in an interest-bearing account on behalf of the parties. If either party needs funds from the equity prior to the Final Hearing in this cause or Agreed Order, then he or she may file a Motion with the Court to receive a portion of the funds which will be allocated against their respective share of the marital estate. Husband will notify his tenants to vacate the home on or before August 30, 2019.

All other matters are reserved pending further Orders of this Court.

**ENTERED** on this _14th_ day of _August_, 2019, NUNC PRO TUNC T

AUGUST 6, 2019. (NB)

_____
**MICHAEL W. BINKLEY, JUDGE**

Michael W. Binkley
Circuit Court Judge/Chancellor
21st Judicial District, Division III

2

_Side margin annotation (handwritten, vertical):_ WIFE WAS TO COMPLETE THE WALK THROUGH: "TO IDENTIFY ITEMS OF (HER) PERSONAL PROPERTY" AND "PROVIDE A LIST TO HUSBAND WITHIN TEN (10) DAYS FROM AUGUST 1, 2019" (DUE BY: 8/11/2019) SO I COULD SELL MY PERSONAL PROPERTY, SINCE THE COURT DEPRIVED ME OF MY ONLY INCOME, WHICH WAS MY TENANT RENTS! YET THIS WASN'T YET COMPLETED UNTIL 8/23/2019!

**APPROVED FOR ENTRY:**

**VIRGINIA LEE STORY; BPR #11700**
Attorney for Plaintiff/Wife
136 Fourth Avenue South
Franklin, TN 37064
(615) 790-1778
virginia@tnlaw.org

**CHARLES M. DUKE; BPR #23607**
Attorney for Defendant/Husband
LAW OFFICE OF CHARLES M. DUKE, LLC
1200 Villa Place, Suite 201
Nashville, TN 37212
(615) 541-1842
marty@mdukelaw.com

**MITCHELL MILLER; BPR #36126**
Attorney for Defendant/Husband
SCHAFER LAW FIRM, PLLC
1200 Villa Place, Suite 200
Nashville, TN 37212
(615) 712-6394
mitchell@schaferlawfirmtn.com

## CLERK'S CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing was sent by email and/or first-class mail to Charles M. Duke and Mitchell Miller, Attorneys for Husband, and Virginia Lee Story, Attorney for Wife, at their respective addresses, on this ___ day of August, 2019.

**CLERK**

3

*(Vertical text at left margin, in red box:)* BACK BEFORE I UNDERSTOOD THE "APPROVED FOR ENTRY" PROCESS OF "PROPOSED" ORDERS VS. "AGREED ORDERS"

**LOCAL RULES OF PRACTICE**
**TWENTY-FIRST JUDICIAL DISTRICT**
**HICKMAN, LEWIS, PERRY AND WILLIAMSON COUNTIES**

---

**RULES OF THE CIRCUIT AND CHANCERY COURTS**
**FOR THE TWENTY-FIRST JUDICIAL DISTRICT**

**Adopted Effective September 1, 2004**
**As Amended Through September 1, 2017**
**And Further Amended March 1, 2019**

**INTRODUCTION**

**JUDGES.** The 21st Judicial District embraces Hickman, Lewis, Perry, and Williamson Counties. All Judges of the 21st Judicial District have full civil and criminal jurisdiction therein and are assigned areas of responsibility by the Presiding Judge.

**CLERKS.** Each county within the District has a Circuit Court Clerk and a Clerk and Master with powers and duties prescribed by statute for such offices generally. The Clerk and Master is also clerk of the Probate Division of the Chancery Court.

---

**Rule 11.    Orders and Judgments**

**Section 11.01  Preparation and Submission**

Unless the court directs otherwise, attorneys for prevailing parties will prepare proposed orders for entry by the court and shall file such proposed orders not more than seven (7) days following the day on which the ruling is made by the court. If the proposed order submitted reflects that it has been approved for entry by counsel for all parties, then the court will take action promptly to enter such proposed order, or, at the court's discretion, enter the court's own order with respect to the ruling. If the proposed order does not reflect that it has been approved for entry by counsel for all parties, then the court will take no action to enter such proposed order for seven (7) days after receipt of the proposed order to afford counsel for the opposing party to submit an alternative proposed order. If the opposing party submits an alternative proposed order, the court shall undertake promptly to enter either the original proposed order, the alternative proposed order, or the court's own order with respect to the ruling. All of the time periods in this section may, for good cause, be extended by the court.

A party's approval for entry of a proposed order, which does not by its express terms state that it is an agreed order, shall not be construed as anything other than the party's agreement that the proposed order accurately reflects the court's ruling on the particular matter and shall not be construed to imply that party's agreement with or consent to the ruling set out in the proposed order.

[Adopted Effective September 1, 2004;  Amended Effective September 1, 2010;  Further Amended December 1, 2014].

TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: #48419B)

**Jeff Fenton**

| | |
|---|---|
| **From:** | Charles M. Duke <marty@mdukelaw.com> |
| **Sent:** | Monday, August 5, 2019 6:37 PM |
| **To:** | Jeff Fenton |
| **Cc:** | Mitchell Miller (mitchell@schafferlawfirmtn.com) |
| **Subject:** | FW: Prep for auction of Fenton house |
| **Attachments:** | PA030017 (2).JPG |

Jeff:

Please see below from Virginia Story regarding the items Ms. Fenton would like to have form the house. In addition, we received and email earlier today listing the following additional item:

Glock pistol, 9mm model G-17. This gun is in Wife's name and purchased it in 2010. Mr. Fenton will need to provide a copy of the receipt of purchase or my client can retrieve when she is in the house for the walk through.

After you have reviewed this list, please advise whether or not you want to have the walk-through recorded, as mentioned below. When we have dates from Story on when they would like to set the walk-through, we will forward them to you.

Thanks.
Marty

**From:** Virginia Story [mailto:virginia@tnlaw.org]
**Sent:** Friday, August 02, 2019 9:10 AM
**To:** Charles M. Duke; Mitchell Miller (mitchell@schafferlawfirmtn.com)
**Cc:** Heidi Macy
**Subject:** FW: Prep for auction of Fenton house

Marty & Mitchell,

I have started the draft of the Order from yesterday and my assistant will send to you this am for your review and comments. Please let me know if you have any changes or if the same meets please authorize me to sign by permission.

My client has come up with just a few items that she would like from the house but we still need a walk through scheduled, I will send some dates and times soon but we need to know when the tenants and Mr. Fenton would prefer to be away from the house weekend or weekend?

From Ms. Fenton:
1. Three-piece custom painting by Tom Belloni (photo attached).
2. Large Sony "Bravia" 55" TV (that was a gift from my brother Christmas 2017) and associated sound bar and sub-woofer.
3. The large aquarium and most equipment associated with it (I don't think Jeff wants any of it), including the lightweight ladders used for cleaning it. This item will take me a solid day at least to clean out and prep to move (it's extremely heavy), and I will need to then hire guys to help me move it to my storage unit.
4. A few more tools (screwdrivers, drill, things like that).
5. A walk-through of the house and garage to be scheduled within 10 days.

1

COURT ORDER SAYS "WALK THROUGH " IS FIRST - BUT MS. STORY NEED NOT OBEY - I MUST WAIT TO SELL, UNTIL ITS TOO LATE!

Look forward to hearing from you with some possible dates.  I have a company that I have used in the past that would accompany Ms. Fenton and video record the walk through so that Mr. Fenton knows that we do not remove any items.  We could go on and take items 1-3 since they are very specific and then prepare a list from the walk through.  Really Mr. Fenton's choice whether this is necessary or not to have a person record.  Just let me know if you want me to get a quote to see what the costs to record the walk through would be?

Thanks,
Virginia

*Virginia Lee Story*
*Attorney at Law*
*136 Fourth Avenue South*
*Franklin, TN 37064*
*(615) 790-1778*
*(615) 790-7468 fax*
*Virginia@tnlaw.org*

*\*\*Note\*\*   This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the specific individual or entity named above. If you or your employer is not the intended recipient of this e-mail, or an employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this e-mail or the information contained in it is strictly prohibited. If you have received this e-mail in error, please immediately notify the person named above at once by telephone. Thank you.*

TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: #48419B)







## Story Abernathy & Campbell
### PLLP | AN ASSOCIATION OF ATTORNEYS

Virginia Lee Story '
virginia@tnlaw.org

Joanie L. Abernathy
joanie@tnlaw.org

Neil Campbell '
neil@tnlaw.org

Kathryn L. Yarbrough
kyarbrough@tnlaw.org

Of Counsel:
James E. Story,*
Attorney at Law

Marissa L. Walters
Paralegal/Associate Attorney
marissa@tnlaw.org

HISTORIC DOWNTOWN
FRANKLIN, TENNESSEE
136 Fourth Avenue South
Franklin, TN  37064

OFFICE (615) 790-1778
FAX (615) 790-7468

*Licensed in Kentucky

**August 23, 2019**

*Via email & first-class mail*

Charles M. Duke
1200 Villa Place, Suite 201
Nashville, TN 37212

Mitchell Miller
1200 Villa Place, Suite 200
Nashville, TN 37212

Re:    ___Fawn Tiffany Fenton vs. Jeffrey Ryan Fenton___
___Williamson County Chancery Court No. 48419B___

Dear Marty and Mitchell:

Thank you for helping to get the walk-through scheduled.  I am hopeful that we can get Mr. Fenton's signature on the listing agreement ASAP so that we can move forward with the auction process as efficiently as possible.

My client put yellow post-it notes on the items that she would like to take from the residence.  The only item that was not previously listed and that she tagged was the "gear clock" that is hanging on the brick over the fireplace.  Additionally, she noticed that the Sony Bravia 55" TV, sound bar and subwoofer that she requested to take was missing from the residence.  This was a gift from her brother.  Please ask Mr. Fenton about the location of the TV.  In the event that Mr. Fenton has sold the TV, sound bar and subwoofer, we would ask that he provide proof of the sale and documentation as to how much he received.

My client also noted that the dehumidifier equipment that the parties purchased for under the house was also missing.  This was purchased a few years ago in order to reduce humidity in the crawlspace.  It was a commercial-grade unit and costed several thousand dollars.  Please ask Mr. Fenton what he did with this equipment and again, if he sold the equipment, we would ask that he provide proof of the sale and documentation as to how much he received.

Additionally, my client would like to have the pistol (Glock 9mm, model G-17), the brown blanket with the horse image (this was hers before the marriage), decorative plate in the kitchen with the snakes painted on it (this was hers before the marriage), and the small painting of the Parthenon currently hanging over the laundry closet (this was a gift to her from her family).

12-DAYS AFTER DATE IN COURT ORDER - TOO LATE FOR ME TO SELL FOR EXPENSES - WIFE'S FINAL LIST OF PERSONAL PROPERTY!

12-DAYS AFTER DATE IN COURT ORDER - TOO LATE FOR ME TO SELL FOR EXPENSES - WIFE'S FINAL LIST OF PERSONAL PROPERTY!

Charles M. Duke
Mitchell Miller
August 23, 2019
Page 2

      The only item that Ms. Fenton took with her yesterday afternoon was a blue pet-carrier. She will need to rent a truck or U-Haul in order to move the larger items. She would like to do this all in one trip sometime in mid-September. Hopefully, scheduling that will be easier as I understand that Mr. Fenton will be relocating to Michigan by September 1, 2019.

      I will be drafting an MDA with the above items and division of proceeds of the equity from the home after payment of the marital debt for your review so hopefully Mr. Fenton will not have to return to Tennessee. As always, if you have any questions or concerns regarding the above, please feel free to contact me.

               Sincerely,

               Virginia Lee Story
               Attorney at Law

cc: Ms. Fawn Fenton

---

**I NEVER HEARD OR SAW ANYTHING ELSE ABOUT A "MDA" (MARITAL DISOLUTION AGREEMENT). I BELIEVE THAT CHANCELLOR MICHAEL W. BINKLEY AND ATTORNEY VIRGINIA LEE STORY, DECIDED IN AN EXPARTE' COMMUNICATION, NOT TO EVEN BOTHER OFFERING ME AN MDA, SINCE I NO LONGER HAD COUNSEL TO "PROTECT" ME. CHOSING INSTEAD TO TAG-TEAM ME, DEPRIVE ME OF ALL MY PROPERTY AND RIGHTS, "UNDER THE COLOR OF LAW", WHILE HAVING THE WILLIAMSON COUNTY SHERIFF'S OFFICE CHASE ME OUT OF MY HOME, AND SUBSEQUENTLY MIDDLE TENNESSEE, WITH NO WHERE ELSE FOR ME TO GO!**

**I BELIEVE THAT THEY CALCULATED THAT ONCE MY HOME AND MY MONEY WAS ALL GONE, THEN I WOULD NEVER BOTHER TO RETURN. ESPECIALLY SINCE I WAS ALL BUT GUARANTEED TO NEVER FIND ANY MERCY OR JUSTICE IN THAT COURT, NO MATTER HOW MUCH EVIDENCE I PROVIDED! THEY REFUSED TO EVEN HEAR MY SIDE!**

**THAT WAS WHY I HOPED TO SETTLE THIS OUT OF COURT WITH MY WIFE. SINCE SHE HAD ALREADY FORCEFULLY TAKEN, LIQUIDATED, AND DISBURSED THE WHOLE OF OUR PROPERTY, SAVINGS, AND OUR FINANCIAL INVESTMENTS, DEPRIVING ME OF EVERYTHING WE HAD BUILT TOGETHER AND EVEN SAVED FOR RETIREMENT BEFORE MEETING.**

**TO SEEK ANY LEGAL RESOLUTION, MEANT THAT EITHER HER OR I (OR BOTH) WOULD LOSE MORE, WITH LITTERALLY NOTHING FOR EITHER TO GAIN WITHOUT HURTING THE OTHER. WHICH WERE ALL UNACCEPTABLE OPTIONS TO ME. SO I BECAME WILLING TO FORFEIT ALL THE MONEY, IF WE COULD END THIS THE WAY WE BEGAN, BY OURSELVES, USING FREE COURT FORMS, DROPPING THE BLAME AND THE POWER GAMES, TO PEACEFULLY PART WITHOUT MORE DAMAGES.**

**I LEFT MY "PEACE OFFERING", WHICH THEY TOOK, WITHOUT ACCEPTING THE TERMS OF MY OFFER. WHILE INJURING ME FURTHER BECAUSE THEY COULD, DESPITE EVERY OATH OF OFFICE, LAWS, CIVIL RIGHTS, AND CONSTITUTIONS BY OUR STATE AND OUR COUNTRY!**

**IT WAS ALL ABOUT POWER AND DOMINANCE! PURELY MASOCHISTIC!**

**FOR THIS REASON I MUST SPEAK-UP, LEST ANOTHER PERSON EXPERIENCE WHAT I DID, IN WILLIAMSON COUNTY CHANCERY COURT, UNDER THE PERVERTED PRETENSE OF "JUSTICE"!**

---

## IN THE CHANCERY COURT FOR
## WILLIAMSON COUNTY, TENNESSEE

FAWN TIFFANY FENTON,                    )
      Plaintiff/Wife,               )
                            )
                            )          Docket No 48419B
    vs.                             )
                            )
                            )
                            )
JEFFREY RYAN FENTON                     )
      Defendant/Husband             )

---

## NOTICE

---

    Comes now the Defendant, Jeffrey Ryan Fenton, the undersigned, and provides notice to the Court, and all interested parties, that I will be filing certain documents with the Court and defending myself in a pro se capacity for all matters beginning August 29, 2019, or before. Charles M. Duke, The Law Offices of Charles M. Duke, PLLC, Mitchell Miller and Schaffer Law Firm, PLLC will no longer represent me in this matter, and I agree to their request to withdraw from further representation of me.

                                     Respectfully submitted,

                                      Jeffrey Ryan Fenton

---

**Judge Binkley and Attorney Story treated me like one of two things were TRUE, when NEITHER were. Either BOTH my Sets of Counsel "FIRED ME" (I initiated both terminations for different reasons):**

**#1 Attorney Brittany Gates**
**#2 Schaffer Law with Attorneys Duke & Miller**

**OR**

**That I'm an egomaniac, who believed that I would be BETTER SERVED by REPRESENTING MYSELF "Pro Se"! NEITHER ARE TRUE! I knew that I would suffer GREATER LOSSES without Counsel!**

**Brittany Gates completely failed to perform so I fired her. Schaffer Law wanted my mom to sign as a "GUARANTOR", since I'm "uncollectible". Instead I agreed to terminate them as soon as I could no longer afford to pay, so they wouldn't get "STUCK". After 8/1, I owed them $6,000 MORE. I couldn't pay!**

**Jeff Fenton**

| | |
|---|---|
| **From:** | Jeff Fenton <jeff.fenton@live.com> |
| **Sent:** | Wednesday, August 28, 2019 9:30 PM |
| **To:** | Virginia Story |
| **Cc:** | Heidi Macy; Kathryn Yarbrough; Mitchell Miller (mitchell@schafferlawfirmtn.com); Charles M. Duke; elaine.beeler@tncourts.gov |
| **Subject:** | RE: Fenton vs. Fenton; Williamson County Chancery Court No. 48419B |
| **Importance:** | High |

Hello Ms. Story,

My apologies, but I recently finished writing my response. It is 50 pages long, and I still need to do a final proof read tonight, to make sure that my paragraphs line up with yours, make labels for all my exhibits, and make sure that my paragraph numbers and exhibit lettering matches up between the documents.

I called the Clerk & Master's office a few hours ago, and they said that someone is usually there at 7:30am to time stamp, and accept court filings, and they said that will still give them time for a clerk to deliver them to Chancellor Binkley before his hearings start.

My question is, for hand-delivering your copy tomorrow, would you like for me to bring that over to your office, or just provide it to you in the court room? If you would like me to bring it to your office, I probably can't be there before 8am, because I have a lot for the Clerk & Master to timestamp. I'm not really sure how long it will take them. My question is, what time is someone available in your office for me to provide it to them? And what time is Ms. Fenton meeting at your office, because I don't want to cross paths and violate my Temp OP? If for some reason I can't get there before you have Ms. Fenton scheduled to arrive, please just come up to me in the court room, whenever you peek inside, and I'll hand it all to you. (I've only seen you once, I'm not sure if I will recognize you, but I should be easy to spot, with the donkey I have carrying all my documents.)

I apologize for not getting it to you sooner, and I totally understand if we need to postpone or reschedule. It was physically the fastest which I could get it done. Please let me know how you prefer to receive the docs tomorrow morning.

I understand that it is totally up to Chancellor Binkley's discretion whether or not to accept/consider it all. I also understand that it is pretty likely that he may want to delay ruling on your motions until he has had a chance to at least peruse some of my responses, to at least consider my position, experience, and perspective, before making such major rulings in my life.

I understand that the sale of the house is the most time sensitive matter, so I believe that we can probably get that part out of the way tomorrow, as I'm not trying to delay or derail that initiative. (I will need a small extension though in order to vacate in time, for Ms. Fenton to be able to get her stuff after I am gone, and then for Ms. Fenton to facilitate the Auction, which I am fine with, but only providing that I've moved out first.) I'm sure that during your walk-through, Ms. Fenton was pleased and CONVINCED that I am finally MOVING for SURE. I have been working as hard as I can at vacating the property, except that this legal work has hijacked all my time and focus this past week. As Ms. Fenton will attest, with my ADHD and my OCPD, I can honestly only focus on one major project or task at a time. I can do that one task or project well, but I can not multi-task significant or critical projects. My brain isn't wired that way. It is all one project, or another, but never both. So either I can perform a ton of legal research and try to figure out how to "play lawyer", or I can MOVE, but I am absolutely incapable of doing both concurrently. Although my move is really important, there is nothing currently more critical to MY future, than addressing any legal challenges which you initiate, so please just be

1

I THOROUGHLY EXPLAINED TO MS. STORY THE BACKGROUND, OWNERSHIP, AND WHAT BECAME OF THE TV & DEHUMIDIFIER

aware, that whenever you do, you've just extended the amount of time which I will need to vacate the house by another week or two. I understand that a lawyer can do in a few hours what it takes me a week to do, but at nearly $20k in legal fees so far (largely of my mother's money), there is no way that I can afford retaining legal counsel any longer, or that I could even justify doing so, simply to wrestle over breadcrumbs. Yet the legal outcome is still critical to me, so I will represent myself to the best of my ability, taking as long or as little time as that requires.

I'm not arguing to keep or remain in the house, at all. I've accepted the move to Michigan, it is only this legal work which is slowing down my move at this point. As Ms. Fenton has probably told you, I'm afraid of heights, and I am absolutely terrified of driving over the Cincinnati bridge. I haven't driven over it myself in over a decade, and the last time that I did, I had a massive anxiety attack and nearly passed out, while driving a U-Haul to bring my grandfather's pool table down to Tennessee (which now I'm going to lose). Ms. Fenton was with me, and surely she can attest that once I cross it (somehow) to move up to Michigan, my legal business here needs to be wrapped-up, so that I won't be required to return. I'll speak with Chancellor Binkley tomorrow to explore my options.

The biggest challenge should this require me to remain here, either because I have not had time to focus on packing and moving, or because of further litigation, is that there is no realistic way for me to vacate the premises for the sale, and it won't be very slightly with boxes stacked everywhere and furniture broke down, to sell while I'm here. Plus I would need additional funds from Ms. Fenton to pay for my utilities and my food (approximately $1400 per month total), the same as my tenants were paying me, prior to you having them evicted. After transferring the utilities into my name, and since Ms. Fenton is not paying me ANY support currently, I can't survive here for any less than $1400 per month, unless Ms. Fenton transfers the utilities back into her name, in which case I could make it on a little less. This is just the bare essentials of course.

I checked on Pacer and saw that there has been a lot of activity, with many new documents since the last time that I checked. For the purpose of freeing up my time to finish getting my documents together for court tomorrow, rather than getting sidetracked catching up on reading Ms. Fenton's bankruptcy documents, can you please tell me where matters stand regarding the date which the mortgage companies are requiring the home to be sold by? Last time I read through the documents, her bankruptcy plan had been rejected as of that time, because the banks wanted a hard sell-by date. I know that Ms. Fenton's bankruptcy proposal states six months, which neither of the mortgage companies seem to object to, but they require a hard date to know when that will be by, prior to accepting her plan. If you can let me know how long she has, that will help me prepare for the discussion tomorrow with Chancellor Binkley, as well as know at what point I can trust that the litigation is over, so that I can break down my computer network and focus completely on packing. (I have a complex computer network, all my data is stored on a separate server, once I break-down my network, I won't be able to respond to any litigaton or find any documents, for probably two months, when I have it all set back up in Michigan. Hence, I need to make sure that it is "safe" to break it down, before I begin doing so.) Knowing Ms. Fenton's updated deadline with the mortgage companies, and if you plan on further litigation, would be helpful in determining when I can get serious about packing, which will have a direct impact upon when I can vacate by. I'd like this all to be done as quickly as possible, but I'm not going to get caught "with my pants down". We will need to have some sort of agreement, court order, or understanding, before I can proceed.

Anyhow, I just want you to be aware of the real challenges, despite what litigation is filed. I can only physically move so quickly, and do so many things at once. I want to help you and Ms. Fenton get what you want, I'm not trying to be an obstructionist in any way, but I will need a bit of a cease-fire in order for me to be able to do that, while representing myself, combined with the challenges of my disabilities.

Marty emailed me a couple of questions that you have about a few items of personal property, from your walk-through.

As for the items which Ms. Fenton pointed out inside the home, which she wants, I'm fine with ALL of that.

The Glock 9mm Model-17 pistol, Ms. Fenton took with her when she moved out. If she can't find it, please suggest that she check both of her rifle cases, especially the bottom tier of her newest double rifle case. I know that she filled those spaces up with stuff when moving out, so it could easily be lost in one of those. I specifically remember her taking it

2

though, and since I've had to clear all the guns out of our home due to the OP, I know that it's not accidentally sitting somewhere in the gun vault or around our home. I also know that my friend who is storing my guns, checked them each in, and there was only one Glock, that being my .40 caliber.

The first time that Marty forwarded a question from you regarding the 9mm Glock, it looked as though Ms. Fenton wants the RECEIPT, not that she is missing the gun itself. So I'm unclear which it is at this point, but I don't have the gun, I specifically remember Ms. Fenton taking it with her, and I searched all over for the receipt, and I can't find that anywhere either. So I'm sorry not to able to help in either of those regards. I would if I could. Firearms are a part of the legacy of both of our lives, I would never try to cheat her on such a thing.

**As for her interest/concerns regarding the TV and the Dehumidifier:**

First of all, the TV/Sound Bar was MOSTLY a gift from Ms. Fenton's family (we contributed around $400 towards them, between a marital property check which Fawn wrote, to help pay for the soundbar, and some cash of mine leftover from my Duplex rents, because I wanted an upgraded model TV from the one which Ms. Fenton's brother Mark was offering to purchase us for Christmas.) Mark had a hard budget in his mind of paying $1,000, so I paid Mark the difference to purchase a better TV, which later on Mark also liked better, so when he returned to LA, he purchased the model which I selected for himself also.

So the "gift" portion of the TV, made it 50/50 marital property, despite whose family provided the gift, as it was given to us both equally, but the non-marital cash which I chipped in for the upgrade, actually made that TV more mine than Ms. Fentons. (Mark later gave Ms. Fenton a $2,500 rifle for her Christmas present, independent of me.)

As for the soundbar, that was primarily a gift to ME from Ms. Fenton's mother (Diane). Diane always likes to give extravagant gifts (my family never had the money for that), but Diane usually has no clue what to get me, and I am pretty picky, so honestly I am hard to purchase for. So on a couple of occasions, like when we were talking about a new iPhone that was released and I mentioned me planning to upgrade, Diane jumped on the opportunity to purchase it for me for Christmas, even though Christmas was months away, simply because it was within her price point, and she had the opportunity to know exactly what I wanted. (Instead of sending me cash or buying me something which I didn't want, which we also did a number of times.)

The Soundbar with the TV was the exact same thing. After purchasing the TV at Best Buy, Mark kept looking at the TV A/V equipment they had on sale, and found a TV/Soundbar combo, where you could purchase a decent soundbar also made by Sony, for a couple hundred dollars off, if you purchased it in conjunction with the TV we had purchased the day earlier. Mark got all excited about this combo, and got me interested in it, then Diane asked if that was what I would like for Christmas, and if so she would chip in a few hundred dollars, if Ms. Fenton and I paid the rest (which I think was about $225 out of our pocket.) So Mark, Diane, Ms. Fenton, and I all went back to Best Buy (after dining out together), had them return the TV from the day before, then repurchased the combo with the soundbar, Mark's contribution remained the same, Diane chipped in I think around $300, and I believe that we contributed around $225 (of marital funds) to complete the purchase.

So though there was around $225 of "marital property" money in that purchase, it was primarily purchased as a Christmas present for ME, from Diane. (Ms. Fenton got a load of other stuff from Diane for Christmas, as always.)

Anyway, the bottom line is, regardless of whose family GAVE the gift, it was "marital property", and more-so MINE than Ms. Fenton.

Ms. Fenton and I did discuss her potentially getting the TV, in different discussions we had about settlement offers and property divisions, but as we all know, none of those agreements were fully executed (which my $20k in legal fees currently attests to).

3

I THOROUGHLY EXPLAINED TO MS. STORY THE BACKGROUND, OWNERSHIP, AND WHAT BECAME OF THE TV & DEHUMIDIFIER

Ms. Fenton knew that we reduced her temporary support from for my consumables from $1000 per month to $500 per month, before the end of last year, thinking that I was moving to Michigan to live with my mother. However after Ms. Fenton refused to put our verbal settlement agreement into writing, halting my move to Michigan, she never increased my temporary support back up to the $1,000 per month which I truly need (at a minimum) to meet my basic needs here. Consequentially, Ms. Fenton knew that I had a negative cash-flow of about $500 per month, for around six months, before I finally got roommates to cure both my negative cash flow, as well as Ms. Fenton's. (Ms. Fenton told me that she had a negative cash-flow at that time, of between $400 - $500 per month.) Of the $1,400 per month of rents which I received, I told Ms. Fenton that she could discontinue paying me $500 per month for my consumables (which should have made her cash-flow right there.), plus I also transferred all the utilities for our home into my name, even though Ms. Fenton had agreed via email, that I didn't need to, since saving the $500 per month was plenty acceptable for her, for the time-being. Yet I felt bad, having a TINY bit of cash in my pocket for once, and I transferred all the utilities into my name(which is approximately $400 per month during the summer), even not needing to do so per Ms. Fenton.

At that point, of my $1,400 per month in rents, Ms. Fenton was receiving $900 per month in financial relief, and should have been financially in the black by $400 - $500 per month. (Which is why I'm pretty darn sure that her bankruptcy is a scam, as her father also tried to get us to do that, leaving $100k of debt in MY name.)

**Anyhow, I sold the TV for $1k cash, before I got roommates, just to meet my basic needs, due to my monthly shortfall. Marty mentioned you wanting to see a receipt for that, but I don't have one. I've never kept receipts for personal property which I've SOLD, only for that which I've PURCHASED. The only exception is firearms, which I always keep a paper record of, just in case the firearm is used in a crime later on, so that "the paper trail doesn't stop at ME", which I read about somewhere.**

When I sold the TV, ==we didn't have any pending litigation, we weren't under any restraining orders, so it was all perfectly legal==. It was just a quick cash item to sell, to help me buy food, meds, and gas. The idea being to simply exchange what I **have** for what I **needed** to survive. Which was the same idea later with getting roommates. I exchanged bedrooms and space which I had, for the money which both Ms. Fenton and I needed, to cash-flow ever month. Unlike Ms. Fenton, I do not possess credit lines with thousands of dollars of credit, to take up the slack when I don't cash-flow. I've borrowed way more money from my mother than I'll ever be comfortable with, but there were seasons when I absolutely refused to borrow any more from her, and I told Ms. Fenton that was one of those seasons, when I would instead sell whatever I needed to survive.

==As for the dehumidifier, it is a commercial unit, which I love, but it didn't cost nearly as much as Ms. Fenton told you. I saw the receipt for it the other day, as I was sifting through my scanned receipts, and the dehumidifier itself was $2,100, when it was new, about 5 years ago. Ms. Fenton had already told me when I was moving to Michigan previously, that I could take it with me to use in my mother's small damp basement, since that was now going to be MY BEDROOM! Furthermore, the dehumidifier was completely purchased on MY CREDIT card, so if Ms. Fenton would like to split the approximately $100k of MARITAL DEBT, which WE abandoned in my name (thanks father-in-law), though creditors and judgments are still chasing me, then I will be happy to call it "marital property". Otherwise, that dehumidifier was MINE.==

==Additionally, the dehumidifier was a free-standing unit. It was never plumbed-in, nor was it ever directly wired-in, nor attached to any duct work. Hence it never became an "appurtenance", converted from "personal property" into part of the "real property". So I was free to do with it, whatever I wanted.==

**Either way, I sold it to my mom for $1,000. I don't believe that any of our personal property (except firearms) will retain more value than 50% of it's initial cost, when reselling it. (Especially at an auction!)**

By the way, did the auctioneer provide you with an estimate, of what he believes our home might auction for? I have a lot of experience in real estate, but none in regards to auctions, except for one foreclosure auction, where I lost $90k in

4

equity, when my duplex foreclosed, was purchased, and resold just three months later (investing less than $5k in improvements) for a $90k profit! That hurt us both!

Thank you . I'll see you tomorrow in court. Have a great night!

Jeffrey R. Fenton (Pro Se)
1986 Sunnyside Drive
Brentwood, TN 37027
(615) 837-1300

Docket No: 48419B
Fenton v. Fenton

I THOROUGHLY EXPLAINED TO MS. STORY THE BACKGROUND, OWNERSHIP, AND WHAT BECAME OF THE TV & DEHUMIDIFIER

5

MS. STORY LIED ABOUT EVERYTHING I EXPLAINED IN MY EMAIL THE NIGHT BEFORE, CLAIMING IT WAS IN MY PRO-SE FILING,
FOR NO REASON OTHER THAN TO HARM ME! SHE LATER OBTAINED A FEDERAL BANKRUPTCY COURT ORDER TO SUPERSCEDE
MY "PROTECTED INCOME AND ASSETS" PER TENNESSEE LAW, TO SELL OR DISCARD WHAT SHE FORCED ME TO LEAVE BEHIND!

FAWN TIFFANY FENTON vs JEFFREY RYAN FENTON
08/29/2019

```
 1              MS. STORY:  So he's got to be out for
 2    them to get this place ready to go.
 3              THE COURT:  All right.  What date do you
 4    suggest?
 5              MS. STORY:  I have seen correspondence
 6    where he said September 1st.  Now he's saying he
 7    can't.  So I would suggest September 3rd, which is
 8    next Tuesday.  And I would like the Order to reflect
 9    that the Williamson County sheriff's department will
10    accompany him.  And at this point --
11              THE COURT:  You mean off the property?
12              MS. STORY:  Off the property.  And I
13    don't think he needs to take any property.
14              What he did, Your Honor, in this response
15    he filed, they had a TV that -- a Sony TV, a big
16    screen, that my client's brother had given her.  He
17    now tells me in this response that he sold it for
18    $1,000.  And then the other thing, there was a
19    dehumidifier in the basement that was like a $2,500 to
20    3,500 dehumidifier for moisture.  He sold that.  So if
21    you let him take anything out at this point it's going
22    to be sold and he's dissipating marital assets, which
23    would be in violation of the restraining order.
24              And at this point Mr. Anderson, he can
25    tag everything, they can video everything.  We will
```

MS. STORY LIED ABOUT EVERYTHING I EXPLAINED IN MY EMAIL THE NIGHT BEFORE, CLAIMING IT WAS IN MY PRO-SE FILING, FOR NO REASON OTHER THAN TO HARM ME! SHE LATER OBTAINED A FEDERAL BANKRUPTCY COURT ORDER TO SUPERSEDE MY "PROTECTED INCOME AND ASSETS" PER TENNESSEE LAW, TO SELL OR DISCARD WHAT SHE FORCED ME TO LEAVE BEHIND!

FAWN TIFFANY FENTON vs JEFFREY RYAN FENTON
08/29/2019

**Page 10**

1  you how it, works.  Once I put a Court order down, I
2  really expect people to obey it.
3      MR. FENTON:  Yes.
4      THE COURT:  And so the only way a judge
5  can enforce a Court order if someone refuses to do it,
6  and we're seeing it more and more, people are doing
7  what they want to do and not really paying attention
8  to a Court order.  And I'm taking the time to tell you
9  this because I don't want you and me to have problems
10  with this.
11      MR. FENTON:  No.
12      THE COURT:  And let me tell you, my
13  personal feeling is, as a judge, a judge who does not
14  back up his or her Court order is worthless.
15      Now, if you have a reasonable excuse for
16  disobeying an order, I will certainly hear it.  And
17  the last thing I want to do is put someone in jail for
18  violating an order.
19      MR. FENTON:  Yes.  And that's the last
20  thing I want, too.
21      THE COURT:  Sure.  Right.  And so you and
22  I have an understanding.  And so you don't know me but
23  I do mean what I say.
24      MR. FENTON:  I believe that.
25      THE COURT:  Okay.  Good.  And so we can

**Page 11**

1  dispense with the rest of that.
2      MR. FENTON:  And just as a question, were
3  we saying that I disobeyed the Court order?  Because I
4  had --
5      THE COURT:  No, no, we don't have
6  anything like that really in front of us but --
7      MR. FENTON:  Okay.
8      THE COURT:  But let me tell you what I'm
9  going to do here because we have to get moving.
10      MR. FENTON:  Right.  Can I still tell a
11  little bit of my side before you rule on all of that?
12      THE COURT:  Briefly.
13      MR. FENTON:  Okay.  So basically on my
14  side, the narrative that has been brought to the Court
15  so far is completely fraudulent about my person, about
16  who I am, about me being violent.  All of this stuff.
17  The documentation that I provided you with shows that
18  my wife is a highly skilled handgun instructor who
19  owns assault weapons, has 5,000 rounds of ammunition
20  under her bed.  I mean, she is trained by the NRA,
21  certified by the State of Tennessee to do rape
22  prevention, pepper spray, everything.  So the whole
23  guise of feeling physically endangered was not -- she
24  tried to do that with her first attorney --
25      THE COURT:  We're not dealing with that

**Page 12**

1  today.
2      MR. FENTON:  I know.  But that's
3  basically the tone under which everything else is laid
4  and that's --
5      THE COURT:  I practiced law for 35 years.
6  Long, hard years in the trenches.
7      MR. FENTON:  Right.
8      THE COURT:  I am trained to separate
9  things in my mind that are important --
10      MR. FENTON:  Okay.
11      THE COURT:  -- and things that are
12  unimportant.  And I'm not trying to be rude to you,
13  but you've got to trust me here.  If you were a
14  lawyer, I would be telling you the same thing.  I
15  would be saying, "Lawyer, that's not relevant to me
16  right now."
17      MR. FENTON:  Right.
18      THE COURT:  I don't really care about all
19  that.  That's for another day.  But let me just tell
20  you this.
21      MR. FENTON:  Okay.
22      THE COURT:  These are real easy issues.
23  I have got to put an order down for you to be out of
24  that house.
25      MR. FENTON:  I understand that.

**Page 13**

1      THE COURT:  On September 3rd.
2      MR. FENTON:  Can I speak a little more
3  first?
4      THE COURT:  No.
5      MR. FENTON:  I can't be out that quick,
6  Your Honor.  Everything that I own is left in personal
7  property.  To say that I just take my clothes and lose
8  everything I've owned all my life is not fair.  That
9  is not at all fair.  And I don't mean to be hard.  I'm
10  willing to do things as quick as possible, but I
11  cannot possibly move out without a two-week's time to
12  do it.  And I need to have some time where I know that
13  there is not going to be anymore litigation for a
14  while because I can't -- with the ADHD -- and one of
15  the things I provided you is something from my
16  psychiatrist on the different disorders I have, but I
17  cannot physically do -- be a lawyer, play a lawyer,
18  and packing at the same time.  For example, that's --
19      THE COURT:  Sir, I respect that.  But we
20  all have burdens.
21      MR. FENTON:  Well --
22      THE COURT:  Let me talk.  We all have
23  burdens.  Everybody in this room has things going on
24  in their lives to one extent or another, just like you
25  do.

FAWN TIFFANY FENTON vs JEFFREY RYAN FENTON
08/29/2019

MS. STORY LIED ABOUT EVERYTHING IN MY EMAIL THE NIGHT BEFORE, CLAIMING IT WAS IN MY PRO-SE FILING, FOR NO REASON OTHER THAN TO HARM ME! SHE LATER OBTAINED A FEDERAL BANKRUPTCY COURT ORDER TO SUPERSEDE MY "PROTECTED INCOME AND ASSETS" PER TENNESSEE LAW, TO SELL OR DISCARD WHAT SHE FORCED ME TO LEAVE BEHIND!

**Page 14**

1    MR. FENTON: Right.
2    THE COURT: I can't make excuses for
3    that. Listen to what I'm saying. I don't want you
4    and I to get crossways with each other. We have to
5    get a date set. I'm not going to make it two weeks.
6    MR. FENTON: Well, originally we had said
7    the 45th, and that's when I understood that date that
8    I had to be out. And I never communicated with her
9    anything other than that. You had said 30 days for my
10   roommates and that's what I always thought it was.
11   And originally my understanding was I was staying
12   there while I was selling the property so I could stay
13   there till closing. Now, I understand that's not my
14   preference and I understand it's not their preference.
15   I'm willing to do that different, but I need to
16   have -- I have 3,000 square feet of stuff.
17   THE COURT: What about another day in
18   September? The first week in September?
19   MS. STORY: And, again, we're not going
20   to dispose of any of his personal items.
21   THE COURT: They're not taking anything
22   out of there. Do you understand that, sir?
23   MR. FENTON: My understanding is --
24   THE COURT: Whoa, whoa.
25   MR. FENTON: No, I don't understand.

**Page 15**

1    THE COURT: Your personal property. Your
2    clothes. Personal property being like your watch.
3    MR. FENTON: Furniture. That's all.
4    THE COURT: No.
5    MR. FENTON: We already agreed when me
6    and my wife split it up that the house was mine. What
7    she came and tagged is hers.
8    THE COURT: This isn't working. What you
9    want to do is be a lawyer.
10   MR. FENTON: No, I don't. I can't afford
11   a lawyer.
12   THE COURT: I'm talking right now. This
13   is not a barroom. I have to maintain order.
14   MR. FENTON: Uh-huh.
15   THE COURT: I don't want you to get your
16   feelings hurt, but if you get your feelings hurt,
17   that's your business. I have got to maintain the
18   integrity of this hearing. You need to quit
19   interrupting me. And I'm going to make a ruling and
20   you're going to have to stick with it.
21   MR. FENTON: Yeah.
22   THE COURT: All right? You are going to
23   have to.
24   We are not touching any of the furniture
25   and furnishings. You are to tag the items that you

**Page 16**

1    would like to have. Go buy some little tags, you
2    know.
3    MR. FENTON: But I wanted to take them
4    with me so I'm only going over the bridge one time.
5    That's what I was saying.
6    THE COURT: Well, I know that you would
7    like to do that but we're not doing that. Okay?
8    That's not the fair way to do it. And I'm not going
9    to sit here and explain to you why it's not because
10   it's part of the law that you assume when you stand up
11   and start representing yourself. Assume that you
12   know.
13   MR. FENTON: Okay. Then I would
14   rather --
15   THE COURT: I can't talk while you're
16   talking.
17   MR. FENTON: Okay. I'm sorry. I would
18   rather stay in the house during the auction with that
19   being the case. But the only reason I was going to
20   leave ahead of time --
21   THE COURT: You're not going to stay in
22   the house.
23   MR. FENTON: I'm not going to stay in the
24   house?
25   THE COURT: No, sir. You're going to

**Page 17**

1    leave by September 3rd noon, and you've got to be out
2    of there or the sheriff will escort you off the
3    property.
4    MR. FENTON: So have I done wrong to
5    receive that kind of treatment, Your Honor? I mean,
6    my wife had two months to move out.
7    THE COURT: Sir, we have already talked
8    about all that. We had a previous hearing. We have a
9    previous Court Order. You're representing yourself.
10   You're assuming to know everything we've already
11   talked about. I'm not going to go over it with you
12   and spend four hours --
13   MR. FENTON: I understand.
14   THE COURT: Excuse me. Trying to be nice
15   to you when you are presumed to know and understand
16   what we have already done. I'm trying my best to be
17   patient with you and you're trying my patience. I'm
18   just letting you know.
19   MR. FENTON: I'm not trying to -- my last
20   counsel had told me --
21   THE COURT: Sir, I'm not interested in
22   what your counsel told you. I'm sorry. It's not
23   important to me at this point.
24   Now, let's go back to what I was saying.
25   I want you out of the house by 12 noon September 3rd.

FAWN TIFFANY FENTON vs JEFFREY RYAN FENTON
08/29/2019

MS. STORY LIED ABOUT EVERYTHING I EXPLAINED IN MY EMAIL THE NIGHT BEFORE, CLAIMING IT WAS IN MY PRO-SE FILING, FOR NO REASON OTHER THAN TO HARM ME! SHE LATER OBTAINED A FEDERAL BANKRUPTCY COURT ORDER TO SUPERSEDE MY "PROTECTED INCOME AND ASSETS" PER TENNESSEE LAW, TO SELL OR DISCARD WHAT SHE FORCED ME TO LEAVE BEHIND!

**Page 18**

1  If you're not out, the sheriff will escort you off the
2  property.  Do you understand that?
3          MR. FENTON:  Yeah.
4          THE COURT:  Number two, you are not to
5  take with you any furniture, any furnishings, anything
6  like that.  All of that is going to remain in the home
7  for now.  You are to tag the items that you would like
8  to have.  That doesn't mean you're going to get them,
9  but that you -- may I finish, please?
10         MR. FENTON:  Uh-huh.
11         THE COURT:  Is that a yes?
12         MR. FENTON:  Yes, sir.
13         THE COURT:  You are to tag the items that
14  you would like to have.
15         MR. FENTON:  Uh-huh.
16         THE COURT:  In addition, you're to sign
17  this contract today.
18         MR. FENTON:  On the last Court Order you
19  said that I could take my stuff with me after the
20  ten-day walkthrough.  That's what your last Court
21  Order said, and I would like to be able to do that.
22         THE COURT:  The day that you leave or
23  that you have -- you have between now and
24  September 3rd to get your personal items and you out
25  of there.

**Page 19**

1          MR. FENTON:  Yeah.
2          THE COURT:  Do you understand that?  Your
3  personal items, sir.  You're not stupid.  Listen,
4  please.  Your personal items are your clothes, your
5  personal jewelry, and that's it.
6          MR. FENTON:  My bed or my furniture?
7          THE COURT:  No, sir.  I'm going to say it
8  for the third time.  No furniture, no furnishings, no
9  nothing.
10         MR. FENTON:  That's not what you said in
11  the last order.
12         THE COURT:  Sir, you're not paying
13  attention.  You're not listening to what has happened.
14  You're not paying attention to anything.  And I'm not
15  going to spend three or four hours here at the -- just
16  trying to be nice to you and go through everything
17  again.  I'm just not going to do that.  You're
18  expected to know all of this.
19         Now, you're choosing to represent
20  yourself.  There's not a thing that I can do about
21  that.
22         MR. FENTON:  I --
23         THE COURT:  Excuse me.  I'm talking.
24         When you choose to represent yourself,
25  you take it upon yourself to know all of the rules,

**Page 20**

1  the law, everything.
2          Now, that doesn't sound fair but that's
3  part of why we have to do it.  We can't sit here and
4  be your lawyer for you and start explaining things to
5  you.
6          MR. FENTON:  Okay.
7          THE COURT:  I will try to be as
8  accommodating and as nice to you as I possibly can.  I
9  don't think you're accepting that very well.
10         MR. FENTON:  I'm not trying to be
11  stubborn.
12         THE COURT:  You're trying to fuss with me
13  and argue with me and that's not what we're going to
14  do today.
15         MR. FENTON:  I'm not trying to fuss and
16  argue with you.  It's not what I understood your last
17  order to be.
18         THE COURT:  I'm going to go over it one
19  more time.
20         MR. FENTON:  I heard you.
21         THE COURT:  No.  I don't want there to be
22  any misunderstanding because you have interrupted me
23  several times.
24         MR. FENTON:  Can I say one thing?
25         THE COURT:  No.  Listen.  Don't try my

**Page 21**

1  patience.
2          MR. FENTON:  I'm not trying to.
3          THE COURT:  Yeah, you are.
4          MR. FENTON:  No, I'm not.
5          THE COURT:  Well, quit being rude.  This
6  is what we're doing.  You're going to sign this
7  contract now.  Give it to him, Ms. Story.
8          You are to be out of the house.  Do not
9  take any furniture, furnishings, or anything.  But
10  you're to be out September 3rd at noon.  The only
11  thing you can take with you -- I'm saying this for the
12  fourth time because I don't want there to be a
13  misunderstanding.  This is going to be a court order.
14  Now, items that you would like to have, that doesn't
15  mean you're going to get them, tag them.  Put a tag on
16  them.  Go to the 5 and 10 store, get some red tags,
17  whatever, and say I want this.  Post it.  Or just put
18  "H" on it, or something like that.  Just commonsense.
19         Wait a minute.  I'm not through.
20         There will be a deputy there to make sure
21  that you followed the Court Order and do what you're
22  supposed to do.  That means -- let me finish.  You
23  keep wanting to interrupt.  You're not listening to
24  what I'm saying.  You're thinking about what you're
25  going to tell me.  And then I don't want you coming in

TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: #48419B)

FAWN TIFFANY FENTON vs JEFFREY RYAN FENTON
08/29/2019

MS. STORY LIED ABOUT EVERYTHING I EXPLAINED IN MY EMAIL THE NIGHT BEFORE, CLAIMING IT WAS IN MY PRO-SE FILING, FOR NO REASON OTHER THAN TO HARM MEI SHE LATER OBTAINED A FEDERAL BANKRUPTCY COURT ORDER TO SUPERSCEDE MY "PROTECTED INCOME AND ASSETS" PER TENNESSEE LAW, TO SELL OR DISCARD WHAT SHE FORCED ME TO LEAVE BEHIND!

**Page 22**

1  and say, Judge, I didn't really understand that.
2      Because I've been down this road with
3  folks who represent themselves.  They don't get it.
4  They don't understand, and then they whine and
5  bellyache and come back and say that just wasn't fair.
6  Fair is something you do in the fall.  This is a
7  courtroom.  You are expected to know the rules.  I am
8  trying to be as cordial and as nice to you as I can
9  but you're not letting me.  All right.
10      You signed the agreement, you understand
11  that you're to be out September 3rd at 12 noon, no
12  later.  Not one minute later.  You're to tag the items
13  that you would like to have before you leave.  Do you
14  understand that?
15      MR. FENTON:  Yes, sir.
16      THE COURT:  Do not, in the meantime, move
17  anything else out of that house.  Do not sell
18  anything.  Do you understand me?
19      MR. FENTON:  Uh-huh.
20      THE COURT:  Is that a yes?
21      MR. FENTON:  Yes.  Yes, Your Honor.
22      THE COURT:  Well, "uh-huh" doesn't --
23      MR. FENTON:  I'm sorry.  Yes, Your Honor.
24      THE COURT:  We're not in the bar.  We're
25  in the courtroom.

**Page 23**

1      MR. FENTON:  Okay.
2      THE COURT:  All right.  What else,
3  Ms. Story?
4      MS. STORY:  That'll do it.  We can
5  account for the items he sold at a later time and
6  address that.
7      MR. FENTON:  Can I make a comment about
8  those, Your Honor?
9      THE COURT:  No.
10      MR. FENTON:  That is before this was in
11  Court.
12      THE COURT:  No, sir.  I'm sorry.  I've
13  got to have a tight rein on this case.  I knew that
14  there were going to be problems at the beginning and
15  I'm going to keep a tight rein and whatever I need to
16  do to maintain the integrity of these Orders to
17  maintain the integrity of this lawsuit, and for you to
18  understand what your role is as a litigant
19  representing themselves.  I'm going to have to keep a
20  tight rein on you.  I would love to be nice --
21      MR. FENTON:  I'm not --
22      THE COURT:  Let me finish.  Let me
23  finish.
24      That would be much easier but you won't
25  let me do it.  So anything else, Ms. Story?

**Page 24**

1      MS. STORY:  Since he probably will be
2  moving to Michigan, I would be amenable to him
3  attending the final hearing by telephone if he doesn't
4  want to drive back.  And I can tell you, I will try to
5  accommodate him in any way I can.
6      THE COURT:  I know you will.  You already
7  have.
8      MS. STORY:  And, also, the order probably
9  needs to say that Ms. Fenton can execute any other
10  documents that need to be executed because he might
11  not be here to sign anything, that Mr. Anderson might
12  need signed.  So I would like to be able to put that
13  in the Order.
14      THE COURT:  All right.  Then if you'll
15  prepare the Order, that'll take care of us.  That's
16  what we're doing.  That's the Order of the Court.
17  Thank you very much.
18      (Proceedings were adjourned at 11:44 a.m.)
19
20
21
22
23
24
25

**Page 25**

1      REPORTER'S CERTIFICATE
2      I, Emily L. Sipe, Court Reporter and Notary
3  Public, do hereby certify that I recorded to the best
4  of my skill and ability by machine shorthand all the
5  proceedings in the foregoing transcript, and that said
6  transcript is a true, accurate, and complete
7  transcript to the best of my ability.
8      I further certify that I am not an attorney
9  or counsel of any of the parties, nor a relative or
10  employee of any attorney or counsel connected with the
11  action, nor financially interested in the action.
12  SIGNED this 18th day of September 2019.
13
14      *Emily L. Sipe*
15
16      Emily L. Sipe, RPR, LCR
        Tennessee LCR No. 608
        Expires:  6/30/2020
17
18
19
20
21
22
23
24
25

TENNESSEE: #M2019-02059-COA-R3-CV (WILCO: #48419B)

RECEIVED BY
Judge Chambers
Date 8-29-19ca

IN THE CHANCERY COURT FOR WILLIAMSON COUNTY, TENNESSEE
AT FRANKLIN

FAWN TIFFANY FENTON,          )
    Plaintiff/Wife,           )                    2019 AUG 29  PH 2: 34
                              )
                              )                    FILED FOR ENTRY  8-29-19
vs.                          )          No.  48419B
                              )
                              )
JEFFREY RYAN FENTON,         )
    Defendant/Husband.        )

**ORDER FROM AUGUST 29, 2019 HEARING**

**EX PARTE ORDER OF PROTECTION EXTENDED PENDING FINAL HEARING,
RESETTING MOTION FOR VIOLATION OF ORDER OF PROTECTION, WAIVING
MEDIATION AND SETTING FINAL HEARING, ORDER TO VACATE AND ORDER
ALLOWING WIFE TO SIGN ALL NECESSARY CONTRACTS TO COMPLETE THE
SALE OF THE MARITAL HOME AND CLOSING**

    This matter came on to be heard on the 29th day of August, 2019 before the Honorable

Michael W. Binkley, Judge holding Court for the Chancery Court of Williamson County,

Tennessee, upon Wife's Motion for Violation of Ex Parte Order of Protection and for Date Certain

for Walk Through of House and Motion for Scheduling Order.  It appearing to the Court based

upon arguments of counsel, statements of Husband representing himself Pro Se, and the record as

a whole that the following shall be the Order of this Court.

    It is therefore **ORDERED, ADJUDGED and DECREED** that the Husband was again

advised of the risks of proceeding Pro Se and that he is required to comply with the rules just as

an attorney is required.  Husband acknowledged that he understood and wishes to proceed Pro Se.

The Motion for Violation of the Order of Protection will be continued pending further Orders of

the Court as Husband had filed a very lengthy response on the morning of the hearing being

August 29, 2019.  The Motion for Violation of the Order of Protection will be reset with the Final

Hearing in this cause set for October 21, 2019 at 9:00 a.m.  The Motion for Scheduling Order and

to Waive Mediation in this cause is appropriate and the same is granted.

1

*[Left margin vertical text:]* MS. STORY LIED ABOUT EVERYTHING I EXPLAINED IN MY EMAIL THE NIGHT BEFORE, CLAIMING IT WAS IN MY PRO-SE FILING, FOR NO REASON OTHER THAN TO HARM ME! SHE LATER OBTAINED A FEDERAL BANKRUPTCY COURT ORDER TO SUPERSCEDE MY "PROTECTED INCOME AND ASSETS" PER TENNESSEE LAW, TO SELL OR DISCARD WHAT SHE FORCED ME TO LEAVE BEHIND!

The Ex Parte Order of Protection shall remain in full force pending further hearing in this cause set for October 21, 2019 at 9:00 a.m. The form "Order Extending Ex Parte/Temporary Order of Protection" shall be executed and forwarded to the appropriate authorities.

Husband signed the listing agreement for the martial home with the Auctioneer, Mr. Tommy Anderson, on August 29, 2019. Wife shall be allowed to sign any further contracts to effectuate the sale and closings of the property located at 1986 Sunnyside Drive, Franklin, TN 37069. Husband shall vacate the martial home on or before September 3, 2019 at 12:00 noon. The Williamson County Sheriff's Office shall have a deputy on standby to ensure that Mr. Fenton is vacated and that he only takes with him his personal clothing, his jewelry and effects such as his toiletries and medication. Mr. Fenton shall not remove any further furnishings or personal property. Husband is admonished that he is under a Restraining Order pursuant to the Statutory Injunction entered upon the filing of the Complaint for Divorce as of June 4, 2019. Mr. Fenton filed a Notice with the Court to allow him to file pleadings Pro Se and in the pleadings filed with the Court he acknowledged that he had sold a TV gifted to his Wife from her brother for $1,000 and that he had sold a commercial dehumidifier which was at the marital residence for $2,500. These amounts will be accounted for at the Final Hearing and any other property sold will also be addressed at the Final Hearing. No further property will be removed by Mr. Fenton and he shall tag all items that he would like the Court to consider to be awarded to him. Any items that he does not wish to retain shall be sold at auction or Wife may retain. Pursuant to the Court Order, Wife has tagged the items that she would request to be awarded when she conducted the walk through pursuant to the Court Order from the August 1, 2019. (Order entered by Court on August 14, 2019.) The auction will take place pursuant to said Order of August 14, 2019 which is to be 45 days from August 1, 2019 with all proceeds to be deposited into the Clerk's office.

2

MS. STORY LIED ABOUT EVERYTHING I EXPLAINED IN MY EMAIL THE NIGHT BEFORE, CLAIMING IT WAS IN MY PRO-SE FILING, FOR NO REASON OTHER THAN TO HARM ME! SHE LATER OBTAINED A FEDERAL BANKRUPTCY COURT ORDER TO SUPERSCEDE MY "PROTECTED INCOME AND ASSETS" PER TENNESSEE LAW, TO SELL OR DISCARD WHAT SHE FORCED ME TO LEAVE BEHIND!

All other matters are reserved pending further Orders of this Court.

**ENTERED** on this 29th day of August 2019.

**MICHAEL W. BINKLEY, JUDGE**

**APPROVED FOR ENTRY:**

Michael W. Binkley
Circuit Court Judge/Chancellor
21st Judicial District, Division III

**VIRGINIA LEE STORY; BPR #11700**
Attorney for Plaintiff/Wife
136 Fourth Avenue South
Franklin, TN 37064
(615) 790-1778
virginia@tnlaw.org

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing was sent courtesy copy to Mr. Jeffrey Fenton, Defendant Pro Se, at 1986 Sunnyside Drive, Brentwood, TN 37027 on this 29th day of August, 2019.

**VIRGINIA LEE STORY**

## CLERK'S CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing was sent courtesy copy to Mr. Jeffrey Fenton, Defendant Pro Se, at 1986 Sunnyside Drive, Brentwood, TN 37027, and to Virginia Lee Story, Attorney for Wife, at their respective addresses, on this 21 day of August, 2019.

**CLERK**

3

BACK BEFORE I UNDERSTOOD THE "APPROVED FOR ENTRY" PROCESS OF "PROPOSED" ORDERS VS. "AGREED ORDERS"