APPENDIX 18

8/29/2019 JUDGE MICHAEL W. BINKLEY GRANTED ME (JEFF FENTON) PERMISSION TO OPENLY RECORD THE AUDIO THROUGHOUT THIS TRIAL/HEARING BEFORE I EVER EVEN TURNED ON MY DIGITAL VOICE RECORDER.

EXIGENT CIRCUMSTANCES:
T.R.A.P. RULE 24(g) A FAIR, ACCURATE, AND COMPLETE ACCOUNT OF WHAT HAPPENED IN TRIAL COURT IS BEYOND BELIEF WITHOUT THIS EVIDENCE!

→ AUDIO MARKERS NOTED AT THE START OF EACH PARAGRAPH.

T.R.A.P. RULES 36(a)(b) RELIEF OF ERROR + #2 SUSPENSION OF RULES FOR GOOD CAUSE TO PROVIDE SOME RELIEF FOR ERROR!

I JEFFREY RYAN FENTON SWEAR & DECLARE UNDER THE PENALTY OF PERJURY: THAT THE AUDIO FILE "H2019-02059 TRANSCRIPT OF EVIDENCE -2b (audio).MP3", ALSO KNOWN AS "2019-08-29 HEARING AT THE OLD COURTHOUSE - MICHAEL BINKLEY - VIRGINIA STORY - PRO SE.MP3" IS ORIGINAL, AUTHENTIC, AND A TRUE VERBATIM AUDIO RECORDING, MADE IN GOOD FAITH, AS IS EVIDENCED BY THE LEGAL TRANSCRIPT OF THIS SAME HEARING, BY LICENSED COURT REPORTER EMILY C. SIPE HEREIN. THE ONLY EDITING PERFORMED ON THIS AUDIO RECORDING WAS TO BALLANCE & CLARIFY OUR VOICES. THE META-DATA WAS ALSO POPULATED TO IDENTIFY THE PARTIES + RECORDING. NO STATEMENTS WERE ADDED TO OR SUBTRACTED FROM THE CONTENCE OF RECORDING. TESTIMONY HEREIN CAN EASILY BE COMPARED TO AND VERIFIED BY THIS LICENSED PRINT TRANSCRIPT.

**H**
**HARPETH**
**COURT REPORTERS**
(615) 933-6786
www.harpethcourtreporters.com

TE-2-1

IN THE CHANCERY COURT FOR
WILLIAMSON COUNTY, TENNESSEE

*I JEFFREY RYAN FENTON SWEAR + DECLARE UNDER THE PENALTY OF PERJURY THE CONTENT HEREIN IS CORRECT + TRUE TO THE BEST OF MY KNOWLEDGE.*

FAWN TIFFANY FENTON,

*APPELLEE*
Plaintiff,

vs.

JEFFREY RYAN FENTON,

*APPELLANT*
Defendant.

No. 48419B

*COA:*
*M2019-02059-COA-R3-CV*

*CRITICAL TO DETERMINE IF "AN IMPARTIAL TRIBUNAL!" TENNESSEE JUDGES MUST RECUSE THEMSELVES FROM PRESIDING OVER CASES IN WHICH THEIR IMPARTIALITY MIGHT "REASONABLY" BE QUESTIONED. THIS RECORDING WITH "FACT CHECKING" BINKLEY + STORY'S STATEMENTS + ACTIONS HERE PROVES BIAS, DISCRIMINATION, ABUSE BY PROCESS + ERROR.*

HEARING

Before Judge Michael W. Binkley

*EXIGENT CIRCUMSTANCES* August 29, 2019 *TRAP 24(g)*

*T.R.A.P. 36(a)(b)* 11:20 a.m. *Fair, accurate, complete account*

*RELIEF OF ERROR* *T.R.A.P. RULE 2 & GOOD CAUSE!*

*THIS AUDIO RECORDING IS NECESSARY TO ESTABLISH DETERMINE, AND PROVE THE CONTEXT, TONE, RESPECT FORCEFULNESS, MANNER, CONCERN AND CARE SHOWN BY EACH PARTY, THROUGHOUT THE HEARING, WHICH SIMPLY IS NOT EVIDENT OR CLEAR BY READING THE TYPED TRANSCRIPT, WITHOUT HEARING THE ACTUAL WORDS SPOKEN.*

*M2019-02059-COA-R3-CV*

*EQUAL ACCESS TO JUSTICE? PROOF IS IN AUDIO RECORDING!*

Reported by:
Harpeth Court Reporters
Franklin, Tennessee
Emily L. Sipe, RPR, LCR

*TRAP RULE 36b EFFECT OF ERROR PLEASE ATTACH WITH AUDIO TO RECORD "AS A TRANSCRIPT OF EVIDENCE"*

*TE-2-2*

*PLEASE PROVIDE ME WITH COUNSEL SO I CAN TRY TO CURE A PORTION OF THE "EFFECT OF ERROR" WHICH BINKLEY + STORY DID CAUSE ME. THANK YOU!*

```
 1   APPEARANCES:

 2   For the Plaintiff:
          VIRGINIA LEE STORY
 3        136 4th Avenue South
          Franklin, Tennessee  37064
 4        (615) 790-1778
          Virginia@tnlaw.org
 5

 6   For the Defendant:
          Pro se
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

TE-2-3

1          P R O C E E D I N G S

2    00:42.2 THE COURT:  I want that to be in the

3    Order because it's best that we put everything in the

4    Order.   This gentleman, he's going to share and pay

5    one half of the per diem plus any expenses that he may

6    incur as a result of asking for all or a portion of

7    the transcript that will be ordered by him.  Okay?

8              All right.  Ms. Story?

9    01:19.4 MS. STORY:  Your Honor, the motion that

10   we are here on today is a motion for violation of the

11   order of the court that was August 14th of '19.  And

12   after the order was entered, there was a pretty scary

13   communication from Mr. Fenton.  I am not here today to

14   argue about that motion necessarily.  The more

15   pressing matter -- and that was his response, that is

16   the lengthy response we received this morning.  It

17   deals more with the issues of why he made those

18   statements and those type of things.

19   02:05.7  But the more pressing issue, Your Honor,

20   was the deadlines for getting this house sold.  So

21   having leased the property, 1986 Sunnyside Drive in

22   Brentwood, you ordered that it be sold by auction.

23   You ordered the attorneys to select an auctioneer,

24   which we did, and we got a referral from the chancery

25   court clerk's office.  And it ended up it was Pat

TE-2-4

1    Marlin, who was actually a Realtor, but he does

2    auctions and he used the services of Clyde Anderson.

3    You know Clyde.  He had done auctions for many years

4    around here.  And his son, Tommy Anderson, is now in

5    the business.  So Mr. Anderson went out to the

6    property with Ms. Fenton, Mr. Fenton.  We had some

7    difficulty with the scheduling date, but we were able

8    to get into the house.  And Mr. Anderson, Mr. Duke,

9    who was Mr. Fenton's previous lawyer, and Ms. Yarbro

10    from my office went to the property.  Ms. Fenton

11    tagged the items like your Order told her to, and it

12    was our understanding that Mr. Fenton would be out of

13    the house by September 1.  He said he was going to

14    Michigan and that's where his, I think, his mother

15    lives.  I think his father has a lake home in

16    Tennessee.  That's where we thought maybe it would be

17    more logical for him to go, but that is up to him

18    where he wants to go.

19    **03:49.1**  What is obvious, Your Honor, is you're

20    going to have to set a date for him to be out.  The

21    order said it would be auctioned 45 days from

22    August 1st, and so that would be -- this is in your

23    order of August the 16th.  It would be 45 days from

24    the date of August 1st, the marital residence would be

25    sold by auction.  And I have the auction contract here

TE-2-5

1   for Mr. Fenton to sign, and I'm asking him to do that

2   today.  If for any reason he refuses to sign, I'm

3   asking the court to put in the order that Ms. Fenton

4   have the authority to execute any and all documents

5   necessary for Mr. Anderson to get his property sold.

6       04:45.4   The other thing I think is important,

7   Your Honor is --

8       04:48.5   THE COURT:  What do you suggest as a

9   deadline again?

10      04:49.8   MS. STORY:  It was in the Order already.

11  It was September 15th.  He said that he was moving

12  September 1st.  That is Sunday.

13      04:59.8   MR. FENTON:  That was my tenants move out

14  by then, and then I had 45 days was for me.

15      05:05.4   MS. STORY:  That is not true.  He said

16  that he had 45 days after September 1st to move, but

17  that wouldn't even make sense.

18      05:12.0   THE COURT:  Okay.  Well, what does the

19  Court Order say?  Because I'm going to stick with

20  that.

21      05:15.6   MS. STORY:  The Court Order says, "The

22  motion to sell marital residence by auction is granted

23  and the same shall be auctioned within 45 days from

24  the date of August 1st."

25      05:27.9   THE COURT:  Okay.

TE-2-6

1    05:29.5    MS. STORY:  So he's got to be out for

2   them to get this place ready to go.

3    05:34.1    THE COURT:  All right.  What date do you

4   suggest?

5    05:36.7    MS. STORY:  I have seen correspondence

6   where he said September 1st.  Now he's saying he

7   can't.  So I would suggest September 3rd, which is

8   next Tuesday.  And I would like the Order to reflect

9   that the Williamson County sheriff's department will

10  accompany him.  And at this point --

11    05:58.5   THE COURT:  You mean off the property?

12    06:00.5   MS. STORY:  Off the property.  And I

13  don't think he needs to take any property.

14    06:04.4   What he did, Your Honor, in this response

15  he filed, they had a TV that -- a Sony TV, a big

16  screen, that my client's brother had given her.  He

17  now tells me in this response that he sold it for

18  $1,000.  And then the other thing, there was a

19  dehumidifier in the basement that was like a $2,500 to

20  3,500 dehumidifier for moisture.  He sold that.  So if

21  you let him take anything out at this point it's going

22  to be sold and he's dissipating marital assets, which

23  would be in violation of the restraining order.

24    06:45.5   And at this point Mr. Anderson, he can

25  tag everything, they can video everything.  We will

They can video all the property

TE-2-7

1    not disturb anything.  If we have to use proceeds to

2    get a storage unit, we will do that for Mr. Fenton's

3    belongings.  Mr. Fenton, in his response says he has a

4    fear of heights.  And so driving to Michigan, he has

5    to drive over the Cincinnati bridge.

6        07:12.5    MR. FENTON:  Yeah.  That's really hard

7    for me.

8        07:14.4    MS. STORY:  And so he says he can't drive

9    a U-Haul over it.  So if we can just let him take his

10   clothing, his jewelry, his personal effects, whatever

11   he needs that he can pack in his car, and not have to

12   drive a U-Haul of furniture at this point, that might

13   be the best thing to do.

14       07:33.1  MR. FENTON:  Where is my furniture going

15   then?

16       07:36.1  THE COURT:  Wait a minute.  We're doing

17   this one at a time.    Laughter

18       07:39.3 MR. FENTON:  I'm sorry.

19       07.41.5 THE COURT:  Go ahead.

20       07:42.1 MS. STORY:  If he will tag the items that

21   he wants, like my client tagged the items per your

22   order, if he'll just put a tag on items he wants,

23   we'll make sure that those get stored, and then we can

24   use the proceeds from the sale.  We're going to

25   deposit those into the clerk's office.  And we can use

TE-2-8

1    those to pay the next storage unit and then when he

2    gets ready to come here and get his things, or maybe

3    he wants to use some of his proceeds to have them

4    shipped to him since he, you know, does have a fear of

5    driving the U-Haul.

6    08:16.4  So I'm trying my best to be as

7    accommodating to him and considering his condition

8    that, you know, this is going to be a simple process

9    for him.  He can take his clothes, his personal

10   property, be out September 3rd.  We will tag

11   everything, take care of it.  Mr. Anderson is not

12   going to destroy property.  That's all I'm asking for.

13   And if he would sign the listing agreement today and

14   we put in the order that it be -- that she have the

15   authority to sign any other necessary documents in

16   case he does go to Michigan.  It would be a little

17   bit, logistically, difficult to do that.

18   08:56.6  THE COURT:  What do you want me to do

19   with this violation of the Order?

20   08:59.8  MS. STORY:  Just continue it.  We can

21   just reset that portion of the motion.  He just filed

22   a response today.  I'm fine to -- the ex parte remains

23   in effect anyway under the Order of the Court, and I

24   have not seen any further violations of that Order.

25   The selling of the marital property is a concern to me

TE-2-9

1   but I can deal with that at final hearing.  One of the

2   things, too, is you might want to waive mediation in

3   this case.  I have requested in my motion that

4   mediation be waived.  There is an Order of Protection

5   where they are not to be around each other.  It would

6   be difficult for a mediator to accommodate that.  And

7   I think that it really is just settling personal

8   property.  They don't have any -- and then whatever

9   comes from the proceeds.  They have no children.

10      09:45   THE COURT:  That's granted.

11      09:48.2  Okay, sir, let me talk to you about one

12   thing.  We're narrowing the issues before the Court

13   today.

14      09:56.6  MR. FENTON:  Okay.

15      09:57.5  THE COURT:  We're not going to be talking

16   about the violation of the Order of Protection.

17   That's going to be reset.  So all of these documents

18   you have don't apply to today.

19      10:06.5   MR. FENTON:  Well, the back portion of

20   them does talk about the marital residence but there

21   is a lot of it about what you're saying, yes.

22      10:13.5   THE COURT:  Now, let me just tell you, *say* _can't understand her_

23   this -- and I just want to be clear about this.  I

24   don't want to get into an emotional discussion about

25   what I will do and what I won't do.  Let me just tell

TE-2-10

1  you how it, works.  Once I put a Court order down, I

2  really expect people to obey it.

3  *10:34.4*  MR. FENTON:  Yes.

4          THE COURT:  And so the only way a judge

5  can enforce a Court order if someone refuses to do it,

6  and we're seeing it more and more, people are doing

7  what they want to do and not really paying attention

8  to a Court order.  And I'm taking the time to tell you

9  this because I don't want you and me to have problems

10  with this.

11  *10:55.3*  MR. FENTON:  No.

12  *10:56.5*  THE COURT:  And let me tell you, my

13  personal feeling is, as a judge, a judge who does not

14  back up his or her Court order is worthless.

15  *11:06.2*  Now, if you have a reasonable excuse for

16  disobeying an order, I will certainly hear it.  And

17  the last thing I want to do is put someone in jail for

18  violating an order.

19  *11:18.4*  MR. FENTON:  Yes.  And that's the last

20  thing I want, too.

21  *11:20.6*  THE COURT:  Sure.  Right.  And so you and

22  I have an understanding.  And so you don't know me but

23  I do mean what I say.

24  *11:26.8*  MR. FENTON:  I believe that.

25  *11:28.7*  THE COURT:  Okay.  Good.  And so we can

*TE-2-11*

1   dispense with the rest of that.

2   *11:32.1*   MR. FENTON:  And just as a question, were

3   we saying that I disobeyed the Court order?  Because I

4   had --

5   *11:38.9* THE COURT:  No, no, we don't have

6   anything like that really in front of us but --

7   *11:43.5*   MR. FENTON:  Okay.

8   *11:44.9* THE COURT:  But let me tell you what I'm

9   going to do here because we have to get moving.

10  *11:48.9* MR. FENTON:  Right.  Can I still tell a

11  little bit of my side before you rule on all of that?

12  *11:56.6* THE COURT:  Briefly.

13  *11:58.0* MR. FENTON:  Okay.  So basically on my

14  side, the narrative that has been brought to the Court

15  so far is completely fraudulent about my person, about

16  who I am, about me being violent.  All of this stuff.

17  The documentation that I provided you with shows that

18  my wife is a highly skilled handgun instructor who

19  owns assault weapons, has 5,000 rounds of ammunition

20  under her bed.  I mean, she is trained by the NRA,

21  certified by the State of Tennessee to do rape

22  prevention, pepper spray, everything.  So the whole

23  guise of feeling physically endangered was not -- she

24  tried to do that with her first attorney -- *she called the police*

25  *12:43.1*   THE COURT:  We're not dealing with that
*(interrupted)*

*TE-2-12*

1 | today.

2 | *12:49.2* MR. FENTON:  I know.  But that's

3 | basically the tone under which everything else is laid

4 | and that's --

5 | *12:50.2* THE COURT:  I practiced law for 35 years.

6 | Long, hard years in the trenches.

7 | *12:55.1* MR. FENTON:  Right.

8 | *12:55.7* THE COURT:  I am trained to separate

9 | things in my mind that are important --

10 | *12:58.4* MR. FENTON:  Okay.

11 |         THE COURT:  -- and things that are

12 | unimportant.  And I'm not trying to be rude to you,

13 | but you've got to trust me here.  If you were a

14 | lawyer, I would be telling you the same thing.  I

15 | would be saying, "Lawyer, that's not relevant to me

16 | right now."

17 | *13:13.1* MR. FENTON:  Right.

18 | *13:14.0* THE COURT:  I don't really care about all

19 | that.  That's for another day.  But let me just tell

20 | you this.

21 | *13:18.4* MR. FENTON:  Okay.

22 | *13:19.6* THE COURT:  These are real easy issues.

23 | I have got to put an order down for you to be out of

24 | that house.

25 | *13:27.6* MR. FENTON:  I understand that.

TE-2-13

1    *13:28.7*   THE COURT:  On September 3rd.

2    *13:30.0*   MR. FENTON:  Can I speak a little more

3    first?

4    *13:31.8*   THE COURT:  No.

5    *13:33.6*   MR. FENTON:  I can't be out that quick,

6    Your Honor.  Everything that I own is left in personal

7    property.  To say that I just take my clothes and lose

8    everything I've owned all my life is not fair.  That

9    is not at all fair.  And I don't mean to be hard.  I'm

10   willing to do things as quick as possible, but I

11   cannot possibly move out without a two-week's time to

12   do it.  And I need to have some time where I know that

13   there is not going to be anymore litigation for a

14   while because I can't -- with the ADHD -- and one of

15   the things I provided you is something from my

16   psychiatrist on the different disorders I have, but I

17   cannot physically do -- be a lawyer, play a lawyer,

18   and packing at the same time.  For example, that's *I spent the last week*

19   *14:17.5* ~~THE~~  THE COURT:  Sir, I respect that.  But we

20   all have burdens.

21   *14:21.8* MR. FENTON:  Well --

22   *14:21.9* THE COURT:  Let me talk.  We all have

23   burdens.  Everybody in this room has things going on

24   in their lives to one extent or another, just like you

25   do.

*TE-2-14*

1      *14:31.6*  MR. FENTON:  Right.

2          *14:32.8*  THE COURT:  I can't make excuses for

3   that.  Listen to what I'm saying.  I don't want you

4   and I to get crossways with each other.  We have to

5   get a date set.  I'm not going to make it two weeks.

6          *14:46*  MR. FENTON:  Well, originally we had said

7   the 45th, and that's when I understood that date that

8   I had to be out.  And I never communicated with her

9   anything other than that.  You had said 30 days for my

10  roommates and that's what I always thought it was.

11  And originally my understanding was I was staying

12  there while I was selling the property so I could stay

13  there till closing.  Now, I understand that's not my

14  preference and I understand it's not their preference.

15  I'm willing to do that different, but I need to

16  have -- I have 3,000 square feet of stuff.

17      *15:16.9*  THE COURT:  What about another day in

18  September?  The first week in September?

19      *15:23.0*  MS. STORY:  And, again, we're not going

20  to dispose of any of his personal items.

21      *15:26.8*  THE COURT:  They're not taking anything

22  out of there.  Do you understand that, sir?

23      *15:28.6*  MR. FENTON:  My understanding is --

24      *15:29.5*  THE COURT:  Whoa, whoa.

25      *15:30.5*  MR. FENTON:  No, I don't understand.

*TE-2-15*

1    15:32.2 THE COURT:  Your personal property.  Your

2    clothes.  Personal property being like your watch.

3    15:39.2 MR. FENTON:  Furniture.  That's all.

4    15:39.7 THE COURT:  No.

5    15:40.1 MR. FENTON:  We already agreed when me

6    and my wife split it up that the house was mine.  What

7    she came and tagged is hers.

8    15:47.5 THE COURT:  This isn't working.  What you

9    want to do is be a lawyer.

10   15:55.8 MR. FENTON:  No, I don't.  I can't afford

11   a lawyer.

12   15:58.7 THE COURT:  I'm talking right now.  This

13   is not a barroom.  I have to maintain order.

14   16:06.2 MR. FENTON:  Uh-huh.

15   16:06.9 THE COURT:  I don't want you to get your

16   feelings hurt, but if you get your feelings hurt,

17   that's your business.  I have got to maintain the

18   integrity of this hearing.  You need to quit

19   interrupting me.  And I'm going to make a ruling and

20   you're going to have to stick with it.

21   16:20.4 MR. FENTON:  Yeah.

22   16:22.4 THE COURT:  All right?  You are going to

23   have to.

24            We are not touching any of the furniture

25   and furnishings.  You are to tag the items that you

16:28.9- Jeff- So what happens

TE-2-16

1   would like to have.  Go buy some little tags, you

2   know.

3       *16:37.6* MR. FENTON:  But I wanted to take them

4   with me so I'm only going over the bridge one time.

5   That's what I was saying.

6       *16:42.8* THE COURT:  Well, I know that you would

7   like to do that but we're not doing that.  Okay?

8   That's not the fair way to do it.  And I'm not going

9   to sit here and explain to you why it's not because

10  it's part of the law that you assume when you stand up

11  and start representing yourself.  Assume that you

12  know.

13      *16:57.1* MR. FENTON:  Okay.  Then I would

14  rather --

15      *16:58.3* THE COURT:  I can't talk while you're

16  talking.

17      *17:05.1* MR. FENTON:  Okay.  I'm sorry.  I would

18  rather stay in the house during the auction with that

19  being the case.  But the only reason I was going to

20  leave ahead of time --

21      *17:10.6* THE COURT:  You're not going to stay in

22  the house.

23      *17:12.1* MR. FENTON:  I'm not going to stay in the

24  house?

25      *17:13.3* THE COURT:  No, sir.  You're going to

TE-2-17

1    leave by September 3rd noon, and you've got to be out

2    of there or the sheriff will escort you off the

3    property.

4        17:20.6 MR. FENTON:  So have I done wrong to

5    receive that kind of treatment, Your Honor?  I mean,

6    my wife had two months to move out.  ? words

7        17:30.1 THE COURT:  Sir, we have already talked

8    about all that.  We had a previous hearing.  We have a

9    previous Court Order.  You're representing yourself.

10   You're assuming to know everything we've already

11   talked about.  I'm not going to go over it with you

12   and spend four hours --

13       17:42.9 MR. FENTON:  I understand.

14       17:43.9 THE COURT:  Excuse me.  Trying to be nice

15   to you when you are presumed to know and understand

16   what we have already done.  I'm trying my best to be

17   patient with you and you're trying my patience.  I'm

18   just letting you know.

19       17:59.1 MR. FENTON:  I'm not trying to -- my last

20   counsel had told me --

21       18:01.9 THE COURT:  Sir, I'm not interested in

22   what your counsel told you.  I'm sorry.  It's not

23   important to me at this point.

24           Now, let's go back to what I was saying.

25   I want you out of the house by 12 noon September 3rd.

TE-2-18

1    If you're not out, the sheriff will escort you off the

2    property.  Do you understand that?

3        *18:21.4* MR. FENTON:  Yeah.

4        *18:22.2* THE COURT:  Number two, you are not to

5    take with you any furniture, any furnishings, anything

6    like that.  All of that is going to remain in the home

7    for now.  You are to tag the items that you would like

8    to have.  That doesn't mean you're going to get them,

9    but that you -- may I finish, please?

10       *18:42.* MR. FENTON:  Uh-huh.

11       *18:43.6* THE COURT:  Is that a yes?

12       *18:44.1* MR. FENTON:  Yes, sir.

13       *18:45.3* THE COURT:  You are to tag the items that

14   you would like to have.

15       *18:41.8* MR. FENTON:  Uh-huh.

16       *18:51.8* THE COURT:  In addition, you're to sign

17   this contract today.

18       *18:59.6* MR. FENTON:  On the last Court Order you

19   said that I could take my stuff with me after the

20   ten-day walkthrough.  That's what your last Court

21   Order said, and I would like to be able to do that.

22       *19:11.3* THE COURT:  The day that you leave or

23   that you have -- you have between now and

24   September 3rd to get your personal items and you out

25   of there.

TE-2-19

1    19: 21.2 MR. FENTON:  Yeah.

23.7 Jeff—My furniture too?

2    19: 23.0 THE COURT:  Do you understand that? ∧ Your

3    personal items, sir.  You're not stupid.  Listen,

4    please.  Your personal items are your clothes, your

5    personal jewelry, and that's it.

6    19:36.9 MR. FENTON:  My bed or my furniture?

Jeff in background

7    19:38.9 THE COURT:  No, sir.  I'm going to say it

8    for the third time.  No furniture, no furnishings, no

9    nothing.

10   19:46.7 MR. FENTON:  That's not what you said in

11   the last order.

12   19:49.3 THE COURT:  Sir, you're not paying

13   attention.  You're not listening to what has happened.

14   You're not paying attention to anything.  And I'm not

15   going to spend three or four hours here at the -- just

16   trying to be nice to you and go through everything

17   again.  I'm just not going to do that.  You're

18   expected to know all of this.

19            Now, you're choosing to represent

20   yourself.  There's not a thing that I can do about

21   that.

22   20:14.1 MR. FENTON:  I -- don't have the background

23   20:17.1 THE COURT:  Excuse me.  I'm talking.

24            When you choose to represent yourself,

25   you take it upon yourself to know all of the rules,

TE-2-20

1   the law, everything.

2   *20:31.1* Now, that doesn't sound fair but that's

3   part of why we have to do it.  We can't sit here and

4   be your lawyer for you and start explaining things to

5   you.

6   *20:38.8* MR. FENTON:  Okay.

7   *20:39.2* THE COURT:  I will try to be as

8   accommodating and as nice to you as I possibly can.  I

9   don't think you're accepting that very well.

10  *20:47.1* MR. FENTON:  I'm not trying to be

11  stubborn.

12  *20:49.4* THE COURT:  You're trying to fuss with me

13  and argue with me and that's not what we're going to

14  do today.

15  *20:53.1* MR. FENTON:  I'm not trying to fuss and

16  argue with you.  It's not what I understood your last

17  order to be. *+ it wasn't...*

18  *21:01.5* THE COURT:  I'm going to go over it one

19  more time. *and then this is the last time*

20  *21:04.3* MR. FENTON:  I heard you, *Your Honor, you don't have to*

21  *21:05.4* THE COURT:  No.  I don't want there to be

22  any misunderstanding because you have interrupted me

23  several times.

24  *21:09.8* MR. FENTON:  Can I say one thing?

25  *21:13.1* THE COURT:  No.  Listen.  Don't try my

*TE-2-21*

1    patience.

2    21: 17.2    MR. FENTON:  I'm not trying to.

3    21: 18.5    THE COURT:  Yeah, you are.

4    21: 19.3    MR. FENTON:  No, I'm not.

5    21: 20.5    THE COURT:  Well, quit being rude.  This

6    is what we're doing.  You're going to sign this

7    contract now.  Give it to him, Ms. Story.

8    21:45.1    You are to be out of the house.  Do not

9    take any furniture, furnishings, or anything.  But

10   you're to be out September 3rd at noon.  The only

11   thing you can take with you -- I'm saying this for the

12   fourth time because I don't want there to be a

13   misunderstanding.  This is going to be a court order.

14   Now, items that you would like to have, that doesn't

15   mean you're going to get them, tag them.  Put a tag on

16   them.  Go to the 5 and 10 store, get some red tags,

17   whatever, and say I want this.  Post it.  Or just put

18   "H" on it, or something like that.  Just commonsense.

19   22:22.2    Wait a minute.  I'm not through.

20   22: 26.5    There will be a deputy there to make sure

21   that you followed the Court Order and do what you're

22   supposed to do.  That means -- let me finish.  You

23   keep wanting to interrupt.  You're not listening to

24   what I'm saying.  You're thinking about what you're

25   going to tell me.  And then I don't want you coming in

TE-2-22

1    and say, Judge, I didn't really understand that.

2    22:53.6 Because I've been down this road with

3    folks who represent themselves.  They don't get it.

4    They don't understand, and then they whine and

5    bellyache and come back and say that just wasn't fair.

6    Fair is something you do in the fall.  This is a

7    courtroom.  You are expected to know the rules.  I am

8    trying to be as cordial and as nice to you as I can

9    but you're not letting me.  All right.    Jeff - thank you

10   23:31.4 You signed the agreement, you understand

11   that you're to be out September 3rd at 12 noon, no

12   later.  Not one minute later.  You're to tag the items

13   that you would like to have before you leave.  Do you

14   understand that?

15   23:35.4 MR. FENTON:  Yes, sir.

16   23:38.7 THE COURT:  Do not, in the meantime, move

17   anything else out of that house.  Do not sell

18   anything.  Do you understand me?

19   23:45.6 MR. FENTON:  Uh-huh.

20   23:47.3 THE COURT:  Is that a yes?

21   23:47.9 MR. FENTON:  Yes.  Yes, Your Honor.

22           THE COURT:  Well, "uh-huh" doesn't --

23   23:50.2 MR. FENTON:  I'm sorry.  Yes, Your Honor.

24   23:51.9 THE COURT:  We're not in the bar.  We're

25   in the courtroom.

TE-2-23

1      *23:53.3* MR. FENTON:  Okay.

2      *23:57.9* THE COURT:  All right.  What else,

3  Ms. Story?

4      *23:58.1* MS. STORY:  That'll do it.  We can

5  account for the items he sold at a later time and

6  address that.

7      *24:03.3* MR. FENTON:  Can I make a comment about

8  those, Your Honor?

9      *23:05.2* THE COURT:  No.

→ 10      *23:05.3* MR. FENTON:  That is before this was in

11  Court.

12      *24:09.4* THE COURT:  No, sir.  I'm sorry.  I've

13  got to have a tight rein on this case.  I knew that

14  there were going to be problems at the beginning and

15  I'm going to keep a tight rein and whatever I need to

16  do to maintain the integrity of these Orders to

17  maintain the integrity of this lawsuit, and for you to

18  understand what your role is as a litigant

19  representing themselves.  I'm going to have to keep a

20  tight rein on you.  I would love to be nice --

21      *24:35.9* MR. FENTON:  I'm not -- at this point?

22      *24:38.8* THE COURT:  Let me finish.  Let me
        *I just want it to be fair.*

23  finish.

24      *24:40.6* That would be much easier but you won't

25  let me do it.  So anything else, Ms. Story?

*TE-2-24*

1    *24:45.4*  MS. STORY:  Since he probably will be

2    moving to Michigan, I would be amenable to him

3    attending the final hearing by telephone if he doesn't

4    want to drive back.  And I can tell you, I will try to

5    accommodate him in any way I can.

6        *25:02.5* THE COURT:  I know you will.  You already

7    have.

8        *25:06.3* MS. STORY:  And, also, the order probably

9    needs to say that Ms. Fenton can execute any other

10   documents that need to be executed because he might

11   not be here to sign anything, that Mr. Anderson might

12   need signed.  So I would like to be able to put that

13   in the Order.

14       *25:20.6* THE COURT:  All right.  Then if you'll

15   prepare the Order, that'll take care of us.  That's

16   what we're doing.  That's the Order of the Court.

17   Thank you very much.

18   *25:27.4*    (Proceedings were adjourned at 11:44 a.m.)

19

20

21

22

23

24

25

TE-2-25