providing tenants with adequate protection in their lease.

196.    To understand the ruling principals of law here, one must look to the Rules of Construction:

> T.C.A. § 66-28-103. Purposes — Rules of construction.

>> (a) This chapter shall be liberally construed and applied to promote its underlying purposes and policies.

>> (b) Underlying purposes and policies of this chapter are to:

>> (1) Simplify, clarify, modernize and revise the law governing the rental of dwelling units and the rights and obligations of landlord and tenant;

>> (2) Encourage landlord and tenant to maintain and improve the quality of housing;

>> (3) Promote equal protection to all parties; and

>> (4) Make uniform the law in Tennessee.

>> (c) Unless displaced by this chapter, the principles of law and equity, including the law relating to capacity to contract, health, safety and fire prevention, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause supplement its provisions.

Page **50** of **82**

Initials:

➢ (d) This chapter being a general chapter intended as a unified coverage of its subject matter, no part of it is to be construed as impliedly repealed by subsequent legislation if that construction can reasonably be avoided.

197.    One of the main purposes of the State of Tennessee's Landlord and Tenant Act is to provide uniformity and security to both the landlord and the tenant, while having a concise set of codes covering the different aspects of law which are involved in a landlord and tenant relationship.

198.    For anything which is not specifically spelled out in this code, the presumption must be to remain in harmony with the declared purposes of this chapter, while protecting both the property interests and rights of both the landlord and tenant equally.

199.    I believe that the two sections which most directly address the concept of an "escape clause" are those of "*prohibited provisions*" and "*unconscionability*".

➢ T.C.A. § 66-28-203. Prohibited provisions.

➢ (a) No rental agreement may provide that the tenant:

➢ (1) Authorizes any person to confess judgment on a claim arising out of the rental agreement;

➢ (2) Agrees to the exculpation or limitation of any liability of the landlord to the tenant arising under law or to indemnify the landlord for that liability or the costs connected with such liability.

Page **51** of **82**

Initials:

&#x27A2;  (b) A provision prohibited by subsection (a) included in an agreement is unenforceable. Should a landlord willfully provide a rental agreement containing provisions known by the landlord to be prohibited by this chapter, the tenant may recover actual damages sustained. The tenant cannot agree to waive or forego rights or remedies under this chapter.

200.    The final sentence of which pretty well encapsulates what no "escape clause" can lawfully include: *The tenant cannot agree to waive or forego rights or remedies under this chapter.*

201.    Yet the defendants in this case denied and refused myself and my tenants our lawful and equitable property interests, rights and remedies, through fraud on the court(s), by members of the court(s). Using false claims of law, in a State court which had no lawful jurisdiction to hear or decide property interests included in a federal bankruptcy estate, prior to any action being filed in State court. While our property interests were core to the bankruptcy action, without which the bankruptcy would have never been filed. Yet I was unlawfully deprived of notice and participation in the bankruptcy court, because the bankruptcy court **could not** lawfully deprive me of my property interest or force the sale of our property, because it failed to meet the requirements in 11 U.S.C. § 363.

## SAVINGS CLAUSE

202.    Though my leases didn't include an "escape clause" (which isn't required), they did include a "savings clause", to protect the interests of both the landlord and the tenant in the event a court found some term or portion of the lease agreements objectionable.

Page **52** of **82**

Initials:

203.    In section 23 of my lease agreements[92], they state, "SAVINGS CLAUSE If any provision of this Lease Agreement is determined in a court of law to be in conflict with any Federal, State or Local Statute or Ordinance, the nullity of that specific provision shall not affect the other provisions of this Lease Agreement which can be given effect in the absence of the nullified provision, and to this end the provisions of this Lease Agreement are severable."

204.    This "SAVINGS CLAUSE" was in alignment with the State of Tennessee's Landlord and Tenant Act, as codified in the section titled "Unconscionability":

> ➢ 66-28-204. Unconscionability.
>
>> ➢ (a) If the court, as a matter of law, finds:
>>
>>> ➢ (1) A rental agreement or any provision thereof was unconscionable when made, *the court shall **enforce the remainder of the agreement without the unconscionable provision**,* or limit the application of any unconscionable provision to avoid an unconscionable result; or
>>>
>>> ➢ (2) A settlement in which a party waives or agrees to forego a claim or right under this chapter or under a rental agreement was unconscionable at the time it was made, the court shall enforce the remainder of the settlement without the unconscionable provision, or limit the application of any unconscionable provision to avoid the unconscionable result.

---

[92] https://rico.jefffenton.com/evidence/2019-03-26_fenton-sunnyside-roommate-lease-merriman.pdf
https://rico.jefffenton.com/evidence/2019-04-09_fenton-sunnyside-roommate-lease-garcia.pdf

Initials:

> ➤ (b) If unconscionability is put into issue by a party or by the court upon its
> own motion, the parties shall be afforded a reasonable opportunity to
> present evidence as to the setting, purpose, and effect of the rental
> agreement or settlement to aid the court in making the determination.
>
> ➤ (c) A provision in a rental agreement that authorizes a landlord to hold a
> tenant in breach of the rental agreement in accordance with § 66-28-
> 505(f) is not unconscionable and is fully enforceable.

205.     Unlike the demands of defendant Story in Chancery Court on 8/1/2019, this lease
agreement was not "voidable". In fact, this "Savings Clause" would lawfully survive almost any
legal attempt to nullify this lease agreement, due to some unconscionable term or omission.

206.     The codified law above states explicitly even if there were any credence to
defendant Story's claims about the lease containing some unconscionable term, the court was
required to: *"the court shall enforce the remainder of the agreement without the unconscionable
provision"*

207.     This was not a discretionary matter for the court. The Williamson County
Chancery Court along with defendants Story and Binkley intentionally misrepresented and
violated both State and Federal laws, while completely ignoring/denying my constitutional rights
along with my lawful and equitable property interests.

208.     There is one more absolutely false representation of law made by defendant Story
during this hearing, which needs to be mentioned. Rather than correcting defendant Story's clearly
fraudulent claims of law, defendant Binkley instead sat listening to her from the bench, while he

Page **54** of **82**

Initials:

nodded his head up and down and grunted sounds of agreement with defendant Story's lies.

## ❸ FALSE CLAIM OF LAW: OBVIOUSLY, HE CANNOT BIND A NEW OWNER TO COMPLY WITH THIS LEASE SO THAT IS A VOIDABLE CONTRACT

209.    During the 8/1/2019 hearing in Chancery Court, as evident on pages 27 and 28 of the original certified transcripts of evidence from that hearing, defendant Story fraudulently stated the following in regards to my lease agreements with my two tenants/roommates who were living with me and helping me pay the bills:

10    MS. STORY:  -- that he did, and it

11    says sale.  Under the sales provision that any

12    time during this lease, if the landlord decides to

13    sell, if landlord sells this property or places

14    it up for sale, whether voluntarily or by court

15    order, or in any way the ownership of this

16    property or rights to sell this property are

17    conveyed to another party, whether by foreclosure

18    or other legal process -- which is going to happen

19    soon if we don't get it on the auction block

20    within 30 days or so -- during the term of

21    tenancy, this tenancy per this agreement, the

22    assuming owner or controlling party and their

23    agents and assigns must continue to comply in

24    full with the terms of this lease.

25    **Well, obviously he cannot bind a new**

1    **owner to comply with this lease, so that is a**

2    **voidable contract.**  There's no way that that

Page **55** of **82**

Initials:

3       tenant could go after the assuming owning or

4       controlling party or their agents.

210.    **These are basic property rights and contract law.** A lease is bound *to the property*,

not just the property owner. Anytime that a property owner sells a property which is *encumbered*

by a *lease*, at the time of the sale, the owner must *disclose* the *lease* to all potential buyers. Then

whoever purchases that property *purchases the lease* along with it and *is bound to the terms of that*

*lease, for the duration of that lease,* **the same as the original owner was.**

211.    I didn't even need to include that language in the lease, and it was still protected,

because that is *the law of the land.*

212.    There are very few exceptions. The lease survives bankruptcy, it even survives

foreclosure, because of the federal Protecting Tenants at Foreclosure Act (PTFA). There are very

few exceptions, and those that exist clearly did not apply here.

213.    Defendants Binkley and Story knew that all day long, yet judge Binkley allowed

defendant Story to make absolutely false egregious claims about matters of law, where he not only

allowed her misconduct, but he participated in her misconduct, by making illegal court orders

based upon completely false and fraudulent claims of law.

214.    At this point, there can be no question about *"errors"*.

215.    Judge Michael W. Binkley was **bias** or **worse** and chose to not only allow but to

participate in *attorney* and *judicial misconduct*. Which clearly exceeded the threshold to

automatically *disqualify* judge Binkley per Tenn. R. Sup. Ct. 2.11(A)(1) & 28 U.S.C. § 455(a),

(b)(1) from hearing the case and having any lawful authority over any matter thereafter, in docket

Page **56** of **82**

Initials:

#48419B.

## TENN. R. SUP. CT. 2.11 – DISQUALIFICATION

216. (A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

217. (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

## 28 U.S.C. § 455 – DISQUALIFICATION OF JUSTICE, JUDGE, OR MAGISTRATE JUDGE

218. (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

219. (b) He shall also disqualify himself in the following circumstances:

220. (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

## THE LEVEL OF MISCONDUCT IS COMPLETELY "UNREASONABLE"

221. It doesn't matter if defendant Binkley or Story admit this or not, because to claim otherwise at this point is unconscionably **unreasonable**.

Page **57** of **82**

Initials: _____

## TENNESSEE SUPREME COURT TERMINOLOGY

222.  For clarification on how the Tennessee Supreme Court defines *"reasonable"* and other similar terms, the following is copied directly from the *"terminology"* section of Tenn. R. Sup. Ct. 1.0:

223.  (a) "Belief" or "believes" denotes that the person involved actually supposed the fact in question to be true. A person's belief may be inferred from circumstances.

224.  (f) "Knowingly," "known," or "knows" denotes actual awareness of the fact in question. A person's knowledge may be inferred from circumstances.

225.  (h) "Reasonable" or "reasonably," when used in relation to conduct by a lawyer, denotes the conduct of a reasonably prudent and competent lawyer.

226.  (j) "Reasonably should know," when used in reference to a lawyer, denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question.

## EVERYTHING IN CHANCERY #49419B IS VOID AND MUST BE VACATED

227.  The Chancery Court violated my rights and the law when it ordered my home to be liquidated (by absolute action with "no minimum"), without one penny to my benefit nor to the benefit of my ex-wife, to my knowledge.

228.  The Chancery Court orders by Judge Binkley are obscenely bias, based upon false and fraudulent representations of law, with no good faith authority or jurisdiction to be spoken of.

229.  Williamson County Chancery Court docket no. 48419B was a series of felony crimes committed against me, my tenants, and my family, under the color of law, without an honest, good faith, or honorable purpose in true pursuit of justice, as is required of all legal

Initials:

pleadings by the federal rules of civil procedure.

230.    The primary basis for everything in this case was "fraud on the court(s) by members of the court(s)", which as a matter of law rendered everything in this docket **void**.

231.    The court had no lawful jurisdiction or authority to exercise in these matters which was not disqualified for their disrespect for the codes of conduct, the judicial canons, the state and federal constitutions, along with both state and federal laws.

232.    Everything that took place in the docket, after this point, was only that much more obscenely cruel and criminal, hence there is no way that the court could have retained any lawful judicial authority under Judge Michael W. Binkley.

233.    **Everything in docket #48419B is void and must be vacated as a matter of law.** There is no lawful jurisdiction, authority, or discretion, upon which to sustain any order in this docket.

234.    The fact that I have been fighting for justice or even the most remedial cure for over four years now, is an unconscionable miscarriage of justice which shall forever scar me and those I love.

## THE VIOLATIONS OF CONDUCT EXHIBITED IN THE MOTION TO SELL THE MARITAL RESIDENCE IS OBSCENE...

Initials:

https://rico.jefffenton.com/evidence/2019-08-01_hearing-professional-and-judicial-misconduct.pdf    Case 1:23-cv-01097-PLM-RSK (FENTON v. STORY et al.)

## TENN. CODE § 39-16-507 – COERCION OR PERSUASION OF WITNESS[93]

235.    "(a) A person commits an offense who, by means of coercion, influences or
attempts to influence a witness or prospective witness in an official proceeding with intent to
influence the witness to: (3) ...to be absent from an official proceeding to which the witness has
been legally summoned. (b) A violation of this section is a Class D felony."

236.    I was geographically dislocated by 577 miles during the 8/29/2019 hearing in
Chancery Court, based upon both attorney and judicial misconduct, fraud, combined with
obstruction of justice.

237.    Defendants Binkley and Story refused to use my sworn testimony and evidence
which I filed on the chancery Court record on 8/29/2019.  Furthermore denying me any
opportunity to be heard, while using fraudulent protective orders to prevent my ex-wife and I from
communicating, while holding my constitutional rights hostage to threaten my safety and freedom
while extorting my silence about the misconduct by the courts and counsel, and retaliating against
me for disclosing the misconduct to the Tennessee Court of Appeals.

238.    Due to Ms. Fenton's physical and mental health during this season, there were
times when she was willing to negotiate towards a settlement in good faith, and others where she
refused at all costs.  Toward the end of 2018 we had reached a point where she was not being
combative and spoke honestly with me again. On October 9th, 2018, Ms. Fenton sent me an email[94]
which stated as follows:

---

[93]    https://law.justia.com/codes/tennessee/2019/title-39/chapter-16/part-5/section-39-16-507/

[94]    https://rico.jefffenton.com/evidence/2018-10-09_wife-does-not-want-to-keep-marital-residence.pdf

Page **60** of **82**

Initials: ⟨signature⟩

239.    "At this point, to be honest, I do not really even want to keep the Sunnyside house. If the house is not sold, then I will be stuck paying for the very-expensive bills that come with the house, AND I will still have a ton of credit card debt from this divorce. I am emotionally burnt out, and Ken is making zero steps towards any transition plan for the company, so in a year or two I'd really like to take a less stressful job. I need life to be simpler to help me recover emotionally and financially after all of this upheaval. But I will be trapped as long as I'm saddled with the house + alimony + credit card debt. I don't know if I can realistically handle the stress level of being forced to make a high salary only to give it all away every month for many years into the future."

240.    Though she did agree to our "Verbal Settlement Agreement[95]" after this on October 27th, she ultimately returned to this position after being required to put her words in writing and sign her name. She simply froze and refused to move forward. During one of my visits with her at her apartment, she conceded that the alimony agreement was what had stopped her from signing our verbal settlement agreement so that we could move forward with amicably selling our home. To add insult to injury, defendant Story blamed this failure to perform upon me, while I did everything within my power to try to persuade her to proceed with our plans, but she refused.

241.    Like an animal that is frozen in fear and doesn't know which way to run, she just stopped. She wanted to remain friends, but she wasn't interested in talking with me anymore about either selling our home or the divorce.

242.    I knew that she was stalling to wait for her employer's retirement[96]. I shared that

---

[95]    https://www.rico.jefffenton.com/evidence/2018-10-27_verbal-settlement-agreement.pdf

[96]    https://rico.jefffenton.com/evidence/2018-08-30_wife-notifies-about-employers-retirement.pdf

Page **61** of **82**

Initials:

with Attorney Mitchell Miller during 2018, that was how we met. I didn't want to force her hand, but I was trying to figure out how to protect myself and even more importantly, how to protect my mother from losing all the money which she had loaned me during this tragic season. I had a gut feeling that Ms. Fenton was going to take a professional nosedive once her employer retired, to get a job making substantially less money, to then proceed with a divorce, so that I wouldn't be awarded nearly as much money in alimony.

243.    I discussed this with Attorney Mitchell Miller, who recommended that I file for the divorce myself in 2018, to force Ms. Fenton into court while she still had a high income. He emphasized that if I acted first by filing for a divorce and afterwards she took a substantial pay cut, the court would frown upon that, as it would appear that she was intentionally trying to evade alimony.

244.    I knew that he was right, I knew that she was no longer able to deal with me in good faith, even though she was being nice and wanted to remain friends after our divorce. She told me that she no longer wanted to talk about our divorce or selling our home… to stick to talking about cute critters[97].

245.    That was why I had sought out and contacted Mr. Miller. I had a feeling that the "rug" was going to be "pulled out from beneath me" once again, and I wanted to protect myself, but not at the expense of hurting her. I refused. I didn't want to force more out of her than she was willing to give. I didn't want to force the person that I love the most in the world to divorce

---

[97]    https://rico.jefffenton.com/evidence/2019-02-09_holding-pattern-with-wife-stick-to-cute-critters.pdf

Initials:

me, even if it was financially to my advantage. I decided that I needed to find another way to protect myself, which was what I tried when I rented out two bedrooms, in hopes of becoming more financially independent before her boss retired and Ms. Fenton's career took a nose dive.

246.   In time my wife eventually admitted to me why she had refused to go forward with our "Verbal Settlement Agreement", and that was because she was physically and emotionally exhausted, she knew that her employer was getting ready to retire and close their architecture firm[98], and she wanted to take a break from the highly demanding job which she had maintained for many years, while she even spoke of possibly working part-time for a season.

247.   Our "Verbal Settlement Agreement" was contingent upon my wife paying me $1,750 per month in transitional alimony (which can't be modified) for a duration of 6-years, as we were advised was "fair" by Sandy Arons MBA, the collaborative divorce financial expert we hired, who set our financial expectations for what was "fair" with all factors considered[99]. Instead I was paid nothing, but this required they all but kill me, and so they did.

## MS. FENTON SUFFERED FROM SERIOUS CATASTROPHIC HEALTH CONDITIONS WHICH WERE EXPLOITED BY HER COUNSEL

248.   Ms. Fenton honestly suffered serious catastrophic health conditions for approximately the last three years of our marriage. Prior to that she had successfully managed having narcolepsy for about a decade using a one-of-a-kind sleep medication called "Xyrem[100]",

---

[98]   https://rico.jefffenton.com/evidence/2018-08-30_wife-notifies-about-employers-retirement.pdf

[99]   https://rico.jefffenton.com/evidence/2018-07-12_arons-and-associates-divorce-planning.pdf

[100]   https://www.xyrem.com/

Page **63** of **82**

Initials:

which costs about $11,000 per month, but was thankfully covered by our insurance. Unfortunately, when also afflicted with an early and severe case of menopause, she experienced extreme emotional instability and profuse sweating at night, disturbing her sleep and causing her life to become less and less manageable.

249.    On February 6th, 2019, I sent Ms. Fenton a text asking, "You sleeping any better?"

250.    On February 6th, 2019, Ms. Fenton sent me the following text messages[101] in response:

251.    "Nope. I just had an appointment today with my sleep doc at the Frist clinic... He is upping my Adderall prescription, but other than xyrem, there isn't much to make me sleep better."

252.    "I also have been emailing with my GYN... Going to quit the hormones for now, they have more negative side effects and aren't really helping. Going to try to let my body detox for a month or two, then might try xyrem again later."

253.    "No, haven't taken xyrem at all for about 2 weeks now. Very tired, sleeping only in short 1-2 hour increments, but the night sweats are much milder without the xyrem."

254.    "My theory is that the root cause of the night sweats is menopause, but for some reason the sweating is much worse during deeper sleep. Xyrem effectively wasn't doing its job anymore ... Even on strong dose of xyrem, I would wake up drenched after like 1 hour."

255.    "The sweats have been terrible ... On the xyrem, I would totally drench my clothes

---

[101]  https://rico.jefffenton.com/evidence/2019-02-05_menopause-narcolepsy-night-sweats-not-stalker.pdf

Initials:

and all bed sheets about every 1 to 2 hours. Would wake up soaked, change all clothes and strip bed and change all sheets... Go back to sleep, and then wake up sopping wet again like another hour later. Could go through this like 4x per night. Wet clothes and linens hanging up everywhere."

256.    "So NOT taking the xyrem, I usually only have one episode of sweating per night, towards early morning, like between 3:am - 5:am. And it's less sweating ... Still have to change clothes and sheets, but it's not as bad. And for most of the night I can at least be comfortable, even if I'm not sleeping well."

257.    "Yup, there is no good solution right now. My sleep is trashed either way. Menopause sucks ass."

258.    "My sleep doc says "well, at least it's temporary", and I said yeah, I might get better in another 6 to 8 years..."

259.    To which I replied and tried to lighten the mood by texting, "I think we need special institutions you can drop your wife off at for a decade, not allow her to use any sharp objects or credit cards, and an orderly comes in hourly and changes your sheets."

260.    To which Ms. Fenton responded to by texting, "That sounds kind of good right now."

261.    My wife's counsel exploited her fragile state while also exploiting my known and fully disclosed disabilities as they robbed us both of the sum total of both our life's savings, including our premarital retirement funds and even proceeds from our premarital homes, which had been invested into our beautiful Brentwood marital residence, worth over $900k today.

262.    They used fraudulent "default" protective orders, while refusing to use hundreds

Page **65** of **82**

Initials:

of pages of sworn testimony along with clear and convincing evidence, which I already had filed on Chancery Court record, showing that the charges were obscenely false.

263.    They lied in court on 8/29/2019 about allowing me to participate in the next hearing over the phone, while they wrongfully evicted me from my home, forcing me to become geographically dislocated by 600 miles, simply to survive the misconduct by the courts and counsel.

264.    After having forcibly rendered me physically unable to participate in the hearing in person, because I had no shelter or provision remaining within the State of Tennessee, after the court wrongfully evicted first my tenants (my only stream of income in that moment due to the misconduct by the courts and counsel) followed by the wrongful eviction of myself, at the very beginning of my "divorce" proceeding, before discovery even began. *(This was a "Class D Felony" crime by defendants Binkley and Story, as codified below.)*

## TENNESSEE PROPERTY LAWS – TENANCY BY THE ENTIRETY[102]

a) Tenancy by the entirety is based on the concept that those who are married are not separate persons; rather, they "are but one person." *Tindell v. Tindell,* 37 S.W. 1105, 1106 (Tenn. Ct. App. 1896) (quoting *Den v. Hardenbergh*, 10 N.J.L. 42, 45 (1828)); *see Taul v. Campbell*, 15 Tenn. (7 Yer.) 319, 333, 15 Tenn. 318 (1835) (noting that a husband and wife "take but one estate, as a corporation would take, being by the common law deemed but one person").

b) Co-tenants in a tenancy by the entirety do not hold their interest by moieties (by parts), they hold by the entirety: "Each is not seised of an undivided moiety, but both are . . . seised of the

---

[102]  https://bwp.tnble.org/wp-content/uploads/2019/09/Property-Law.pdf

Initials:

whole. They are seised, not *per my et per tout* [by the half and by the whole], but solely and simply *per tout* [by the whole]." *Tindell*, 37 S.W. at 1106 (quoting *Den*, 10 N.J.L. at 45).

c) Accordingly, "When property is held in a tenancy by the entirety, upon the death of one spouse, the survivor continues to own the whole in fee simple," *Bryant* at 400, and the laws of descent and distribution do not apply. *Grahl v. Davis,* 971 S.W.2d 373, 378 (Tenn. 1998) (citing *Sloan v. Jones,* 192 Tenn. 400, 241 S.W.2d 506, 509 (Tenn. 1951)).

d) Because spouses in a tenancy by the entirety are treated as one person, when the property is real estate, a spouse in such a tenancy cannot sever it unilaterally by transferring a portion of the property without the assent of the other spouse – doing so would destroy the other spouse's ownership interest in the whole. See Bryant 522 S.W.3d 392, 401 (citing *Tindell,* 37 S.W. at 1106). *But see* In re Estate of Fletcher 538 S.W.3d 444 (Tenn. 2017), which held that when funds are withdrawn from a bank account held by a married couple as tenants by the entirety, such funds cease to be entireties property.

e) This means that a deed of trust/mortgage signed by one spouse only does not create an encumbrance on the real property except as to the signer's right of survivorship. A judgment lien does not become a lien on the real property (even when recorded as required under Tennessee law). Under Tennessee law, however, a creditor of one spouse may get a lien on the survivorship interest of such debtor -spouse. *See In re Walls,* 45 Bankr. 145 (Bankr. E.D. Tenn. 1984).

---

265.   Ms. Fenton and I fluidly transferred debts amongst our credit lines, both secure and unsecure, revolving and term, to wherever the debts made the most financial sense for us both at

Page **67** of **82**

Initials:

any given time. (The lowest fees, the best interest rates, while trying to group associated charges for entity specific tax purposes and business write-offs.) This changed in different seasons of our marriage, depending upon our family's income, debts, goals, and challenges.

266.     We did not make any financial decisions of significant consequence without us both being in agreement, at the very least, at the point and time when the decisions were made.

267.     If any credit card balances were transferred from cards in my name to cards in Ms. Fenton's name (which was certainly no more the case than vice versa), it was done openly with her knowledge and consent at the time, and unquestionably did not account for very much of Ms. Fenton's total credit card liabilities at the time of our divorce.

268.     Transferring debts from credit cards in my name onto credit cards in Ms. Fenton's name certainly did not push her into bankruptcy as fraudulently implied by defendant Story.

269.     Upon information and belief, I do not recall any credit card transfers during 2018 or 2019. While we had almost completely paid off the credit cards in Ms. Fenton's name toward the end of 2017, with less than $5,000 outstanding, if my memory serves me correctly, prior to two vacations that Ms. Fenton took to Las Vegas Nevada and Pahrump Nevada at the end of 2017, followed shortly thereafter by her unilateral decision to get a divorce.

270.     The majority of debts on the credit cards in Ms. Fenton's name were due to her prematurely electing to rent a second Brentwood residence, immediately after announcing that she wanted to get a divorce, rather than waiting until we had a financially responsible exit strategy for our marriage, along with a sustainable transition strategy into separating our lives, income, property, and debts.

Page **68** of **82**

Initials:

271.    On the evening of April 22nd, 2018, Ms. Fenton abandoned our marital residence.

272.    Overnight from April 22nd into April 23rd, Ms. Fenton changed the account
credentials and contact information on all the income, banking, and credit accounts which our
family actively used at that time, to block my access.

273.    Ms. Fenton moved into an apartment she rented within a few days, where at some
point she changed her mailing address with our mortgage companies from our marital residence to
her new apartment, where she alone would receive any notices sent by the banks. (I was not
informed about this.) Absent being provided with ethical and legal notice by Ms. Fenton, our
mortgage companies, or the courts, I had no means of knowing or finding out, roughly a year later,
when she (I believe at the advice of her counsel), decided to quit paying our mortgage payments.

274.    I was in fact never notified by anyone when Ms. Fenton quit paying our mortgage
payments.

275.    I was in fact promised by Ms. Fenton that she would continue paying our mortgage
payments until we reached a settlement agreement, or until her first 14-month lease expired at her
apartment, or until further notice. I was never lawfully or ethically notified that Ms. Fenton would
not or could not pay our mortgages anymore.

276.    I was in fact never given an opportunity to make up for Ms. Fenton's shortfall with
our mortgage companies to save my multiple critical and even essential property interests.

277.    Both Ms. Fenton's decision to default upon our mortgage payments (which she was
then responsible for and had blocked my access to), as well as her decision to file for bankruptcy,
were all done secretly, without any lawful or ethical notice to me.

Initials:

278.    Despite placing the whole of my life's savings, proceeds from my premarital property and even my premarital retirement funds in jeopardy, by secretly defaulting upon our mortgage payments and filing for bankruptcy while specifically including our property in her bankruptcy estate and requesting to sell it in her bankruptcy filing, yet I was never provided any notice, hearing, nor an adversarial proceeding by the bankruptcy court, as was required by the Federal Rules of Bankruptcy Procedure and multiple sections of federal bankruptcy laws.

279.    In bankruptcy case 3:19-bk-02693, on Ms. Fenton's "Chapter-13 Plan", filed secretly by her counsel on 4/26/2019, in Doc 2, Page 5 of 5, there is a section titled "Part 9: Nonstandard Plan Provisions", which states in important part:

> ➢ "Debtor moves for permission to sell real property located at 1986 Sunny Side Drive Brentwood, TN 37027 Williamson County, within 180 days of confirmation with no payments being made in the interim. The liens of Bank of America, NA and BanCorp South shall be satisfied in full and all remaining proceeds after Debtor's homestead exemption and costs of sale shall be paid to the Chapter 13 Trustee for the benefit of the estate."

280.    There are several problems with the language above, but the fact that I was never even notified that the whole of my real property, my only real asset, my financial independence, and my wealth was all at stake yet not one single party, mortgage company, officer of the court, or court provided me with ethical and lawful notice that they were in the process of negotiating the liquidation/forfeiture of said property while I was a clearly deeded owner who was listed on the tax records is unconscionable.

Page **70** of **82**

Initials:

281.    I was in fact never given notice by any mortgage company or attorney on their behalf, nor by Ms. Fenton, nor by the bankruptcy court or the trustee as is required by the Federal Rules of Bankruptcy Procedure and multiple federal bankruptcy laws.

282.    While there was no action pending in the state courts at the time when the bankruptcy was filed and the bankruptcy estate was then formed, so there could be no expectation that another court might hear the property deprivation, since the bankruptcy was filed 39-days before the divorce was filed, the bankruptcy counsel, trustee, and judge were required to comply with the Federal Rules of Bankruptcy Procedure and subsequent federal bankruptcy laws.

283.    Short of an unlawful conspiracy spanning both Federal and State courts, there would be no expectation that another court might alleviate the responsibility of the bankruptcy trustee and the bankruptcy court of providing me and my two lawful roommates/tenants with "notice and a hearing" in either Federal District Court or in Federal Bankruptcy Court, specifically not in a state court, because the federal courts had both *original* and *exclusive* jurisdiction, since the bankruptcy filing preceded the divorce filing by 39-days. Additionally, the deprivation of the marital residence was "core" to the bankruptcy action, and was in fact one of the primary purposes for the bad faith fraudulent bankruptcy filing.

284.    The bankruptcy court, counsel, and trustee, likewise failed to initiate (or provide me with an opportunity to initiate) an "adversarial proceeding" as required in the F.R.B.P. Rule 7001. This was required for multiple reasons:

Page **71** of **82**

Initials:

> ➤ For the bankruptcy trustee to obtain possession of the marital residence, which was required by law before the court could sell my marital residence.

> ➤ Because our marital residence was lawfully in my possession and Ms. Fenton had abandoned the property on April 22nd, 2018.

285.    I can think of no reason short of a conspiracy spanning federal and state courts that the Bankruptcy Trustee would have failed to provide me and my two lawful tenants/roommates with notices and hearing in either Federal Bankruptcy Court or in Federal District Court as required by the Federal Rules of Bankruptcy Procedure Rule #7001 and subsequent bankruptcy laws (such as 11 U.S.C. § 363(h)(3), amongst others).

286.    Ms. Fenton later changed the address with our creditors, including our mortgage companies, from our marital residence to her apartment, where she alone had access to the mail.

287.    Absent Ms. Fenton providing me with legal and ethical notice about the state of our mortgage payments, I literally had no other means of finding out, except had her counsel and the bankruptcy court acted legally and ethically, after they entered the picture, but none of them did.

288.    I was only given short-term access to one credit card at a time after this point, for my consumable expenses which she offered to pay, since she was our family's primary breadwinner, and our only breadwinner (by her own priorities) at the time when she unexpectedly elected to get a divorce and abandoned our home.

289.    This was a preventative action on her part, not based upon any financial irresponsibility, impropriety, or betrayal on my part. I never cheated on or betrayed Ms. Fenton's

Initials:

trust in any way throughout our 13-year marriage. I was "all in" and I lost everything.

290.    On April 24th, 2018, Ms. Fenton officially "moved out" of our marital residence with two men and a truck who assisted her.

291.    On May 5th, 2018, Ms. Fenton presented me with a budget that she had created, insisting that she could afford to support both our marital household, including both mortgages, utilities, my consumable expenses and our pre-existing bills, along with a new Brentwood apartment for herself, entirely with her income as a licensed professional architect.

292.    Ms. Fenton even promised me at that time that she would pay for attorneys to represent us both throughout our divorce, which frankly made no sense to me.

293.    The next most significant source of unbudgeted expenses and probably debts during 2018-2019, (most of the final year of our marriage, I had no access to any of our income and credit lines in Ms. Fenton's name, because she changed the account credentials and contact information to lock me out immediately upon vacating our marital residence.

## TENNESSEE SUPREME COURT'S DEFINITION FOR "FRAUD" OR "FRAUDULENT"

1. Per Tenn. R. Sup. Ct. 1.0 – TERMINOLOGY, here is the Tennessee Supreme Court's definition of "fraud": "(d) "Fraud" or "fraudulent" denotes an intentionally false or misleading statement of material fact, an intentional omission from a statement of fact of such additional information as would be necessary to make the statements made not materially misleading, and such other conduct by a person intended to deceive a person or tribunal with respect to a material issue in a proceeding or other matter."

Initials:

## "ABUSIVE CIVIL ACTIONS" (T.C.A. TITLE-29, CHAPTER-41)

2.      Defendant Story used abuse of process, also referred to as "stalking by way of the courts"; codified by the State of Tennessee in Title 29, Chapter 41, under Abusive Civil Actions[103], to literally terrorize me under the color of law, with the power of the court. While refusing to subjugate her actions to the rule of law, the court rules, the federal and state rules of conduct, without honor, honesty, good-faith, or truth. Purely to exercise more domination and power over me than her office is ethically or lawfully allowed.

3.      I reported defendant Story's abusive misconduct to defendants Binkley[104], Beeler[105], Yarbrough[106], Ausbrooks[107], Anderson, Anderson, Clement, Bennett, McBrayer, Hivner[108], Coke[109], Garrett[110], the State, Admin Office[111], Appellate Court[112], Chancery Court[113],

---

[103]  https://law.justia.com/codes/tennessee/2019/title-29/chapter-41/

[104]  https://rico.jefffenton.com/evidence/2019-08-29_husbands-one-and-done-answer-to-all.pdf

[105]  Case 1:23-cv-01097-PLM-RSK, ECF No. 1-29, PageID.1665 ~ ECF No. 1-30, PageID.1793

[106]  Case 1:23-cv-01097-PLM-RSK, ECF No. 1-29, PageID.1665 ~ ECF No. 1-30, PageID.1793

[107]  Case 1:23-cv-01097-PLM-RSK, ECF No. 1-29, PageID.1665 ~ ECF No. 1-30, PageID.1793

[108]  https://rico.jefffenton.com/evidence/2022-02-01_affidavit-binkley-story-fraud-bias-void-orders.pdf
       https://rico.jefffenton.com/evidence/2020-07-08_tnsc-coa-ada-request-for-modification.pdf   (Case   1:23-cv-01097-PLM-RSK, ECF No. 1-30, PageID.1749-1752)

[109]  https://www.rico.jefffenton.com/evidence/2020-02-13_tnsc-aoc-ada-gc-john-coke-transcript.pdf
       https://www.rico.jefffenton.com/evidence/2020-02-13_tnsc-aoc-ada-gc-john-coke-phone-call.mp3

[110]  Case 1:23-cv-01097-PLM-RSK, ECF No. 1-29, PageID.1698

[111]  Case 1:23-cv-01097-PLM-RSK, ECF No. 1-29, PageID.1718-1721

[112]  Case 1:23-cv-01097-PLM-RSK, ECF No. 1-29, PageID.1684-1691
       Case 1:23-cv-01097-PLM-RSK, ECF No. 1-30, PageID.1749-1752

[113]  https://rico.jefffenton.com/evidence/2019-08-30_judgment-wrong-emergency-call-to-court.mp3
       Case 1:23-cv-01097-PLM-RSK, ECF No. 1-18, PageID.766 ~ ECF No. 1-22, PageID.1038

Page 74 of 82

Initials:

Supreme Court[114], BPR[115], the Williamson County Sherriff's Office[116], the Williamson County District Attorney's Office[117], the Tennessee Bureau of Investigations[118], the Federal Bureau of Investigations[119], the Acting United States Trustee for Region 8[120], over the Federal Judicial Districts of Kentucky and Tennessee[121], one of the bankruptcy trustees[122], and a Department of Justice USTP Trial Attorney[123], who was assigned to the bankruptcy fraud referral I submitted.

4.      Nobody to date has told me that anything I experienced in Williamson County Chancery Court or in the related case in the United States Bankruptcy Court for Middle District of Tennessee, was ethical or legal. They have all simply refused to get involved, intervene, or hold the bad actors accountable. Unconscionably, nobody to date has been willing to force defendant Story to obey the law, state and federal constitutions, and/or comply with the court's rules of

---

[114] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-27, PageID.1370 ~ ECF No. 1-28, PageID.1664
https://rico.jefffenton.com/evidence/2021-01-19_fenton-seeking-help-tnsc-coa-aoc-bpr-fbi-ustp.pdf

[115] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-29, PageID.1699-1703
Case 1:23-cv-01097-PLM-RSK, ECF No. 1-29, PageID.1709-1715

[116] https://rico.jefffenton.com/evidence//2023-12-13_wcso-racketeering-official-oppression.pdf

[117] https://tennesseeda.org/district-21/

[118] https://www.tn.gov/tbi.html

[119] https://www.fbi.gov/contact-us/field-offices/memphis/about
https://rico.jefffenton.com/evidence/2021-12-02_fbi-mark-shafer-binkley-story-corruption.pdf
https://rico.jefffenton.com/evidence/2021-12-02_fbi-mark-shafer-binkley-story-corruption.mp3

[120] https://www.justice.gov/ust/ust-regions-r08
https://rico.jefffenton.com/evidence/2022-03-15_ustp-bk-fraud-referral-confirmed-no-notice.pdf
https://rico.jefffenton.com/evidence/2019-04-26_ausbrooks-story-fraudulent-bk-petition.pdf

[121] https://www.linkedin.com/in/paul-ustp-randolph-0872b642

[122] https://rico.jefffenton.com/evidence/2020-07-02_bk-trustee-john-mclemore-call-declaration.pdf
https://rico.jefffenton.com/evidence/2020-07-02_ch7-bk-trustee-john-mclemore-phone-call.mp3

[123] https://rico.jefffenton.com/evidence/2022-03-10_doj-ustp-megan-seliber-bk-fraud-referral.mp3
Case 1:23-cv-01097-PLM-RSK, ECF No. 1-30, PageID.1760-1761

Initials:

professional conduct. The courts have a responsibility to obey the law, help the injured party, and vacate void judgments. This is not within the discretionary purview of the courts to ignore.

## VEXATIOUS SERVICE (STALKING BY WAY OF THE COURTS)

### FIRST SERVICE

5.    I was served via standard mail, no signature required, on June 15th, 2019.

6.    I hired attorney Brittany Gates to represent me in the matter, just a few days later on June 19th, 2019.

7.    As confirmed in an email[124] to me from Attorney Britany Gates on 6/19/2019, "I've reached out to Virginia and we've scheduled a call for tomorrow."

8.    Defendant Story still had me served *two more times* on 6/20/2019, while she also filed a *"Motion to Deem Husband Served with Reasonable Efforts"* in the Chancery Court at 9:17am on 6/20/2019. This was after defendant Story *knew* I had already accepted service and she had even spoken with my attorney, Brittany Gates, the day prior.

### SECOND SERVICE (MOTION TO DEEM HUSBAND SERVED)

9.    At approximately 4:20pm on 6/20/2019, defendant Story's paralegal Heidi Macy served me directly *ex parte* via email[125]. Despite the fact that defendant Story had already been contacted by my counsel the day prior, knew I had already received and accepted service, and that it was inappropriate to communicate with litigants *ex parte* instead of through their counsel.

---

[124]   https://rico.jefffenton.com/evidence/2019-06-19_hired-attorney-gates-who-notified-story.pdf

[125]   https://rico.jefffenton.com/evidence/2019-06-20_abusive-civil-action-by-story-exparte-service.pdf

Initials:

10. After receiving defendant Story's *ex parte* email service[126] on 6/20/2019, I emailed[127] defendants Story and Yarbrough, along with Attorney Gates and Ms. Heidi Macy confirming that **I had received service** via regular USPS "snail mail", as was evident in having hired Attorney Brittany Gates to represent me. I communicated that "I have no desire to postpone these proceedings and am not trying to interfere in any way." Further stressing that I "have not been attempting to avoid service in this matter" (as falsely accused), so there was absolutely no need for a hearing to prove that I have been served. (This was all abusive overkill.)

## THIRD SERVICE (PLUS A FRAUDULENT "PROTECTIVE ORDER")

11. Roughly an hour after I sent defendants Story and Yarbrough this email confirming my receipt of service, I was served (divorce papers) yet again. This time by four deputies from the Williamson County Sheriff's Office[128], along with a completely unnecessary "Order of Protection Ex Parte" based upon a coached, unsigned personal statement[129], allegedly by my wife, filed by Story's firm, which was almost entirely false and fraudulent.

12. Here is the audio recording[130] of me being served by the Williamson County Sherriff's Office at my home on 6/20/2019, at roughly 7:15pm. Listen to how I sound in this audio recording talking with the Sheriff's Deputies, as compared to defendant Story's false and fraudulent claims about me. I am not the abusive monster or social misfit that defendant Story

---

[126] https://rico.jefffenton.com/evidence/2019-06-20_abusive-civil-action-by-story-exparte-service.pdf

[127] https://rico.jefffenton.com/evidence/2019-06-20_notification-to-story-husband-accepted-service.pdf

[128] https://rico.jefffenton.com/evidence/2019-06-20_wcso-exparte-order-of-protection-service.mp3

[129] https://rico.jefffenton.com/evidence/2019-06-20_wifes-false-unsigned-personal-testimony-for-op.pdf

[130] https://rico.jefffenton.com/evidence/2019-06-20_wcso-exparte-order-of-protection-service.mp3

Initials:

colored the court records to pretend.  Defendants Binkley and Beeler never showed any interest in the truth or justice though, while they catered to defendant Story's every abusive demand.

## THE TRUTH ABOUT MY PERSON

13.    I have never laid a hand on my wife in anger, nor have I ever threatened to.  Never in my adult life have I been arrested or charged with any crime.  I have no history of violence, domestic disputes/disturbances, or instability of any sort.  I never even received a single traffic citation during my 25 peaceful years as a hardworking, taxpaying, Tennessee resident.  I've held multiple jobs requiring intense state and federal background checks, including by the FBI, the Department of Homeland Security, the Las Vegas Metropolitan Police Department, and others.

14.    I responsibly held a concealed weapons permit in the State of Tennessee for over fifteen years without incidence.

15.    I was a licensed real estate agent in the State of Tennessee for 16 ½ years, with access to hundreds-of-millions of dollars' worth of real estate, without one single complaint or professional impropriety of any kind.

16.    Prior to this my wife wanted to remain friends after our divorce, and even attended a counseling session with me[131], a few months earlier for that exact purpose.  We never terminated communication as defendant Story pretended.  We weren't at odds as defendant Story pretended either.  We were on relatively good terms, considering our circumstances, while I had gone above and beyond to ensure her quiet peaceful enjoyment of her life and her apartment which she had

---

[131]  https://rico.jefffenton.com/evidence/2019-01-22_wifes-birthday-and-counseling-together.pdf

Page **78** of **82**

Initials:

chosen, after leaving me[132].

## THE STORY VS THE TRUTH (THE TRUTH NEVER HAD A CHANCE)

17.      Attorney Story fabricated an almost exclusively fraudulent narrative, while

leveraging this fraudulent *"Order of Protection Ex Parte"* to assassinate my character in front of her

close family friend and presiding judge Michael W. Binkley, before he ever met me.

18.      This was purely heavy-handed abuse of process to bully me, intimidate me, and

overwhelm me, while falsifying the court records to defame my character and bias the court against

me.  Sowing defamatory fiction rather than fact directly into the court records, when in fact this

should all have never been allowed on court record, because it was never needed and was not filed

in good faith, for the purposes claimed, in the *pursuit of justice* as is required by the Federal Rules

of Civil Procedure of all pleadings.

## STEALING MY HOME[133] (MOTION TO SELL THE MARITAL RESIDENCE[134])

19.      A few weeks later I was hit by another vexatious "legal" attack by defendants Story

and Yarbrough, to force the sale of my marital residence[135], when the Chancery Court didn't even

have the lawful jurisdiction to hear or decide that matter, because it was part of a *federal bankruptcy*

*estate*, filed and formed 39-days prior to any action being filed in Chancery Court, while also being

*core* to that bankruptcy action.  This gave the federal courts both *original* and *exclusive* jurisdiction

---

[132]  https://rico.jefffenton.com/evidence/2019-02-05_menopause-narcolepsy-night-sweats-not-stalker.pdf

[133]  https://rico.jefffenton.com/evidence/2023-05-31_1986-sunnyside-brentwood-tn-appreciation.pdf

[134]  https://rico.jefffenton.com/evidence/2019-07-17_chancery-motion-to-sell-marital-residence.pdf

[135]  https://rico.jefffenton.com/evidence/2019-07-17_chancery-motion-to-sell-marital-residence.pdf

Page **79** of **82**

Initials:

over my home. Under the circumstances, the state courts were specifically prohibited from exercising jurisdiction over my marital residence, to ensure that my property interests were provided *adequate protection* as required by the Federal Rules of Bankruptcy Procedure and subsequent federal bankruptcy laws.

20.    Unfortunately, that was the purpose of the conspiracy between the state and federal courts, in this case, to *strategically circumvent* the Federal Rules of Bankruptcy Procedure and multiple sections of bankruptcy codes, which protected my property investments, interests, and rights.

21.    **11 U.S.C. § 363(h)**[136]: "Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or ( c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, **only if** - (3) **the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners."**

22.    It was physically impossible for the forced sale of my home to be of greater benefit to the bankruptcy estate than losing it would be a detriment to me.

23.    Had the bankruptcy rules been followed in proper form, and the laws obeyed, neither state nor federal courts could lawfully deprive me of my home or property interests.

---

[136]  https://rico.jefffenton.com/evidence/2020-07-02_bk-trustee-john-mclemore-call-declaration.pdf
https://rico.jefffenton.com/evidence/2020-07-02_bk-trustee-john-mclemore-recorded-call.mp3

Initials:

## RICO "COLOR OF LAW" CONSPIRACY AGAINST MY RIGHTS & PROPERTY

24.    There was a RICO "color of law" conspiracy[137] against my rights and my property which spanned the Williamson County Chancery Court through the United States Federal Bankruptcy Court for the Middle District of Tennessee, involving two law firms who represented my wife in bad faith during 2019, STORY, ABERNATHY AND CAMPBELL, PLLP and ROTHSCHILD & AUSBROOKS, PLLC.

25.    This included a civil conspiracy and criminal misconduct involving the following people: Virginia Lee Story, Kathryn Lynn Yarbrough, Michael Weimar Binkley, Elaine Beaty Beeler, Sara Rebecca Baxter, Mary Elizabeth Maney Ausbrooks, Alexander Sergey Koval, Henry Edward Hildebrand III, Charles M. Walker, Thomas Earl Eugene Anderson, Roy Patrick Marlin, and Samuel Forrest Anderson.

26.    This has all been substantiated in previous federal filings of this lawsuit. For the sake of reducing redundancy, I'm not going to delve very deeply here into the jurisdiction over the marital residence or the conspiracy between the state and federal courts (and the members therein), within this declaration. Please refer to the documents cited below for more sworn testimony, combined with clear and convincing evidence, on the different aspects of the felonies committed by the defendants herein.

---

[137]    https://rico.jefffenton.com/evidence/2024-01-12_irrefutable-proof-of-criminal-conspiracy.pdf

Page **81** of **82**

Initials:

## DECLARATION

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct, except as to matters herein stated to be on information and belief, and as to such matters, I certify as aforesaid that I verily believe the same to be true.

Executed on March 25, 2024

**JEFFREY RYAN FENTON, PRO SE**

17195 SILVER PARKWAY, #150
FENTON, MI, 48430-3426
JEFF.FENTON@LIVE.COM
(P) 615.837.1300

Page **82** of **82**