determination of personal injury awards or wrongful death claims from the bankruptcy court's core judicial authority. 28 U.S.C. § 157(b)(2)(O).

Bankruptcy courts may also hear "related non-core" proceedings. *Cf. In re Gallucci*, 931 F.2d 738 (11th Cir. 1991) (bankruptcy court may not hear non-core, nonrelated matters). A proceeding "relates to" a bankruptcy case if its outcome affects the amount of property available for distribution of the allocation of property to creditors. *In re Emerald Acquisition Corp.*, 170 B.R. 632 (Bankr. N.D. Ill. 1994). In a non-core related case, absent the consent of the parties, the bankruptcy court must submit findings of fact and conclusions of law to the district court, which then enters judgment in the case. 28 U.S.C. § 157(c)(1) and (2). Case law has defined "related proceedings" as those proceedings that, in the absence of a petition in bankruptcy, the parties could bring in a state or district court. *See Moody v. Amoco Oil Company*, 734 F.2d 1200 (7th Cir. 1984) cert. den'd, 469 U.S. 982 (1984). *See also, In re Best Prod. Co., Inc.*, 168 B.R. 35 (Bankr. S.D. N.Y. 1994).

The bankruptcy judge determines whether a matter is core or non-core. *Eubanks v. Esenjay Petro. Corp.*, 152 B.R. 459 (E.D. La. 1993). The judge may make this determination on her own motion or upon the timely motion of a party. 28 U.S.C. § 157(b)(3). The bankruptcy judge's determination that a proceeding is core -- either express or implied from his entering a final order -- is presumably subject to review on appeal. However, unless the objecting party appeals the determination in a timely fashion and the court reverses its decision, the final judgment or order will bind the parties even though the matter may have been truly non-core. *See DuVoisin v. Foster (In re Southern Indust. Banking Corp.)*, 809 F.2d 329, 331 (6th Cir. 1987).

5. Jurisdiction Over Property

28 U.S.C. § 1334(e) grants the bankruptcy court exclusive jurisdiction over all property, wherever located, of the debtor and the estate as of the commencement of the case. This section makes clear that a bankruptcy proceeding constitutes, in large measure, an in rem action for the purposes of collection, liquidation, and distribution of an estate. To this end, the bankruptcy court has exclusive jurisdiction over virtually all the debtor's property interests, disputes, ownership or lien interests in that property and about its disposition. In general, the property is accorded the bankruptcy court's protection, even if it was subject to the jurisdiction of another court at the time the bankruptcy petition was filed. This jurisdictional provision directly affects any divorce action the non-debtor spouse may seek to commence or which is ongoing when the bankruptcy proceeding is filed. Absent abstention by the bankruptcy court of its exclusive jurisdiction over the debtor's property, the state court may not exercise jurisdiction over property of the debtor or property of the bankruptcy estate. See e.g., *In re Palmer*, 78 B.R. 402, 405-06 (Bankr. E.D.N.Y. 1987).

F. Bankruptcy Administration

One matter causing confusion and frustration to nonbankruptcy practitioners is the number of parties involved in the administration of the bankruptcy case. These parties include the bankruptcy judge, the United States Trustee's office, a panel or private trustee, the estate's professionals and, in limited circumstances, examiners. While a detailed discussion of the roles of each of these parties to a bankruptcy case would provide a topic for an entirely separate paper, a brief description is necessary for understanding the basics of bankruptcy.

1. The Bankruptcy Judge

Although technically not an "administrator," the bankruptcy judge (as described above) presides over cases and proceedings before the bankruptcy court. The role of the bankruptcy judge is comparable to that of other judges, i.e., to act as a finder of fact and to make conclusions of law based on presentation of evidence and argument to the court. The absence of the bankruptcy judge in administration is a noteworthy development of modern bankruptcy. Prior to the enactment of the Bankruptcy Code, the bankruptcy judge not only exercised judicial decision-making authority, but also supervised the administration of bankruptcy cases. The dual-role of the bankruptcy judge was, in the opinion of many, the most glaring defect in the former bankruptcy system. The very nature of administrative duties imposed by the court under the Bankruptcy Act encouraged, if not required informal contact among the bankruptcy judge, lawyers, and others participating in the bankruptcy administration. For this reason, the Bankruptcy Code separates the judicial and administrative functions. The United States Trustee's Office performs the administrative functions previously handled by bankruptcy judges.

2. The United States Trustee

The United States Trustee operates under the supervision of the United States Attorney General. The twenty-one regions, which consist of groups of federal judicial districts, comprise the United States Trustee system. 28 U.S.C. § 581(a). The Attorney General appoints a United States Trustee for each

Stat. 1091, 1160; Oct. 6, 1917, ch. 97, §§ 1, 2, 40 Stat. 395; June 10, 1922, ch. 216, §§ 1, 2, 42 Stat. 634).

Section consolidates certain provisions of sections 41(3), 371(3) and 371(4) of title 28, U.S.C., 1940 ed. Other provisions of sections 41(3) and 371(4), relating to seizures, are incorporated in section 1356 of this title. (See reviser's note thereunder.)

The "saving to suitors" clause in sections 41(3) and 371(3) of title 28, U.S.C., 1940 ed., was changed by substituting the words "any other remedy to which he is otherwise entitled" for the words "the right of a common law remedy where the common law is competent to give it." The substituted language is simpler and more expressive of the original intent of Congress and is in conformity with Rule 2 of the Federal Rules of Civil Procedure abolishing the distinction between law and equity.

Provisions of section 41(3) of title 28, U.S.C., 1940 ed., based on the 1917 and 1922 amendments, relating to remedies under State workmen's compensation laws, were deleted. Such amendments were held unconstitutional by the Supreme Court. (See *Knickerbocker Ice Co. v. Stewart*, 1920, 40 S.Ct. 438, 253 U.S. 149, 64 L.Ed. 834, and *State of Washington v. W. C. Dawson & Co.*, 1924, 44 S.Ct. 302, 264 U.S. 219, 68 L.Ed. 646.)

Words "libellant or petitioner" were substituted for "suitors" to describe moving party in admiralty cases.

Changes were made in phraseology.

#### 1949 ACT

This section amends section 1333(a)(1) of title 28, U.S.C., by substituting "suitors" for "libellant or petitioner" to conform to the language of the law in existence at the time of the enactment of the revision of title 28.

#### AMENDMENTS

1949—Subd. (1). Act May 24, 1949, substituted "suitors" for "libellant or petitioner".

### § 1334. Bankruptcy cases and proceedings

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

(d) Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. Subsection (c) and this subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—

(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

(2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

(June 25, 1948, ch. 646, 62 Stat. 931; Pub. L. 95–598, title II, § 238(a), Nov. 6, 1978, 92 Stat. 2667; Pub. L. 98–353, title I, § 101(a), July 10, 1984, 98 Stat. 333; Pub. L. 99–554, title I, § 144(e), Oct. 27, 1986, 100 Stat. 3096; Pub. L. 101–650, title III, § 309(b), Dec. 1, 1990, 104 Stat. 5113; Pub. L. 103–394, title I, § 104(b), Oct. 22, 1994, 108 Stat. 4109; Pub. L. 109–8, title III, § 324(a), title VIII, § 802(c)(2), title XII, § 1219, Apr. 20, 2005, 119 Stat. 98, 145, 195.)

#### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §§ 41(19) and 371(6) (Mar. 3, 1911, ch. 231, §§ 24, par. 19, 256, par. 6, 36 Stat. 1093, 1160).

Changes in phraseology were made.

#### AMENDMENTS

2005—Subsec. (b). Pub. L. 109–8, § 324(a)(1), substituted "Except as provided in subsection (e)(2), and notwithstanding" for "Notwithstanding".

Subsec. (c)(1). Pub. L. 109–8, § 802(c)(2), substituted "Except with respect to a case under chapter 15 of title 11, nothing in" for "Nothing in".

Subsec. (d). Pub. L. 109–8, § 1219, substituted "made under subsection (c)" for "made under this subsection" and "Subsection (c) and this subsection" for "This subsection".

Subsec. (e). Pub. L. 109–8, § 324(a)(2), added subsec. (e) and struck out former subsec. (e) which read as follows: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."

1994—Subsecs. (c)(2), (d). Pub. L. 103–394, § 104(b)(2), inserted "(other than a decision not to abstain in a proceeding described in subsection (c)(2))" after "subsection" in second sentence of subsec. (c)(2) and designated that sentence and third sentence of subsec. (c)(2) as subsec. (d). Former subsec. (d) redesignated (e).

Subsec. (e). Pub. L. 103–394, § 104(b)(1), redesignated subsec. (d) as (e).

1990—Subsec. (c)(2). Pub. L. 101–650 inserted in second sentence "or not to abstain" after "to abstain" and "by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title" before period at end.

1986—Subsec. (d). Pub. L. 99–554 substituted "and of property of the estate" for "and of the estate".

1984—Pub. L. 98–353 in amending section generally, substituted "cases" for "matters" in section catchline, designated existing provision as subsec. (a), and in subsec. (a) as so designated, substituted "Except as provided in subsection (b) of this section, the district" for "The district" and "original and exclusive jurisdiction

https://rico.jefffenton.com/evidence/2019-04-26_conspiracy-against-rights-under-color-of-law.pdf     Case 1:23-cv-01097-PLM-RSK (FENTON v. STORY et al.)

of all cases under title 11" for "original jurisdiction, exclusive of the courts of the States, of all matters and proceedings in bankruptcy", and added subsecs. (b) to (d).

1978—Pub. L. 95-598 directed the general amendment of section to relate to bankruptcy appeals, which amendment did not become effective pursuant to section 402(b) of Pub. L. 95-598, as amended, set out as an Effective Date note preceding section 101 of Title 11, Bankruptcy.

EFFECTIVE DATE OF 2005 AMENDMENT

Pub. L. 109-8, title III, § 324(b), Apr. 20, 2005, 119 Stat. 98, provided that: "This section [amending this section] shall only apply to cases filed after the date of enactment of this Act [Apr. 20, 2005]."

Amendment by sections 802(c)(2) and 1219 of Pub. L. 109-8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under Title 11, Bankruptcy, before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109-8, set out as a note under section 101 of Title 11.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103-394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under Title 11, Bankruptcy, before Oct. 22, 1994, see section 702 of Pub. L. 103-394, set out as a note under section 101 of Title 11.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99-554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99-554, set out as a note under section 581 of this title.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98-353 effective July 10, 1984, except that subsec. (c)(2) not applicable with respect to cases under Title 11, Bankruptcy, that are pending on July 10, 1984, or to proceedings arising in or related to such cases, see section 122(a), (b) of Pub. L. 98-353, set out as an Effective Date note under section 151 of this title.

JURISDICTION OVER AND TRANSFER OF BANKRUPTCY CASES AND PROCEEDINGS

Pub. L. 98-353, title I, § 115, July 10, 1984, 98 Stat. 343, provided that:

"(a) On the date of the enactment of this Act [July 10, 1984] the appropriate district court of the United States shall have jurisdiction of—

"(1) cases, and matters and proceedings in cases, under the Bankruptcy Act [former Title 11, Bankruptcy] that are pending immediately before such date in the bankruptcy courts continued by section 404(a) of the Act of November 6, 1978 (Public Law 95-598; 92 Stat. 2687) [formerly set out as a note preceding section 151 of this title], and

"(2) cases under title 11 of the United States Code, and proceedings arising under title 11 of the United States Code or arising in or related to cases under title 11 of the United States Code, that are pending immediately before such date in the bankruptcy courts continued by section 404(a) of the Act of November 6, 1978 (Public Law 95-598; 92 Stat. 2687).

"(b) On the date of the enactment of this Act [July 10, 1984], there shall be transferred to the appropriate district court of the United States appeals from final judgments, orders, and decrees of the bankruptcy courts pending immediately before such date in the bankruptcy appellate panels appointed under section 405(c) of the Act of November 6, 1978 (Public Law 95-598; 92 Stat. 2685) [formerly set out as a note preceding section 1471 of this title]."

### § 1335. Interpleader

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

(June 25, 1948, ch. 646, 62 Stat. 931; Pub. L. 109-2, § 4(b)(1), Feb. 18, 2005, 119 Stat. 12.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., § 41(26) (Mar. 3, 1911, ch. 231, § 24, par. 26, as added Jan. 20, 1936, ch. 13, § 1, 49 Stat. 1096).

Words "civil action" were substituted for "suits in equity"; word "plaintiff" was substituted for "complainant"; and word "judgment" was substituted for "decree," in order to make the language of this section conform with the Federal Rules of Civil Procedure.

The words "duly verified" following "in the nature of interpleader," near the beginning of the section, were omitted. Under Rule 11 of the Federal Rules of Civil Procedure pleadings are no longer required to be verified or accompanied by affidavit unless specially required by statute. Although verification was specially required by section 41(26) of title 28, U.S.C., 1940 ed., the need therefor is not apparent.

Provisions of section 41(26)(b) of title 28, U.S.C., 1940 ed., relating to venue are the basis of section 1397 of this title. (See, also, reviser's note under said section.)

Subsections (c) and (d) of said section 41(26) relating to issuance of injunctions constitute section 2361 of this title. (See reviser's note under said section.)

Subsection (e) of such section 41(26), relating to defense in nature of interpleader and joinder of additional parties, was omitted as unnecessary, such matters being governed by the Federal Rules of Civil Procedure.

Changes were made in phraseology.

AMENDMENTS

2005—Subsec. (a)(1). Pub. L. 109-2 inserted "subsection (a) or (d) of" before "section 1332".

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109-2 applicable to any civil action commenced on or after Feb. 18, 2005, see section

attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.

(June 25, 1948, ch. 646, 62 Stat. 957.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., § 831 (R.S. § 984; June 10, 1921, ch. 18, § 304, 42 Stat. 24).

Section as revised conforms to existing Federal Practice. See note to subdivision (d) of Rule 54 of the Federal Rules of Civil Procedure. For discussion as to verification of bill of costs under existing practice, see—8 Hughes, Federal Practice, Jurisdiction and Procedure—Civil and Criminal, § 6441.

Words "or allowed by the General Accounting Office" were omitted as unnecessary. That office will not allow items in a tax bill for costs against the United States unless such bill has been taxed by the court, and the court, under this section, cannot tax as costs items in an unverified bill.

Changes were made in phraseology.

## § 1925. Admiralty and maritime cases

Except as otherwise provided by Act of Congress, the allowance and taxation of costs in admiralty and maritime cases shall be prescribed by rules promulgated by the Supreme Court.

(June 25, 1948, ch. 646, 62 Stat. 957.)

HISTORICAL AND REVISION NOTES

This section was drafted to make possible the promulgation of comprehensive and uniform rules governing costs in admiralty. Various enactments of Congress, all over 100 years old, relate to particular features of such matter, but do not set forth any comprehensive and uniform procedure. See, for example, sections 818, 826, and 827 of title 28, U.S.C., 1940 ed.

## § 1926. Court of Federal Claims

(a) The Judicial Conference of the United States shall prescribe from time to time the fees and costs to be charged and collected in the United States Court of Federal Claims.

(b) The court and its officers shall collect only such fees and costs as the Judicial Conference prescribes. The court may require advance payment of fees by rule.

(June 25, 1948, ch. 646, 62 Stat. 957; Pub. L. 97–164, title I, § 139(p)(1), Apr. 2, 1982, 96 Stat. 44; Pub. L. 102–572, title IX, § 902(b), Oct. 29, 1992, 106 Stat. 4516.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., § 304 (Mar. 3, 1911, ch. 231, § 191, 36 Stat. 1144).

For distribution of other provisions of section 304 of title 28, U.S.C., 1940 ed., see Distribution Table.

Changes were made in phraseology.

AMENDMENTS

1992—Pub. L. 102–572 substituted "Court of Federal Claims" for "Claims Court" as section catchline and "United States Court of Federal Claims" for "United States Claims Court" in subsec. (a).

1982—Pub. L. 97–164 substituted "Claims Court" for "Court of Customs and Patent Appeals" as section catchline and, in text substituted provisions directing the Judicial Conference of the United States to prescribe from time to time the fees and costs to be charged and collected in the United States Claims Court and directing the court and its officers to collect only such fees and costs as the Judicial Conference prescribes, with the court authorized to require advance payment of fees by rule for provisions which had directed that fees and costs in the Court of Customs and Patent Appeals be fixed by a table of fees adopted by such court and approved by the Supreme Court, that the fees and costs so fixed not exceed the fees and costs charged in the Supreme Court, and that the fees be accounted for and paid over to the Treasury.

EFFECTIVE DATE OF 1992 AMENDMENT

Amendment by Pub. L. 102–572 effective Oct. 29, 1992, see section 911 of Pub. L. 102–572, set out as a note under section 171 of this title.

EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by Pub. L. 97–164 effective Oct. 1, 1982, see section 402 of Pub. L. 97–164, set out as a note under section 171 of this title.

COURT FEES FOR ELECTRONIC ACCESS TO INFORMATION

Judicial Conference to prescribe reasonable fees for collection by courts under this section for access to information available through automatic data processing equipment and fees to be deposited in Judiciary Automation Fund, see section 303 of Pub. L. 102–140, set out as a note under section 1913 of this title.

## § 1927. Counsel's liability for excessive costs

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

(June 25, 1948, ch. 646, 62 Stat. 957; Pub. L. 96–349, § 3, Sept. 12, 1980, 94 Stat. 1156.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., § 829 (R.S. § 982).

Word "personally" was inserted upon authority of *Motion Picture Patents Co. v. Steiner et al.*, 1912, 201 F. 63, 119 C.C.A. 401. Reference to "proctor" was omitted as covered by the revised section.

See definition of "court of the United States" in section 451 of this title.

Changes were made in phraseology.

AMENDMENTS

1980—Pub. L. 96–349 substituted judicial authorization to require attorneys to satisfy excess costs, expenses, and attorneys' fees reasonably incurred because of multiplication of proceedings for such prior authority to impose liability for increased costs based on multiplication of proceedings.

## § 1928. Patent infringement action; disclaimer not filed

Whenever a judgment is rendered for the plaintiff in any patent infringement action involving a part of a patent and it appears that the patentee, in his specifications, claimed to be, but was not, the original and first inventor or discoverer of any material or substantial part of the thing patented, no costs shall be included in such judgment, unless the proper disclaimer has been filed in the United States Patent and Trademark Office prior to the commencement of the action.

(June 25, 1948, ch. 646, 62 Stat. 957; Pub. L. 106–113, div. B, § 1000(a)(9) [title IV, § 4732(b)(17)], Nov. 29, 1999, 113 Stat. 1536, 1501A–585.)

AMENDMENTS

2008—Subsecs. (e) to (h). Pub. L. 110–325 added subsecs. (e) to (h).

EFFECTIVE DATE OF 2008 AMENDMENT

Amendment by Pub. L. 110–325 effective Jan. 1, 2009, see section 8 of Pub. L. 110–325, set out as a note under section 705 of Title 29, Labor.

## § 12202. State immunity

A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in[1] Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

(Pub. L. 101–336, title V, §502, July 26, 1990, 104 Stat. 370.)

REFERENCES IN TEXT

This chapter, referred to in text, was in the original "this Act", meaning Pub. L. 101–336, July 26, 1990, 104 Stat. 327, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 12101 of this title and Tables.

## § 12203. Prohibition against retaliation and coercion

### (a) Retaliation

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

### (b) Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

### (c) Remedies and procedures

The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to subchapter I, subchapter II and subchapter III, respectively.

(Pub. L. 101–336, title V, §503, July 26, 1990, 104 Stat. 370.)

REFERENCES IN TEXT

This chapter, referred to in subsecs. (a) and (b), was in the original "this Act", meaning Pub. L. 101–336, July 26, 1990, 104 Stat. 327, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 12101 of this title and Tables.

---

[1] So in original. Probably should be "in a".

CONSTITUTIONALITY

For constitutionality of section 503 of Pub. L. 101–336, see Congressional Research Service, The Constitution of the United States of America: Analysis and Interpretation, Appendix 1, Acts of Congress Held Unconstitutional in Whole or in Part by the Supreme Court of the United States.

## § 12204. Regulations by Architectural and Transportation Barriers Compliance Board

### (a) Issuance of guidelines

Not later than 9 months after July 26, 1990, the Architectural and Transportation Barriers Compliance Board shall issue minimum guidelines that shall supplement the existing Minimum Guidelines and Requirements for Accessible Design for purposes of subchapters II and III of this chapter.

### (b) Contents of guidelines

The supplemental guidelines issued under subsection (a) shall establish additional requirements, consistent with this chapter, to ensure that buildings, facilities, rail passenger cars, and vehicles are accessible, in terms of architecture and design, transportation, and communication, to individuals with disabilities.

### (c) Qualified historic properties

#### (1) In general

The supplemental guidelines issued under subsection (a) shall include procedures and requirements for alterations that will threaten or destroy the historic significance of qualified historic buildings and facilities as defined in 4.1.7(1)(a) of the Uniform Federal Accessibility Standards.

#### (2) Sites eligible for listing in National Register

With respect to alterations of buildings or facilities that are eligible for listing in the National Register of Historic Places under division A of subtitle III of title 54, the guidelines described in paragraph (1) shall, at a minimum, maintain the procedures and requirements established in 4.1.7(1) and (2) of the Uniform Federal Accessibility Standards.

#### (3) Other sites

With respect to alterations of buildings or facilities designated as historic under State or local law, the guidelines described in paragraph (1) shall establish procedures equivalent to those established by 4.1.7(1)(b) and (c) of the Uniform Federal Accessibility Standards, and shall require, at a minimum, compliance with the requirements established in 4.1.7(2) of such standards.

(Pub. L. 101–336, title V, §504, July 26, 1990, 104 Stat. 370; Pub. L. 113–287, §5(k)(5), Dec. 19, 2014, 128 Stat. 3270.)

REFERENCES IN TEXT

This chapter, referred to in subsecs. (a) and (b), was in the original "this Act", meaning Pub. L. 101–336, July 26, 1990, 104 Stat. 327, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 12101 of this title and Tables.

AMENDMENTS

2014—Subsec. (c)(2). Pub. L. 113–287 substituted "division A of subtitle III of title 54" for "the National Historic Preservation Act (16 U.S.C. 470 et seq.)".

§ 5.18                                                              31 CFR Subtitle A (7-1-19 Edition)

285.13 for standards defining when a "delinquency" is "resolved" for purposes of this prohibition.

(b) *Suspension or revocation of eligibility for licenses, permits, or privileges.* Unless prohibited by law, Treasury entities should suspend or revoke licenses, permits, or other privileges for any inexcusable or willful failure of a debtor to pay a debt. The Treasury entity responsible for distributing the licenses, permits, or other privileges will establish policies and procedures governing suspension and revocation for delinquent debtors. If applicable, Treasury entities will advise the debtor in the notice required by § 5.4 of this part of the Treasury entities' ability to suspend or revoke licenses, permits or privileges. *See* § 5.4(a)(16) of this part.

§ 5.18 **How does a debtor request a special review based on a change in circumstances such as catastrophic illness, divorce, death, or disability?**

(a) *Material change in circumstances.* A debtor who owes a Treasury debt may, at any time, request a special review by the applicable Treasury entity of the amount of any offset, administrative wage garnishment, or voluntary payment, based on materially changed circumstances beyond the control of the debtor such as, but not limited to, catastrophic illness, divorce, death, or disability.

(b) *Inability to pay.* For purposes of this section, in determining whether an involuntary or voluntary payment would prevent the debtor from meeting essential subsistence expenses (costs incurred for food, housing, clothing, transportation, and medical care), the debtor shall submit a detailed statement and supporting documents for the debtor, his or her spouse, and dependents, indicating:

(1) Income from all sources;
(2) Assets;
(3) Liabilities;
(4) Number of dependents;
(5) Expenses for food, housing, clothing, and transportation;
(6) Medical expenses; and
(7) Exceptional expenses, if any.

(c) *Alternative payment arrangement.* If the debtor requests a special review under this section, the debtor shall submit an alternative proposed payment schedule and a statement to the Treasury entity collecting the debt, with supporting documents, showing why the current offset, garnishment or repayment schedule imposes an extreme financial hardship on the debtor. The Treasury entity will evaluate the statement and documentation and determine whether the current offset, garnishment, or repayment schedule imposes extreme financial hardship on the debtor. The Treasury entity shall notify the debtor in writing of such determination, including, if appropriate, a revised offset, garnishment, or payment schedule. If the special review results in a revised offset, garnishment, or repayment schedule, the Treasury entity will notify the appropriate agency or other persons about the new terms.

§ 5.19 **Will Treasury entities issue a refund if money is erroneously collected on a debt?**

Treasury entities shall promptly refund to a debtor any amount collected on a Treasury debt when the debt is waived or otherwise found not to be owed to the United States, or as otherwise required by law. Refunds under this part shall not bear interest unless required by law.

## Subpart C—Procedures for Offset of Treasury Department Payments To Collect Debts Owed to Other Federal Agencies

§ 5.20 **How do other Federal agencies use the offset process to collect debts from payments issued by a Treasury entity?**

(a) *Offset of Treasury entity payments to collect debts owed to other Federal agencies.* (1) In most cases, Federal agencies submit eligible debts to the Treasury Offset Program to collect delinquent debts from payments issued by Treasury entities and other Federal agencies, a process known as "centralized offset." When centralized offset is not available or appropriate, any Federal agency may ask a Treasury entity (when acting as a "payment agency") to collect a debt owed to such agency by offsetting funds payable to a debtor by the Treasury entity, including salary payments issued to Treasury entity employees. This section and § 5.21 of



> I was not on State or Federal Assistance in Tennessee, but that was only because I was NOT provided with any NOTICE that I NEEDED to be. **To have any chance at SURVIVING** without being **geographically DISPLACED**, by hundreds of miles, to meet **my most basic needs** of SHELTER and FOOD. **I never imagined I would be destroyed by a Court that refused to even HEAR me.**

**§ 570.602**   24 CFR Ch. V (4–1–17 Edition)

(b) Executive Order 11063, as amended by Executive Order 12259 (3 CFR, 1959–1963 Comp., p. 652; 3 CFR, 1980 Comp., p. 307) (Equal Opportunity in Housing), and implementing regulations in 24 CFR part 107, also apply.

[61 FR 11477, Mar. 20, 1996, as amended at 80 FR 42368, July 16, 2015]

### § 570.602   Section 109 of the Act.

Section 109 of the Act requires that no person in the United States shall on the grounds of race, color, national origin, religion, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance made available pursuant to the Act. Section 109 also directs that the prohibitions against discrimination on the basis of age under the Age Discrimination Act and the prohibitions against discrimination on the basis of disability under Section 504 shall apply to programs or activities receiving Federal financial assistance under Title I programs. The policies and procedures necessary to ensure enforcement of section 109 are codified in 24 CFR part 6.

[64 FR 3802, Jan. 25, 1999]

### § 570.603   Labor standards.

(a) Section 110(a) of the Act contains labor standards that apply to nonvolunteer labor financed in whole or in part with assistance received under the Act. In accordance with section 110(a) of the Act, the Contract Work Hours and Safety Standards Act (40 U.S.C. 327 *et seq.*) also applies. However, these requirements apply to the rehabilitation of residential property only if such property contains not less than 8 units.

(b) The regulations in 24 CFR part 70 apply to the use of volunteers.

[61 FR 11477, Mar. 20, 1996]

### § 570.604   Environmental standards.

For purposes of section 104(g) of the Act, the regulations in 24 CFR part 58 specify the other provisions of law which further the purposes of the National Environmental Policy Act of 1969, and the procedures by which grantees must fulfill their environmental responsibilities. In certain cases, grantees assume these environmental review, decisionmaking, and action responsibilities by execution of grant agreements with the Secretary.

[61 FR 11477, Mar. 20, 1996]

### § 570.605   National Flood Insurance Program.

Notwithstanding the date of HUD approval of the recipient's application (or, in the case of grants made under subpart D of this part or HUD-administered small cities recipients in Hawaii, the date of submission of the grantee's consolidated plan, in accordance with 24 CFR part 91), section 202(a) of the Flood Disaster Protection Act of 1973 (42 U.S.C. 4106) and the regulations in 44 CFR parts 59 through 79 apply to funds provided under this part 570.

[61 FR 11477, Mar. 20, 1996]

### § 570.606   Displacement, relocation, acquisition, and replacement of housing.

(a) *General policy for minimizing displacement.* Consistent with the other goals and objectives of this part, grantees (or States or state recipients, as applicable) shall assure that they have taken all reasonable steps to minimize the displacement of persons (families, individuals, businesses, nonprofit organizations, and farms) as a result of activities assisted under this part.

(b) *Relocation assistance for displaced persons at URA levels.* (1) A displaced person shall be provided with relocation assistance at the levels described in, and in accordance with the requirements of 49 CFR part 24, which contains the government-wide regulations implementing the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA) (42 U.S.C. 4601–4655).

(2) *Displaced person.* (i) For purposes of paragraph (b) of this section, the term "*displaced person*" means any person (family, individual, business, nonprofit organization, or farm) that moves from real property, or moves his or her personal property from real property, permanently and involuntarily, as a direct result of rehabilitation, demolition, or acquisition for an

I was FORCED out of my HALF-MILLION-DOLLAR BRENTWOOD HOME, with just a FIVE-DAY NOTICE, based entirely upon "Fraud Upon the Court by Officers of the Court", a Conspiracy Against my Rights, Under Color of Law, while denying my tenant's & I any LAWFUL (or ADA) considerations, required by LAW! PROFITTING NO ONE other than the COURT, COUNSEL and their "FRIENDS"!

**Ofc. of Asst. Secy., Comm. Planning, Develop., HUD** §570.606

activity assisted under this part. A permanent, involuntary move for an assisted activity includes a permanent move from real property that is made:

(A) After notice by the grantee (or the state recipient, if applicable) to move permanently from the property, if the move occurs after the initial official submission to HUD (or the State, as applicable) for grant, loan, or loan guarantee funds under this part that are later provided or granted.

(B) After notice by the property owner to move permanently from the property, if the move occurs after the date of the submission of a request for financial assistance by the property owner (or person in control of the site) that is later approved for the requested activity.

(C) Before the date described in paragraph (b)(2)(i)(A) or (B) of this section, if either HUD or the grantee (or State, as applicable) determines that the displacement directly resulted from acquisition, rehabilitation, or demolition for the requested activity.

(D) After the "initiation of negotiations" if the person is the tenant-occupant of a dwelling unit and any one of the following three situations occurs:

(*1*) The tenant has not been provided with a reasonable opportunity to lease and occupy a suitable decent, safe, and sanitary dwelling in the same building/complex upon the completion of the project, including a monthly rent that does not exceed the greater of the tenant's monthly rent and estimated average utility costs before the initiation of negotiations or 30 percent of the household's average monthly gross income; or

(*2*) The tenant is required to relocate temporarily for the activity but the tenant is not offered payment for all reasonable out-of-pocket expenses incurred in connection with the temporary relocation, including the cost of moving to and from the temporary location and any increased housing costs, or other conditions of the temporary relocation are not reasonable; and the tenant does not return to the building/complex; or

(*3*) The tenant is required to move to another unit in the building/complex, but is not offered reimbursement for all reasonable out-of-pocket expenses incurred in connection with the move.

(ii) Notwithstanding the provisions of paragraph (b)(2)(i) of this section, the term "*displaced person-*" does not include:

(A) A person who is evicted for cause based upon serious or repeated violations of material terms of the lease or occupancy agreement. To exclude a person on this basis, the grantee (or State or state recipient, as applicable) must determine that the eviction was not undertaken for the purpose of evading the obligation to provide relocation assistance under this section;

(B) A person who moves into the property after the date of the notice described in paragraph (b)(2)(i)(A) or (B) of this section, but who received a written notice of the expected displacement before occupancy.

(C) A person who is not displaced as described in 49 CFR 24.2(g)(2).

(D) A person who the grantee (or State, as applicable) determines is not displaced as a direct result of the acquisition, rehabilitation, or demolition for an assisted activity. To exclude a person on this basis, HUD must concur in that determination.

(iii) A grantee (or State or state recipient, as applicable) may, at any time, request HUD to determine whether a person is a displaced person under this section.

(3) *Initiation of negotiations.* For purposes of determining the type of replacement housing assistance to be provided under paragraph (b) of this section, if the displacement is the direct result of privately undertaken rehabilitation, demolition, or acquisition of real property, the term "*initiation of negotiations*" means the execution of the grant or loan agreement between the grantee (or State or state recipient, as applicable) and the person owning or controlling the real property.

(c) *Residential antidisplacement and relocation assistance plan.* The grantee shall comply with the requirements of 24 CFR part 42, subpart B.

(d) *Optional relocation assistance.* Under section 105(a)(11) of the Act, the grantee may provide (or the State may permit the state recipient to provide, as applicable) relocation payments and other relocation assistance to persons

**Judge Michael W. Binkley of the Williamson County Chancery Court,** in Franklin Tennessee, Attorney Virginia Lee Story, Attorney Kathryn Lynn Yarbrough, Clerk & Master Elaine Beaty Beeler, Bankruptcy Attorney Mary Beth Ausbrooks, Attorney Alexander Sergey Koval, Chapter-13 Trustee Henry Edward Hildebrand **leveraged the WCSO in the commission & enforcement of FELONIES!**

**§ 570.607**  24 CFR Ch. V (4–1–17 Edition)

displaced by activities that are not subject to paragraph (b) or (c) of this section. The grantee may also provide (or the State may also permit the state recipient to provide, as applicable) relocation assistance to persons receiving assistance under paragraphs (b) or (c) of this section at levels in excess of those required by these paragraphs. Unless such assistance is provided under State or local law, the grantee (or state recipient, as applicable) shall provide such assistance only upon the basis of a written determination that the assistance is appropriate (see, e.g., 24 CFR 570.201(i), as applicable). The grantee (or state recipient, as applicable) must adopt a written policy available to the public that describes the relocation assistance that the grantee (or state recipient, as applicable) has elected to provide and that provides for equal relocation assistance within each class of displaced persons.

(e) *Acquisition of real property.* The acquisition of real property for an assisted activity is subject to 49 CFR part 24, subpart B.

(f) *Appeals.* If a person disagrees with the determination of the grantee (or the state recipient, as applicable) concerning the person's eligibility for, or the amount of, a relocation payment under this section, the person may file a written appeal of that determination with the grantee (or state recipient, as applicable). The appeal procedures to be followed are described in 49 CFR 24.10. In addition, a low- or moderate-income household that has been displaced from a dwelling may file a written request for review of the grantee's decision to the HUD Field Office. For purposes of the State CDBG program, a low- or moderate-income household may file a written request for review of the state recipient's decision with the State.

(g) *Responsibility of grantee or State.* (1) The grantee (or State, if applicable) is responsible for ensuring compliance with the requirements of this section, notwithstanding any third party's contractual obligation to the grantee to comply with the provisions of this section. For purposes of the State CDBG program, the State shall require state recipients to certify that they will comply with the requirements of this section.

(2) The cost of assistance required under this section may be paid from local public funds, funds provided under this part, or funds available from other sources.

(3) The grantee (or State and state recipient, as applicable) must maintain records in sufficient detail to demonstrate compliance with the provisions of this section.

(Approved by the Office of Management and Budget under OMB control number 2506–0102)

[61 FR 11477, Mar. 20, 1996, as amended at 61 FR 51760, Oct. 3, 1996]

**§ 570.607 Employment and contracting opportunities.**

To the extent that they are otherwise applicable, grantees shall comply with:

(a) Executive Order 11246, as amended by Executive Orders 11375, 11478, *12086*, and 12107 (3 CFR 1964–1965 Comp. p. 339; 3 CFR, 1966–1970 Comp., p. 684; 3 CFR, 1966–1970., p. 803; 3 CFR, 1978 Comp., p. 230; 3 CFR, 1978 Comp., p. 264 (Equal Employment Opportunity), and Executive Order 13279 (Equal Protection of the Laws for Faith-Based and Community Organizations), 67 FR 77141, 3 CFR, 2002 Comp., p. 258; and the implementing regulations at 41 CFR chapter 60; and

(b) Section 3 of the Housing and Urban Development Act of 1968 (12 U.S.C. 1701u) and implementing regulations at 24 CFR part 135.

[68 FR 56405, Sept. 30, 2003]

**§ 570.608 Lead-based paint.**

The Lead-Based Paint Poisoning Prevention Act (42 U.S.C. 4821–4846), the Residential Lead-Based Paint Hazard Reduction Act of 1992 (42 U.S.C. 4851–4856), and implementing regulations at part 35, subparts A, B, J, K, and R of this part apply to activities under this program.

[64 FR 50226, Sept. 15, 1999]

**§ 570.609 Use of debarred, suspended or ineligible contractors or subrecipients.**

The requirements set forth in 24 CFR part 5 apply to this program.

[61 FR 5209, Feb. 9, 1996]


**LIBRARY OF CONGRESS**

# A bill of rights as provided in the ten original amendments to the constitution of the United States in force December 15, 1791. [n. p. 195-].

A Bill of Rights as provided in the Ten Original Amendments to The Constitution of the United States in force December 15, 1791.

## Article I

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press: or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

## Article II

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

## Article III

No Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law.

## Article IV

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

## Article V

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

## Article VI

---

A bill of rights as provided in the ten original amendments to the constitution of the United States in force December 15, 1791. [n. p. 195-]. http://www.loc.gov/resource/rbpe.24404400


**LIBRARY OF CONGRESS**

In all criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence.

Article VII

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

Article VIII

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

Article IX

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

Article X

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

---

A bill of rights as provided in the ten original amendments to the constitution of the United States in force December 15, 1791. [n. p. 195-]. http://www.loc.gov/resource/rbpe.24404400

Deprivations of Liberty | Constitution Annotated | Congress.gov | Library... https://constitution.congress.gov/browse/essay/amdt5-4-4-2-1/ALDE_0...

# CONSTITUTION ANNOTATED
Analysis and Interpretation of the U.S. Constitution

## Amdt5.4.4.2.1 Deprivations of Liberty

Fifth Amendment:

> *No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.*

With respect to liberty interests, the Court has followed a similarly meandering path. Although the traditional concept of liberty was freedom from physical restraint, the Court has expanded the concept to include various other protected interests, some statutorily created and some not.[1] Thus, in *Ingraham v. Wright*,[2] the Court unanimously agreed that school children had a liberty interest in freedom from wrongfully or excessively administered corporal punishment, whether or not such interest was protected by statute. "The liberty preserved from deprivation without due process included the right 'generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.' . . . Among the historic liberties so protected was a right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security."[3]

The Court also appeared to have expanded the notion of "liberty" to include the right to be free of official stigmatization, and found that such threatened stigmatization could in and of itself require due process.[4] Thus, in *Wisconsin v. Constantineau*,[5] the Court invalidated a statutory scheme in which persons could be labeled "excessive drinkers," without any opportunity for a hearing and rebuttal, and could then be barred from places where alcohol was served.



# The 14th Amendment and Due Process

**The 14th Amendment to the United States Constitution**

*Section 1. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law: nor deny to any person within its jurisdiction the equal protection of the laws.*

Within months of the end of the Civil War, former rebellious Confederate states began passing Black Codes. These laws were designed to restrict the civil rights of recently freed African Americans. Though the 13th Amendment had ended slavery, it did not specifically assure the rights of citizenship. Congress soon passed a Civil Rights Act to assure equal civic participation and protection for black people. But President Andrew Johnson vetoed it. He believed that Congress lacked the constitutional authority to enact the law. Congress overrode the veto, but a new constitutional amendment was needed to make sure that civil rights legislation would be constitutional.



Dred Scott (Library of Congress)

This was the 14th Amendment. To rejoin the Union, all rebel Southern states had to ratify the new amendment. Declared adopted on July 28, 1868, the amendment nullified (voided) the Supreme Court's decision in *Dred Scott* which denied citizenship for black Americans. It also provided a constitutional basis for civil rights legislation. Ultimately the new amendment changed our constitution.

The Constitution, in its original form, served only as a restriction on the power of the federal government. The rights and protections against government power in the Bill of Rights did not apply to the actions of state governments. Protections against state power depended on each state's constitutions and laws. What rights and protections a person had depended on in which state a person lived.

The 14th Amendment contains the **due process clauses. It forbids any *state* from depriving "any person ... life, liberty, or property without due process of law." And the due process clause applies to all "persons," not just citizens.**

© Constitutional Rights Foundation, 2016