UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

JEFFREY RYAN FENTON,

PLAINTIFF

v.

VIRGINIA LEE STORY ET AL.,

DEFENDANTS

CASE NO. 1:23-cv-1097

**SMALL INDIVIDUAL EXHIBITS WITH WEB URLS**

**FOR QUICK & EASY REFERENCE (SECTION 3 OF 4)**

I, Jeffrey Ryan Fenton, declare as follows:

1. My name is Jeffrey Ryan Fenton.
2. I am the Plaintiff in this federal lawsuit (CASE NO. 1:23-cv-1097).
3. Please file this exhibit in my case, so that I can reference it in my lawsuit.
4. Per the Clerk's request last time, I did not bind it.
5. Thank you.

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed 3/25/2024

JEFFREY RYAN FENTON
17195 SILVER PARKWAY, #150
FENTON, MI, 48430-3426
JEFF.FENTON@LIVE.COM
(P) 615.837.1300
(F) 810.255.4438

My name is Fawn Fenton and I have been married to Jeff Fenton for 13 years. Jeff and I have been separated since April 22, 2018 and I have not seen him since sometime in April when we met to file our taxes. Prior to that I had not seen him since December 2018. I filed for divorce on June 4, 2019.

I am in fear for my safety based on the repeated harassment that has continued to occur. Over the last several weeks Jeff has sent me numerous text messages and lengthy e-mails talking about his intentions on ruining my life, causing me issues with my employer and clients at work, ruining my credit and financially ruining me. As a result of Jeff's continued verbal and emotional abuse and deliberate non-cooperation, I have filed for bankruptcy to preserve my finances. Upon finding out about the bankruptcy petition, Jeff became enraged and his incessant texts and e-mails have been upsetting and vindictive. Just as an example, from June 12 through June 16, Jeff sent me 12 e-mails all of substantial length, describing how he plans on ruining my life. I am attaching just a snapshot of my email account showing the number of e-mails sent from June 12-16. The length of the emails would be too long to attach; however, I have saved them all. In addition, Jeff continues to send me numerous text messages, some very lengthy. In some of the texts he uses derogatory language, calling me a "bitch." On June 14, 2019 he sent me 8 text messages within in less than 40 minutes. The next day, June 15, 2019 he sent me 16 text messages over the course of 4 hours, several of which were extremely lenthy. I have asked Jeff on several occasions to stop e-mailing and texting me, however, he continues to repeatedly harass me. At this point all of his communication to me is not consensual and I have relayed this to Jeff multiple times. On June 15, 2019 Jeff left me a voicemail on my cell phone stating that if I did not call him back or respond to his emails or text messages that he was going to "show up at my work or apartment to try to get some information out of me." I am fearful that he will actually show up at my work, as he has done so in the past and has sabotaged my work e-mails. Jeff has been employed in IT and is very tech savvy. In the past he was able to remotely log into my work computer and delete all e-mails that had his name in them. My company has already spent a considerable amount of money hiring a new IT support team to try and close loopholes and delete Jeff's access to our system, but we are still finding settings that reference Jeff's settings or route to his e-mails. Jeff has also threatened to post derogatory comments anonymously on the internet about both myself and my company. This cyber stalking could potentially cost me my job and career. I am fearful for what he may try to do now that I have filed for divorce and am not responding to his threats.

On June 16, 2019 in one of his lengthy e-mails he stated, "I wish we would have had an asteroid fall on our home and kill us (or at least me"), the day before I discovered your plans to divorce me." Jeff is a licensed gun carrier and has many weapons, and I am in fear of what he may to do me if this continues. Jeff refers to himself as a part of the "extraction team" and lives a very paranoid life. He installed extensive home monitoring at our marital residence including surveillance videos and audio recording systems.

15

https://rico.jefffenton.com/evidence/2019-06-20_wifes-false-unsigned-personal-testimony-for-op.pdf    Case 1:23-cv-01097-PLM-RSK (FENTON v. STORY et al.)

The harassment has caused me undue emotional stress and anxiety. I am unable to sleep well, and his harassment is causing trouble in my day to day life. The continued texting and e-mailing are interfering with my ability to perform my job and I fear that if these things continue that I will reach a point of an emotional breakdown.



R.v1 (41-44)

COPY

**IN THE CHANCERY COURT FOR WILLIAMSON COUNTY, TENNESSEE AT FRANKLIN**

FILED FOR ENTRY 2019 JUL 17 PM 1:16

| | | |
|---|---|---|
| **FAWN [REDACTED] FENTON,** Plaintiff/Wife, | ) | |
| v. | ) | **No. 48419B** |
| **JEFFREY RYAN FENTON,** Defendant/Husband. | ) | |

## MOTION TO SELL THE MARITAL RESIDENCE

By Attorney Agreement between Brittany Gates and Virginia Story, due to an emergency in Ms. Gates family, requiring her to travel with her husband to Michigan.

Misleading RPC 3.4(b)

Irrelevant RPC 3.4(e)1

NOT MY FAULT!

COMES NOW the Plaintiff/Wife, Fawn [REDACTED] Fenton (hereinafter "Wife"), by and through her attorney of record, Virginia Lee Story, and files this Motion to Sell the Marital Residence and in support of her Motion, would state as follows:

1. Wife filed her Complaint for Divorce against Husband on June 4, 2019.

2. ~~As of the date of the filing of this Motion, Husband has not filed an Answer to the Complaint for Divorce.~~

Misleading RPC 3.4(b) Irrelevant RPC 3.4(e)1, Unheard, to Cause Bias RPC 8.4(c)

3. Wife currently has an *Ex Parte* Order of Protection against Husband ~~as the result of the domestic abuse she has incurred by Husband.~~

4. The marita

Misrepresentation, Prejudicial to Admin of Justice, Violate & Assist in Misconduct RPC 8.4(a)(c)(d)(f), False Statement RPC 4.1(a), Misleading RPC 3.4(b), Reasonably Should Know Crime/Fraud RPC 1.2(d)

5. Wife has not resided in the marital residence since April 2018 at which time she moved into her own apartment ~~as the living situation at home had gotten unbearable.~~

6. After Wife moved from the marital residence she continued to pay the mortgage and utilities for the marital residence up until the Spring of 2019 ~~when she could no longer afford to keep paying all of the bills on her own.~~

7. ~~As the result of her financial constraints~~, Wife filed for bankruptcy in April 2019. The Trustee has agreed to allow Husband and Wife to sell the marital residence as the house will have sufficient equity to pay off the first and second mortgage holders if it is put

IF **"Trustee"** REALLY knew that HUSBAND existed and was on **DEED** (as "Tenancy by the Entirety"), despite the fraudulently filed bankruptcy petition by Attorney Ausbrooks, then the Trustee must have been a party to the "Conspiracy Against MY Rights and Property" ALSO! Which means they have probably (ALL) played this scam on OTHERS before! **Acting United States Trustee for Region 8, Paul A. Randolph** needs to be contacted at **(901) 544-3251** to inquire further about the Responsibilities of the Trustee, the Attorney, and the Judge, to determine how high-up the chain of command the "FRAUD UPON THE COURT", "Bankruptcy Fraud", Conspiracy Against Rights, Deprivation of Rights and Property "Under Color of Law" went. This could be both a Bivens and a 1983 case, with all the criminal counterparts.

**This was the ONLY reason WHY Attorney Virginia Lee Story was HIRED!** This is the ONLY reason WHY my ex-wife filed for BANKRUPTCY! To get me OUT OF OUR HOUSE, to TAKE POSSESSION of it, and LIQUIDATE it, while taking all the financial benefit for her creditors (which largely paid HER COUNSEL). Attorney Story tried to pretend like there would be some BENEFIT to US BOTH by depriving me of DUE PROCESS and FORCING THE IMMEDIATE AUCTION OF MY HOME! Foreclosure would have been FAR BETTER FOR ME, for the Federal Protections, the Right to Redemption, the NOTICE, the Protecting Tenants at Foreclosure Act.

on the market and sold immediately. ~~If, however, Husband continues to reside in the home without paying the mortgage, foreclosure proceedings will begin and the parties will be charged late fees, attorney's fees, foreclosure costs and closing costs. If the foreclosure begins, then the parties will have no equity in the property.~~

8. As part of the bankruptcy agreement Wife agreed to continue paying Bancorp South's second mortgage payments to avoid foreclosure as they would not allow the parties time to list the house through the divorce. Therefore, Wife is paying the second mortgage ~~while Husband lives in the house for free~~ and collects rent from two (2) roommates that he has moved into the home. The balance on the second mortgage is approximately $54,000.00. Bank of America holds the first mortgage with a balance of approximately $240,000.00.

As of **1/10/2022** the **VALUE** is **$800k+** while only owing **$300k!** That means we would have **$500k** in EQUITY, had the Court NOT FORCED an Auction before DISCOVERY!

9. ~~Wife tried to convince Husband to put the house in the market in the fall of 2018 as finances were getting tighter, however, Husband would not agree on anything and Wife believes that Husband will again try and do whatever he can in order to stall this process.~~

How do you use something I said AFTER she left me, as grounds for her leaving me? Didn't I need to be MEAN first?

10. Husband has ~~threatened~~ Wife, previously making the following statements:

"I promise you, it will cost you more if we sell than if we don't!" and "I will not fix it up for sale, and I will not live in it while it's on the market." (Text message July 27, 2018)

"If you choose to fight me on this, I will leverage every penny of this home which I legally can, plus it's future value to leave it in my will to whomever will fund my legal battle with you, no matter how complex the case, or how many appeals that it requires." (Text message March 27, 2019).

"I will work and fight to my death, to never allow you or anyone else to TAKE this property from me…." (Text message May 25, 2019).

Did you know that we used to text, call, email each other (or do a screen share) on average **FIVE to TWENTY-FIVE times PER-DAY**, until "d-day" struck? I probably have a DECADE's worth of EMAILS and maybe FIVE-years worth of TEXT messages (possibly more), if you want to READ them all before you start judging ME and MY CHARACTER on just a few of the most unsettling, AFTER she had

This was all FRAUDULENT hyper-babble in a ludicrous attempt to LOOK AS THOUGH she JUSTIFIED STEALING MY PROPERTY.

While Judge Michael W. Binkley was **"in on it"** from the beginning!

There was ZERO "Impartiality"!

The Hearing was supposed to be on "whether or not" to sell, but ALL that Binkley and Story wanted to discuss was WHEN and by WHAT MEANS to SELL!

It was ALL a FRAUDULENT SHOW!!!

Of the **$1,400** per month in **rents**, Wife was given the financial benefit and relief of approximately **$900 per month!**

By calculations she provided me a few months earlier, stating she was about **$500** short per month from cash-flowing, she SHOULD have cash-flowed for the FIRST time since she erratically moved out without need or notice, plus had a **$400** per month SURPLUS!

She had to take a PAY-CUT to try to "QUALIFY" for BANKRUPTCY!

**This was ALL a highly orchestrated SCAM, not against the government or the creditors, but AGAINST ME!**

I also sent her text messages (or emails) where I offered to **GIVE her MY EQUITY for FREE** if she would live in OUR HOME, since we purchased it TOGETHER, because it was the desire of HER HEART!

Incidentally, NONE of my texts or emails are EVER that SHORT!

While I've been "LONGWINDED" ALL MY LIFE (and I can prove it). She knew what she was marrying into!

Everybody has their "pros" and "cons". Since you cherry-picked the texts which would make me look the worst, would you like me to respond by sharing all of her negative qualities, which I accepted and loved her in spite of?

Or would you rather that I show you ALL the texts and emails which were between these dates that were REALLY, REALLY NICE, when I wasn't scared to death about becoming HOMELESS, for trusting her enough to risk sacrificing my OWN HOME, for one which we both knew that I could never afford on my own!

Which is why we had a $300k LIFE INSURANCE policy on just her, so I'd never become HOMELESSS as a result of "risking a life larger" than I could ever afford, on my own. The only thing I never "prepared" for, was **what if SHE EVER CHOSE to leave me?** Oops!

Then Wife should have listed Husband's INVESTMENT AND EQUAL OR GREATER OWNERSHIP INTEREST IN THE PROPERTY. Whereby the BANKRUPTCY TRUSTEE would have been able to provide Husband with the legally required "341 NOTICE".

Instead, this was BANKRUPTCY FRAUD! The first of MULTIPLE LEVELS of FRAUD UPON THE COURT, BY OFFICER(S) OF THE COURTS!

Spanning both State and Federal Courts Simultaneously, Leveraging Attorney Story's Influence with Binkley and Beeler, to illegally DEPRIVE ME OF MY RIGHTS AND PROPERTY!

Next they illegally deprived me of my LIFE, LIBERTY, and PURSUIT OF HAPPINESS TOO, through the most obviously FRAUDULENT DEFAULT JUDGMENTS, while breaking every promise Binkley & Story made to me in Open Court on 8/29/2019!

Refusing me even NOTICE or any opportunity to participate in SECRET HEARINGS or defend myself!

All because I REPEATEDLY TOLD THE COURT ABOUT ATTORNEY STORY'S HORRIFIC ABUSE OF PROCESS. How she was intentionally targeting and exploiting my disabilities, for a strategic advantage!

ABANDONDED ME and REFUSED repeatedly to keep her promises, so that we could both survive the divorce without getting destroyed or displaced. Regretfully, somebody talked her out of that. You can read them to VERIFY that it was "mutual" and "consensual", without any "ABUSE" taking place. Instead, she LIKED it, she often INNITIATED it, I was like her best friend just on the other side of her monitor! Did you know that ISN'T A CRIME? Or even indicative of one?

"I will stay here until you, the banks, and the police carry me out of here." (Text messages, June 15, 2019)

11. Wife is unsure what all modifications and/or renovations Husband has done to the home since she left in April 2018. Prior to her leaving, Husband had installed numerous security cameras [**WE DID THIS TOGETHER YEARS EARLIER!**] and devices in the home and has rented out rooms to various individuals. ~~Wife is concerned that Husband may be devaluing the home by making undesirable changes to the property.~~

**RETAIL "AS IS"** (NOT at AUCTION!) Deceptive Manipulation

12. Wife believes the home to be valued at approximately $425,000.00. The Williamson County Property Assessor values the home at $386, 900.00. A similar home across the street, 1987 Sunny Side Drive) sold for $524,900.00 in April 2018. ~~Therefore, the sale of the home is likely to easily pay off both of the mortgages and still leave the parties~~ [Tenn. R. Sup. Ct. 3.4(g), 3.5(e), 8.3(a)(b), 8.4(a)(b)(c)(d)(f)] ~~some equity.~~

13. ~~Pursuant to the terms of Wife's bankruptcy, if the home is not placed on the market in~~ [Rule 5.1 F.R.Civ.P., Rule 2002§341 F.R.Civ.P.] ~~a timely manner, then one or both of the mortgage holders may begin foreclosure~~ [Tenn. Code § 39-16-507(a)(3),(c)(3), Tenn. Code § 39-16-503 (a)(2), T.C.A. § 39-16-403] ~~proceedings and the parties will lose all available equity in the property.~~ [TN CONST Art. I, § 2, 7, 8, 17, 22, 25, 30, 35(b)(d)(g)]

14. ~~Husband has made it very clear that he will do whatever he can to thwart any effort of~~ [Rule 8(f) FRCP, TN Code § 39-15-101] ~~Wife to sell the home.~~ [18 U.S.C. 1341, 1503]

Would the Court Allow a MAN to kick his WIFE out into the STREETS with no income, savings, no provision or shelter within the state?

15. Because time if of the essence, Wife requests that this Court order that Husband [With what MONEY?] [18 U.S.C. § 241, 242, 249, 28 U.S.C. §455(a)] immediately vacate the premises [To LIVE WHERE?] so that the home can be prepared for sale. [TN Code § 48-1-102, T.R.A.P. Rule 36(a)(b)]

16. Wife requests that this Court order the home to be sold by an independent third-party auctioneer to obtain the best sales price in a time efficient manner.

[The goal ALL along - LIQUIDATE! (Not Responsibly Mitigate Damages to us BOTH.)]

17. Wife would further request that she be reimbursed from the equity for the mortgage payments that she has made since vacating since April 2018 and that after the repayment of the first and second mortgage, that any remaining equity from the sale of

UNSUBSTANTIATED ALLEGATIONS without any good-faith, ethical, or legal NOTICE! My only real ASSET was in DEFAULT! My premarital retirement funds! I was due NOTICE prior to default; since Wife promised to pay & changed credentials, so I couldn't verify. My Counsel only had the case for FOUR-DAYS, because of Negligence by Prior Counsel, whom I had to terminate. Yet the Court and Ms. Story REFUSED to even give my substitute Counsel a FEW-DAYS to research options! It was all a FRAUDULENTLY ENGINEERED, CONSPIRACY AGAINST MY RIGHTS AND PROPERTY!

While Judge Binkley UN-REASONABLY ASSUMED, "well, if he doesn't want to be ABUSED by Attorney Story anymore, then I guess he doesn't want to defend himself or participate at ALL.

So we'll just skip his 250+ page ANSWER & COUNTER **to every malicious complaint to date."**

(Including an ad hoc "Divorce Answer and Counter Complaint", rendering a "DEFAULT" impossible!)

As Judge Binkley instructed Attorney Story to write and file a FRAUDULENT AFFIDAVIT, leaving out Information CRITICAL to the CASE, in violation of the RJC & RPC, as they cherry-picked the part they liked, while leaving out 3/4 of the CRITICAL CONTENT of Husband's handwritten letter left for Wife at the Marital Residence.

Fraud Upon the Court by Judge Michael W. Binkley and Attorney Virginia Lee Story, along with a BUNCH of their "friends"!

Despite the almost exclusively "fraudulent narrative" of Attorney Virginia Lee Story, any gender based discrimination by the Court and Counsel (which were significant), Wife had voluntarily been our family's primary "breadwinner" for about a decade, since obtaining her professional license and over doubling her income. Despite Ms. Story's blatant lies, Husband is NOT a "computer genius" and could not even qualify for an entry level job in computers, unless having some friend who could open the door and train Husband. Wife's earning potential is at least 3x that of Husband as an MIT graduated, highly accredited, Licensed Professional Architect. Wife was our family's SOLE provider the last 3-years of marriage (by her choice).

It was never a "toxic marriage", it was a **"toxic divorce"** because she refused to act in good-faith. Plus the **"Trump Tax Reform"** on **1/1/2019** made ALIMONY **no longer** TAX DEDUCTIBLE! So she waited for her boss to retire. (Known a year in advance.) **Then SHE hired an ARMY!**

mortgage payments that she has made since vacating the home in April 2018 and that after the repayment of the first and second mortgage, that any remaining equity from the sale of the home be placed in the trust account of attorney for Wife until a distribution can be negotiated or further ordered from the Court.

WHEREFORE, premises considered, Wife respectfully requests that this Court grant her Motion to Sell the Marital Residence and that she be awarded her attorney fees for having to bring this Motion.

**We both got $0** from this **FORCED AUCTION. We lost $250k** from what WE had invested into the home ourselves, plus almost a decade of my hard work. **Auctioned for <u>$300k</u>, resold for <u>$550k</u>, worth over <u>$800k</u> TODAY!** <u>WE BOTH LOST EVERYTHING BY THESE SCAMS!</u>

Wife was paying our mortgages because she was our family's only "breadwinner" during that short season. She provided a budget whereby she alleged to be able to afford BOTH, along with the utilities, while paying me approximately $1,000 per month for my consumables. Wife promised marriage counseling, going to church again together, trying to deal with our own issues while attempting to reconcile our marriage, etc... She even got an apartment near our home, so that we could "take turns" living in our home vs. the apartment, as well as to invite me over and "cook dinners" for us both, while sharing our pets. All of which she later refused.

The house was negotiated a hundred different ways, with me keeping it, her keeping it, us selling it, but **never did I offer to render myself HOMELESS!** Our last deal fell through because she refused to sign her OWN verbal agreement of paying me **$1,750** per month in ALIMONY, for a duration of **6-Years** (plus my 50% equity), as advised was "FAIR" by a financial expert we hired.

Respectfully submitted,

**VIRGINIA LEE STORY; BPR #11700**
**KATHRYN YARBROUGH; BPR#**
*Attorney for Plaintiff/Wife*
136 Fourth Avenue, South
Franklin, Tennessee 37064
(615) 790-1778
virginia@tnlaw.org

Wife even said, in an openly recorded conversation (in the beginning), that she would pay for my legal counsel, but I didn't want to waste our equity if we could do things amicably. Ultimately she refused both.

**THIS MOTION IS SET TO BE HEARD ON <u>AUGUST 1, 2019</u> AT <u>9:00 A.M.</u> ON THE CHANCERY COURT MOTION DOCKET HEARD AT THE <u>WILLIAMSON COUNTY</u> COURTHOUSE. IF NO WRITTEN RESPONSE TO THIS MOTION IS FILED AND SERVED IN THE TIME SET BY THE LOCAL RULES OF PRACTICE, THE MOTION MAY BE GRANTED WITHOUT A HEARING.**

**TESTIMONY EXPECTED**

I could have supported myself again, but not immediately or while trying to **learn LAW** & survive multiple legal ambushes. I needed some vocational rehabilitation and time to transition. Now **Binkley/Story won't let me,** because of a fraudulent **OP for 6-YEARS to HIDE their CRIMES!**

Plus, I no longer had my own Duplex/Home to return to (which almost paid for itself), but had invested everything into our marital residence. Because it was the house of HER dreams, and as a better retirement investment for BOTH our premarital funds, after the 2008 market crash!

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and exact copy of the foregoing was forwarded via first-class mail, facsimile, and email to Brittany Gates, Attorney for Husband, at brittany@gateslaw.com and 1616 Westgate Circle, Suite 116, Brentwood, TN 37027 on this the 17 day of July 2019.

**VIRGINIA LEE STORY**
**KATHRYN L. YARBROUGH**

**<u>HARD to BELIEVE,</u>** I know, that was their **<u>plan</u>**, but its **<u>TRUE!</u>**

When it comes to Attorneys working "on behalf" of another, although **Attorney Story was by far the "pack leader" and I believe the "mastermind" of these crimes,** each licensed BAR Member who participated should share SOME culpability, responsibility and liability.

RPC 3.4(b)(c)(f)(g), 4.1, 8.3(a)(b), 8.4(a)(c)(f), in addition to any potential criminal actions, being a party to the Conspiracy Against my Rights and Property, Financial Exploitation, ADA Violations, etc... We are not under "martial law" where anyone can claim they were acting under the direct orders of another, thereby relieving any personal responsibility to act lawfully and ethically. They "reasonably knew" or "reasonably should have known" what they were participating in. This collusion, accomplice, conspiracy, caused far more devastating damages and exploited my (human and ADA) inability to "multitask" and defend myself quickly enough, by superseding the rate at which Attorney Story could harm me on her own. I was held to a standard by Binkley/Story of a seasoned licensed Attorney. At least those involved could be held to a standard of being adults, having common sense, knowing the RPC, and ethically caring and respecting their Oaths.

**Jeff Fenton**

| | |
|---|---|
| **From:** | Jeff Fenton |
| **Sent:** | Thursday, July 25, 2019 8:42 PM |
| **To:** | Brittany Gates (brittany@gateslawtn.com); Brittany Gates |
| **Cc:** | Marsha Ann Fenton |
| **Subject:** | Termination of Services \| End of Attorney/Client Relationship \| Revocation of Previously Authorized Actions \| Full Attorney File Request \| Retainer Refund Request |

Hello Brittany,

I'm writing to officially terminate our attorney client relationship, and to request that you please mail a refund for any portion of my retainer, which you are willing to return, either to myself or directly to my mother.

I've decided to go a different direction, so I will no longer be requiring your services on any matters which you were contracted to represent me on. So both in all actions related to my pending divorce, the potential sale of my home, as well as the Order of Protection, along with all related matters, and every other legal complaint, action, motion, or orders, both currently pending as well as in the future, I hereby revoke your authorization, permission, counsel, and representation for everything involving myself.

I further revoke your permission to receive service on my behalf, to forward any legal service or notification intended for me our my future counsel, to forward any emails or attachments from the court or Virginia Story's team to me, or from providing any contact information or details to anyone, on how to find, reach, or serve me.

I likewise revoke, cancel, and prohibit the use of the OATH page, which you had me sign in front of your receptionist/notary, when I originally retained your services.

As many of the matters which I originally hired you to represent me in, are in need of an immediate emergency response, I need to pickup my full attorney file from you tomorrow (Friday), if at all possible. Please let me know what time I can pick that up from you, your paralegal, or from your receptionist. Likewise, if you have my full attorney file in electronic format, which you can immediately email to me, I would greatly appreciate it if you would please send that to me as swiftly as possible.

Please include any and all documentation provided by Sandy Arons.

Thank you for your urgent attention to these matters.

I wish you the best of fortune in your business and life moving forwards!

Thanks!

**Jeff Fenton**
**METICULOUS.TECH**
(615) 837-1300 Office
(615) 837-1301 Mobile
(615) 837-1302 Fax

Technical Consulting, Services, and Solutions,
When it's worth doing RIGHT the first time!

Submit or respond to a support ticket here.

**Jeff Fenton**

**From:** Brittany Gates <brittanylmgates@icloud.com>
**Sent:** Thursday, July 25, 2019 8:56 PM
**To:** Jeff Fenton
**Subject:** Re: Termination of Services | End of Attorney/Client Relationship | Revocation of Previously Authorized Actions | Full Attorney File Request | Retainer Refund Request

Dear Jeff,

I wish you all the best in the future.

I will be in court tomorrow am and unable to produce your file on such short notice as I also have a duty to maintain your file as well, so I'll require additional time to produce.

Additionally, I will need to file the two motions to formally withdraw from your cases, at which point you'll receive the final bill for services performed on your two cases.

As a reminder, deadline for response to the motion to sell is quickly approaching on Monday & deadline to file answer/counter Tuesday per agreement with Ms. Story.

OP hearing and motion to sell is August 1. I'll draft and attempt to file the motions tomorrow.

Brittany Gates
Attorney at Law
1616 Westgate Circle, Suite 116
Brentwood, Tennessee 37027
(615)844-6195:office
(615)844-6196:facsimile
(615)517-9490: cell phone

Sent from my iPhone

**Jeff Fenton**

**From:** Mitchell Miller <mitchell@schafferlawfirmtn.com>
**Sent:** Saturday, July 27, 2019 12:23 AM
**To:** Brittany Gates
**Cc:** Brittany Gates (brittany@gateslawtn.com); Jeff Fenton
**Subject:** Re: Substitution of counsel

Hello Brittany,

Thank you for your speedy work transitioning this case.

Yes, we can substitute before 8/1 and can file the necessary response on Monday.

Do you have a few minutes on Monday to discus the file? I think that'd be the best way to gain some understanding of what we would need fairly quickly.

Again, thank you,

Mitchell

On Fri, Jul 26, 2019 at 8:26 PM Brittany Gates <brittanylmgates@icloud.com> wrote:

> Dear Mitchell or Marty
>
> Please advise if you're willing to substitute counsel prior to 8/1.
>
> As I'm sure you're informed, a response must be filed prior to Monday (as my cautious rule of thumb here), we are well aware of the Monday deadline.
>
> Please advise to what you desire from my file.
>
> My file is extremely expansive.
>
> Please feel free to reach out to me.
>
> Thank you,
>
> Brittany Gates
> Attorney at Law
> 1616 Westgate Circle, Suite 116
> Brentwood, Tennessee 37027
> (615)844-6195:office
> (615)844-6196:facsimile
> (615)517-9490: cell phone
>
> Sent from my iPhone

IN THE CHANCERY COURT FOR WILLIAMSON COUNTY, TENNESSEE

AT FRANKLIN

FILED 7/29/19
ENTERED
BOOK PAGE
ELAINE B BEELER CLERK & MASTER

FAWN [redacted] FENTON, )
Plaintiff/Wife, )
)
v. ) Docket No: 48419B
)
JEFFREY RYAN FENTON )
Defendant/Husband. )

**HUSBAND'S RESPONSE TO WIFE'S MOTION TO SELL MARITAL RESIDENCE**

COMES NOW the Defendant/Husband, Jeffrey Ryan Fenton, by and through his attorneys of record, Charles M. Duke and Mitchell Miller, and for Response to Wife's Motion to Sell the Marital Residence, would respectfully request that the hearing on the motion be continued for a short period of time, due to the fact that undersigned counsel only has been retained to represent the Defendant/Husband as of the filing date required of this response, the same being July 29, 2019, and an Agreed Order of Substitution of Counsel is being filed concurrently herewith regarding the same. Therefore, counsel for the Defendant would respectfully submit that additional time is necessary for undersigned counsel to review the matter fully and meet with their client, so as to fully and completely respond to a motion that will have such enormous bearing on the parties moving forward in this matter. Should the Court not allow a short continuance, and deem the hearing shall go forward as scheduled on August 1, 2019, for response to the Motion to Sell the Marital residence, Defendant would state and show as follows:

1. For the purposes of responding to the motion solely, the averments of Paragraph 1 of the motion are admitted
2. For the purposes of responding to the motion solely, the averments of Paragraph 2 of the motion are admitted.

3. For the purposes of responding to the motion solely, the averments of Paragraph 3 are admitted, to the extent that Plaintiff has taken out an Order of Protection against the Defendant. Defendant denies that he has committed any form of domestic abuse. Defendant avers that the Ex Parte Order of Protection is baseless, and that Plaintiff acted for improper purposes when she applied for that Order. Defendant would show that the Temporary Restraining Order, automatically binding on both parties pursuant to T. C. A. §36-4-106 upon the commencement of this cause, prohibits the parties from harassing, threatening, assaulting or abusing each other, that such prohibition adequately protects both parties' interests, and that Defendant has complied with the Temporary Restraining Order.
4. For the purposes of responding to the motion solely, the averments of Paragraph 4 of the motion are admitted.
5. For the purposes of responding to the motion solely, the averments of Paragraph 5 of the motion are admitted, with the exception that Defendant denies that the situation had become "unbearable." Defendant avers that Plaintiff, in fact, deserted the Defendant, when Defendant did not have the ability or means to support himself or pay for the first and second mortgage on the marital residence.
6. For the purposes of responding to the motion solely, the averments of Paragraph 6 of the motion are admitted, with the exception that Defendant avers that Plaintiff chose voluntarily to burden herself with rent payments and utilities for a separate residence so as to desert the Defendant when, in fact, she could have continued living at the marital residence. In addition, Defendant avers that he currently pays the utilities for the marital residence, and that Plaintiff has the ability to pay certain household bills for the marital

residence, as the financially advantaged spouse, but instead chooses not to do so. In support, Defendant would show the Court that Plaintiff filed for bankruptcy in April 2019 and reported having gross monthly income of Seven Thousand Five Hundred dollars ($7,500.00), after-tax-deduction income of Five Thousand Eight Hundred Forty-Five dollars and four cents ($5,845.04), actual expenses of Three Thousand Twenty-Five dollars ($3,025.00), leaving a monthly net income of Two Thousand Eight Hundred Twenty dollars and four cents ($2,820.04). Plaintiff's Voluntary Petition for Individuals Filing for Bankruptcy is incorporated and attached hereto as **Exhibit 1**.

7. For the purposes of responding to the motion solely, the averments of sentence one of Paragraph 7 of the motion are admitted. Defendant is without sufficient knowledge or information so as to form a belief as to the truth of the averments of sentence two of Paragraph 7 of the motion and, therefore, denies same, and demands strict proof thereof. Defendant is without sufficient knowledge or information so as to form a belief as to the truth of the averments of sentences three and four of Paragraph 7 of the motion and, therefore, denies same in their entirety, and demands strict proof thereof. Defendant respectfully avers that he must continue to reside in the marital residence at this time, as he has no other choices for a residence, nor any funds to secure an alternative residence, due to being deserted by the Plaintiff and her refusal to continue to pay the mortgage on the marital residence, the one viable marital asset, so as to maximize any possible return to the parties if they were allowed to sell the residence by reasonable means as opposed to some sort of "fire sale," as requested by the Plaintiff herein.

8. Defendant is without sufficient knowledge or information so as to form a belief as to the truth of the averments of Paragraph 8 of the motion and, therefore, denies same in their

entirety, and demands strict proof thereof. Defendant admits that, currently, he has two individuals renting rooms in the marital residence, so as to be in a position to pay utilities and monthly expenses he must now solely pay due to being deserted by the Plaintiff. Defendant respectfully avers that he must continue to reside in the marital residence at this time, as he has no other choices for a residence, nor any funds to secure an alternative residence, due to being deserted by the Plaintiff and her refusal to continue to pay the mortgage on the marital residence, the one viable marital asset, so as to maximize any possible return to the parties if they were allowed to sell the residence by reasonable means as opposed to some sort of "fire sale," as requested by the Plaintiff herein.

9. Defendant is without sufficient knowledge or information so as to form a belief as to the truth of the averments of Paragraph 9 of the motion and, therefore, denies same in their entirety. Defendant respectfully avers that he must continue to reside in the marital residence at this time, as he has no other choices for a residence, nor any funds to secure an alternative residence, due to being deserted by the Plaintiff and her refusal to continue to pay the mortgage on the marital residence, the one viable marital asset, so as to maximize any possible return to the parties if they were allowed to sell the residence by reasonable means as opposed to some sort of "fire sale," as requested by the Plaintiff herein.

10. Defendant denies the averments of Paragraph 10 of the motion and, further, objects to the characterizations of Plaintiff of them as "threats." Defendant admits that he objects and opposes to the marital residence being sold at this time, and in the fashion, sought by the Plaintiff, as Defendant has no other viable means for housing at this time, and, as a Tenant by the Entirety of the marital residence, Defendant respectfully submits he should

be allowed to remain in the marital residence while this litigation is pending. Defendant respectfully avers that he must continue to reside in the marital residence at this time, as he has no other choices for a residence, nor any funds to secure an alternative residence, due to being deserted by the Plaintiff and her refusal to continue to pay the mortgage on the marital residence, the one viable marital asset owned by these parties, so as to maximize any possible return to the parties if they were allowed to sell the residence by reasonable means, as opposed to some sort of "fire sale," as requested by the Plaintiff herein.

11. Plaintiff's allegation and concerns that Defendant is devaluing the home are unfounded. Installing security devices would tend to secure, not devalue the home. Moreover, merely renting rooms to tenants does not indicate any misuse, waste, or devaluation. To the contrary, rental income from these tenants provides Defendant a means to maintain the property.

12. Defendant generally agrees with Plaintiff's assessment of the home's value and sale potential and believes the home could sell for up to $450,000.00. Plaintiff's averments in Paragraph 12, however, would tend to indicate that Plaintiff's averments in Paragraph 7 are not accurate; if the home could potentially yield $130,000 to $150,000 in proceeds, it is not reasonable to say that a foreclosure would wipe out all equity. More importantly, however, determining these matters at this stage of the divorce action is premature. Plaintiff should be required to maintain Defendant at his accustomed standard of living while an equitable distribution of the marital estate is determined. Based on her sworn bankruptcy Petition, Plaintiff should have sufficient resources to pay all or most of the mortgages on the home or otherwise provide Defendant an appropriate amount of spousal

5

49

https://rico.jefffenton.com/evidence/2019-07-29_response-to-wifes-motion-to-sell-residence.pdf Case 1:23-cv-01097-PLM-RSK (FENTON v. STORY et al.)

support during the pendency of this cause. Accordingly, these matters should be reserved for further determination of the division of the marital estate.

13. Defendant denies Plaintiff's assertions in Paragraph 13. Plaintiff has the financial ability to continue to pay all or most of the mortgages, which would also avoid foreclosure.

14. Defendant denies Plaintiff's assertion in Paragraph 14. Defendant has merely asserted his legal rights to demand an equitable distribution of martial assets and has attempted to communicate with Plaintiff to form a strategy that does not leave Defendant homeless or financially ruined. It is Plaintiff who created the financial crisis at issue by refusing to pay the mortgages and Plaintiff who now asks this Court to order a fire sale of the most significant asset in this marital estate. The Court should deny this unreasonable and premature request.

15. Defendant denies Plaintiff assertions in Paragraph 15. Plaintiff can pay the mortgage. Her selfish refusal to do so is what has created a time-sensitive crisis. Defendant does not have another place to live or financial means to secure alternate living quarters. While Defendant understand that neither party will come through this divorce unscathed, to ask Defendant to immediately leave his home because of a financial crisis Plaintiff created is an unreasonable and insulting proposition. It should be denied.

16. Defendant strenuously objects to any order to sell the home before the Court has assessed the full marital estate, particularly while Plaintiff has the financial ability to pay the mortgages and thereby maintain status quo. In the even the Court does order a sale, an auction would be an unreasonable fire sale that would almost certainly yield proceeds far below what the home would bring if listed on the open market. Moreover, an immediate auction would expose Defendant to significant liability to current leaseholders residing in

the home. Defendant therefore would ask the Court to order Plaintiff to maintain the mortgage for three (3) to six (6) months so that the home may be sold in an orderly fashion on the open market, yield the most proceeds possible, and limit Defendant's liability to leaseholders.

17. Defendant objects to Plaintiff's request in Paragraph 17. Plaintiff voluntarily, and abruptly left the marital residence. She should bear all costs of her decision, and no reimbursement from the marital estate should be permitted. Plaintiff's request for an offset of the proceeds should be denied because her payments on the mortgages were required to keep Defendant in the manner of living to which he had become accustomed. Further, withholding proceeds from a sale to determine any offset would literally render Defendant homeless, without any income, and without any funds available to secure alternate housing. Plaintiff's request is a cruel and unreasonable concept that this Court should reject out of hand.

Defendant would further state and show unto the Court as follows:

18. As noted previously, Defendant currently rents two rooms of the marital residence, so as to have some means of income to pay the utilities for the marital residence and to have some source of income. Should the Court determine that the marital residence should be sold in some form or fashion at this time, the Court take into consideration that the Defendant will need ample time to notify the current tenants of their need to vacate the residence located at 1986 Sunnyside Drive, Brentwood, Tennessee 37027; therefore, the Defendant would request that he, along with the current tenants, be permitted to remain in the residence until the home is sold, and that he be permitted ninety (90) days to properly notify the tenants of their need to vacate the property.

19. As a result of the two (2) leases with one-year terms, the Defendant is put into a compromising situation which could result in serious liability. His only two options are to either sell the marital residence with two active leases, or to pay the tenants to vacate early. If he elected to pay the tenants to vacate early, he would most likely have to reimburse them for the remaining months of their lease, security deposits for their next rental, moving costs, etc.

20. As one could imagine, the financial burden to the Defendant is monumental when considering these expenses; if anything, if the Defendant is forced to vacate the residence and also reimburse his tenants for vacating early, then Plaintiff should have to share equally in the costs for reimbursing the tenants as well.

21. The Defendant would further respectfully submit and agree, as condition to his remaining in the residence, that he shall maintain the home in pristine condition, pay all utilities for the marital residence and pay the first mortgage on the marital residence.

22. The Defendant would further agree to permit Plaintiff to inspect the home to determine the status of the interior of the residence, provided he receive notice of no less than forty-eight (48) hours of her intent to enter the former marital residence.

23. The Defendant would further aver that the Plaintiff willingly/intentionally failed to notify the Defendant of her bankruptcy proceedings as well as her failure/inability to pay the mortgage in a timely fashion, and that throughout the duration of the marriage, the Plaintiff has been the primary breadwinner and primarily paid the parties' mortgage obligations, moreover Plaintiff is well-aware of the Defendant's inconsistent employment history due to his debilitating mental health diagnoses which affect his ability to maintain continuous and consistent employment.

24. That the first and second mortgages as outlined in Plaintiff's Motion, are in the Plaintiff's sole name, and that according to these negotiable instruments, the Plaintiff is solely responsible for payment thereof. Because the Plaintiff failed to communicate with the Defendant as to the status of payment, and Defendant was not a party to the financial documents, it was an impossibility for him to have the ability to contact the lender to verify whether or not payments on the marital residence were being made in a timely manner, and to date is still unaware of when the last payment was received by the mortgage holders, as Plaintiff has failed or refused to provide him with this information.

25. In this aspect, it is arguable that the Plaintiff has unclean hands and that she is acting in bad faith because her past actions have undoubtedly created the present "emergency" as it relates to the possible foreclosure on the marital residence and the need to sell the home in an urgent fashion.

26. The Defendant specifically denies any allegation that he is guilty of domestic abuse towards the Wife, he acknowledges that an *Ex Parte* Order of Protection is in effect and that the hearing on the Order of Protection is set to be heard on August 1, 2019, which is the same day as the Plaintiff's Motion to Sell the Marital Residence is set.

27. The Defendant has not filed an Answer and Counter-Complaint to date as a result of an agreement between the attorneys to grant an extension to file such, and that this is irrelevant with respect to the Motion to Sell the Marital Residence as it has no bearing on the status of the marital residence and the mortgage payments.

28. As stated previously, Defendant acknowledges that he has two tenants residing in the marital residence, and that the rental proceeds are put towards the utilities and maintenance of the home and that he rented these bedrooms in an attempt to mitigate the

financial disaster that the Plaintiff put him in after she ceased paying the mortgage and the utilities, and deserted the Defendant.

29. The Defendant has transferred utilities into his name and that the utilities remain current, and that he agrees to maintain the status quo.

30. Should the Court order the sale of the marital residence, the Defendant would respectfully request that, pending payment of the existing first and second mortgages and any liens on the property, he be permitted an advance on his portion of the proceeds in order to obtain housing, as the sale of the residence will essentially leave him homeless, and without stable employment or rent from tenants, he has no other source of income at this time to rely upon for basic necessities and survival.

Respectfully Submitted,

Charles M. Duke, #23607
1200 Villa Place, Suite 201
Nashville, TN 37212
(615) 541-1842
(615) 647-0672 Fax
marty@mdukelaw.com

Mitchell Miller, #36126
1200 Villa Place, Suite 200
Nashville, TN 37212
(615) 712-6394
mitchell@schafferlawfirmtn.com

*Attorneys for Defendant/Husband*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Response to Wife's Motion to Sell the Marital Residence, has been sent to Ms. Virginia Story, Esq. Attorney for the Wife, at 136 Fourth Avenue South, Franklin, TN 37064, via U.S. Mail, postage pre-paid, on the 29th day of July, 2019.

FILED
WILLIAMSON COUNTY
CLERK & MASTER
2019 AUG -6 AM 9:22
FILED FOR ENTRY 8-14-19

**IN THE CHANCERY COURT FOR WILLIAMSON COUNTY, TENNESSEE AT FRANKLIN**

| | | |
|---|---|---|
| **FAWN [redacted] FENTON,** Plaintiff/Wife, | ) | |
| | ) | |
| **vs.** | ) | **No. 48419B** |
| | ) | |
| **JEFFREY RYAN FENTON,** Defendant/Husband. | ) | |

RECEIVED BY
Judges' Chambers
Date: 8-6-19 dls

**EX PARTE ORDER OF PROTECTION EXTENDED PENDING FINAL HEARING AND ORDER GRANTING MOTION TO SELL MARITAL RESIDENCE BY AUCTION**

This matter came on to be heard on the 1st day of August, 2019, before the Honorable Michael W. Binkley, Judge holding Court for the Chancery Court of Williamson County, Tennessee, upon Motion to Sell the Marital Residence by Auction and upon Ex Parte Order of Protection. It appearing to the Court based upon arguments of counsel, exhibits introduced and the record as a whole that the following shall be the Order of this Court.

It is therefore **ORDERED, ADJUDGED and DECREED** that the parties have reached an agreement to extend the Ex Parte Order of Protection pending final hearing in this cause. Husband shall remain under the Ex Parte Order and is enjoined and restrained from contacting Wife for any reason or from coming about her person. The Ex Parte Order of Protection shall remain in full force and effect and is extended pending further Orders of this Court and the hearing date is waived. Wife likewise is enjoined and restrained from contacting Husband for any reason or from coming about his person.

The Motion to Sell the Marital Residence by Auction is granted and the same shall be auctioned within 45 days from the date of August 1, 2019. Counsel for Husband and Wife will select a professional auctioneer as soon as possible so that the auctioneer can visit the property and market the sale in a fashion to obtain the best price possible for the home. The auctioneer shall prepare the property and market it for sale with the intent to obtain the highest sales price and most

Wife was to complete the walk through and provide a list to Husband within 10 days from August 1, 2019. (Due by: 8/11/2019.) So I could sell my stuff to raise money to move, since the court evicted my roommates. This wasn't completed until 8/23/2019.

favorable terms possible in the parties' best interests. This property shall not be advertised as a desperation sell and the parties will rely on the auctioneer's recommendation, whether an estate sale or other means of marketing, to obtain a fair market price. The auction will be without reserve. Husband is enjoined and restrained from interfering with preparation of the home for auction, the auction or stalling the sale in any manner, either directly or indirectly. The attorneys for the parties will agree upon a date and time for Wife to walk through the home, since Wife has not been in the house since March 2018, to identify items of personal property and to inspect the premises. Wife will provide a list to Husband within ten (10) days from August 1, 2019, through their counsel, of the items of personal property that she would like to obtain and the parties will either agree upon the same or, if they cannot agree, then Wife may file a Motion with the Court to choose the items on her list. Husband will take such actions as necessary to move items of personal property that he would like to retain and tag, price or do whatever steps are necessary to sell the remaining items of personal property. The remaining items at the house that Husband does not take and Wife does not take shall be sold at auction. The net proceeds of the sale of the real property and the personal property shall be deposited into the Chancery Court Clerk's office and placed in an interest-bearing account on behalf of the parties. If either party needs funds from the equity prior to the Final Hearing in this cause or Agreed Order, then he or she may file a Motion with the Court to receive a portion of the funds which will be allocated against their respective share of the marital estate. Husband will notify his tenants to vacate the home on or before August 30, 2019.

All other matters are reserved pending further Orders of this Court.

**ENTERED** on this 14th day of August, 2019, NUNC PRO TUNC TO AUGUST 6, 2019. MB

**MICHAEL W. BINKLEY, JUDGE**

Michael W. Binkley
Circuit Court Judge/Chancellor
21st Judicial District, Division III

BACK BEFORE I UNDERSTOOD THE "APPROVED FOR ENTRY" PROCESS OF "PROPOSED" ORDERS VS. "AGREED ORDERS"

**APPROVED FOR ENTRY:**

**VIRGINIA LEE STORY; BPR #11700**
Attorney for Plaintiff/Wife
136 Fourth Avenue South
Franklin, TN 37064
(615) 790-1778
virginia@tnlaw.org

Charles Duke / by perm VLS

**CHARLES M. DUKE; BPR #23607**
Attorney for Defendant/Husband
LAW OFFICE OF CHARLES M. DUKE, LLC
1200 Villa Place, Suite 201
Nashville, TN 37212
(615) 541-1842
marty@mdukelaw.com

Mitchell Miller / by perm VLS

**MITCHELL MILLER; BPR #36126**
Attorney for Defendant/Husband
SCHAFER LAW FIRM, PLLC
1200 Villa Place, Suite 200
Nashville, TN 37212
(615) 712-6394
mitchell@schaferlawfirmtn.com

**CLERK'S CERTIFICATE OF SERVICE**

I certify that a true and exact copy of the foregoing was sent by email and/or first-class mail to Charles M. Duke and Mitchell Miller, Attorneys for Husband, and Virginia Lee Story, Attorney for Wife, at their respective addresses, on this 14 day of August, 2019.

**CLERK**

**LOCAL RULES OF PRACTICE**
**TWENTY-FIRST JUDICIAL DISTRICT**
**HICKMAN, LEWIS, PERRY AND WILLIAMSON COUNTIES**

---

**RULES OF THE CIRCUIT AND CHANCERY COURTS**
**FOR THE TWENTY-FIRST JUDICIAL DISTRICT**

**Adopted Effective September 1, 2004**
**As Amended Through September 1, 2017**
**And Further Amended March 1, 2019**

## INTRODUCTION

**JUDGES.** The 21st Judicial District embraces Hickman, Lewis, Perry, and Williamson Counties. All Judges of the 21st Judicial District have full civil and criminal jurisdiction therein and are assigned areas of responsibility by the Presiding Judge.

**CLERKS.** Each county within the District has a Circuit Court Clerk and a Clerk and Master with powers and duties prescribed by statute for such offices generally. The Clerk and Master is also clerk of the Probate Division of the Chancery Court.

**Rule 11. Orders and Judgments**

**Section 11.01 Preparation and Submission**

Unless the court directs otherwise, attorneys for prevailing parties will prepare proposed orders for entry by the court and shall file such proposed orders not more than seven (7) days following the day on which the ruling is made by the court. If the proposed order submitted reflects that it has been approved for entry by counsel for all parties, then the court will take action promptly to enter such proposed order, or, at the court's discretion, enter the court's own order with respect to the ruling. If the proposed order does not reflect that it has been approved for entry by counsel for all parties, then the court will take no action to enter such proposed order for seven (7) days after receipt of the proposed order to afford counsel for the opposing party to submit an alternative proposed order. If the opposing party submits an alternative proposed order, the court shall undertake promptly to enter either the original proposed order, the alternative proposed order, or the court's own order with respect to the ruling. All of the time periods in this section may, for good cause, be extended by the court.

A party's approval for entry of a proposed order, which does not by its express terms state that it is an agreed order, shall not be construed as anything other than the party's agreement that the proposed order accurately reflects the court's ruling on the particular matter and shall not be construed to imply that party's agreement with or consent to the ruling set out in the proposed order.

[Adopted Effective September 1, 2004; Amended Effective September 1, 2010; Further Amended December 1, 2014].

## Jeff Fenton

**From:** Mitchell Miller <mitchell@schafferlawfirmtn.com>
**Sent:** Friday, July 26, 2019 3:09 PM
**To:** Jeff Fenton
**Cc:** Rachel Schaffer; Charles M. Duke
**Subject:** Re: Representation

Jeff:

Thanks for speaking with me on the phone this afternoon. I appreciate the opportunity to clarify our billing rates and practices. This is to memorialize our conversation.

The firm will adjust the billing rates in the representation agreement as indicated below. The remaining terms will not be changed.

The firm is not requiring your mother to sign a guarantee at this stage. As you noted, the firm requires the retainer to be replenished when the retainer balance falls below $1,000. So long as this happens, there will be no need to request a guarantee from your mother. However, we have an understanding that if replenishing the retainer or otherwise paying your invoices becomes a problem, we may ask you to provide additional financial assurance, and that may include asking for your mother to guarantee such payment. You understand that, while we cannot extend a fixed amount of credit at this timelf, the firm may, in its sole discretion, entertain alternative payment arrangements after we have established a history of trust and reliability.

I know you might have remaining questions. At this time, however, I believe we have covered the essential terms of our representation. Because time is of the essence, I would ask you to **please hold any questions until next week and electronically sign the revised Representation Agreement as soon as Rachel sends it to you**.

**Billing rates:**
Attorney Marty Duke: $250/hr. (primary counsel)
Attorney Mitchell Miller: $200/hr. (primary counsel)
Attorney Rachel Schaffer Lawson: $300/hr. (as needed)
AttorneyLandon Breazeale: $225/hr. (as needed)
Paralegal Elizabeth Barese: $175/hr. (as needed)

Best regards,
Mitchell

1

https://rico.jefffenton.com/evidence/2019-08-02_attorneys-miller-duke-retainer-exhausted.pdf Case 1:23-cv-01097-PLM-RSK (FENTON v. STORY et al.)

**Jeff Fenton**

| | |
|---|---|
| **From:** | Rachel Schaffer <rachel@schafferlawfirmtn.com> |
| **Sent:** | Friday, August 2, 2019 12:20 PM |
| **To:** | Jeff Fenton; Mitchell Miller; Charles M. Duke |
| **Subject:** | Invoice - URGENT |
| **Attachments:** | Invoice_10085.Jeff_Fenton.FENT-1162 __Fawn_Fenton_v__Jeff_Fenton.08-02-2019.pdf; Invoice_ 11940.Jeff_Fenton.Fenton_v__Fenton.08-02-2019.pdf |

Jeff:

Marty has sent me his invoice as of August 1st and I am attaching our invoice as of August 1st.

To date, we have received $4,000 in retainer. We have exhausted that. You will need to pay the $1,000 remaining on the retainer as well as replenish us back to $5,000 immediately for a total of $6,000. This amount needs to be received in my trust immediately.

Best,

**Rachel Schaffer Lawson**
Owner and Entrepreneur
Phone: (615) 712-6394 ext. 101
Email: rachel@schafferlawfirmtn.com
Website: www.schafferlawfirmtn.com
Address: 1200 Villa Place, Suite 200, Nashville, TN 37212
*Licensed in Tennessee and New York

CONFIDENTIALITY NOTICE: This transmission (and the documents, if any, accompanying it) may contain confidential information belonging to the sender and the intended recipient that is protected by the attorney- client privilege. It is intended only for use by the person(s) to whom it is addressed. If you are not the intended recipient, you are hereby notified that any disclosure, distribution, copying or taking any action in reliance on the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify us immediately by return e mail and delete the transmission and delete and/or destroy, as applicable, all copies thereof

**Jeff Fenton**

**From:** Jeff Fenton
**Sent:** Tuesday, August 6, 2019 3:45 PM
**To:** Rachel Schaffer
**Cc:** Charles M. Duke; Mitchell Miller (mitchell@schafferlawfirmtn.com)
**Subject:** RE: Getting Started

Rachel,

Thanks for your speedy reply.

If there is some way I can help expedite you being released, for your benefit, please let me know. I want this to be as easy on you as possible.

Best to you all.

JEFF FENTON
METICULOUS.TECH
(615) 837-1300 OFFICE
(615) 837-1301 MOBILE
(615) 837-1302 FAX

TECHNICAL CONSULTING, SERVICES, AND SOLUTIONS,
WHEN IT'S WORTH DOING RIGHT THE FIRST TIME!
SUBMIT OR RESPOND TO A SUPPORT TICKET HERE.

A DIVISION OF METICULOUS MARKETING LLC

**From:** Rachel Schaffer <rachel@schafferlawfirmtn.com>
**Sent:** Tuesday, August 6, 2019 2:35 PM
**To:** Jeff Fenton
**Cc:** Charles M. Duke <marty@mdukelaw.com>; Mitchell Miller (mitchell@schafferlawfirmtn.com) <mitchell@schafferlawfirmtn.com>
**Subject:** Re: Getting Started

Jeff:

I have not read the entirety of your email because, quite frankly, I simply cannot spend the time reading it all. I will be brief:

1. You have EXHAUSTED the $5,000 retainer. The amount of Marty's bill and SLF's together is over the $5,000. Just because they came as two separate invoices does not change the fact that you have blown through it in expeditious fashion.
2. We will NOT be continuing to represent you on a flat fee.
3. You are obligated to pay what is owed on the invoices as well as anything up until we are approved to withdraw from your matter by the judge.

***Rachel will be out of the office August 12th through 19th***

1

https://rico.jefffenton.com/evidence/2019-08-02_attorneys-miller-duke-retainer-exhausted.pdf Case 1:23-cv-01097-PLM-RSK (FENTON v. STORY et al.)

**Jeff Fenton**

**From:** Charles M. Duke <marty@mdukelaw.com>
**Sent:** Monday, August 5, 2019 6:39 PM
**To:** Jeff Fenton
**Cc:** Mitchell Miller
**Subject:** RE: Fenton v. Fenton

**Categories:** 4-Email: Important Information

Jeff:

There is no definite date certain by which I agreed with Ms. Story to file an Answer & Counter-Complaint. However, until there is an Order entered relieving us as counsel in this matter, you should not file anything pro se.

Thanks. have a good evening.
Marty

**From:** Jeff Fenton
**Sent:** Monday, August 05, 2019 5:36 PM
**To:** Charles M. Duke
**Cc:** Mitchell Miller
**Subject:** RE: Fenton v. Fenton

Thanks Marty.

Can you simply inform me of any critical dates which I need to self-represent by, as I can not afford further representation:

For example, when did you get the ANSWER & COUNTER COMPLAINT extended to?

Any other time critical dates would be greatly appreciated.

Thanks.

**JEFF FENTON**
**METICULOUS.TECH**
(615) 837-1300 OFFICE
(615) 837-1301 MOBILE
(615) 837-1302 FAX

TECHNICAL CONSULTING, SERVICES, AND SOLUTIONS,
WHEN IT'S WORTH DOING RIGHT THE FIRST TIME!

SUBMIT OR RESPOND TO A SUPPORT TICKET HERE.

A DIVISION OF METICULOUS MARKETING LLC

## Jeff Fenton

**From:** Fawn Fenton
**Sent:** Thursday, August 30, 2018 5:49 PM
**To:** Jeff Fenton; Fawn Fenton
**Cc:** Sandy Arons
**Subject:** RE: Offer to settle

Ken says he is willing to keep paying for you to be on our plan for 1 year, maybe through the end of 2019, "as long as you don't cause more problems", heh.
Beyond that, we'll have to see where things stand with you, and with my company.
(Our office lease is up in March 2020, and Ken really wants to retire, and so there's no telling what my job will be after that.)

---

**From:** Jeff Fenton
**Sent:** Thursday, August 30, 2018 2:18 PM
**To:** Fawn Fenton
**Cc:** Sandy Arons <sandyarons@getasmartdivorce.com>
**Subject:** RE: Offer to settle

As I re-read this, there is one other substantial concern that I need to address, and that is health insurance. Without health insurance, the price of my meds alone would break me each month (just like your xyrem)!

Would Ken be willing to keep me on your health plan for ONE YEAR, until I can complete my job training and can acquire a job that offers health benefits? Without this, even Cobra I would have no way to pay for, if I don't have a job. I also should maintain my counseling throughout, but that goes back to my questions about the transitional period.

Debtor 1 Fawn [redacted] Fenton Case number (*if known*)

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | **Copy line 4 here** | 4. | $ 7,500.00 | $ N/A |
| 5. | **List all payroll deductions:** | | | |
| 5a. | **Tax, Medicare, and Social Security deductions** | 5a. | $ 1,654.96 | $ N/A |
| 5b. | **Mandatory contributions for retirement plans** | 5b. | $ 0.00 | $ N/A |
| 5c. | **Voluntary contributions for retirement plans** | 5c. | $ 0.00 | $ N/A |
| 5d. | **Required repayments of retirement fund loans** | 5d. | $ 0.00 | $ N/A |
| 5e. | **Insurance** | 5e. | $ 0.00 | $ N/A |
| 5f. | **Domestic support obligations** | 5f. | $ 0.00 | $ N/A |
| 5g. | **Union dues** | 5g. | $ 0.00 | $ N/A |
| 5h. | **Other deductions.** Specify: | 5h.+ | $ 0.00 | + $ N/A |
| 6. | **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ 1,654.96 | $ N/A |
| 7. | **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $ 5,845.04 | $ N/A |
| 8. | **List all other income regularly received:** | | | |
| 8a. | **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0.00 | $ N/A |
| 8b. | **Interest and dividends** | 8b. | $ 0.00 | $ N/A |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ N/A |
| 8d. | **Unemployment compensation** | 8d. | $ 0.00 | $ N/A |
| 8e. | **Social Security** | 8e. | $ 0.00 | $ N/A |
| 8f. | **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ 0.00 | $ N/A |
| 8g. | **Pension or retirement income** | 8g. | $ 0.00 | $ N/A |
| 8h. | **Other monthly income.** Specify: | 8h.+ | $ 0.00 | + $ N/A |
| 9. | **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ 0.00 | $ N/A |

10\. **Calculate monthly income.** Add line 7 + line 9. 10. $ 5,845.04 + $ N/A = $ 5,845.04
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11\. **State all other regular contributions to the expenses that you list in *Schedule J*.**
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J*.
Specify: 11. +$ 0.00

12\. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income. Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies 12. $ 5,845.04

**Combined monthly income**

13\. **Do you expect an increase or decrease within the year after you file this form?**

■ No.

☐ Yes. Explain: **Employer Retiring - Closing their Firm - Known Over a Year in Advance**

Official Form 106I **Schedule I: Your Income** page 2

https://rico.jefffenton.com/evidence/2019-08-14_bankruptcy-planned-for-when-employer-retires.pdf Case 1:23-cv-01097-PLM-RSK (FENTON v. STORY et al.)

 Adkisson & Associates Architects, Inc.

FILED
WILLIAMSON COUNTY
CLERK & MASTER

2019 AUG 15 AM 10: 44

FILED FOR ENTRY______

August 14, 2019

To all the employees of Adkisson & Associates Architects, Inc. (the "Firm")

I want to let everyone know that November 2nd of this year is my 65th birthday. As a result, I plan to begin downsizing the Film so that I can significantly reduce overhead costs prior to the end of the corporate fiscal year end on December 31, 2019.

I want to give everyone ample time to secure other employment. I will continue to pay your salary and benefits up through November 15, 2019 so long as you are working full time at the Firm. If you secure new employment prior to November 15, 2019, I will provide you with two (2) weeks severance pay from the new employment start date, but said severance pay will not extend beyond November 15, 2019.

I greatly appreciate your good work over the past years and wish you well in your future endeavors.

With many thanks,

Kenneth C. Akdisson
President

118

EXHIBIT
tabbies
2

3322 West End Avenue • Suite 103 • Nashville, Tennessee 37203 • (615) 298-9829 • Fax (615) 298-5122 • www.adkissonarchitects.com

FAWN ███████ FENTON vs JEFFREY RYAN FENTON
08/29/2019

1    MS. STORY: So he's got to be out for

2    them to get this place ready to go.

3    THE COURT: All right. What date do you

4    suggest?

5    MS. STORY: I have seen correspondence

6    where he said September 1st. Now he's saying he

7    can't. So I would suggest September 3rd, which is

8    next Tuesday. And I would like the Order to reflect

9    that the Williamson County sheriff's department will

10   accompany him. And at this point --

11   THE COURT: You mean off the property?

12   MS. STORY: Off the property. And I

13   don't think he needs to take any property.

14   What he did, Your Honor, in this response

15   he filed, they had a TV that -- a Sony TV, a big

16   screen, that my client's brother had given her. He

17   now tells me in this response that he sold it for

18   $1,000. And then the other thing, there was a

19   dehumidifier in the basement that was like a $2,500 to

20   3,500 dehumidifier for moisture. He sold that. So if

21   you let him take anything out at this point it's going

22   to be sold and he's dissipating marital assets, which

23   would be in violation of the restraining order.

24   And at this point Mr. Anderson, he can

25   tag everything, they can video everything. We will

STORY LIED TO OBSTRUCT JUSTICE, FOR WRONGFUL EVICTION & FRAUD UPON THE COURT! 18 U.S.C. § 1951 (B)(2) HOBBS ACT - EXTORTION UNDER COLOR OF OFFICIAL RIGHT, 42 U.S.C. § 12203(A) ADA PROHIBITION AGAINST RETALIATION, 42 U.S.C. § 12203(B) ADA INTERFERENCE, COERCION, OR INTIMIDATION, T.C.A. § 39-14-112 EXTORTION, T.C.A. § 39-17-309 CIVIL RIGHTS INTIMIDATION, T.C.A. § 39-16-503 TAMPERING OR FABRICATING EVIDENCE, T.C.A. § 39-16-507(A)(3) COERCION/PERSUASION OF WITNESS, RPC 3.4(E)(1) ALLUDE TO IRRELEVANT UNSUPPORTED MATTER, RPC 3.4(G) RENDER PERSON UNAVAILABLE TO APPEAR AT TRIAL, RPC 3.5(A)(E) CONDUCT INTENDED TO DISRUPT, RPC 8.4(C)(D)!

RECEIVED BY Judge Chambers Date 8-29-19

R.v3 (381-383)

**IN THE CHANCERY COURT FOR WILLIAMSON COUNTY, TENNESSEE AT FRANKLIN**

CLERK & MASTER 2019 AUG 29 PM 2:34 FILED FOR ENTRY 8-29-19

**FAWN [redacted] FENTON,** Plaintiff/Wife,

vs. No. **48419B**

**JEFFREY RYAN FENTON,** Defendant/Husband.

**ORDER FROM AUGUST 29, 2019 HEARING**

**EX PARTE ORDER OF PROTECTION EXTENDED PENDING FINAL HEARING, RESETTING MOTION FOR VIOLATION OF ORDER OF PROTECTION, WAIVING MEDIATION AND SETTING FINAL HEARING, ORDER TO VACATE AND ORDER ALLOWING WIFE TO SIGN ALL NECESSARY CONTRACTS TO COMPLETE THE SALE OF THE MARITAL HOME AND CLOSING**

This matter came on to be heard on the 29th day of August, 2019 before the Honorable Michael W. Binkley, Judge holding Court for the Chancery Court of Williamson County, Tennessee, upon Wife's Motion for Violation of Ex Parte Order of Protection and for Date Certain for Walk Through of House and Motion for Scheduling Order. It appearing to the Court based upon arguments of counsel, statements of Husband representing himself Pro Se, and the record as a whole that the following shall be the Order of this Court.

**FYI...** my opposing counsel (Virginia Story) **WROTE** this **"Order"**. This does **NOT** match "the record as a whole". **Please compare the 8/1 & 8/29 Transcripts!**

It is therefore **ORDERED, ADJUDGED and DECREED** that the Husband was again advised of the risks of proceeding Pro Se and that he is required to comply with the rules just as an attorney is required. Husband acknowledged that he understood and wishes to proceed Pro Se.

**No Choice! Court Deprived Husband of ALL HIS Assets & Income! Deemed "uncollectible" once house was gone!**

The Motion for Violation of the Order of Protection will be continued pending further Orders of the Court as Husband had filed a very lengthy response on the morning of the hearing being August 29, 2019. The Motion for Violation of the Order of Protection will be reset with the Final Hearing in this cause set for October 21, 2019 at 9:00 a.m. The Motion for Scheduling Order and to Waive Mediation in this cause is appropriate and the same is granted.

**The "OP" meant NOTHING but LEVERAGE! ALL they wanted was MY HOUSE and ME OUT of it!**

**The alleged "Order of Protection" was just used (and still is) for EXTORTION, to BIND and SILENCE me!**

**I understood the term "the Final Hearing in this cause" to be referring to the issues WE had DISCUSSED to date, the results of our Auction & "OP".**

**AT NO TIME did I understand this to involve the END of our DIVORCE, as we hadn't even BEGUN DISCOVERY yet,** which I spent over an hour on the phone with my last counsel to learn how to navigate myself. (Call is recorded as proof!) **PLUS** Attorney Story had granted my Counsel an **EXTENTION** (which I have evidence of) on filing the **"Divorce Answer and Counter Complaint"**, so that she could focus on her primary agenda, **which was TAKING MY HOUSE!**

**Jeff Fenton**

**From:** Fawn Fenton
**Sent:** Thursday, August 30, 2018 5:49 PM
**To:** Jeff Fenton; Fawn Fenton
**Cc:** Sandy Arons
**Subject:** RE: Offer to settle

Ken says he is willing to keep paying for you to be on our plan for 1 year, maybe through the end of 2019, "as long as you don't cause more problems", heh.
Beyond that, we'll have to see where things stand with you, and with my company.
(Our office lease is up in March 2020, and Ken really wants to retire, and so there's no telling what my job will be after that.)

**From:** Jeff Fenton
**Sent:** Thursday, August 30, 2018 2:18 PM
**To:** Fawn Fenton
**Cc:** Sandy Arons <sandyarons@getasmartdivorce.com>
**Subject:** RE: Offer to settle

As I re-read this, there is one other substantial concern that I need to address, and that is health insurance. Without health insurance, the price of my meds alone would break me each month (just like your xyrem)!

Would Ken be willing to keep me on your health plan for ONE YEAR, until I can complete my job training and can acquire a job that offers health benefits? Without this, even Cobra I would have no way to pay for, if I don't have a job. I also should maintain my counseling throughout, but that goes back to my questions about the transitional period.

1

https://rico.jefffenton.com/evidence/2019-08-14_bankrupcy-planned-for-when-employer-retires.pdf Case 1:23-cv-01097-PLM-RSK (FENTON v. STORY et al.)

Debtor 1 Fawn [redacted] Fenton Case number (*if known*)

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse | |
|---|---|---|---|---|---|
| | **Copy line 4 here** | 4. | $ 7,500.00 | $ N/A | |
| 5. | **List all payroll deductions:** | | | | |
| 5a. | **Tax, Medicare, and Social Security deductions** | 5a. | $ 1,654.96 | $ N/A | |
| 5b. | **Mandatory contributions for retirement plans** | 5b. | $ 0.00 | $ N/A | |
| 5c. | **Voluntary contributions for retirement plans** | 5c. | $ 0.00 | $ N/A | |
| 5d. | **Required repayments of retirement fund loans** | 5d. | $ 0.00 | $ N/A | |
| 5e. | **Insurance** | 5e. | $ 0.00 | $ N/A | |
| 5f. | **Domestic support obligations** | 5f. | $ 0.00 | $ N/A | |
| 5g. | **Union dues** | 5g. | $ 0.00 | $ N/A | |
| 5h. | **Other deductions.** Specify: | 5h.+ | $ 0.00 | + $ N/A | |
| 6. | **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ 1,654.96 | $ N/A | |
| 7. | **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $ 5,845.04 | $ N/A | |
| 8. | **List all other income regularly received:** | | | | |
| 8a. | **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0.00 | $ N/A | |
| 8b. | **Interest and dividends** | 8b. | $ 0.00 | $ N/A | |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ N/A | |
| 8d. | **Unemployment compensation** | 8d. | $ 0.00 | $ N/A | |
| 8e. | **Social Security** | 8e. | $ 0.00 | $ N/A | |
| 8f. | **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ 0.00 | $ N/A | |
| 8g. | **Pension or retirement income** | 8g. | $ 0.00 | $ N/A | |
| 8h. | **Other monthly income.** Specify: | 8h.+ | $ 0.00 | + $ N/A | |
| 9. | **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ 0.00 | $ N/A | |
| 10. | **Calculate monthly income.** Add line 7 + line 9. Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | 10. | $ 5,845.04 | + $ N/A | = $ 5,845.04 |

11. **State all other regular contributions to the expenses that you list in *Schedule J*.**
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J*.
Specify: 11. +$ 0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income. Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies 12. $ 5,845.04

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
- ■ No.
- ☐ Yes. Explain: **Employer Retiring - Closing their Firm - Known Over a Year in Advance**

Official Form 106I **Schedule I: Your Income** page 2

https://rico.jefffenton.com/evidence/2019-08-14_bankrupcy-planned-for-when-employer-retires.pdf Case 1:23-cv-01097-PLM-RSK (FENTON v. STORY et al.)

# Adkisson & Associates Architects, Inc.

FILED
WILLIAMSON COUNTY
CLERK & MASTER

2019 AUG 15 AM 10: 44

FILED FOR ENTRY________

August 14, 2019

To all the employees of Adkisson & Associates Architects, Inc. (the "Firm")

I want to let everyone know that November 2nd of this year is my 65th birthday. As a result, I plan to begin downsizing the Film so that I can significantly reduce overhead costs prior to the end of the corporate fiscal year end on December 31, 2019.

I want to give everyone ample time to secure other employment. I will continue to pay your salary and benefits up through November 15, 2019 so long as you are working full time at the Firm. If you secure new employment prior to November 15, 2019, I will provide you with two (2) weeks severance pay from the new employment start date, but said severance pay will not extend beyond November 15, 2019.

I greatly appreciate your good work over the past years and wish you well in your future endeavors.

With many thanks,

Kenneth C. Akdisson
President

118

EXHIBIT
tabbies
2

3322 West End Avenue • Suite 103 • Nashville, Tennessee 37203 • (615) 298-9829 • Fax (615) 298-5122 • www.adkissonarchitects.com

https://rico.jefffenton.com/evidence/2019-08-14_bankrupcy-planned-for-when-employer-retires.pdf Case 1:23-cv-01097-PLM-RSK (FENTON v. STORY et al.)

SO much HORRIBLE FAITH, dishonesty, deceit, bullying, legal trickery, discrimination, bias, all GAMES with NO regard for JUSTICE, that ALL PLEADINGS must do SUBSTANTIAL JUSTICE, with NO RESPECT for ANY RULE OF LAW or my LIFE!

The Ex Parte Order of Protection shall remain in full force pending further hearing in this cause set for October 21, 2019 at 9:00 a.m. The form "Order Extending Ex Parte/Temporary Order of Protection" shall be executed and forwarded to the appropriate authorities.

Husband signed the listing agreement for the martial home with the Auctioneer,
FORCED TO SIGN BY JUDGE BINKLEY, UNDER THE THREAT OF INCARCERATION, without even READING IT!
Mr. Tommy Anderson, on August 29, 2019. Wife shall be allowed to sign any further contracts
Afterwards I NOTIFIED everyone, that I was FORCED to SIGN under DURESS. I Canceled the Listing: NULL & VOID!
to effectuate the sale and closings of the property located at 1986 Sunnyside Drive, Franklin, TN
YET Mr. Tommy Anderson said he was AUCTIONING MY HOME regardless! To do whatever I want! Unethical and illegal!
37069. Husband shall vacate the martial home on or before September 3, 2019 at 12:00 noon. The
JUST FIVE-DAYS NOTICE!
Williamson County Sheriff's Office shall have a deputy on standby to ensure that Mr. Fenton is
Actually 4-DEPUTIES with their hands on their GUNS, like I was a dangerous FELON! (NEVER arrested in my LIFE!)
vacated and that he only takes with him his personal clothing, his jewelry and effects such as his toiletries and medication. Mr. Fenton shall not remove any further furnishings or personal property. Husband is admonished that he is under a Restraining Order pursuant to the Statutory Injunction entered upon the filing of the Complaint for Divorce as of June 4, 2019. Mr. Fenton filed a Notice with the Court to allow him to file pleadings Pro Se and in the pleadings filed with
This is FALSIFYING COURT RECORDS, a FELONY in TN! I EMAILED Attorney Story the TRUTH the Night Before!
the Court he acknowledged that he had sold a TV gifted to his Wife from her brother for $1,000
To CORRECT her "misunderstanding", in hopes of avoiding MORE theatrical FRAUD UPON THE COURT, to DISRUPT!
and that he had sold a commercial dehumidifier which was at the marital residence for $2,500.
SHE smiled at me, LIED ANYWAY, to enrage the Judge, then WROTE THE FRAUD directly into the COURT RECORDS!
These amounts will be accounted for at the Final Hearing and any other property sold will also be
The next day, I saw the Court Order, I called the Court to try to correct. Emailed Ms. Story, then she LIED to me AGAIN!
addressed at the Final Hearing. No further property will be removed by Mr. Fenton and he shall
FRAUD UPON THE COURT BY OFFICER(S) OF THE COURT - Binkley signed the INCORRECT/FALSIFIED Order!
tag all items that he would like the Court to consider to be awarded to him. Any items that he does
PURELY to FURTHER ABUSE me, "under color of law". That's when I lost ALL Respect for Ms. Story and her CRIMES!
not wish to retain shall be sold at auction or Wife may retain. Pursuant to the Court Order, Wife
ACTUALLY, according to the 8/1 Court Order,
has tagged the items that she would request to be awarded when she conducted the walk through
This was supposed to be completed by 8/11/2019, but WASN'T until 8/23/2019. Costing me a loss of thousands of dollars!
pursuant to the Court Order from the August 1, 2019. (Order entered by Court on August 14,
Because the Court had evicted my TENANTS, I had no money to MOVE, so the Court allowed me to SELL what was MINE.
2019.) The auction will take place pursuant to said Order of August 14, 2019 which is to be 45
But my Counsel strongly urged that I NOT SELL ANYTHING until AFTER the "10-Day Walk-through." Since it was done
days from August 1, 2019 with all proceeds to be deposited into the Clerk's office.
So LATE, I had no TIME to SELL anything that was MINE, to fund my MOVE. When I returned, much had been STOLEN!
"Court Orders" (and LAWS in general) were only WEAPONS they used against ME. Ms. Story showed NO CARE for either.

R.v3 (381-383)

All other matters are reserved pending further Orders of this Court.

**ENTERED** on this 29th day of August 2019.

**MICHAEL W. BINKLEY, JUDGE**

Michael W. Binkley
Circuit Court Judge/Chancellor
21st Judicial District, Division III

**APPROVED FOR ENTRY:**

**VIRGINIA LEE STORY; BPR #11700**
Attorney for Plaintiff/Wife
136 Fourth Avenue South
Franklin, TN 37064
(615) 790-1778
virginia@tnlaw.org

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing was sent courtesy copy to Mr. Jeffrey Fenton, Defendant Pro Se, at 1986 Sunnyside Drive, Brentwood, TN 37027 on this 29th day of August, 2019.

**VIRGINIA LEE STORY**

## CLERK'S CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing was sent courtesy copy to Mr. Jeffrey Fenton, Defendant Pro Se, at 1986 Sunnyside Drive, Brentwood, TN 37027, and to Virginia Lee Story, Attorney for Wife, at their respective addresses, on this 29 day of August, 2019.

**CLERK**

FRAUD UPON THE COURT
(BY OFFICERS OF THE COURT)
OFFICIAL OPPRESSION (TCA § 39-16-403), COERCION & RETALIATION (42 USC § 12202 & 12203, TCA § 39-16-507) INTERFERENCE WITH COMMERCE BY EXTORTION (18 USC § 1951 (A)(B)(2))
FRAUDS (18 USC § 1341, 1957), U.S. CONST. AMEND. XIV, 18 USC § 153, 154, 156, 241, 242, 249..