UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF MICHIGAN

JEFFREY RYAN FENTON,

                PLAINTIFF

v.

VIRGINIA LEE STORY ET AL.,

                DEFENDANTS

CASE NO. 1:23-CV-01097

**FILED - LN**
August 19, 2024 1:07 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: phw /         SCANNED BY: /

## OBJECTION TO THIS COURT'S "ORDER REGARDING SERVICE"[1]

On July 8, 2024, this court filed an ORDER REGARDING SERVICE[2] (hereinafter "order"), which GRANTED Plaintiff's request for a 45-day extension to serve the defendants and DENIED every other request and motion which Plaintiff had pending before this court. Plaintiff appreciates the extension GRANTED by the court and will do everything reasonably within his power to serve all the defendants by the August 22, 2024, deadline ordered by the court. At the same time, Plaintiff strongly objects to *any* defendant being dismissed from this lawsuit prior to the court holding an evidentiary hearing to weigh the honest merits of this lawsuit while hearing and taking into consideration the cause of any failure to serve one or multiple defendants by the plaintiff—avoiding service, for example.

For the reasons below, Plaintiff objects to the dismissal of any elements of this case without first allowing him a hearing to explain any failure or delay in service he might reasonably expect to experience beyond his control despite his best efforts on such short notice. This is

---

[1] Citations to the court record in this lawsuit will be notated without the case name or number, using the starting ECF Number, followed by both the beginning and ending Page ID, which is abbreviated as "PID."

[2] ECF 55, PID.4378-4384 | https://rico.jefffenton.com/evidence/2024-07-08_wdm-fenton-order-regarding-service-kent.pdf

especially true considering his lack of funding due to no fault of his own but, more precisely, due to the fault of the defendants. This court has refused to assist with service or to allow Plaintiff any concession or modification by which the cost of service could have been substantially reduced without hindering its effectiveness, without weighing the honest merits of this case, or realistically considering the unethical games previously played by the bad actors in the Tennessee court system. For the court to dismiss this case without first actively assisting Plaintiff in meeting the technical hurdles to serve and have every opportunity to litigate this lawsuit would be both a miscarriage of justice by this court and a violation of 18 U.S.C. § 4.

Plaintiff furthermore objects to this court's order to again DENY Plaintiff access to electronic filing and its failure to correct the false narrative presented by this court in relation to electronic filing. He also adds clarification to help the court understand the value for the court, the plaintiff, and the defendants toward the cost-effective, efficient, and timely interests of justice. Frankly, the repeated statement by this court that providing Plaintiff with electronic filing would "not promote the efficient operation of the Court or secure the just, speedy, and inexpensive determination of this lawsuit" is illogical. Plaintiff has spent a couple thousand dollars on paper, ink toner, printing, binding, shipping supplies, and postage to date. The alleviation of that expense alone would greatly contribute toward the "inexpensive determination of this lawsuit." There are other even more compelling reasons to allow Plaintiff the privilege of electronic filing, which would provide an obvious cost/time/efficiency benefit to every party involved as expounded upon herein. For example, the cost to the court in man-hours simply to scan every page filed thus far could have been used far more efficiently otherwise.

Finally, Plaintiff objects to this court's order to DENY his MOTION FOR A

PROTECTIVE ORDER pursuant to F.R.Civ.P. 26(c) (ECF No.17). As incident to the judicial power provided in Article III, Section I of the U.S. Constitution, courts of the United States possess inherent authority to supervise the conduct of their parties by self-preserving rules for the protection of the rights of litigants and the orderly administration of justice.[3] Regardless of any discovery limitations, this court has not only the power but the duty to protect Plaintiff from further adverse retaliatory actions of defendants that would prevent him from fully litigating this matter if the administration of justice is the true objective.

## A NOTE ABOUT TIME

Two of these three objections are extremely critical to Plaintiff ever being afforded a realistic opportunity at due process of law. Plaintiff could devote days to writing about each of these matters in hopes of thoroughly explaining the background and reasons to this court while researching abundant case law to help frame and argue his response to the best of his ability. Unfortunately, there is not enough time for that, and critical time is being allocated *away* from the highest priority in this lawsuit currently, which is the urgent service of this lawsuit. The second priority is providing this objection in hopes of protecting Plaintiff's right of due process to litigate this case to completion.

From the above reasoning, the substantiation provided herein for these objections will only represent a fraction of the facts, background, case law, and argument supporting these objections. Should the court need more substantiation, then Plaintiff requests notice and a stay

---

[3] *McDonald v. Pless*, 238 U.S. 264, 266 (1915); *Griffin v. Thompson*, 43 U.S. (2 How.) 244, 257 (1844). See *Thomas v. Arn*, 474 U.S. 140 (1985) (court of appeal rule conditioning appeal on having filed with the district court timely objections to a master's report). *In Rea v. United States*, 350 U.S. 214, 218 (1956), the Court, citing *McNabb v. United States*, 318 U.S. 332 (1943), asserted that this supervisory power extends to policing the requirements of the Court's rules with respect to the law enforcement practices of federal agents. But compare *United States v. Payner*, 447 U.S. 727 (1980).

by the court to allow him to complete service without further distractions, followed by a period of time approved by the court for him to further elaborate on his supporting arguments herein.

Electronic filing is the exception in this objection, being important and worthy to request and for which to advocate, but not being critical or essential to the interests of justice as long as the court is within driving distance. Electronic filing would honestly provide a logical, pragmatic, efficient, cost benefit to every party, including the court itself.

## ARGUMENT

The following subsections list a fraction of the reasons why the instant case cannot lawfully be dismissed, among them: recognizing the validity and gravity of the core merits of this lawsuit rather than trivial, technical, or ancillary matters and raising yet another hurdle in an already overwhelming path for a disadvantaged plaintiff.

### I. FIRST MOTION FOR SERVICE

On January 19, 2024, Plaintiff filed a motion titled MOTION FOR 45-DAY EXTENSION TO SERVE PARTIES REGARDING F.R.CIV.P.4(m), MOTION FOR PREPAYMENT OF SERVICE FEES – SERVICE BY U.S. MARSHALS, MOTION FOR ADA ACCOMMODATIONS, REQUEST FOR CLARIFICATION, EXPEDITED CONSIDERATION REQUESTED.[4]

In fact, Plaintiff filed a second motion for service on March 25, 2024, while he had also asked the court for clarification because he was concerned about so much time elapsing since the initial 90-day deadline to serve per F.R.Civ.P. 4(m). Regardless of Plaintiff's concerns or how

---

[4] ECF 16, PID. 2258-2266

much time had in fact transpired since the initial 90-day deadline, this court went silent for nearly six months regarding Plaintiff's motion with expedited consideration requested.

## II.   SECOND MOTION FOR SERVICE

On March 25, 2024, Plaintiff filed his second motion for service, titled MOTION FOR PREPAYMENT OF SERVICE FEES EXPEDITED CONSIDERATION REQUESTED[5] along with a DECLARATION REGARDING SERVICE FEES[6] and a proposed order.[7]

## III.   ORDER REGARDING SERVICE

On July 8, 2024, five months and nineteen days after Plaintiff filed his first expedited motion, this court finally filed an order granting Plaintiff an opportunity to proceed in good faith with the service of his lawsuit. Unfortunately, that order also reinforced substantial concerns which arose during the Report and Recommendation[8] (hereinafter "R&R") of the magistrate when he proactively attacked Plaintiff and attempted to dismiss his lawsuit before he ever had an opportunity to serve it. This required more time to be redirected from the completion and service of Plaintiff's amended complaint and to again wrestle with this court in an effort to protect his constitutional right to due process. It also required Plaintiff to file many more documents with the court, almost doubling what had been filed to that point. Plaintiff does not feel "compelled to flood the Court with documents and CDs before a single defendant has been served." Rather, he feels compelled to defend himself from not only the opposing party—who has yet to make an appearance—but also from the court at this early stage. Hopefully this court

---

[5]   ECF 36, PID.3394-3396
[6]   ECF 35, PID.3392-3393
[7]   ECF 36-1, PID.3397
[8]   ECF 8, PID.2101-2106

can correct the uneven-handed justice delivered thus far and will provide an impartial tribunal for the honest administration of justice no matter which party the truth and evidence favor in this lawsuit.

### IV. THE SUMMONSES TO SERVE THIS LAWSUIT

Plaintiff brought pre-printed summons forms to be signed by the clerk of the court on January 19, 2024. However, since he arrived near the end of the day, the clerk said she did not have time to sign them for him that day, so he left them with her to pick up at a later time.

The next time that Plaintiff was in Lansing, he tried to retrieve his summonses from the court, but he was told that the court had filed them as his "proposed summons" in ECF 16-1, PageID.2267-2330, which was never his intent. Plaintiff was further informed by the clerk on duty that the court would return his executed summonses to him or serve them with his complaint if his motion for service was granted. To clarify, not having the summonses to serve this lawsuit was not due to any lack of initiative or malintent on the part of Plaintiff.

Plaintiff has previously explained to this court that his initial complaint had some significant errors in it, which is why Plaintiff has contended throughout that he has been striving to file an amended complaint prior to serving the defendants. That is why Plaintiff did not bring the summonses to the court on October 13, 2023, when he filed this lawsuit.

### V. CONTEMPLATING THE COURT IN WHICH TO FILE THIS LAWSUIT

Plaintiff was advised during a recorded phone call[9] with the U.S.D.C. for the Western District of Michigan on October 11, 2023, that he could file his lawsuit in Lansing, Michigan, despite

---

[9] ECF 54-1, PID.4375 | https://rico.jefffenton.com/evidence/2023-10-11_usdc-wdm-emily-can-file-in-lansing.mp3

knowing he was domiciled in Genessee County, Michigan, and that the majority of the defendants in his lawsuit reside in Tennessee. Plaintiff was told by the clerk that if the court determined that his lawsuit should have been filed in Tennessee, the court would "transfer it down there" while preserving his filing date regarding any concerns involving the statute of limitations.

Subsequently, Plaintiff filed his lawsuit in good faith on October 13, 2023, in the U.S.D.C. Western District of Michigan, Lansing, largely because the clerk of court had been refreshingly friendly over the phone and was extraordinarily helpful. Plaintiff had no reason to suspect that anything she had told him was not true or might be a problem or issue of contention for anyone.

If this court thinks that the instant suit should be heard in a different federal court, it must be stressed that Plaintiff filed here entirely in good faith seeking the honest and impartial administration of substantial justice and for absolutely no improper motive or purpose whatsoever. Hopefully, the court will respond in like kind: in good faith toward providing the honest and impartial administration of substantial justice. A partial transcript from the aforementioned recorded telephone call can be read in ECF 14-1, PID.2187.

Important case law regarding this section follows:

> "*Pro se* pleadings are to be considered without regard to technicality; *pro se* litigants' pleadings are not to be held to the same high standards of perfection as lawyers."[10]
>
> "Pleadings are intended to serve as a means of arriving at <u>fair and just settlements of controversies</u> between litigants. They should not raise barriers which prevent the achievement of that end. Proper pleading is important, but its importance consists in its <u>effectiveness as a means to</u>

---

[10] Jenkins v. McKeithen, 395 U.S. 411, 421 (1959); Picking v. Pennsylvania R. Co., 151 Fed 2nd 240; Pucket v. Cox, 456 2nd 233

accomplish the end of a just judgment" (emphasis added).[11]

> "Following the simple guide of rule [8(e)] that 'all pleadings shall be so construed as to do substantial justice'.....The federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." The court also cited then-FRCP 8(f), now 8(e), which holds that all pleadings must be construed so as to do justice. (emphasis added).[12]

Had *any* of the courts in Tennessee honored these simple principles, over four years of Plaintiff's life, liberty, and property would have been saved from *unnecessary* and *unwarranted* ruin without ever needing to bring this lawsuit. Unfortunately, in every case to date, they have steadfastly refused.

For the reasons mentioned above, Plaintiff expressly *objects* to this court's assertion[13] that "the interest of justice does not require transferring this lawsuit to any other district" (emphasis added). The *interest of justice* requires that this court take any action within its power and discretion to ensure that this lawsuit is addressed based upon its true merits without allowing it to be dismissed for any reason short of a lawful and equitable cure to compensate Plaintiff for damages and suffering.

## VI.   THE ISSUE OF VENUE

In the order (ECF 55, PID.4378), this court inaccurately stated, "Plaintiff recognized that he had a problem with venue and filed a pre-emptive 'Motion to maintain venue' (ECF No. 7)." Though it is true Plaintiff filed a "pre-emptive 'Motion to Maintain Venue,'" it was not at all due to the motives stated by this court. Plaintiff did so to prevent the defendants from

---

[11] Maty v. Grasselli Chemical Co., 303 U.S. 197 (1938)
[12] Conley v. Gibson, 355 U.S. 41 at 48 (1957)
[13] ECF, PID.4378

transferring the case to courts in Tennessee where justice has been consistently deflected rather than embraced, *not* for any other reason. Judges—at any level—are not supposed to presume anything or make statements of "fact" such as this for something entirely untrue.

While this court has been quick to chastise Plaintiff for filing his lawsuit in the Western District Court of Michigan, still to date, Plaintiff does not know, and this court has not told him, of any federal court in which his lawsuit could have been more properly filed. Plaintiff does not understand how he is supposed to know or determine in which federal court he is supposed to file when even a federal court magistrate has not been able to make that determination.

Moreover, directly from the U.S. courts website, "In cases based on diversity of citizenship (when the plaintiff and defendant are residents of different states), <u>the lawsuit may be filed in the jurisdiction where the plaintiff</u> or the defendant <u>resides</u>" (emphasis added).[14] *Ferens v. John Deere Co.*, 494 U.S. 516 (1990), a diversity case whereby a plaintiff sued in his home state, also reinforces this statement. Under the JURISDICTION AND VENUE section of the complaint, Plaintiff clearly is bringing his suit pursuant to 28 U.S. Code § 1332. Plaintiff has already pointed this out in an earlier objection[15] and finds it constitutionally offensive that the court is continuously trying to drive home false law, which will be discussed in more detail later.

To understand Plaintiff's motive for both filing this lawsuit in the United States District Court for the Western District of Michigan and for filing his "pre-emptive Motion to Maintain Venue" (ECF 7), a party first needs to understand what this lawsuit is about and who it is against.

---

[14] www.uscourts.gov/statistics-reports/covering-civil-cases-journalists-guide
[15] ECF 14, PID.2183-2184

## VII.    PARTIES THIS LAWSUIT IS AGAINST

This lawsuit is against a group of powerful and influential bad actors, including those who covered-up for some of them, most of whom are either active or recently removed high-ranking officers of the Tennessee court system. The defendants in this lawsuit include five judges, ten attorneys, five law firms, two real estate firms, two real estate brokers, two banks, three courts, and five government entities.

Many of these parties have held privileged offices of public trust in Tennessee. Some have betrayed the public's trust to leverage their offices for unlawful private interests, including preying upon the people they were employed by—the taxpayers—and entrusted to serve honestly, fairly, and impartially, leaving many people and families criminally damaged or destroyed of which Plaintiff is one.

To date there has been absolutely zero help or protection within the realistic reach of Plaintiff from further criminal abuse, while the state, courts, and actors therein have covered up their criminal misconduct, denied Plaintiff any lawful or equitable remedy, and refused to correct the bad actors or hold them accountable. The track record of these bad actors is precisely the reason Plaintiff has not filed the instant case in Tennessee. The same holds true for Plaintiff's MOTION TO MAINTAIN VENUE.

## VIII.    THE ADDITIONAL 2,000 PAGES FILED IN THIS LAWSUIT

On the second page of the order[16], the court stated, "In addition to his 2,090-page initial pleading, plaintiff has filed about 2,000 more pages of documents and over 20 CDs, much of which is <u>unrelated to a pending motion</u>" (emphasis added). It is unclear the reason for which the

---

[16]  ECF 55, PID.4379 | https://rico.jefffenton.com/evidence/2024-07-08_wdm-fenton-order-regarding-service-kent.pdf

court wrote this sentence in the order or what point it is trying to make since those filings never claimed to be related to "a pending motion." On the first page of the document titled, "Digital Media Exhibits[17] Replacing ECF-29 & ECF-30, PageID.3290", the document states: "Please file the digital media exhibits in this booklet for reference in my complaint."

The majority of the sworn testimony and evidence filed in the cited "2,000 more pages of documents and over 20 CDs" never claimed to be specifically relevant to any pending motion before the court, but was in fact filed to help substantiate the facts about the criminal misconduct by the large number of powerful and influential officers of the court named in this lawsuit, which will support Plaintiff's amended complaint and does support Plaintiff's OBJECTION TO THIS COURT'S "REPORT AND RECOMMENDATION."[18]

Those digital media exhibits include local news broadcasts showing the various bad actors and some of their known associates[19] involved in public corruption[20], criminal misconduct[21], public misconduct[22], and FBI investigations[23] and arrest followed by imprisonment.[24] They also show Tennessee courts not forcing judges to recuse themselves from hearing cases by prior associates and partying[25] or vacationing[26] friends. Those courts did not have any recording

---

[17] ECF 54, PID.4350-4377 | https://rico.jefffenton.com/evidence/1-23-cv-01097_fenton-vs-story-digital-media-exhibits.pdf
[18] ECF 14, PageID.2181 | https://rico.jefffenton.com/evidence/2024-01-09_objection-to-wdm-report-recommendation.pdf
[19] ECF 54-1, PID.4358 | https://rico.jefffenton.com/evidence/2017-02-01_wsmv-binkley-arrest-expunged-by-moreland.mp4
[20] ECF 43, PID.3698-3701 | https://rico.jefffenton.com/evidence/2017-04-03_nc5-moreland-tried-to-plant-drugs-on-witness.pdf
ECF 54-1, PID.4360 | https://rico.jefffenton.com/evidence/2017-04-03_wtvf-moreland-tried-to-plant-drugs-on-witness.mp4
[21] ECF 43, PID.3689-3693 | https://rico.jefffenton.com/evidence/2017-01-31_nashville-judicial-miscondnct-leigh-terrys-death.pdf
ECF 43, PID.3694-3695 | https://rico.jefffenton.com/evidence/2017-02-01_scene-ethics-complaint-against-two-judges.pdf
[22] ECF 54-1, PID.4368 | https://rico.jefffenton.com/evidence/2021-03-21_knox-news-binkley-threatens-prior-restraints.mp4
ECF 1-14, PID.597-640 | https://rico.jefffenton.com/evidence/2021-03-21_knox-news-binkley-threatens-prior-restraints.pdf
[23] ECF 54-1, PID.4362 | https://rico.jefffenton.com/evidence/2017-04-03_wtvf-undercover-fbi-video-of-casey-moreland.mp4
[24] ECF 52, PID.4180-4201 | https://rico.jefffenton.com/evidence/2021-12-02_fbi-mark-shafer-binkley-story-corruption.pdf
[25] ECF 44, PID.3740-3741 | https://rico.jefffenton.com/evidence/2018-09-24_tenn-binkley-defends-partying-with-lawyers.pdf

devices or court records of proceedings in civil cases in Williamson County. Everything was based upon the "honor" system. Opposing counsel were allowed to write court orders[27] against *pro se* litigants who were then denied participation in the proposed order process in the 21st Judicial District of Williamson County. This was clearly unconstitutional and has since been changed, probably because of Plaintiff's many complaints, yet the defendants have still refused to acknowledge the damage done to Plaintiff or provide him any relief.

Several digital media exhibits document many of the same injustices experienced by Plaintiff being brought to the attention of the Tennessee courts throughout the years. The same problems continue to remain unaddressed or unsatisfactorily addressed even a decade later, showing not just knowledge by the State of Tennessee and its courts, but a failure to act responsibly to protect the public from catastrophic casualties, which is truly negligence.[28]

The reason why this lawsuit has such an expansive record to date is to attempt to prove beyond any reasonable margin of "error" that such a large number of powerful people are actually factually at fault and because this court has already attacked Plaintiff proactively and wrongly attempted to have his lawsuit improperly dismissed thereby causing him to file additional evidence, objections, motions, and more in an attempt to prevent this from happening. The further the instant case—and the ones giving birth to it—moves along, the larger the record

---

[26] ECF 43, PID.3726-3729 | https://rico.jefffenton.com/evidence/2018-08-30_tennessean-story-hosts-vacations-with-judges.pdf
[27] ECF 19-6, PID.2672 | https://rico.jefffenton.com/evidence/2019_tn-21st-district-court-rule-11-preparation-of-orders.pdf
[28] Many of these problems have a simple and cheap solution, to increase transparency and accountability, yet the state and/or its courts have unreasonably refused to act in the best interests of justice, to protect the judicial integrity throughout the state as well as the interests of public health and safety.

gets. Had the courts in Tennessee acted according to law, Plaintiff may have needed to file approximately a mere 250 pages—total.

Lastly those digital media exhibits include evidence of Plaintiff's interactions with the Tennessee courts, such as recorded phone calls with representatives in different divisions of the court who violated their own court policies and law, some making reprehensible claims, such as the only available ADA accommodation being to bring a wheelchair[29] out to the curbside for the mobility challenged or something substantially similar.

### IX.   OBJECTIONS REGARDING PREPAYMENT OF SERVICE

On page three of the order[30], the court stated, "Plaintiff wants the [c]ourt to order the USMS to serve his initial pleading and forward him the money for copies and service." To clarify, Plaintiff never asked or intended to ask the court to forward him any money. He was under the impression that the court commonly paid for service for indigent litigants for which he absolutely qualifies at no fault of his own but entirely due to the criminal misconduct by the bad actors/defendants in Tennessee.

Plaintiff has no idea how the federal courts facilitate document production, specifically, printing prior to service of process. He assumed the courts contracted with a local print shop or had their own resources for printing, but at no time did he understand, expect, or anticipate that he was asking the federal court to provide him with "money for copies and service." The court's statement is false.

---

[29] ECF 54-1, PID.4357 | https://rico.jefffenton.com/evidence/2018-10-15_wilco-seeking-ada-assistance-recorded-call.mp3
ECF 1-39, PID.2046-2067 | https://rico.jefffenton.com/evidence/2018-10-15_wilco-seeking-ada-assistance-call-transcript.pdf
ECF 26-1, PID.3259 | https://rico.jefffenton.com/evidence/2020-02-13_tnsc-aoc-ada-gc-john-coke-phone-call.mp3
ECF 26, PID.3227-3258 | https://rico.jefffenton.com/evidence/2020-02-13_tnsc-aoc-ada-gc-john-coke-transcript.pdf
[30] ECF 55, PID.4380 | https://rico.jefffenton.com/evidence/2024-07-08_wdm-fenton-order-regarding-service-kent.pdf

As for service by the United States Marshals Service, it seemed to Plaintiff that was the least that the court could do in the honest interest of justice based upon the (largely self-evident) facts and testimony filed in this case sworn to under the penalty of perjury, but this court has exerted 95% of its energy to date to defeat and dismiss Plaintiff's lawsuit. It is unfortunate and incredibly burdensome—especially on short notice that required wasting time wrestling with this court regarding material misrepresentations woven throughout the orders to date.

### X.   DETAILS CONCERNING SERVICE OF PROCESS

Plaintiff has gone to exhaustive lengths to develop a means of serving this lawsuit using electronic documents, such as the exact PDFs kept on court record by the court through PACER. But with the deadline for service now being imminent, Plaintiff cannot afford to waste any more time asking this court for and waiting for it to provide accommodations to help make service practical, affordable, or efficient. The last request took nearly six months for this court to respond. At this point, Plaintiff must honestly do the best that he can with his limited resources hoping that this court will respond in good faith in the *honest interests of justice* without erecting more technical or procedural hurdles or roadblocks.

Plaintiff was about to file a *third* motion regarding service when he discovered that this court had finally ruled on his original motion. This was after Plaintiff had devoted over a month of extraordinary efforts to build a website interface based on PACER's electronic docket design. Such a task enhanced the functionality to include multiple bulk file download options, including every document filed in this lawsuit to date, both individually as scanned by the court as well as in different size document sets to fit the desire of the defendants to work with the files however they prefer. Plaintiff's gratuitous work will be a huge time and cost saver to the defendants.

This also includes for each defendant and the court a SanDisk Ultra Flair 32GB USB 3.0 flash drive and DVD, which contain instructions, links to Plaintiff's website interface, and more. Plaintiff purchased these storage devices, labels, delivery implements, and other materials costing him a few hundred dollars. Plaintiff has additionally spent close to $2,000 on paper and ink toner cartridges. For him it would be virtually impossible and obscenely impractical to serve every document in paper form to every defendant—considering the hundreds of hours just to print tens of thousands of pages and serve them—since the total cost would be approximately $42,000.

Of crucial note is the well known fact that defendants sometimes avoid service. The order does not allow time for such mayhem. Initiating service by the deadline, August 22, 2024, is within Plaintiff's control. Having it done by then is not. Delays in U.S. mail, avoidance of service, and other such intangibles fall outside any efforts to serve the defendants. This court should allow alternate service and extra time if service is not complete by the deadline or otherwise hold an evidentiary hearing before any attempt is made to cavalierly eject this case.

Finally, F.R.Civ.P. 4(e)(1) provides for "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Mich. Ct. R. 2.105 *et seq.* allows service by certified and/or registered mail. Nowhere in this rule is a "copy of the complaint" specified to be in a particular format, i.e., paper, electronic, or otherwise.

## XI. FINAL REMAINING POINTS

One of the biggest problems to date in this lawsuit is that Magistrate Kent has proactively taken an adversarial posture in opposition to the honest interests of justice, choosing to act in the interests of the defendants even prior to Plaintiff having an opportunity to serve them. Plaintiff

cannot handle having one more opponent against him, particularly the largest one in the nation—the U.S. legal system. Lawfully, he never should have to fight the opposition *and* the court too.

The actions by Magistrate Kent have literally undermined Plaintiff's lawsuit and multiplied the workload upon Plaintiff costing him hundreds of hours of additional work, adding thousands of pages of sworn testimony and evidence to this lawsuit, increasing his out-of-pocket costs, and causing needless emotional distress to a litigant who is already disadvantaged. Magistrate Kent is styling the narrative in his orders to present Plaintiff in an unfavorable light, while largely ignoring the merits of the case, the *unconscionable crimes by the defendants*, and appears to be writing many false statements repetitively into the record, as if by repetition they will become true and help substantiate dismissing Plaintiff's case as Magistrate Kent has made it abundantly clear he wants to do. "Repeat a lie often enough and it becomes the truth." This law of propaganda is often attributed to the Nazi Joseph Goebbels.

Twice already the magistrate has tried to stymie Plaintiff regarding venue. In his R&R, he said Plaintiff "anticipated objections to venue," and in the order, he said there was a "problem with venue." Neither statements support improper venue. This was addressed on page 9 herein.

Magistrate Kent said Plaintiff wanted the court to "forward him the money for copies and service." This is also 100 percent false. On page 4 of the R&R, the magistrate deliberately used case law for IFP defendants hoping that Plaintiff would not catch this ploy and the case could be easily dismissed without fanfare. Such an action is unethical, if not borders on outright deviousness. Lastly, pursuant to 28 U.S.C. §636(b)(1)(A) and (B), a magistrate may not "involuntarily dismiss an action" and can only submit "recommendations for the disposition" of a case. To date, Plaintiff has not submitted his *voluntary* consent—oral or written—for the

magistrate to have the power to dismiss the instant matter. On page 6 of the order, the magistrate says that Plaintiff's suit "will be dismissed" against any defendant not served by August 22, 2024. As just noted, the magistrate does not *legally* have the power to do that. He can only recommend so to the judge.

With all due respect, the actions to date in this lawsuit by Magistrate Kent have not only failed to be in the honest "interest of justice," but they have been absolutely contrary to the critical *interest of justice* which he has sworn, been entrusted, and is employed by taxpayers to uphold. This is not acceptable. Magistrate Kent's actions to undermine this lawsuit and poise the narrative to help substantiate a pre-determined outcome of dismissing this lawsuit from its inception is prejudicial to the administration of justice, clearly constitutes judicial misconduct, and has caused Plaintiff substantial damages along the same lines of court bullying, racketeering, and failure to intervene, supervise, correct, report, or discipline both attorney and judicial misconduct. Plaintiff has been destroyed by courts in Tennessee and deprived of any opportunity for a remedy by those courts and is pursuing this matter in Michigan to avoid déjà vu.

## DECLARATION

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct, except as to matters herein stated to be on information and belief, and as to such matters, I certify as aforesaid that I verily believe the same to be true.

Executed on August 9, 2024

**JEFFREY RYAN FENTON, PRO SE**
17195 SILVER PARKWAY, #150
FENTON, MI, 48430-3426
CONTACT@JEFFFENTON.COM
(P) 615.837.1300